E-FILED
Friday, 04 May, 2007  05:22:13 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. DEDRIC MOORE, | ) ) ) | |
| Petitioner, | ) ) | No. 07-2015 |
| v. | ) ) | The Honorable Michael P. McCuskey, |
| DONALD HULICK, | ) ) | Judge Presiding. |
| Respondent. | ) ) | |

### TO THE CLERK OF THE DISTRICT COURT

Pursuant to Rule 5, 28 U.S.C. sect. 2254, the below-named Exhibits are being filed:

Exhibit X:     Trial court record.

Respectfully submitted,
LISA MADIGAN
Attorney General of Illinois

BY:     /s/ Mary A. Fleming
MARY A. FLEMING
Assistant Attorney General
100 W. Randolph, 12th Floor
Chicago, Il. 60601
(312) 814-3692
Mfleming@atg.state.il.us
Atty. Reg. #6242892


7

1          A      No, I didn't.

2          Q      Did you ever talk to your nephew about any of the

3   criminal problems he was in?

4          A      Yes, I have.

5          Q      Did you tell him he needed to straighten up?

6          A      Yes, and he since had talked to me about

7   straightening up.

8          Q      So, you were available to help him, if he needed

9   that?  You have always been there for him?

10         A      Yes.

11         MS. LADD:     No further questions.

12         THE COURT:  Anything else?

13         MS. LENIK:  No.

14         THE COURT:  Thank you, sir.  You may step down.  Call

15  your next witness.

16                          DONRICO HOLTZCLAW,

17  Called as a witness in behalf of the Defendant and, having been

18  duly sworn under oath, testified as follows in answer to

19  DIRECT EXAMINATION BY MS. LENIK:

20         Q      Would you state your name, please?

21         A      Donrico Holtzclaw.

22         Q      And, what's your relationship to Dedric Moore?

23         A      He is my brother.

24         Q      Have you known him all of your life?

7        1        A     Yes, I have.

         2        Q     And, you are younger than he is, right?

         3        A     Correct.

         4        Q     Okay.  Mr. Holtzclaw, what are you currently doing?

         5   Are you working or going to school?

         6        A     I am working.

         7        Q     Where do you work at?

         8        A     County Market on Glenn Park.

         9        Q     And, what do you do at County Market?

       10        A     I am an overnight stocker and I am floor

       11  maintenance.

       12        Q     Did these charges surprise you?

       13        A     Yes, they did.

       14        Q     Why did they surprise you?

       15        A     Because I know my brother is not capable of doing

       16  anything like this.

       17        Q     And, why would you say that?

       18        A     Because I have known my brother my whole life.  We

       19  are--me and my brother--we are so close, you know.  I basically

       20  shared everything with my brother.  He shared everything with me

       21  and my brother, he is just not capable of doing nothing like

       22  this.  He is too loving.  He is kind, you know.  He is not

       23  like--he is not the type of person that would do anything like

       24  this.

7    1         Q    Have you ever seen him be violent?

     2         A    There were occasions where, you know, we got in

     3    fights as brothers, you know.  Brothers have fights, you know,

     4    but violent towards other people, no.

     5         Q    Has he ever threatened you or members of the

     6    family?

     7         A    No.

     8         Q    Has he ever been violent to your grandmother or

     9    your mother?

     10        A    Absolutely not.

     11        Q    Or any other member of your family?

     12        A    He would never harm any other family or anybody

     13   else.

     14        Q    Has he been helpful to you in growing up?

     15        A    Yes, he has.

     16        Q    What kind of things has he been helpful about?

     17        A    Okay.  Like, throughout schooling, you know, if I

     18   have ever had trouble, you know, with money for lunch.  You

     19   know, if he had a couple of dollars to spare or whatever, he

     20   would let me borrow a couple of dollars, you know, or just let

     21   me have.  You know, there were times where in sports, you know,

     22   if I needed help, he would help me.  There were times with

8    23   schooling, if I needed help, he would help me.

     24        Q    Was he a pretty good athlete?



34

8    1        A     Yes, he was.

2        Q     Was he also academically oriented?  Was he pretty

3  smart in school?

4        A     Yes, he was.  He is very very intelligent.

5        Q     And, did you use him to help you out in those

6  things, sports and academics?

7        A     Excuse me.  Could you repeat that?

8        Q     Did he help you in sports and academics?

9        A     Yes, he did.

10       Q     And, was that because you wanted him to?

11       A     He wanted to himself, to make me a better person.

12       Q     And, does he continue to want to make you a better

13  person?

14       A     Yes, he does.

15       Q     Have you seen him since he has been in jail?

16       A     Yes, I have.

17       Q     Have you talked to him since he has been in jail

18  about the whole situation?

19       A     Yeah, we have talked about it.

20       Q     And, do you believe that he has changed in any way

21  or is he still the same brother that you knew?

22       A     He is still the same brother that I have always

23  known.  I mean, he has been the same, you know.  I mean, at bad

24  points of his life, things that weren't, you know, good for him,


8    1    he has tried to change, you know, and make himself better, but

2    he has always been a loving, good person.

3        MS. LENIK:    Nothing further.

4        THE COURT:  Ms. Ladd.

5    <u>CROSS EXAMINATION BY MS. LADD:</u>

6        Q    When you talked about his situation in the jail,

7    what did he tell you?

8        A    He was shocked himself that he was charged with

9    this.  He couldn't believe that, you know, that he was charged

10    with this.

11        Q    You haven't talked to him since the trial?

12        A    Really, since the trial, I have not talked to him

13    about the case, no.

14        MS. LADD:    No further questions.

15        THE COURT:  Anything else, Ms. Lenik?

16        MS. LENIK:    No.

17        THE COURT:  Thank you.  You may step down.  Call your

18    next witness, please.

19        MS. LENIK:  No, Your Honor.  Thank you.  I believe my

20    client wishes to exercise his right of allocution.

21        THE COURT:  I will give him that opportunity at the

22    appropriate time.

23        THE COURT:  Thank you.  For the people in the courtroom,

24    at this point, I am going to give both Ms. Ladd and Ms. Lenik an


8          1.   opportunity to argue what they think an appropriate sentence

           2.   will be.  I will then give the defendant an opportunity to say

           3.   what it is he wants to the Court before sentence is imposed.

           4.   And, then, the Court will impose a sentence and explain the

           5.   rulings for that sentence.  I want to caution everyone in the

           6.   courtroom, I don't expect to hear a sound out of anyone in this

           7.   courtroom.  I don't want to see nodding of heads, shaking of

           8.   heads, or any other physical activity, that would indicate that

           9.   you disagree or agree.  If you don't think you can maintain your

           10.  composure for the rest of this hearing, now is the time to

           11.  leave.  Because if you don't leave now and if you don't maintain

           12.  your composure, I will find you in contempt of court and have

           13.  you locked up.  Ms. Ladd, argument for the People.

           14.      MS. LADD:   Thank you, Your Honor.  May it please the

           15.  Court, Counsel.  Your Honor, I spent sometime trying to think of

           16.  the comments I wanted to make to the Court and, as I was trying

           17.  to think of how to start, something was going through my mind,

           18.  and I didn't know how to put the words to it, and then it

           19.  occurred to me, what I was thinking was, that this morning

           20.  Laurie Hanson got up, like everyone in this courtroom, and got

           21.  ready to come to court, and came here with her family and

           22.  friends today, and is sitting here now, and I was struck by the

           23.  fact that, if this man had succeeded in what he was trying to

           24.  do, she would be in a cemetery somewhere right now and she would

1    be a headstone and a memory to her family and this amazing,

2    wonderful woman, with all its potential, would not be here

3    today, and that really is what this is all about, and that was

4    this man's goal, and that was something he did everything in his

5    power to carry out, and when you put that in context, what he

6    did back in February of 1998, is absolutely staggering.  If the

7    defendant had succeeded, then, right now, I submit to this

8    Court, I would be standing here seeking the death penalty,

9    because the qualifying factors were sure in place, with

10   everything that he did, and what surrounded his actions that

11   night, and the fact that he didn't succeed in taking her life,

12   is in no way a reflection of any mercy or any restraint or any

13   forbearance that he showed her that night.  It is simply a

14   reflection of her incredible will to live, her courage, her

15   strength, and the kind of person she is, that she is here today.

16   I realize the Court can't fashion a sentence that's based on

17   emotion or be swayed by sympathy and that's an appropriate way

18   for the law to be, but it's also correct that this case is not

19   going to be decided in terms of sentencing in a vacuum and any

20   sentence today has to take into consideration those factors that

21   surrounded what Dedric Moore did that night.  Guided by the

22   statutory factors in aggravation and mitigation that the Court

23   has to look at, I would submit that there is no real factors in

24   mitigation that apply here.  You can go through them.  You can



9

1    list them down the line, and there is absolutely none that

2    apply.  In fact, on many of these, its the absence of those

3    factors, that so strikingly set forth as almost aggravation.

4    The defendant's conduct is very likely to reoccur, since it was

5    random the first time it happened.  He picked Laurie Hanson out

6    at will.  It was just a random occurrence and that's what makes

7    him such a danger to everyone else, and that what makes this so

8    frightening.  There is certainly very little hardship to his

9    family.  I would suggest that he was a guest father, at best, to

10    this child, two years old, and we are hearing about how he

11    supplied a few diapers and a couple of $15, $20 handouts, during

12    the several months that she was fortunate enough to have him out

13    as a resource, and somehow he is now being advanced as a

14    absolute pillar of the family, that can't possibly be sent away

15    to prison, because he was so meaningful as a father to this

16    child.  It's frightening that she doesn't see that this is no

17    paternal role model.  The example that he is setting for his

18    son.  The message he is communicating.  The type of person he

19    is, he shouldn't even have contact with that child.

20        MS. LENIK:  Your Honor, I am going to object to this.

21    This is way outside the scope of what's appropriate at a

22    sentencing hearing.

23        THE COURT:  Ms. Lenik, I will decide what is appropriate

24    and what is not appropriate.  Your objection is overruled.



9

1          MS. LADD:   Thank you, Your Honor.  Despite the apparent

2     support of his family, who has a somewhat blind eye to his

3     problems, and there were many, I would suggest that, certainly,

4     they stood available to help him turn his life around, if he

5     wanted that.  To somehow advance his love for his grandmother,

6     as some sort of a factor in mitigation, is absolute hypocrisy,

7     when he used her as a place to crash, used her as a source to

8     target his victim and to launch his attack from and, obviously,

9     used her to manipulate and steal her check cashing card, so he

10    could forge his checks.   She was nothing but one more person to

11    use and manipulate, in his eyes.  When you look at his character

12    and attitude, I would submit that it confirms for the Court that

13    he has accepted no responsibility for what happened.  There is

14    no remorse.  There is no regret.  Even worse, as this Court will

15    recall, he lied under oath at his testimony in the trial.  Not

16    once, but repeatedly.  He lied about where he was.  He lied

17    about his actions that night.  He lied about what Detective

18    Shepard talked to him about.  It was hard for him to even get

19    out a sentence that didn't have something false or disingenuous

20    inside of it.  All of the evidence before this Court shows that

21    there isn't even a glimmer of conscience or morality or caring,

22    except about himself and Dedric Moore.  The only scrap of

23    mitigation I would suggest you can even glean from this record,

24    try as you might, would be his relative youth, and that becomes

9      1      rather meaningless, in the light of his prior history of

2      delinquency and criminality.  He may be only twenty years old,

3      but he has certainly packed a full slate of criminal activity

4      into those years on this earth.   Many of them felonies.  He

5      launched his criminal career when he was fifteen years of age.

6      He was adjudicated for theft.  He was given an opportunity for

7      rehabilitation with a community based sentence, which he blew

8      off, and managed to progress to a robbery adjudication.  That's

9      presentient of the activity that took place in February.  As an

10     adult, he has already amassed three criminal convictions.  Two

11     of them for felonies.  I would note the 1996 forgery conviction

12     has nothing to do with what Detective Shepard testified to.

13     That took place in February and March of 1997.  It also wasn't

14     the basis for the petition to revoke.  It preceded that.  So, we

15     now know there is, yet, more criminal activity he has engaged

16     in.  It's particularly significant that he parlayed his 1996

17     forgery conviction into the sentence to the Department of

18     Corrections, because, again, he couldn't comply with a community

19     based sentence.  If you look at the record in total, he has

20     exhausted every option the criminal justice system has to offer

21     in every possible permutation and combination.  He has had

22     conditional discharge, probation, detention, correctional

23     center, fines, prison, and parole.  And, in fact, he was on

24     parole when he committed these offenses.  It's apparent that



41

10      1    there is no sentence that's going to deter him or even slow him

        2    down.  It's just an unrelenting progression of criminal activity

        3    and the Court knows from the testimony of Detective Charlie

        4    Shepard now, that this isn't an isolated incident.  Certainly,

        5    there is corroborative evidence.  It's supported by the

        6    petition, which was the basis for the order of protection, as

        7    well as the testimony, which is uncontradicted, that Heather

        8    Cobb was a victim of a pattern of domestic violence and cruelty,

        9    that paralleled much of the criminal activity we can see in the

        10   criminal history.  This is significant, because these repeated

        11   incidents of domestic violence and threats directed at another

        12   female, again, echo what's escalating and taking place on

        13   February the 25th of 1998.  That is not an aberrational

        14   activity.  This is not out of character.  This is the other side

        15   of Dedric Moore.  This is a pattern and a culmination of

        16   escalating violence and criminality that he has not been swayed

        17   or deterred from.  Certainly, one of the factors that the Court

        18   has to acknowledge is deterrence.  Again, a statutory factor.

        19   And, I would suggest that this is significant, in the sense that

        20   other young men, who are embarking on their own criminal

        21   careers, much like Dedric Moore, can certainly take warning that

        22   they should not end up where Dedric Moore is now.  That they

        23   should take advantage of the opportunities afforded to them.

        24   One of the most compelling factors, though, is what the Court





10

1    has to look at, and that's harm to the victim.  I would concede

2    that inherent, to some extent, in the offenses of the home

3    invasion charges, and the attempted murder, that harm to the

4    victim is within those offenses and built in.  But, what the

5    defendant did in this case, Your Honor, grossly exceeds even

6    what is contemplated within the definition of those crimes.

7    This man literally terrorized and tortured Ms. Hanson for no

8    reason, over an extended period of time.  His attack was so

9    savage and so vicious.  It leaves people stunned, when you

10   recite the factors that were involved in this case.  Here is a

11   man who took a woman he didn't even know, bound her, hogtied

12   her, heaped furniture on her, beat her, choked her, kicked her,

13   tried to set her on fire.  This Court can remember how difficult

14   it was for her to describe the choking when she thought she was

15   going to die, but that wasn't enough for him.  He tried to drag

16   her into the flames when his attempts to douse her with gasoline

17   and ignite her, don't work.  She escaped, but with significant

18   physical injuries.  Her clothes were burned into her skin on her

19   knee, as the Court will recall.  She had mild smoke inhalation,

20   ligature marks and bruises on her arms and her legs and her

21   neck.  Now, those physical scars will heal, but I will submit

22   that the psychological and emotional ones will be with her for

23   the rest of her life.  The Court saw the victim impact statement

24   and had a chance to read it.  That captures the pain and the

10    1    depth of the impact that this offense had and what she has to

      2    deal with, more powerfully than anything that I can say. And,

      3    for me to try to add to that statement or to interpret it,

      4    frankly, would be disrespectful of what she has endured, and

      5    unnecessary. The words speak for themselves. Dedric Moore may

      6    have tried to take away her dignity, but he didn't succeed.

      7    That's apparent from her statement. She is an incredible

      8    person. But, he certainly did everything in his power, to strip

      9    her of that, and to take her life. He couldn't destroy her

     10    life. She won't give him that power, but he certainly cast a

     11    shadow over it, and it's something she is going to have to deal

     12    with, and he took away a part of her life, and it's never going

     13    to be back for her. That's what his actions did. One of the

     14    issues this Court has to address, obviously, in fashioning the

     15    sentences for so many counts, is whether the counts should be

11   16    served consecutively or concurrently. Looking over the

     17    statutory language that sets forth what the Court has to

     18    analyze, I would suggest that it is apparent that the

     19    defendant's actions are not part of a single course of conduct,

     20    and that there is a substantial change in the nature of the

     21    criminal objective. It's clear that the defendant's actions and

     22    focuses changed distinctly throughout the course of this crime.

     23    There were multiple crimes. In the beginning, there were

     24    actually two separate entries. I would suggest the first one



11  1  was motivated by greed.  The Court heard extensive testimony

2  about the theft, the robbery, the use of the ATM card.  That was

3  the objective at that point.  Certainly, that changed and

4  shifted, as his actions then rechanged and focused on sadistic

5  ones.  It then became one of torturing Ms. Hanson.  Inflicting

6  the sexual abuse, the beatings, tying her up, the injuries.

7  And, then, his focus changed again to covering up the evidence

8  of the crime, which is all that this human being really was to

9  him, was evidence.  And, then, you have the aggravated arson.

10  Setting her on fire.  Setting the residence on fire.  The

11  ultimate goal was to explode the entire residence.  As the Court

12  will recall, the gas burners were turned on.  Not only multiple

13  courses of conduct with different objectives, but I would submit

14  to this Court that, even if it was a single course of conduct,

15  which would normally warrant concurrent sentencing, that this

16  record mandates a finding by the Court, that this defendant's

17  actions, his record, his character and history, make consecutive

18  sentences absolutely necessary to protect the public from

19  further criminal conduct.  Under either analysis, certainly,

20  consecutive sentences are called for.  Given the fact that his

21  conduct has been undeterred in the past and given his prior

22  history and his attitude, I would submit that, not only, are

23  consecutive sentences appropriate but, then, if you make the

24  further analysis, you have to look at, all right, is the



11.

1    extended term called for.  I would suggest that, unfortunately,

2    given the date of these crimes and the recent Supreme Court

3    opinions, truth in sentencing will not apply to this case or

4    will soon become academic.  But, I would submit that, when you

5    analyze the nature and the character of the defendant's actions,

6    as he committed these crimes, that, in fact, it does qualify as

7    exceptionally brutal and heinous behavior, indicative of wanton

8    cruelty.  Not only is he eligible for the extended term, but it

9    cries out for the extended term, and it is the nature of these

10   crimes that, not only, makes him eligible for the extended term,

11   but really is the crux of the sentencing decision the Court has

12   to make.  Because what this man did is so depraved, it is so

13   savage and cruel, it crosses every line of humanity.  It just

14   defies comprehension.  He tortured and terrorized and tried to

15   destroy an innocent stranger's life, in her own home.  In her

16   own home.   The one fundamental right of every citizen in this

17   country is that you are safe and you are protected and you have

18   a right to be, absolutely in, at least, your own home, and he

19   took that away, as well, and he did it for one reason.  Because

20   he could.  He not only tried to destroy her life, he endangered

21   the entire complex, when he made that apartment a virtual bomb,

22   with the flames engulfing the apartments, and all of the gas

23   burners turned on.  He really didn't care who he took out at

24   that point.  And, you know what really illuminates a window to

11   1    the soul of Dedric Moore, and it's a dark and chilling place to
     2    be, and that is the way he set out to make her suffer first.  He
     3    tried everything in his power to degrade her and humiliate her
     4    and devalue her life as a human being.  He hogtied her.  He
     5    treated her like another piece of furniture.  He groped her and
     6    the ultimate degradation, and this is absolute appalling, is he
     7    urinated on her head.  And, as he did so, he enjoyed it, and the
     8    Court will recall the testimony.  The comments he made.
     9    Helping himself to her apartment and her food and, then, as he
     10   relieved himself on her, he was reveling in her suffering.  I
     11   don't know what you do with a human being like that, but you
     12   sure don't let him loose again among other human beings.  The
     13   bottom line is when you are looking at a sentencing hearing and
12   14   what do you give someone like this.   What do you give somebody
     15   who can look at another innocent human being that he has tied up
     16   and doused her with gasoline and calm and cold and cool as can
     17   be, flick a lit cigarette on her and hope that she is going to
     18   go up like a torch.  Well, the one thing you can do is you make
     19   sure he never walks free again.  Because that person has
     20   forfeited any right to be trusted in society.  The risk he
     21   presents is outrageous.  It's immeasurable and it's
     22   unacceptable.  Dedric Moore is a vicious sociopath.  He strikes
     23   at random.  His victim is defined by his whim and his
     24   opportunity.  His actions are unbounded by any kind of



12

1    conscience. Given the fact that there isn't one remote shred of

2    mitigation. Given the history, character and nature of this

3    man, and the offenses he has committed, and the extent of his

4    depravity, and the fact that he places no value on human life,

5    there isn't one reason to give him anything less than the

6    maximum sentence available.

7         I would submit to the Court in analyzing the available

8    sentences, my recommendation would be that, as to the aggravated

9    criminal sexual abuse, on count five, he be sentenced to serve

10   fourteen years, extended term concurrent.

11        As to the residential burglary, in count six, he be

12   sentenced to an extended term of thirty years concurrent. On

13   count two, the home invasion, I would ask for an extended term

14   of sixty years to be served consecutively.

15        On counts three and four, the aggravated arson, I would

16   ask for another extended term of sixty years, concurrent to each

17   other, the two aggravated arson counts, which are, obviously,

18   the same offense, but consecutive to the home invasion.

19        And, on count one, attempted murder, I would ask for an

20   extended term of sixty years, to be served concurrent, for a

21   total of 120 years incarceration in the Illinois Department of

22   Corrections. If this defendant lives the rest of his life and

23   dies in prison, then we will have protected the people of

24   Illinois. Thank you.



48

12    1         THE COURT:  Ms. Lenik.

      2         MS. LENIK:  Your Honor, before I begin argument, Ms. Ladd

      3    did bring up the question which, I believe, her analysis is

      4    correct on.  And, that is, that Mr. Moore will get day for day

      5    on any sentence the Court fashions, and I think the record needs

      6    to be clear on that, because we have all been somewhat confused.

      7    I know, at least I have, about that window of time when a

      8    defendant gets day for day and when he does not, and I want it

      9    to be perfectly plain for his appeal which will follow and for

      10   his family members who are in the courtroom and for anybody

      11   else, that it is the contemplation of all of us, according to

      12   the law, as we know it, that he will, in fact, receive day for

      13   day good time credit for any sentence he receives.  I am correct

      14   in that, am I not?

      15        THE COURT:  Yes, when this offense was committed, the

      16   Supreme Court determined that the truth in sentencing law that

      17   was in effect was unconstitutional.  So, therefore, he will

      18   receive day for day good time.

      19        MS. LENIK:  Thank you.  Your Honor, it's always very

      20   difficult when the State's Attorney stands up and gives an

      21   impassioned argument like that, to follow her.  It's obvious

      22   that the victim in this case is someone who is beloved of the

      23   State's Attorney and, of course, is a person who deserves great

      24   sympathy from the Court and society in general for having

12    1    endured this horrendous thing, and I do not mean any disrespect

2    to her, because it is a horrible thing to be the victim of a

3    crime.  However, it's not the end of one's life and it's not the

4    entire focus of the Court's efforts at a sentencing hearing.

5    The Court is not here to sentence Mr. Moore for how wonderful

6    the victim is.  The Court is not here to sentence Mr. Moore,

7    because the victim is a wonderful person who suffered greatly.

8    The Court, obviously, has to put that out of its mind, when it

9    fashions a sentence, and look at the entire picture of what is

10    going on here, which is more than this is a great person who

11    suffered.  Mr. Moore was convicted by a jury of this offense and

12    I am not going to argue with the Court whether or not the jury

13    verdict was the appropriate one.  Mr. Moore has the right to

14    appeal, which he intends to use, and the sufficiency of the

15    evidence and other issues will be dealt with in the appropriate

13    16    manner.  This is not a murder case.  Perhaps that needs saying

17    once or twice more.  This is not a murder case, period.  Mr.

18    Moore ought not be sentenced as if it were.  As a matter of

19    fact, through whatever means, or by whatever mechanism, this

20    person emerged without lasting physical scars.  This person

21    wasn't hospitalized.  This person isn't in a wheelchair.  Didn't

22    suffer any long lasting effects.  So that the arguments made

23    that, by God, she could have been dead, are superfluous

24    arguments, which I would ask the Court to ignore.  This is not a



13

1    murder case.  Mr. Moore was convicted of attempted murder, home

2    invasion; aggravated arson, and aggravated criminal sexual abuse

3    which, by the way, was fondling.  Disgusting, perhaps.

4    Disgusting, certainly, but nothing more than fondling and

5    inappropriate and gross touching, and residential burglary, from

6    having gone into the house to begin with.  There is nothing in

7    what the jury heard and there is nothing in what he was

8    convicted of, that indicates that any sentence beyond the normal

9    range should apply.  The legislature has set a wide range of

10   sentences for people convicted of this offense, these offenses.

11   It starts at six and it ends at thirty.  Surely, they believed

12   when they set that sentencing scheme into law, there are people

13   who deserve six, by God, and there are other people who deserve

14   thirty.  Jumping around and creating machinations by which this

15   can be doubled and that can be doubled, and all of the other

16   things can be doubled, that isn't what we have here.  There is

17   nothing that differentiates what Mr. Moore did, from any other

18   offense that fits within those statutory titles.  We don't have

19   any--there is nothing unusual about the victim.  She is not a

20   paraplegic.  She is not an elderly person or an infant.  There

21   is nothing particularly unusual about what happened.  He went

22   in.  He shouldn't have been there.  He did bad things.  You

23   know, there isn't anything odd or bizarre that would take this

24   out of anything else, that would fit the elements of those


13

1    particular offenses.  Mr. Moore is a person who has two prior

2    felony convictions, one misdemeanor, and four petty traffics.

3    That's certainly not the worst criminal history this Court has

4    ever seen.  It's probably not the worst criminal history the

5    Court has ever seen this date.  That's a pretty minimal criminal

6    history and the most interesting thing about it is this.  Not

7    one of those offenses, not one of those offenses that he has

8    committed since he has been an adult, has been violent.  We have

9    got a forgery and we have got an attempt burglary.  Paper

10   crimes.  So, yes, it's true what his family is saying.  His

11   family uniformly says Mr. Moore is not a violent person.  Mr.

12   Moore is a loving and kind person and they were all shocked when

13   he was charged and convicted of this offense.  The Court has to

14   look, however, at the whole picture of Mr. Moore.  At everything

15   he presents and, of course, a person is more than his prior

16   convictions, and he is more than just this incident.  As I said,

17   he has never been violent, except for the order of protection,

18   which would cause some concerns, except we don't know whether

19   that's based on words or actions either.  I would also submit to

20   the Court that Mr. Moore has great rehabilitative potential.  He

21   is a person who has some education.  He has some training.

22   Beyond that education, he has some skill.  Recall that his

23   brother and Mr. Auler stated that he was a gifted athlete.

24   Recall that his brother stated that he would help him with his

13

1    education.  This is a person, who has both physical abilities

2    and mental abilities.  This is a person who can do something

3    with himself in society.  He should not be warehoused.  It would

4    be a waste of a valuable life for him to be warehoused for the

5    rest of his life, when perhaps, when he is older and more calmed

6    down, but even so, before death comes to him, he can be a

7    valuable member of society.  He is currently a valuable member

8    to his family.  He is currently a valuable member of his family

9    to his child, who is very young, to that child's mother, and to

10   the other family members, who come to court voluntarily, to

11   testify today.  There is another thing in the pre-sentence

12   report that I would ask the Court to take note of.  And, that

13   is, his report that he has some mental health issues.  That he

14   sometimes suffers from depression.  I don't know because,

15   obviously, I am not trained in that area, whether or not that

16   can create problems with impulse control or problems with other

14

17   things along that area, but I think that that's also a factor

18   that the Court can consider.  I would suggest to the Court that

19   an appropriate sentence would be a sentence in the normal range,

20   as I have stated before.  This is a single course of conduct.

21   It began and it ended in the same time.  There were no long

22   lapses.  He did one thing and immediately did another and then

23   immediately did another.  There is nothing in his conduct to

24   suggest that there was some, all of a sudden, change of plan.



53

14        1    It all flowed.  It all happened one right after the other.  He

          2    went here.  He went there.  He did this.  It's not like the kind

          3    of cases where there is some break in the action, so to speak,

          4    and all of a sudden, something else happens.  I don't believe

          5    that the Court needs to or should fashion consecutive sentences.

          6    The normal range of penalties is serious enough.  Isn't thirty

          7    years enough for something like this.  I mean, we think of these

          8    numbers, as if, perhaps, Ms. Hanson is all of a sudden going to

          9    feel better if he lives in and gets out at the age of--I don't

         10    know--forty, sixty, as opposed to his decease in the

         11    penitentiary.  There is a huge difference, in terms of a

         12    person's ability to adjust, if there is an end in sight, or if

         13    there is no end in sight.   I think it's cruel, if the Court

         14    says, because of this activity and because of who he is, he is

         15    going to die in prison.  He didn't kill anybody.  He didn't maim

         16    or permanently injure anybody.  The actions were certainly

         17    unfortunate, but the actions were those actions, which fit well

         18    within the statutory scheme of the charges, which mean it starts

         19    at six and it ends at thirty and thirty should be enough.  The

         20    United States of America has more people incarcerated than any

         21    other nation in the world, except perhaps, Russia, and I think

         22    we may have overtaken Russia.  We become mad by locking people

         23    up.  We have this idea that every human being, who does

         24    something wrong, needs to be locked up for longer and longer



54

14      1    periods of time. And, although, this is not the place to argue

        2    public policy, I think it's extraordinarily sad that this has

        3    become such a large factor of, what we call, justice in this

        4    country, and I, perhaps, am asking the Court for inappropriate

        5    sympathy, but thirty years ought to be enough. Thirty years is

        6    the kind of sentence that in most places in the civilized world,

        7    they would give to somebody, who had committed multiple murders,

        8    or nobody would get that kind of sentence, and I think, the

        9    notion that it helps society or it helps this one woman, or it

        10   helps us all, for him to get some number that defies

        11   imagination, I think that's a false assumption. I think it's

        12   wrong and I think ultimately it's very sad that the system of

        13   justice has come to that. In sum, Your Honor, I would ask the

        14   Court to sentence him within the normal range. I believe that

        15   it is true that this is a single course of conduct,

        16   specifically, as it's described. That it is seemless. That is,

        17   there no reason for the Court to pick out one of these and

        18   extend the sentence for that beyond the sentence for something

        19   else. I also don't believe that extended term is necessary,

        20   because there is nothing particularly different or greater about

        21   what was done in this case, than what's done in any other

        22   attempt murder, any other home invasion, any other aggravated

        23   arson. The essence of those crimes is you tried to kill

        24   somebody. The essence of those crimes is you went into

14    1    somebody's home in a tumultuous manner uninvited.  The essence

2    is you started their house on fire with them in it.  That you

3    fondled them.  That you went in without permission with the

4    intent to commit a felony or a theft, period.  This is no

5    different in--either in degree, in kind, or in any other way,

6    than the normal range, the normal crime that this defendant was

7    convicted of.  It is unfortunate that somebody, who is a

8    wonderful person, was harmed by it, but, again, the Court should

9    not take that sympathy and double or triple or quadruple his

10    sentence, simply out of rage on her behalf.  I will ask the

11    Court to consider Mr. Moore and his family.  I would ask the

12    Court to consider the entire set of circumstances, his ability

13    to be rehabilitated, his background, his history, his lack of

14    any violence, which is specifically in front of the Court, and

15    to fashion a sentence within the normal statutory range.  Thank

16    you.

17        THE COURT:  Mr. Moore, this is an opportunity for you to

18    say what it is you want to the Court before sentence is imposed,

15    19    sir.  You can sit right there, that's fine.  You can sit.

20    That's fine.  I can hear you.

21        MR. MOORE:  This past year myself and my family have been

22    emotionally fatigued.  The past couple of months, I have been

23    preparing myself for this day to come, and I would like to truly

24    deeply, honestly, and sincerely apologize to Ms. Hanson, and, in

15 1 turn, Ms. Hanson's family, and the Moore family, the Holtzclaw

2 family, and to my son, who is too young to understand what's

3 going on here, but he is old enough to realize that his daddy

4 isn't there.   I would like to thank all of my friends and my

5 family that stands by me through this whole terrible ordeal.

6 The State have done a good job of making me look like a crazy

7 deranged lunatic, but what a terrible thing is an abuse of

8 power, an abuse of office, and abuse of public trust.   Those

9 are terrible things.  Actually, you know, I am a loving and

10 caring father and brother and uncle and son, grandson.   I am

11 sorry, and I ask you, judge, to have mercy and leniency on me,

12 and thank you for giving me this time for me to say this on my

13 behalf and, once again, I apologize for everything that happened

14 these last few years to the Hanson family, to the Moore's, and

15 to the Holtzclaw's.  Thank you for giving me this time.

16  THE COURT:  Thank you, sir.  Well, I have considered the

17 pre-sentence report, the impact statement from the victim.   I

18 have considered the testimony presented in aggravation, as well

19 as the testimony presented in mitigation.  I have also

20 considered the defendant's statements during his right of

21 allocution and the fact that he has indicated an apology for the

22 harm, not only to his family, but to the family and to the

23 victim in this case.  When the Court looks to the statutory

24 factors in mitigation in this case, there are, quite frankly,

ge


15

1   none that apply to this defendant, to this type of an offense.

2   When the Court looks to the statutory factors in aggravation,

3   obviously, the defendant has the prior history of delinquency

4   and criminal activity as set forth in the pre-sentence report,

5   but the Court must always fashion a sentence that will,

6   hopefully, deter others who find themselves in the same position

7   as this defendant, from committing the types of crimes or from

8   committing crimes, and the Court always looks to a deterrent

9   factor.  In reviewing the evidence that was presented in this

10  case and reviewing it in connection with the specific charges

11  that were filed, the Court will deal, first, with the charge of

12  residential burglary, and that Indictment stated that on the

13  25th of February, the defendant knowingly and without authority,

14  entered into the dwelling place of Laurie Hanson, with the

15  intent to commit therein a theft.  Given the evidence that was

16  presented at the trial, the Court is of the opinion that the

17  initial entry, wherein the defendant followed the victim into

18  her residence, forced her down on the floor, tied her up, put

19  her in the bathtub, and then took her ATM cards and her truck,

20  that is the essence of that charge of residential burglary.  The

21  evidence was clear.  There is no doubt about it.  The defendant

22  left the residence of Ms. Hanson.  Left her hogtied in the

23  bathtub.  Went to the ATM machine in her truck and used her ATM

24  card or cards and did receive some money, based upon that

58

15    1    transaction or those transactions.  If that were the end of it,

      2    then, we are looking at a residential burglary.  With the

      3    defendant's prior record, and the nature and circumstances of

      4    that offense, of a maximum sentence of fifteen years, but the

      5    defendant returned.  There is no reason for that.  Absolutely

      6    none.  It was that, at that point, when the defendant returned,

      7    that that second entry was not part of a single concurrent

      8    course of conduct.  He came back into the residence, knowing the

      9    victim was tied up in the bathtub, and when I look at the charge

      10   of home invasion, as it was charged, it indicates, again, on the

      11   date in question, that the defendant, not a peace officer acting

      12   in the line of duty, knowingly and without authority, entered

      13   the dwelling of Laurie Hanson, knowing Laurie Hanson to be

      14   present within that dwelling, and intentionally caused injury to

      15   Laurie Hanson, in that he struck Laurie Hanson about the head

      16   and body, with his hands and feet, tied Laurie Hanson's hands

      17   and feet and neck and choked Laurie Hanson and knocked her down

      18   and dragged her.  With the exception of tying her up and tying

      19   her hands and feet and neck, the basis of this home invasion is

      20   what happened when the defendant entered the second time, and

16    21   the Court has given some long consideration to these charges, to

      22   the evidence, and believes that the home invasion, as charged,

      23   came when the defendant entered the second time.  The defendant

      24   was then also convicted of aggravated arson, another Class X

16      1    felony, and attempted murder.  Again, a Class X felony, as well

        2    as criminal sexual abuse, a Class Two felony.  Based upon the

        3    evidence presented, based upon the Court's consideration of the

        4    circumstances of the offense, the history and character of the

        5    defendant, the Court is of an opinion that a consecutive term is

        6    required to protect the public from further criminal conduct by

        7    this defendant.  We have here a very young man, who has by

        8    everyone's estimation, the people that know him, has a lot of

        9    potential, but who in a brief period of time, has amassed the

        10   impressive criminal record.  The argument is there is no history

        11   of violence in his record.  Well, he was adjudicated a

        12   delinquent minor.  That's the same thing as being convicted, for

        13   the offense of robbery.  This was in 1996.  By anyone's

        14   definition, robbery necessitates the use of force and taking

        15   someone else's property.  We have the order of protection that

        16   was entered, based upon a verified petition, wherein the

        17   defendant abused, both physically and emotionally, a female

        18   victim in that case.  So, in the defendant's relatively brief

        19   period of time that has been available to him, he does have a

        20   history of violence in his record.  Not to mention the juvenile

        21   adjudications, the juvenile convictions, he has two felony

        22   convictions and a misdemeanor conviction.  The defendant's

        23   family members can't believe he committed this offense, because

        24   of the nature of the offense and because of their relationship

16    1    with him, because they love him, and because they really just

      2    can't believe that he could do this. His family members are not

      3    unlike family members of a great many criminal defendants who

      4    sincerely can't believe that their son, their cousin, their

      5    uncle, their father, their brother, whoever the defendant might

      6    be, could have possibly committed such a horrendous crime, and

      7    that's the nature of family members. That's the nature of the

      8    bond and the love that people have, one for another. Yet, the

      9    evidence was presented to a jury of twelve and that jury, in

      10   rather short order, found this defendant guilty beyond a

      11   reasonable doubt of all of these offenses. The Court listened

      12   to the testimony, reviewed the evidence, and the Court is also

      13   of the opinion that, not only was the jury correct in finding

      14   this defendant guilty beyond a reasonable doubt, but there is

      15   absolutely no doubt that he committed these offenses. The Court

      16   now has to look to the number of years that have to be assigned

      17   to these various counts, to these various convictions. The

      18   statute calls for an extended term, if a defendant is convicted

      19   of any felony, and the Court find that the offense was

      20   accompanied by exceptionally brutal or heinous behavior

      21   indicative of wanton cruelty. The cases in Illinois have

      22   defined heinous or brutal. Brutal has been described as

      23   conduct, which is grossly ruthless, devoid of mercy or

      24   compassion, or cruel and cold blooded. Heinous has been

16

1   described as hatefully or shockingly evil, grossly bad, or

2   enormously and flagrantly criminal. The defendant, when he

3   returned to the residence, returned for the purpose of

4   inflicting injury, if not death, upon the victim in this case.

5   He returned to the residence and the manner in which he treated

6   the victim, by anyone's definition, trying to strangle her,

7   urinating on her head, dousing her with a flammable liquid,

8   kicking, punching, beating her, when she tried to somehow flee

9   the flames, and then setting her house on fire, that conduct is

10  heinous, brutal, indicative of wanton cruelty. Mr. Moore, as he

11  sits here now, is contrite. He is sorry for his plight and for

12  all of his actions, probably dating back to when he was a

13  juvenile, but the Court has to fashion a sentence that will not

14  get even, not make everyone feel good, as far as the victim and

15  the victim's family. The Court has to fashion a sentence that

16  is appropriate with the crime, appropriate with the character of

17  this defendant, appropriate with his prior record, and above

18  all, to insure that this defendant isn't in a position to

19  victimize other people. Based upon all that's been presented, I

20  believe a sentence of incarceration in the Illinois Department

21  of Corrections for the offense of residential burglary is to be

22  for fifteen years. That sentence will be ordered served

17

23  consecutively to the sentence for attempted murder, home

24  invasion, and aggravated arson. Those are all Class X offenses.

17      1           Based upon the heinous and brutal nature of the offense,

2           the sentence for attempted murder will be sixty years, to be

3           served concurrently with the sixty year sentence for home

4           invasion.

5           The aggravated arson will be set at thirty years.   The

6           aggravated criminal sexual abuse will be set at seven years.

7           The Court can't extend the aggravated criminal sexual abuse,

8           because it's the lesser offense.   The Class X's have been

9           extended, and the Court is not authorized to extend the

10          aggravated criminal sexual abuse.   These sentences will be

11          served consecutively.   That will total seventy five years.   The

12          defendant will be given credit for 184 days served in the

13          Champaign County Correctional Center.

14          Mr. Moore, the law requires that I explain to you, that

15          you have a right to appeal the decisions of, not only the jury,

16          but of the Court.   In order to do that, you need only tell the

17          Court that you want to file a notice of appeal, and I will

18          direct the clerk's office to do that.    I will provide an

19          attorney for you, free of charge, if you can't afford one, to

20          handle your appeal.   I will also provide you with free

21          transcripts of everything that's happened in this case.   But,

22          you only have thirty days to get that notice of appeal on file,

23          and if you don't tell the Court within thirty days, you are

24          going to lose forever your right to appeal the decision of this



63

17    1    Court. If you wish to appeal the sentence that the Court has

2    imposed, you must file first in this court, a motion to

3    reconsider the sentence. That has to be done within thirty

4    days. If you file that motion or tell the Court that you want

5    it filed, then, I will again appoint counsel for you, to have

6    that motion heard, and I will provide you with transcripts of

7    everything that's happened in this case.

8         MS. LENIK: Your Honor, Mr. Moore and I have had this

9    discussion, and he wishes to appeal from both the decision of

10    jury and the Court's sentence, and I am not sure now if the

11    procedure requires that I move the Court to reconsider the

12    sentence only, or whether the Appellate Defender can, because it

13    was a jury trial and a conviction after jury trial.

14         THE COURT: Ms. Lenik, it depends. This is not exactly a

15    crystal clear area in the law. My suggestion would be, if you

16    are telling the Court that you want to file a--ask the Court to

17    review the sentence, then, I will give you a setting. Ask that

18    you briefly put that in writing, and we will have a hearing on

19    that issue. If that is denied, then the notice of appeal will

20    be filed, and he will be--the Appellate Defender will be

21    appointed.

22         MS. LENIK: That's fine, Your Honor. Obviously, nothing

23    new is going to happen between now and the date that the Court

24    would give. We would ask the Court to reconsider the sentence,



64

17     1    but he does intend to appeal--

        2        THE COURT:  I understand.

        3        MS. LENIK:  --the finding of the jury and the sufficiency

        4    of the evidence.

        5        THE COURT:  I understand.  Ms. Lenik, will you be

        6    available--is there a period of time that you are not going to

        7    be available?

        8        MS. LENIK:  Yes, from tonight, until two weeks from this

        9    Sunday.

     10        THE COURT:  Which would be the--

     11        MS. LENIK:  I will be back to work on June 7th.

     12        THE COURT:  June 7th?

     13        MS. LENIK:  Yes, sir.

     14        THE COURT:  All right.  Give you time to get that on file

     15    and set this for a hearing on a motion to reconsider, Friday,

     16    June 11, 8:30, this courtroom.

     17        MS. LENIK:  That's fine, judge.  Thank you.

     18        THE COURT:  All right.  Show the defendant is advised of

     19    his appellate rights, pursuant to Supreme Court Rule.  His bond

     20    order is vacated.  He is remanded to the custody of the

     21    Champaign County Sheriff, for transportation to the Department

     22    of Corrections.  The order of commitment is to issue.

     23        MS. LENIK:  Your Honor, he desires that he be moved to

     24    the Department of Corrections.  He would waive his presence at

17    1    the June 11 hearing, if that's sufficient.

2         THE COURT:  All right.  That's fine.  Is that correct,

3    Mr. Moore?

4         MS. MOORE:    Yes, sir.

5         THE COURT:  All right.  We will show the defendant waives

6    his presence at the motion to reconsider.  Ms. Ladd, Friday,

7    June 11, 8:30, is that all right for the hearing?

8         MS. LADD:   Thank you.

9         THE COURT:  Friday, June 11, 8:30.  Again, he is

10    remanded.  We will be in recess.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

4

1

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT

2

CHAMPAIGN COUNTY, ILLINOIS

3

I, Teresa R. Valdez, an Official Court Reporter of the

4

Sixth Judicial Circuit, Champaign County, Illinois, do hereby

5

certify that I reported the proceedings had in the

6

above-entitled cause; that I thereafter caused the foregoing to

7

be transcribed, which I hereby certify to be true and accurate.

8

Dated this 7th day of June, 1999.

9

10

*Teresa Valdez*

Teresa Valdez, CSR

11

Official Court Reporter

12

13

14

15

16

17

18

19

20

21

22

23

24

1              IN THE CIRCUIT COURT

2            FOR THE SIXTH JUDICIAL CIRCUIT

3          CHAMPAIGN COUNTY, URBANA, ILLINOIS

4    THE PEOPLE OF THE STATE   )
     OF ILLINOIS,              )
5                              )
     Plaintiffs,               )
6                              )      No. 98 CF 1558  **FILED**
      vs.                      )                      SIXTH JUDICIAL CIRCUIT
7                              )
     DEDRIC MOORE,             )                      AUG 1 2 1999
8                              )
     Defendant.                )                      Linda S. Frank
9                                                     CLERK OF THE CIRCUIT COURT
                                                      CHAMPAIGN COUNTY, ILLINOIS

10              TRANSCRIPT OF PROCEEDINGS

11           BE IT REMEMBERED and CERTIFIED that on, to wit:

12    the 11th day of June, 1999, the following proceedings

13    were held in the aforesaid cause before The Honorable

14    THOMAS DIFANIS, Circuit Judge.

15    APPEARANCES:

16    MS. HEIDI LADD            MS. DIANA LENIK

17    Assistant State's Attorney   Attorney-at-Law

18    For the People;           For the Defendant.

19

20

21         Proceedings reported and transcribed by:
         Nancy Sivertsen, CSR, Official Court Reporter
22           Sixth Judicial Circuit of Illinois
                 IL CSR No. 084-002291
23

24    *4-99-0499*



*Vol. XV*

FILED

AUG 2 0 1999

Clerk of the
Appellate Court, 4th Dist.

1              THE COURT:  This is 98 CF 1558, People vs. Moore.

2    Ms. Lenik is here for the People.  Ms. Ladd is here for the

3    People.  Ms. Lenik is here on behalf of the defendant.

4    There's a Motion to Reconsider filed May 24, 1999.  Ms.

5    Lenik, as to your motion?

6              MS. LENIK: Your Honor, my client is not here

7    because he has already been sent on to the Department of

8    Corrections.

9              THE COURT:  And I believe he waived his presence

10   when we set this motion.

11             MS. LENIK:  That's correct, your Honor.  In

12   addition to the matters in the written motion it occurred to

13   me that one other error that court made in setting such a

14   long sentence was that the court felt that there were two

15   distinct acts involved in this occurrence, and the court

16   sentenced Mr. Moore to a consecutive term for those two

17   separate acts, and I believe that that was in error.  I don't

18   believe there are two separate acts.  It was one continuing

19   act which consists of several component parts, and I think

20   that the different activities that Mr. Moore performed within

21   that course of conduct were the same throughout.

22             That is, he took a card from her and he made

23   contact with her person throughout the entire event.  It

24   wasn't as if he did one series of events regarding money and

2

1    then stopped, and then went back and did one series of events

2    regarding her person. He did acts regarding both her person

3    and her money throughout the entire set of circumstances.

4    And so I don't believe a consecutive sentence is appropriate,

5    because a consecutive sentence means that he did two

6    different things, when in fact he did one act which contained

7    those two things throughout the entire time that he committed

8    this offense.

9            I would also stand on the written motion in that I

10   believe the sentence was excessive. I don't think that the

11   court fully gave Mr. Moore credit for what he had

12   accomplished in his life, and I believe that the court was

13   prejudiced, as is very common in cases like this, by the

14   statement and the acts of the victim, who obviously was

15   traumatized.

16           But the fact that she was traumatized is inherent

17   in offenses of this nature.  It doesn't add to the sentence

18   that Mr. Moore deserves.  Mr. Moore was convicted of attempt

19   murder.  Everybody who has been the victim of an attempt

20   murder is traumatized. I believe actually this victim to have

21   been traumatized physically less because she wasn't

22   hospitalized.

23           She wasn't -- she didn't suffer paralysis or any

24   long-term physical effects.  The only long-term effects were

3

1    emotional, and those emotional effects are inherent in this

2    offense and not specific to this person.

3         So I believe that although it's certainly

4    understandable, the court erred when it overemphasized what

5    happened to her and how traumatized she was, particularly

6    when even at the time of the court appearance, even at the

7    time of the trial, she came into court without any obvious

8    difficulties.  She came into court looking good, if you will,

9    and was able to testify coherently about the situation, as

10   horrible as it was.

11        So I don't think that the court should have given

12   him the maximum, and I do think the court was, as human

13   nature is, swayed and acted out of sympathy for the victim,

14   without taking into account the rehabilitative potential of

15   Mr. Moore, and without taking into account those matters

16   testified to by his witnesses in mitigation.

17        I would ask that the court reconsider the sentence.

18   I would ask that the court sentence him with one sentence

19   instead of two, in line with what actually happened and what

20   was actually testified to at the trial.

21        THE COURT:   Thank you.  Well, I've considered the

22   motion to reconsider.  Starting off with consecutive

23   sentences, the court is of the opinion that they were two

24   distinct acts.  The defendant entered the residence of the

4

E-FILED
Friday, 04 May, 2007 05:23:36 PM
Clerk, U.S. District Court, ILCD

1    victim, tied her up, got the information so that he could

2    access her account, took that information, the card necessary

3    to activate her account, took her truck and left.

4        It was when the defendant came back sometime later

5    and began to try to kill the victim, engaged in senseless

6    violence, behavior that was heinous, brutal, indicative of

7    wanton cruelty.  Those were two distinct acts.  He had made

8    his getaway. He had gotten his money, yet he came back to a

9    victim that was tied up in a bathtub to finish her off, so to

10   speak.

11       If the appellate court didn't consider that two

12   distinct, separate acts, I believe the record is sufficiently

13   clear, and the court's statements at the sentencing hearing

14   were sufficiently clear that given the offense, the history

15   and character of this defendant, the nature and circumstances

16   of the offense, the court was of the opinion that a

17   consecutive sentence was necessary to protect the public from

18   further criminal conduct by the defendant.

19       Again coming back to the residence after he had

20   made his getaway, after he had gotten his money, shows that

21   this defendant was intent on killing the victim, and the

22   manner in which he conducted himself after he came back the

23   second time was incredibly brutal and vicious, and

24   consecutive sentences, I believe, would be appropriate even

5

1    under those circumstances if the appellate court determined

2    this was one single course of conduct.

3         The court did take into account the fact that he

4    was the father of a child, and given his criminal history,

5    quite frankly, the child is better off without this

6    individual in his life.

7         The court obviously felt some sympathy for the

8    victim.  This was a terrible act.  But in fashioning a

9    sentence, the court fashioned the sentence based upon the

10   information presented in a pre-sentence report, the

11   defendant's prior record, the evidence that was presented at

12   the sentencing hearing, the evidence that was presented at

13   the trial, and sympathy for the victim played absolutely no

14   role in the court's sentence.

15        This defendant has proven himself to be a dangerous

16   and vicious individual who needs to be locked up for as long

17   as possible, because the court is of the opinion that if

18   released, he is still young enough, he will engage in this

19   type of activity again, and the next time he won't leave any

20   victims as witnesses.

21        So the motion to reconsider is denied. Did we have

22   a notice of a appeal?

23        MS. LENIK: Judge, no, we were waiting until this

24   was concluded, and I would ask that the appeal --

6

1            THE COURT:  All right.  Notice of appeal, the

2    circuit clerk's office is directed to file a notice of

3    appeal.

4            The appellate defender is today appointed to

5    represent the defendant on appeal. The circuit clerk is

6    directed to notify the appellate defender of the appointment.

7            MS. LENIK: Thank you, Judge.

8            MS. LADD:  Thank you, your Honor.

9    THESE WERE ALL THE PROCEEDINGS HAD IN THIS CAUSE ON THIS DATE

10   AS HEREIN CONTAINED.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1    STATE OF ILLINOIS)
 2                    ) ss
 3    CHAMPAIGN COUNTY )
 4             OFFICIAL COURT REPORTER'S CERTIFICATE
 5        I, Nancy E. Sivertsen, CSR-RDR, Official Court Reporter
 6    in and for the Sixth Judicial Circuit of Illinois, Urbana,
 7    Illinois, do hereby certify that the foregoing Transcript of
 8    proceedings is a true, complete, and correct transcript of
 9    all the proceedings had in the aforesaid cause on the
10    aforesaid date as herein contained.
11        Dated this 12th day of August, 1999.
12
13
14
15
16                    _____
17                         Official Court Reporter
18
19
20
21
22
23
24
```

8

```
 1                  IN THE CIRCUIT COURT

 2              FOR THE SIXTH JUDICIAL CIRCUIT

 3            CHAMPAIGN COUNTY, URBANA, ILLINOIS

 4   THE PEOPLE OF THE STATE )
     OF ILLINOIS,            )
 5                           )
     Plaintiffs,             )
 6                           )
     Vs.                     )  No. 1998 CF 1558
 7                           )
     DEDRIC T. MOORE,        )
 8                           )
     Defendant.              )
 9

10                  TRANSCRIPT OF PROCEEDINGS
           BE IT REMEMBERED and CERTIFIED that on, to wit:
11   The 23d day of May, 2003, the following proceedings
     Were held in the aforesaid cause before The Honorable
12   THOMAS DIFANIS, Circuit Judge.
     APPEARANCES:
13

14   MS. ELIZABETH DOBSON      MS. DIANA LENIK
     Assistant State's Attorney Attorney-at-Law
15   For the People;          For the Defendant.

16            4-03-0790

17

18           Proceedings reported and transcribed by:
             Nancy Sivertsen, CSR, Official Court Reporter
19               Sixth Judicial Circuit of Illinois
                    IL CSR No. 084-002291
20

21           Vol. V

22

23

24
```

FILED
NOV 1 9 2003
CLERK OF THE
APPELLATE COURT, 4TH DIST.

FILED
SIXTH JUDICIAL CIRCUIT

NOV 1 7 2003

Linda S. Frick
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

1      THE COURT:  This is 98 CF 1558, People vs. Moore. Ms.

2  Dobson is here on behalf of the People.

3      MS. LENIK:  Judge, do you anticipate leaving him here?

4      THE COURT:  Well, let's find -- yes, if there's going

5  to be a -- it depends on what the next hearing is going to

6  be, and when it will be.  Quite frankly I don't think DOC

7  will take him back since his sentencing order's been

8  vacated. Thank you.  This is 98 CF 1558, People vs. Moore.

9  Defendant is present personally with Ms. Lenik. Ms. Dobson

10  and Mr. Piland are here on behalf of the People.  This

11  matter is set here today on a remand from the appellate

12  court.  The appellate decision indicates that the court

13  violated the Apprendi decision when it passed sentence on

14  this defendant, and this matter has been remanded for a

15  re-sentencing hearing.  Ms. Dobson.  And I'll note the

16  appearance of Ms. Lenik, who was the defendant's trial

17  counsel when this matter was initially in the circuit court.

18  Ms. Dobson

19      MS. DOBSON:  Judge, I haven't read the opinion for

20  awhile since my file is being packed for a move, but it

21  seemed that there was language in there suggesting that the

22  State had an election to proceed to a new trial in this

23  matter or new sentencing hearing.  If that's the way you

24  read it as well, your Honor, I just want it to be clear we

2

1    are electing to proceed to a new sentencing hearing.

2        THE COURT:  All right.  And they affirmed the trial

3    court's judgment as far as they affirmed the conviction, but

4    they have reversed it and remanded it, as Judge Myerscough

5    indicated on page 13 of the decision, "In light of Swift we

6    are required, reluctantly, and reluctantly must find that

7    the court erred in passing sentence in this matter."  So

8    it's going to be set for re-sentencing.  Ms. Dobson, what

9    time frame are we talking about as far as getting this on

10   track for a sentencing hearing?  I suppose you'll need to

11   determine if you want to present witnesses or you want to

12   use the transcripts.

13       MS. DOBSON:  I have made that determination, your

14   Honor.  There is at least one witness we want to present,

15   and there are transcripts we are asking the court to review

16   and reconsider, so I would need 30 days.

17       THE COURT:  Ms. Lenik, time frame for defendant.

18       MS. LENIK:  Your Honor, first Mr. Moore expresses

19   dismay that I am here, and I suppose at this point the court

20   should inquire of him as to his wishes with regard to

21   representation.

22       THE COURT:  Mr. Moore, do you have funds to hire an

23   attorney?

24       DEFENDANT MOORE:  No.

                                3

1          THE COURT:  All right then, Ms. Lenik's your lawyer.

2          MS. LENIK:  Your Honor, I don't know that we would have

3     any testimonial evidence.  Certainly I believe that the

4     pre-sentence report should be updated if there's any new

5     information. Other than that I have nothing to add in terms

6     of sentencing.

7          THE COURT:  Can we use Friday, June 27th, at --

8          MS. LENIK:  No.

9          THE COURT:  No?

10         MS. LENIK:  I'm going to be out of town that day.

11         THE COURT:  Can we use Wednesday, July 2d,  Ms. Dobson?

12         MS. DOBSON:  I have a  hearing that is going to be for

13    two hours beginning at nine o'clock that morning, but I can

14    do it any other time that day.

15         MS. LENIK:  Your Honor, I have arraignments that

16    afternoon.

17         THE COURT:  Well, can we move it over to the afternoon

18    of Tuesday, July 1st?

19         MS. DOBSON: Yes.

20         MS. LENIK:  Yes.

21         THE COURT:  July 1st, let's set this for 2:30. All

22    right. What I'm going to do is direct Court Services to

23    prepare an updated pre-sentence report.  I'm not sure what

24    if any information they will be able to provide, but I think

1    we'll need at least an updated pre-sentence report.

2        MS. LENIK:   Your Honor, is it the court's intention

3    that Mr. Moore be remanded to Champaign County, or that he

4    be able to go back?

5        THE COURT:   I don't believe the Department of

6    Corrections will take him back since his sentencing order

7    has been vacated. So it's my intent to remand him to our

8    county, pending the hearing in this matter.

9    THESE WERE ALL THE PROCEEDINGS HAD IN THIS CAUSE ON THIS

10   DATE AS HEREIN CONTAINED.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

```
 1    STATE OF ILLINOIS)

 2                    ) Ss

 3    CHAMPAIGN COUNTY )

 4             OFFICIAL COURT REPORTER'S CERTIFICATE

 5        I, Nancy Sivertsen, Official Court Reporter in and for

 6    the Sixth Judicial Circuit of Illinois, Urbana, Illinois, do

 7    hereby certify that the foregoing Transcript of Proceedings

 8    is a true, complete, and correct transcript of all the

 9    proceedings had in the aforesaid cause on the aforesaid date

10    as herein contained.

11        Dated this 17th day of November, 2003.

12

13

14

15

16                      Official Court Reporter

17

18

19

20

21

22

23

24
```

6

1

2
                    IN THE CIRCUIT COURT
3            FOR THE SIXTH JUDICIAL CIRCUIT
          CHAMPAIGN COUNTY, URBANA, ILLINOIS

4

5
   THE PEOPLE OF THE
6  STATE OF ILLINOIS,                    )
                                         )
7                 Plaintiff,             )
                                         )
8        -vs-                            )        No. 98-CF-1558
                                         )
9  DEDRIC T. MOORE,                      )
                                         )
10               Defendant.              )
                                         )
11  _____      )

12

13               TRANSCRIPT OF PROCEEDINGS
                    SENTENCING HEARING

14

15        BE IT REMEMBERED and CERTIFIED that on, to wit:
   The 1st day of July, 2003, the following proceedings were held
16 in the aforesaid cause before The Honorable Thomas J. Difanis,
   Circuit Judge.

17                              4-03-0790

18 APPEARANCES:                Elizabeth J. Dobson
                               Mick McAvoy
19      Vol. II                Representing the State

20
                               Diana Lenik
21                             Representing the Defendant

22

23

24

25

                              1

1                    THE COURT:  This is 98-CF-1558.  Defendant

2      is present personally with Ms. Lenik.  Ms. Dobson, Mr.

3      McAvoy are here on behalf of the People.  Ms. Dobson,

4      Mr. McAvoy, this came as a remand from the 4th District

5      giving the State the option of either retrial or

6      sentencing hearing conforming to the guidelines of the

7      4th District.  The State has opted for sentencing

8      hearing; is that correct?

9                    MS. DOBSON:  Yes, Your Honor.

10                    THE COURT:  All right.  I have received and

11     considered the report prepared by Court Services filed

12     June 26th.  I also have a Victim Impact statement.  Ms.

13     Dobson, Mr. McAvoy, did you get a copy of the

14     presentence report?

15                    MS. DOBSON:  Yes, Your Honor.

16                    THE COURT:  Any corrections to which you're

17     aware?

18                    MS. DOBSON:  No, Your Honor.

19                    THE COURT:  Ms. Lenik, did you get a copy of

20     the presentence report?

21                    MS. LENIK:  Yes, Your Honor.

22                    THE COURT:  Any corrections to which you're

23     aware?

24                    MS. LENIK:  No, Your Honor.

25                    THE COURT:  Ms. Dobson, do you have evidence

                                    2

1    in aggravation?

2              MS. DOBSON:  Judge, as we indicated in the

3    letter to the Court that accompanied the Victim Impact

4    statement, counsel and the State have agreed that the

5    Court may read and consider the transcript prepared of

6    the prior post trial motion and sentencing hearing that

7    was conducted on May 21, 1999.  We'll ask the Court to

8    consider the evidence that was aduced at that hearing,

9    but the State has no additional live testimony to

10   present.

11             THE COURT:  All right.  Thank you.  Ms.

12   Lenik, evidence on behalf of the defendant?

13             MS. LENIK:  Your Honor, I do, and since

14   family members of Mr. Moore's are present now who were

15   not present then, I would indicate that Mr. Auler

16   testified at that sentencing hearing, that he could not

17   be here today, but that the Court is considering the

18   testimony that he had five years ago as if he were here

19   today, and so the fact that he could not be here does

20   not mean that his testimony would not be considered.

21   Mr. Moore has three family members who wish to testify,

22   his mother, his aunt, and his brother.  We would ask his

23   mother to come to the witness stand and testify.

24                    PATRICIA HOLTZCLAW

25   having been first duly sworn as a witness, was examined

1    and testified as follows:

2                    DIRECT EXAMINATION

3    BY MS. LENIK:

4        Q.    Would you state your name, please.

5        A.    Patricia Holtzclaw.

6        Q.    Would you spell your last name for the court

7    reporter?

8        A.    H-O-L-T-Z-C-L-A-W.

9        Q.    Where do you currently reside?

10       A.    Corinth, Mississippi.

11       Q.    What is your relationship to Dedric Moore?

12       A.    I'm his mother.

13       Q.    Did he reside with you during his growing up

14   years?

15       A.    Yes.

16       Q.    And when did he move out of your home?

17       A.    He -- actually he never moved out.  When I left

18   the state, he lived with my mother.

19       Q.    And approximately how old was he at that time?

20       A.    Eighteen.

21       Q.    Okay.  And did your mother reside in Champaign,

22   Illinois that whole time?

23       A.    Yes.

24       Q.    And from the time of his birth until he was

25   eighteen then, I take it you saw him every day because

                              4

1    he lived with you?

2        A.   Basically.

3        Q.   And what kind of a young man was he during those

4    years?

5        A.   Normal, typical.  He sprouted up into a giant

6    when he was about sixteen, but he used to roar like a

7    lion.

8        Q.   I'm sorry?

9        A.   He used to roar like a lion.

10       Q.   Roar like a lion?

11       A.   But I always called him my gentle giant.  People

12   who didn't know him were intimidated by his size and his

13   height.

14       Q.   Did you ever know him to be violent?

15       A.   Never, not around us.  I mean I remember one

16   instance when I was driving down the street over when we

17   still lived here and there was a homeless man in a

18   building at night time asleep.  He was about thirteen,

19   fourteen, and he had tears come to his eyes because of

20   the man's situation.  And another time we were riding

21   down the street and there was this crippled man walking.

22       Q.   I'm sorry.  There was this what now?

23       A.   A crippled man.

24       Q.   Crippled man?

25       A.   Yeah, he was a crippled man.

5

1    Q.  Okay.

2    A.  And Dedric asked me could I stop and give him a

3  ride, and I had to explain to him that you just don't

4  pick up anybody, you know, and I felt so bad about that

5  but that's the type of person he was.  I mean there was

6  another instance when we were riding over in the campus

7  area, a guy in a wheelchair had fell over and he was

8  laying on the ground, and Dedric said, "Stop, Mama," and

9  I stopped and he got out, picked the man up and put the

10  man in the wheelchair and pushed him two blocks to his

11  house, so I mean, you know, he's a caring person.  No

12  matter the bluff he puts on, he's my gentle giant.

13    Q.  Were you surprised when you found out about the

14  charges in this case?

15    A.  Extremely.

16    Q.  Why were you surprised?

17    A.  Well, for one, his grandmother lives next door.

18  It was a duplex.  For one, Dedric would have never done

19  anything to jeopardize his grandmother.  For two, he

20  knew we were expected back in town.  My mother was in

21  Mississippi visiting me.  He knew we were expected back

22  in town that night at ten o'clock.  We ran late.  That's

23  why we didn't get there early.  That was why I was

24  extremely surprised when he was charged with this.

25              MS. LENIK:  I have no other questions.

                              6

1                    THE COURT:  Ms. Dobson.

2                        CROSS EXAMINATION

3    BY MS. DOBSON:

4        Q.  Have you talked to your son about what it is he

5    did on February 25, 1998?

6        A.  Yes.

7        Q.  Okay.  What did he tell you he has done?

8        A.  Oh, he was there at the apartment, at the house

9    earlier with a friend of his, should I say girlfriend,

10   and I think that's why they left because they knew we

11   were coming, and my mother wouldn't appreciate them

12   being there.

13       Q.  Okay.  So he said that he was at your mother's

14   apartment in the duplex with a girl and then he and the

15   girl left before you all returned home?

16       A.  Right, but we got back late.

17       Q.  Right.  But what did he tell you about what he

18   did with Lori Hanson on the other side of the duplex?

19       A.  He didn't tell me anything about what he done

20   with her, because I guess he didn't do anything with

21   her.

22       Q.  Okay.  So he has told you he didn't do anything

23   like attempt first degree murder or home invasion or

24   arson or criminal sexual assault?  He said he didn't do

25   those things?

                              7

1      A.   Right.

2      Q.   Okay.  Did he admit that he even saw the woman

3  who lived next door to your mother in the duplex?

4      A.   Well, we always saw her.

5      Q.   Okay.

6      A.   I mean, that didn't come -- I didn't ask him.

7  You always saw her.  She used to leave her door open

8  half the night, but you always saw her.

9      Q.   You saw her because she left her door open?

10     A.   I mean that's just an observance made when you

11  live there.  You observe your habits of your neighbors,

12  and that was just --

13     Q.   Did he tell you anything about her in particular?

14  Did he like her?  Did he have fights with her,

15  arguments, anything like that?

16     A.   No.

17     Q.   So --

18     A.   I know -- I know they -- we always spoke in

19  passing, you know, coming and going as you would any

20  neighbor that you have a close proximity to.

21     Q.   So the bottom line is, from your son, he didn't

22  do any of the offenses that he got convicted of, right?

23     A.   Right.

24     Q.   And when was the most recent time that he has

25  denied to you being involved in any of the offenses --

8

1      A.   He doesn't have to deny it.

2      Q.   I'm sorry, ma'am.  Let me finish my question,

3    please.   When was the most recent time that he denied

4    being involved in any of the charges that he was

5    convicted of?

6      A.   I haven't asked him since before the trial.  We

7    haven't talked about the charges since then.

8      Q.   So when was the most recent time he denied to you

9    doing anything to Lori Hanson?

10      A.   Back when he was arrested for it.  He didn't have

11    to.  He don't have to tell me over and over.

12      Q.   Okay.  Because you believe him when he told you

13    he didn't have anything to do with it, right?

14      A.   Yes, I do.  I know him.

15      Q.   And your gentle giant is an innocent man as far

16    as you are concerned with regard to these charges?

17      A.   As far as I'm concerned, yes.

18              MS. LENIK:  Your Honor, I'm going to object.

19              THE COURT:  I'm going to sustain the

20    objection.

21              MS. DOBSON:  I have no further questions,

22    Your Honor.

23              THE COURT:  Ms. Lenik, do you have anything

24    else?

25              MS. LENIK:  Briefly, yes.

1                          REDIRECT EXAMINATION

2    BY MS. LENIK:

3        Q.   When you were first advised of these charges, you

4    talked to Mr. Moore in the county jail, correct?

5        A.   Yes.

6        Q.   And you talked about what happened and about how

7    he was going to defend himself against the charge,

8    correct?

9        A.   Yes and no.  He didn't let me know the

10   seriousness of it from the beginning, you know.  It was

11   like first of all I thought it was ridiculous in the

12   first place when he was charged.  Not wanting me to be

13   hurt or what have you, they didn't let me know the

14   seriousness of the charges until it was basically too

15   late.  I simply assumed they had nobody else to charge

16   with so they picked the most convenient person.

17       Q.   Were you aware that his fingerprint was found on

18   the inside of a window in the young lady's home?

19                  DEFENDANT:  Who?  Who?

20                  THE COURT:  I don't think so, Ms. Lenik.

21       Q.   All right.  Were you aware of any of the

22   evidence?

23       A.   I was aware of what they were telling me through

24   the phone, yes, but --

25       Q.   Okay.  And so but you didn't come to the trial,

                                10

1    right?

2      A.   No.

3      Q.   So --

4      A.   You didn't call me to come and they told me it

5    wasn't serious and I never -- you didn't call me to

6    come, but anyway.

7      Q.   This is not a discussion between the two of us,

8    ma'am.

9      A.   Yeah.

10     Q.   I'm asking you then the only information you have

11   about what the evidence was came through Mr. Moore,

12   correct?

13     A.   And family members, yes.

14     Q.   And other people?

15     A.   And I mean, nobody ever told me that there was a

16   fingerprint found on the window, but if there was, it

17   was explainable but --

18              THE COURT:  Quiet.  No fingerprints.

19              MS. LENIK:  All right.

20              THE COURT:  As I understand the evidence.  I

21   tried the case in this courtroom.

22              MS. LENIK:  That's fine.

23              THE COURT:  There were no fingerprints.  All

24   right.  Now do we have any more questions?

25              MS. LENIK:  Yes.

                              11

1          THE COURT:  Go ahead.

2          MS. LENIK:  Briefly.

3     Q.  So that the information that you received was

4  information you got from other people?

5     A.  Uh-huh.

6     Q.  Okay.

7     A.  I remember I called you once but you never

8  returned my call.

9          MS. LENIK:  Your Honor, I would ask to

10  strike as non-responsive.

11          THE COURT:  No.

12     Q.  And so your opinion about the innocence of your

13  son is information you received from both talking to him

14  and from what you have obtained from other family

15  members, correct?

16     A.  And from here (indicating).

17     Q.  And because you love him in your heart, correct?

18     A.  Because I know him in my heart.

19          MS. LENIK:  Okay.  Nothing further.

20          MS. DOBSON:  Nothing further, Your Honor.

21          THE COURT:  Thank you, ma'am.  You may step

22  down.  Call your next witness, please.

23          MS. LENIK:  We would call his brother, Your

24  Honor.

25               DONRICO HOLTZCLAW

                      12

1    having been first duly sworn as a witness, was examined

2    and testified as follows:

3                        DIRECT EXAMINATION

4    BY MS. LENIK:

5        Q.   Would you state your name, please.

6        A.   Donrico Holtzclaw.

7        Q.   Spell your first name, please.

8        A.   D-O-N-R-I-C-O.

9        Q.   And your last name?

10       A.   Holtzclaw, H-O-L-T-Z-C-L-A-W.

11       Q.   Where do you currently reside?

12       A.   Corinth, Mississippi.

13               MS. DOBSON:   Judge, Mr. Holtzclaw did

14   testify at the last sentencing hearing and again I am

15   stipulating to the testimony that the Court may read and

16   consider.

17               MS. LENIK:   That's fine.   We may have some

18   additional matters.

19               THE COURT:   Go ahead.

20       Q.   Mr. Holtzclaw, you are the same Mr. Holtzclaw who

21   testified in 1998 at the sentencing hearing?

22       A.   Correct.

23       Q.   And if you were asked the same questions, would

24   your answers be the same?

25       A.   Yes.

                            13

1    Q.  Now Mr. Holtzclaw, since 1998, have you been in

2    touch with Dedric since he has been in prison?

3    A.  Yes, I have.

4    Q.  And how is it that you have been in touch with

5    him?

6    A.  Through letters.

7    Q.  And --

8    A.  And through phone.

9    Q.  Letters and the telephone?

10   A.  Correct.

11   Q.  Have you been able to visit him?

12   A.  No, I haven't.

13   Q.  Are you currently employed?

14   A.  Yes, I am.

15   Q.  What do you do?

16   A.  I work at Wendy's.

17   Q.  Through the letters and phone calls that you have

18   been able to have with Mr. Moore, to your knowledge, is

19   he adjusting to prison?

20   A.  I mean --

21   Q.  Is he getting into any fights?

22   A.  No.

23   Q.  Is he having trouble with the authority of the

24   prison?

25   A.  No.

14

1     Q.   Do you know whether he has had what are called

2   tickets or disciplinary infractions?

3     A.   No.

4     Q.   Is he having problems with other inmates?

5     A.   No.

6     Q.   Is he having problems with gangs?

7     A.   No.

8     Q.   Do you know whether he has an institutional

9   assignment such as school or work assignment?

10    A.   No.

11    Q.   Do you know what he does all day?

12    A.   Yes.

13    Q.   What does he do all day?

14    A.   Sit in a little cell.

15    Q.   And do you know the reason why he doesn't have

16  another assignment?

17    A.   No.

18    Q.   Has he adjusted to that or does he still seem

19  angry to you?

20    A.   He's not angry.  What do you mean does he still

21  seem angry to me?

22    Q.   What I mean is, is he upset about that?  Does he

23  express to you any anger or hostility about his

24  situation?

25    A.   Well, as you know, before -- at the trial before,

1    he apologized for anything that happened to the lady

2    regardless of if he was guilty or not.  He apologized

3    because nobody wanted to see nothing done like that to

4    anybody, so --

5                    MS. LENIK:  I have nothing further, Your

6    Honor.

7                    THE COURT:  Ms. Dobson.

8                    CROSS EXAMINATION

9    BY MS. DOBSON:

10      Q.  Sir, when you were testifying in this courtroom

11   on May 21st of 1999, you were asked the following

12   questions:  "When you talked about his situation in the

13   jail, what did he tell you?"  And your answer: "He was

14   shocked himself that he was charged with this.  He

15   couldn't believe that, you know, that he was charged

16   with this."  Then you were asked, "You haven't talked to

17   him since the trial?"  Answer, "Really since the trial I

18   have not talked to him about the case, no."  Do you

19   recall being asked those questions and giving those

20   responses?

21      A.  Probably so.  I mean I can't say I recall.

22      Q.  You don't recall?

23      A.  I mean I probably did, probably.  I mean I don't

24   know.  It was a while ago.

25      Q.  All right.  The essence of your statement here

16

1    was that when you talked to your brother about what he

2    was charged with, he indicated he was shocked, he

3    couldn't believe it.  Is that your best recollection now

4    of his reaction when he was charged and in jail?

5        A.  If that's what I told you at first, then yes.

6    If it's not, then no.  I can't go on if I said it or

7    not.

8        Q.  Well, I'm asking what your recollection, what you

9    remember.  Do you remember him expressing being shocked

10   by being charged?

11       A.  Not only him, the whole family and the rest of

12   the world.

13       Q.  Okay. But the important thing that I'm trying to

14   ask you is what you remember him telling you when you

15   talked about his situation when he was in the jail

16   before the trial.

17       A.  I don't remember.  I don't remember.

18       Q.  Since you have been communicating with your

19   brother by telephone and in writing since he has been

20   incarcerated, has he indicated to you what it is that

21   happened between himself and Lori Hanson on February 25,

22   1998?

23       A.  No.

24       Q.  Has he asked you or told you anything about it?

25       A.  No.  What is there to tell?

17

1    Q.  I don't know, sir.  I'm asking you the question.

2  Did he indicate to you anything like he did it, he did

3  not do it, anything like that?

4    A.  The type of person I am, I don't like to talk to

5  people.  My brother is gone for a long time.  I have a

6  hard problem talking to him about things, period.

7            MS. DOBSON:  Thank you.  No further

8  questions.

9            THE COURT:  Ms. Lenik?

10            MS. LENIK:  Nothing.  Thank you.

11            THE COURT:  Thank you, sir.  You may step

12  down.  Call your next witness, please.

13            MS. LENIK:  We have one more witness to

14  call.  His aunt wishes to testify.

15            THE COURT:  Ma'am, if you will step up here,

16  please.

17                    DEBRA ROBINSON

18  having been first duly sworn as a witness, was examined

19  and testified as follows:

20                  DIRECT EXAMINATION

21  BY MS. LENIK:

22    Q.  Would you state your name, please.

      A.  Debra Robinson.

      Q.  And would you spell that for the court reporter?

25    A.  R-O-B-I-N-S-O-N.

1    Q.   And your first name?

2    A.   D-E-B-R-A.

3    Q.   Miss Robinson, what is your relationship to

4    Dedric Moore?

5    A.   I am his auntie.

6    Q.   And where do you currently live?

7    A.   In Champaign.

8    Q.   Are you employed?

9    A.   Yes.

10   Q.   And what do you do?

11   A.   I'm assistant supervisor in a kitchen.

12   Q.   For what place?

13   A.   Manor Care in Champaign.

14   Q.   Were you living in Champaign in 1998?

15   A.   No.

16   Q.   When did you come back to Champaign?

17   A.   June of 2000.

18   Q.   Where were you living in 1998?

19   A.   Corinth, Mississippi.

20   Q.   And from the time of Mr. Moore's birth until the

21   time that you left, did you see him on a regular basis?

22   A.   Yes.

23   Q.   About how often would you say you saw him?

24   A.   Probably five to six times a week.

25   Q.   Where would you see him?

19

```
 1     A.  Well, I stayed with my mom, you know, and he was
 2  staying there at the time.  We was all living together,
 3  and when I got married and moved out, I go to my mom
 4  house every day or his mom house, so I saw him
 5  regularly.
 6     Q.  And about how old was he during those years?
 7     A.  From birth until I left the states in 1994.
 8     Q.  What was his behavior like when you would see
 9  him?
10     A.  Happy, jolly, you know, smiling, like the joking
11  kid a lot with me.
12     Q.  Did you ever know of him to be violent?
13     A.  No.
14     Q.  Did you ever know of him to get in to fights?
15     A.  I can not ever recall a fight that he got in to.
16     Q.  Did you ever know of him to threaten anybody or
17  to use bad language with anybody?
18     A.  No, I have never known him to threaten anyone.
19     Q.  Were you surprised when you found out about these
20  charges?
21     A.  Yes, I was.
22     Q.  Why were you surprised?
23     A.  Because he's a caring person and I always said he
24  was big in size but he was a chicken.
25     Q.  What did you mean by that?
```

20

1    A.   He will walk away from a disturbance with kids in

2    the neighborhood instead of standing up, because you

3    know, he had the sense scary cat, you know, he wouldn't

4    stay there.

5    Q.   So he was the kind of person who would run rather

6    than fight?

7    A.   Yes.

8    Q.   Do you recall how old he was when you left?

9    A.   Oh, Lord.

10    Q.   A teenager?

11    A.   Yeah, he was still in high school.

12    Q.   And did you see him during those years after you

13    left and before he was put in prison for this offense?

14    A.   Oh, yes, I saw him.  He came to -- at that time I

15    moved to Texas.  He came there and stayed there -- him

16    and his mom came and visited and they stayed there for a

17    while with me.

18    Q.   And what was he doing at that time?

19    A.   Nothing but typical teenage things, just hanging

20    out and just being a teenager.

21    Q.   Was he in any trouble at the time?

22    A.   No.

23    Q.   Was he ever disrespectful to you?

24    A.   No, no, no, he wasn't disrespectful.

25    Q.   When did you learn about this situation?

21

1    A.   In '98 some time.   I don't recall exactly what

2    month.

3    Q.   Do you recall how it was that you learned about

4    it?

5    A.   Yeah.   My cousin informed me about it.

6    Q.   Did you have any information other than what your

7    cousin told you about the facts of the situation or what

8    happened?

9    A.   No more than what she told me, and my sister, my

10   mom told me and my -- no, just what I asked the family

11   members, you know.

12   Q.   And have you ever talked to Mr. Moore about what

13   happened?

14   A.   Yes, I did.

15   Q.   And did he tell you that he was sorry for

16   whatever happened to the lady?

17   A.   He told me that he didn't do it and, you know, he

18   said he was sorry but he didn't use those exact words he

19   was sorry, and you know, that's basically what he told

20   me.

21              MS. LENIK:   No further questions.

22              THE COURT:   Ms. Dobson.

23                    CROSS EXAMINATION

24   BY MS. DOBSON:

25   Q.   When did this conversation take place, ma'am,

22

1    when he told you he didn't do it?

2    A.   In 2000.

3    Q.   Under what circumstances were you speaking with

4    him about it?

5    A.   Through letters.

6    Q.   So he wrote you a letter and talked about this

7    situation?

8    A.   Right, yeah.   I also had a phone conversation

9    with him.

10    Q.   Okay.   And in the letters you're referring to and

11    the phone conversation, he indicated to you that he

12    didn't have anything to do with what happened to the

13    woman who lived next door?

14    A.   Correct.

15    Q.   You said he didn't exactly use the word sorry.

16    Do you remember what word he did use?

17    A.   Was more like, "I didn't do it.   I feel --" he

18    didn't say sorry.   He used a word but it was like sorry.

19    I can't recall exactly what he said.

20            MS. DOBSON:   Thank you.   Nothing further.

21            THE COURT:   Ms. Lenik?

22            MS. LENIK:   No, thank you.

23            THE COURT:   Thank you, ma'am.   You may step

24    down.   Does that conclude the testimony from the

25    defendant?

1              MS. LENIK:  It does, Your Honor.

2              THE COURT:  All right.  Ms. Dobson, your

3    suggestions, please.

4              MR. MCAVOY:  May I, Your Honor?

5              THE COURT:  Oh, Mr. McAvoy.

6              MR. MCAVOY:  May it please the Court,

7    counsel:  Your Honor, I think I understand the

8    guidelines of the 4th District and I think I understand

9    what it is they are telling us.  Doesn't mean that I or

10   anyone else who represents the State from the Champaign

11   County State's Attorney's Office likes it.  I'm not

12   going to urge the Court to sentence the defendant beyond

13   what he was sentenced to and I'm not going to urge the

14   Court to disregard in any way what the 4th District

15   said.  What I want to do, what I am asking the Court to

16   do is for at least right now, at least during the course

17   of my argument, to refocus for a minute, because I want

18   to turn away from the whole question of extended term.

19   I want to leave aside for right now the range for each

20   individual sentence, and instead I would like the Court

21   to look at 730 ILCS 5/5-8-4, and then Subparagraph

22   (a)(1).  Now 5-8-4(a)(1) -- it is on Page 733.

23             THE COURT:  I have got it.

24             MR. MCAVOY:  5-8-4 -- well, in 5-8-4(a)(1)

25   specifically talks about concurrent consecutive terms of

                              24

1   imprisonment.   (A)(1) talks about the instance where

2   something happens in the same course of conduct, two

3   separate crimes but the same course of conduct, and

4   basically what it says is that if one is a Class X --

5   there is other language, there is other ways of doing

6   it, but what is important for us is if one is a Class X

7   and serious injury is involved or included, happens at

8   the same time, then it is -- it must be consecutive to

9   the other one, whether it is a Class X or whether it is

10  not a Class X, whether serious injury was involved in

11  the other one or not, and here is the thing I don't want

12  to do.   For whatever reason, however it happens is this

13  man was charged and indicted by the grand jury.   They

14  are given numbers.   Each case was given a number, I, II,

15  III, to VI, all the way down to VI.   I want to start

16  with I, because to me that's confusing and I think I

17  want to set that aside.

18              I want to look at III first, actually III

19  and IV.   And the Court if I understand -- and I will say

20  this up front for the record.   I wasn't here for the

21  trial, I wasn't here for the sentencing.   Physically in

22  the office, State's Attorney's Office, I was not the

23  attorney for either the trial or the sentence.   But I

24  have read the transcript of the Court's ruling at the

25  sentencing hearing, and I think the Court, this Court,

25

1    this judge, looked at Counts III and IV and recognized

2    the main differences. It is alternative ways of alleging

3    who is the owner of the property, because property

4    damage is involved in both III and IV, so III and IV

5    were treated as merging, they were treated as one crime,

6    not the same course of conduct but actually one crime,

7    and if I understand the Court's ruling, one sentence was

8    imposed for this one Class X felony.

9            Now there is a Class X felony right there,

10   so we ought to be at least thinking well, maybe now this

11   730 ILCS 5/5-8-4(a)(1) applies. And the next question

12   is, was there severe bodily injury? This aggravated

13   arson doesn't allege severe bodily injury. It doesn't

14   require being proved beyond a reasonable doubt, anything

15   like that. In fact, what it talks about is property

16   damage, but what is important is this 5-8-4, it has got

17   nothing to do with Apprendi. It has got nothing to do

18   with the issues that the 4th District has talked about

19   that the Supreme Court told the 4th District to

20   reconsider, anything like that. This is now extended

21   term. This is the Court and it is for the Court to

22   decide whether during the course of this aggravated

23   arson, this man caused severe bodily injury. And again

24   I wasn't here for the trial, wasn't here for the

25   sentencing, but I have reviewed the paperwork and the

                              26

1    record, and cloth burnt to skin is severe bodily injury.

2              THE COURT:  However, the testimony was that

3    the jeans had melted on the victim's skin.

4              MR. MCAVOY:  I think that's severe bodily

5    injury.  So I believe now we have got a Class X felony,

6    severe bodily injury.  And now is there something else

7    that happened in the same course of conduct?  Not same

8    crime but same course of conduct.  And I will go

9    backwards and as far as this indictment goes, go to

10   Count II with me in this argument, and now we have got a

11   home invasion, so we have got an arson which in this

12   particular case and the facts of this case the arson

13   kind of ends it, so to speak.  The arson was the coup de

14   grace.  The home invasion was the second start of this.

15   For now let's just say it is the start.  They are two

16   different crimes, two different acts, but it is the same

17   course of conduct.  He comes in and then he leaves, and

18   in leaving causes the arson.  Home invasion is also an

19   X. Not necessary because we only have to find one X, but

20   it is, it is an X.  Not the same crime, not even the

21   same elements, none of the same elements are there.  The

22   arson charges, Counts III and IV, one crime, involved a

23   fire, property damage, and the fact that the victim was

24   inside at the time.  Home invasion involves entering and

25   then struck, tied, choked, no burning, two totally

                            27

1    different crimes, different times.  One is in the

2    entrance, one is the exit, same course of conduct.  Same

3    course of conduct, Class X, severe bodily injury.  I

4    believe these two are mandatorily consecutive.  I

5    believe that 7310 ILCS 5/5-8-4 (a)(1) requires this

6    Court to sentence the defendant to consecutive sentences

7    for the crimes of aggravated arson and home invasion,

8    both Class X, so I believe this Court is required now to

9    sentence the defendant to X plus X.

10              Turning to Count I which I skipped over, it

11   is the attempt first degree murder charge.  I think that

12   that charge could, should -- I'll admit should, run

13   concurrent with aggravated arson.  The fire was the

14   means.  The fire was the means.  It is -- they are not

15   identical but I think if you're looking at are we

16   talking about the same actual activity, we are talking

17   about the same activity.  If we look at Count IV, the

18   aggravated criminal sexual -- sorry -- Count V, I'm

19   sorry, Count V, aggravated criminal sexual abuse, that

20   should run concurrent with the home invasion.  We are

21   talking about tying up, we are talking about striking,

22   this time fondling is added.  Not exactly the same

23   elements but the same actions, same activities, so I

24   will concede concurrent with home invasion, but still,

25   these two, Count I and Count V, run concurrent.  We are

28

1    still looking at aggravated arson, Class X, consecutive

2    to home invasion, Class X. So even if we set aside the

3    other sentences because they'll run concurrent, it is

4    still X plus X.

5            And then turning to Count VI, here now the

6    residential burglary, Class 1. Sounds like home

7    invasion, looks like home invasion, but not in this

8    case. And this is something I'm going to rely entirely

9    on the Court's own reasoning at the previous sentencing

10   hearing. This Court, starting at Page 57 actually of

11   the transcript of this sentencing hearing, was careful

12   to note and think about this, and actually -- well,

13   there is two entrances, two completely different acts,

14   two different courses of conduct. There was a

15   residential burglary that was for a theft that was

16   completed, done, over with, and if I can paraphrase you,

17   it could have ended right there. It could have ended

18   right there. But he came back and started a new course

19   of conduct, the home invasion, the aggravated arson, and

20   the other charges, the other convictions, two entries,

21   not the same course of conduct. Now this Subsection (a)

22   doesn't apply. We are looking at Subsection (b),

23   5-8-4(b). And now it is within the Court's discretion,

24   if the Court believes, if the Court finds it is

25   necessary to protect the public, the Court may sentence

29

1   the defendant to a consecutive sentence for residential

2   burglary.  That's exactly what the Court did last time.

3   It is exactly the same thing.  I'm simply asking that

4   the Court do the same thing last time -- same thing this

5   time as the Court did the last time on the residential

6   burglary charge.  So I'm thinking, I'm looking X plus X

7   plus one.

8           I'm going to adopt the arguments made by Ms.

9   Ladd at the time and say no more about that because I

10  wasn't there for the trial, I wasn't there for the

11  sentencing; this Court was.  I believe her arguments

12  were appropriate.  I believe her arguments were right

13  and just.  The Court's own rulings and findings I'm

14  going to adopt and leave it at that.  The only thing I'm

15  going to add is based on what one of the witnesses said

16  today, and that is this:  Somebody would have wanted

17  that done to somebody because it happened.

18          I believe the Court should sentence the

19  defendant to the maximum sentences in conformity with

20  the guidelines of the 4th District, and if we say that

21  means no extended term, I believe that's thirty plus

22  thirty plus fifteen, so in layman's terms, that will be

23  seventy-five years in the Department of Corrections.

24  Thank you.

25          THE COURT:  Ms. Lenik.

30

1          MS. LENIK:  Your Honor, there was a reason

2    why the United States Supreme Court adopted Apprendi and

3    there was a reason why the 4th District decided that it

4    applied in this case.  And it seems to me that if the

5    Court adopts those arguments of the State, that the

6    Court is going to send this case right back into the

7    same maelstrom that it just came out of, because the

8    idea of giving somebody a sentence, this extended and

9    that extended and this maximum and that maximum and

10   adding them all together is going to put us right back

11   into a situation where there is going to be an error

12   made.  This Court was here at the trial, I was here at

13   the trial, Mr. Moore was here at the trial.  Neither of

14   these State's Attorneys were here at the trial, nor did

15   they hear the witnesses at the trial or the original

16   sentencing hearing.  I would certainly reiterate those

17   arguments that I made earlier regarding the character

18   and situation of Mr. Moore, regarding the evidence and

19   so on.

20          The only thing that I would state that has

21   occurred in the intervening five years is what we know

22   from the witnesses who testified today.  One of them is

23   that Mr. Moore has learned something from this.  The

24   apology that he extended, he continues to be sorry, and

25   in addition he has adjusted such as is possible to a

                              31

1    sentence of incarceration.  According to his brother, he

2    has had no fights, no tickets, no gang involvement, he

3    has had no involvement indicating any kind of ongoing

4    problem with violence or with temper, and we know from

5    the other family members that he is not a violent

6    person, that he was a very loving and caring person as a

7    child, and of course those witnesses we called at the

8    original sentencing hearing testified in a like manner,

9    so this was certainly an abhorration, something that was

10   not repeated, nor would it be repeated.

11              I think that the question of adding up

12   numbers is somewhat artificial and stilted in that I

13   don't believe that the Court can call these legally

14   different acts.  This was one course of conduct.  It

15   began and ended without interruption.  Even that time

16   which was -- even that time at which he left the

17   residence and came back to the residence, he didn't go

18   somewhere else and do something else.  It was simply a

19   brief interruption. It was not -- these are not separate

20   occurrences.  These are not different strikes of the

21   same hammer.  This is one ongoing course of conduct, and

22   therefore all of these charges should receive the same

23   sentence.  The Court should not add up a sentence for,

24   you know, walking in one direction and another sentence

25   for walking back out the door.  You don't get one

                                32

1    sentence when you walk in a house and another sentence

2    when you leave and add them together.  Walking in and

3    out of a house is one course of conduct, and I don't

4    think that there is anything here that indicates that it

5    was not one course of conduct.  All of these offenses

6    are related and they are all related legally, although

7    they may have different elements, and so I would suggest

8    to the Court that you are -- if you adopt the argument

9    of the State, we may have other problems and it may come

10   back in another X number of years because there may be

11   some other decision regarding those matters, and the

12   better thing to do is simply to give him one sentence on

13   all of those counts, those counts which he was convicted

14   of, and make them all run at the same time.  They are

15   all the same class, it was all one event, it was one

16   occurrence, one victim, one residence, one evening or

17   morning as it was, all of those things were the same,

18   and so it doesn't seem to me that it is necessary to

19   divide them out and to add them together, just as it

20   wouldn't be if you were entering and leaving the

21   residence.  There is nothing in this record that

22   indicates that Mr. Moore needs to be sentenced to the

23   maximum sentence.  I'm not asking for the minimum

24   sentence; I'm asking for the Court to consider all of

25   the information in the presentence report, all of the

33

1    information that it had about Mr. Moore, about his

2    educational background, his work history.  We now know

3    something about his family, about his personal history.

4    I would ask the Court to consider all of those things,

5    not to be -- not to take the statement of the victim and

6    give it more weight than anything else or to be

7    overwhelmed by it, but Your Honor, I would ask you to

8    give him a reasonable sentence within the range of a

9    Class X sentence for all of these charges.  Thank you.

10              THE COURT:  Thank you.  Mr. Moore, this is

11    an opportunity for you to say what it is you want to the

12    Court before sentence is imposed, sir.  You can sit

13    right there.  I can hear you, sir.

14              DEFENDANT:  Okay.  I would like to thank my

15    family first, my mama, my auntie, my little brother,

16    older brother, my cousin, my uncle, I would like to

17    thank all of them, you know, for their support.  Miss

18    Lenik, I would like to thank her too.  Your Honor, it

19    was like four years ago when I was here, you know, I was

20    given seventy-five years.  I was pretty much warehoused.

21    I was -- I think I was nineteen.  I was warehoused and

22    treated like a file, you know, and sent to Menard, sent

23    to play with the big boys when I was nineteen.  Learned

24    to deal with it and cope with it, you know, stayed out

25    of trouble, no tickets or no fights, nothing.  I was

                              34

1  nineteen, you know.  I was nineteen.  But then I don't

2  know.  I just feel like I was warehoused,  you know, and

3  I think I have a lot more potential than that.  And I'm

4  done with this extended term and consecutive sentences

5  issue.  I don't know if I'm the only one who read

6  Apprendi.  Maybe I'm the only one who understand it.

7  Maybe I am, but what Mr. State's Attorney guy was asking

8  for, I don't think you can do that.  I don't think it is

9  right that you do it, legally or not legally, but I was

10 nineteen when I was charged with this.  I think I was

11 twenty when I was convicted.  I have been locked up

12 eighteen hundred days.  If this is about correction and

13 rehabilitation, then things have been corrected.  But if

14 it is about business and making money then, you know, I

15 guess you would see fit to give me consecutive and

16 extended term. Thank you.

17        THE COURT:  Thank you.  Well, I have

18 considered the presentence report filed June 26th of

19 '03.  I have considered the testimony and evidence

20 presented at the trial.  I have considered the testimony

21 presented on behalf of the defendant, as well as the

22 comments of the defendant.  I have considered the

23 comments of counsel.  I have considered the statutory

24 factors in aggravation as well as the statutory factors

25 in mitigation.  Quite frankly there really aren't any

                          35

1    mitigating factors that apply to this defendant, to this

2    type of an offense.  The obvious aggravating factors,

3    the defendant does have a history of prior delinquency

4    or criminal activity.  He was adjudicated a delinquent

5    minor in '93 for looked like a shoplifting, and then he

6    was subsequently readjudicated for the offense of

7    robbery.  He was convicted as an adult for the offense

8    of forgery and sent to the Department of Corrections,

9    and he also had an attempt burglary conviction from

10   1998.  So he has the prior history of delinquency and

11   criminal activity.

12           The other factor, aggravating factor that

13   the Court has to consider, quite frankly the more

14   serious aggravating factor, is the deterrent factor.

15   The Court has to fashion a sentence that will deter not

16   only this defendant but others similarly situated from

17   committing this type of an offense.

18           The Court initially fashioned a sentence

19   that included an extended term because, in the Court's

20   opinion, the actions of the defendant were heinous and

21   brutal, indicative of wanton cruelty.  Subsequent to

22   that the Apprendi decision came down which mandated that

23   that finding is one for the trier of fact, and obviously

24   the jury was not provided with a verdict form that

25   included that.  And as Justice Myerscough says on Page

36

1    13 of the Rule 23, after she had initially in the 4th

2    District initially passed on the Court's sentence and

3    then was directed by the Supreme Court to review it, as

4    Justice Myerscough said, "We, in light of Swift --"

5    which is a Supreme Court decision -- "We are required

6    and reluctantly must find that the Court erred in

7    fashioning the sentence imposed." I don't think I have

8    ever seen that type of language in anything written from

9    the Appellate Court.

10           Be that as it may, the Court must now

11   fashion a sentence, and I don't believe the extended

12   term is possible in this situation.  I'm not saying it

13   is not appropriate.  I'm saying based upon the Supreme

14   Court decision, it is not possible.  That the Court has

15   to fashion a sentence that will not only deter Mr. Moore

16   but others similarly situated from committing this type

17   of an offense.

18           Mr. McAvoy has called the Court's attention

19   to 730 ILCS 5/5-8-4, and that deals with consecutive

20   sentences.  And when the Court initially fashioned the

21   sentence in this case, Mr. McAvoy is correct, the Court

22   separated out the residential burglary from the home

23   invasion because there was a distinct separation from

24   the residential burglary.  The defendant left the

25   premises with the ATM card and did not have to come back

37

1  but did come back, and that second entry consisted of

2  the home invasion.  The other convictions were for

3  attempt first degree murder, aggravated arson, and

4  aggravated criminal sexual abuse. The Court entered an

5  order making the residential burglary consecutive to the

6  home invasion.  Mr. McAvoy's argument is that the

7  aggravated arson involved injury, serious injury, or in

8  the words of the code, severe bodily injury to the

9  victim in this case.  The charge, the indictment in the

10  aggravated arson, Count III, states that while

11  committing arson, knowingly and by means of fire

12  partially damaged a building of Lori Hanson, occupant,

13  located at 512A South New Street, Champaign, Illinois,

14  knowing that Lori Hanson was present therein, and

15  without the consent of Lori Hanson.  The next count of

16  aggravated arson deals with the different ownership. It

17  was Harry Washburn, and again knowing that she was

18  present therein.  And Mr. McAvoy's contention is that

19  that aggravated arson caused severe bodily injury to the

20  victim.  That would trigger consecutive sentences, which

21  means the aggravated arson should be consecutive to the

22  home invasion, and that the other sentences run

23  concurrently or one with the other.

24            The Court is not going to belabor that fact

25  any longer or any more as counsel have indicated.

1    There is a transcript of the Court's comments at the

2    original sentencing hearing.  Even were it not for the

3    fact that Miss Hanson was burned in several areas of her

4    body as a result of the fire, the Court was of the

5    opinion that consecutive sentences were necessary based

6    upon the conduct of the defendant, his prior record, to

7    protect the public from further criminal conduct by the

8    defendant, and the basis of that was just look what

9    happened to this victim.  Look what was done to this

10   human being.  Look at the brutal and heinous manner in

11   which this crime was carried out.  So this record speaks

12   volumes for the fact that consecutive sentences were

13   necessary to protect the public from further criminal

14   conduct by this defendant.

15              Mr. McAvoy's suggestion that the aggravated

16   arson resulted in severe bodily injury, severe bodily

17   injury I guess is in the eye of the beholder.  If one is

18   burned on various areas of the body, is that severe

19   bodily injury?  Does it have to be first degree, second

20   degree, third degree?  I guess that's up to the trier of

21   fact.  I don't know that, and since this involves

22   consecutive sentences, Apprendi I don't believe is

23   involved.

24              Well, given everything that has been

25   presented, I'm going to sentence this defendant to a

39

1    period of incarceration in the Illinois Department of

2    Corrections for residential burglary for the period of

3    fifteen years.  That will run consecutively to a thirty

4    year sentence for the offense of home invasion.  The

5    criminal sexual abuse will run -- seven year sentence

6    will run concurrently to the sentence for home invasion.

7    The attempt murder will run concurrently with the

8    sentence for aggravated arson.  And again that's another

9    thirty year sentence, and the thirty year sentence for

10   aggravated arson based upon 730 ILCS 5/5-8-4, will run

11   consecutively to the sentence for home invasion.  The

12   defendant will receive credit for one thousand seven

13   hundred and ninety-two days heretofore served in

14   custody.

15            Mr. Moore, if you wish to challenge the

16   correctness of the sentence or any aspect of the

17   sentencing hearing, you must file in this court within

18   thirty days of today's date a written motion asking to

19   have this Court reconsider the sentence imposed or

20   consider any challenges to the sentencing hearing.  You

21   must set forth in the motion all issues or claims of

22   error regarding the sentence imposed or the sentencing

23   hearing.  Any issue or claim of error regarding the

24   sentence imposed or any aspect of the sentencing hearing

25   not raised in the written motion shall be considered

40

1    waived.   In order to preserve your right to appeal

2    following the hearing on your motion to reconsider the

3    sentence, or any challenges regarding the sentencing

4    hearing, you must file a notice of appeal in this court

5    within thirty days from the entry of the order dealing

6    with your motion to reconsider the sentence or the order

7    dealing with any challenges to the sentencing hearing.

8            Show the defendant has been advised of his

9    appellate rights pursuant to Supreme Court rule.   He is

10   remanded to the custody of the Sheriff for

11   transportation to the Department of Corrections.   The

12   order of commitment is to issue.   We will be in recess.

13                   * * * * * * * * * * * * * * * * * * * *

14

15

16

17

18

19

20

21

22

23

24

25

41

1

2

3

4

5                          <u>CERTIFICATE</u>

6          I, Joni E. Markel, Certified Shorthand Reporter and

7   Registered Professional Reporter in and for the State of

8   Illinois, do hereby certify that the foregoing is a true and

9   accurate transcript of the proceedings as taken

10  stenographically by me at the time and place aforementioned.

11

12

13

14

15                 _Joni E. Markel_
               JONI E. MARKEL

16             Certified Shorthand Reporter

17             CSR License No. 084-002104

18

19

20  Dated:  July 8, 2003

21

22

23

24

25
                           42

1              IN THE CIRCUIT COURT

2           FOR THE SIXTH JUDICIAL CIRCUIT

3          CHAMPAIGN COUNTY, URBANA, ILLINOIS

4    THE PEOPLE OF THE STATE )
     OF ILLINOIS,            )
5                            )
     Plaintiffs,             )
6                            )
     Vs.                     )   No. 1998 CF 1558
7                            )
     DEDRIC T. MOORE,        )
8                            )
     Defendant.              )
9

10             TRANSCRIPT OF PROCEEDINGS
          BE IT REMEMBERED and CERTIFIED that on, to wit:
11   The 5th day of September, 2003, the following proceedings
     Were held in the aforesaid cause before The Honorable
12   THOMAS DIFANIS, Circuit Judge.
     APPEARANCES:

13

14   MR. MICK MCAVOY         MS. DIANA LENIK
     Assistant State's Attorney  Attorney-at-Law
15   For the People;         For the Defendant.

16          4-03-0790

17          Voh. VII

18          Proceedings reported and transcribed by:
          Nancy Sivertsen, CSR, Official Court Reporter
19           Sixth Judicial Circuit of Illinois
                IL CSR No. 084-002291
20

21

22

23          NOV 1 7 2003

24

                        1

1      THE COURT: Thank you, please be seated.   This is 98 CF

2    1558, People vs. Moore.  The defendant is present with Ms.

3    Lenik. Mr. McAvoy is here on behalf of the People.

4    This matter is set today for a hearing on the motion to

5    reconsider that was filed back on the 2d of July.  Ms.

6    Lenik, I've reviewed your motion to reconsider.  Is there

7    anything you wish to say in addition to the motion?

8      MS. LENIK:  Your Honor, only that I believe that when

9    Mr. Moore's case was sent back for re-sentencing, it was not

10   the contemplation of the court that the court merely think

11   of another way to sentence him to the same thing.  I think

12   that the contemplation was that the sentence was excessive,

13   and we have maintained throughout that the sentence is

14   excessive, was excessive, that Mr. Moore's offense, while

15   grave, did not kill anybody, and for whatever reason, caused

16   serious emotional harm greater than the physical harm that

17   the sentence caused.

18      The kind of sentence that the court has given him is

19   greater than most murder sentences in this and any county in

20   the State of Illinois, and I think that the proportionality

21   argument that the legislature set up in the sentencing

22   scheme has been violated by a sentence of this magnitude for

23   this offense, and I would suggest to the court that

24   Mr. Moore will still do an awful lot of time if his sentence

2

1    is reduced significantly.  He'll still be an old man when he

2    gets out.  He'll still be incapacitated  for an extensive

3    amount of time.  He'll still be punished severely.  He'll

4    still be all of those things that the court wants to do when

5    it sentences somebody for an offense of this magnitude, but

6    it isn't the astronomical sentence that veers towards

7    infinity as it is now.  I think that factually speaking the

8    court erred, that the event was not a single course of

9    conduct.  That the acts that Mr. Moore engaged in occurred

10   one right after the other, they occurred in one time period,

11   in one location, regarding one individual.  He didn't go and

12   then go to sleep and go back.  He went through a series of

13   events, he did something with regard to the individual, then

14   he left her residence because of something he got from her,

15   then he came back to her residence.  He didn't follow her

16   and detour in between.  So I think that it is factually in

17   error for the court to rule that this is not a single course

18   of conduct, and if the court rules that it is a single

19   course of conduct, then the court is in error when it

20   sentenced Mr. Moore consecutively and not concurrently to

21   various counts with which the jury convicted Mr. Moore.

22       And the other thing that I think the court erred

23   significantly in is the court did not give weight to the

24   testimony of his witnesses regarding the fact that this was

                              3

1    an aberration for Mr. Moore, that he is a nonviolent person,

2    in their opinion, that he had before this a long history of

3    nonviolence, that this is not something likely to recur, and

4    that this is not something that had occurred previously.

5         That information certainly weighs heavily on whether

6    Mr. Moore can be rehabilitated.  The court obviously gave

7    Mr. Moore a sentence which indicates in the court's mind Mr.

8    Moore has no value whatsoever, he cannot be rehabilitated,

9    the court wishes him to die behind bars.  But we know that

10   from the testimony of the witnesses that he does have

11   rehabilitative potential, that the witnesses have testified

12   to their knowledge of him, to their conduct -- I'm sorry, to

13   his conduct with them, to their contacts with him, and to

14   the fact that he had a nonviolent nature before this

15   particular event occurred.  So I would suggest both

16   factually the court erred when it made the ruling regarding

17   the different courses of conduct, and I believe that the

18   court erred when it didn't give sufficient weight to the

19   witnesses, and I would again argue that the court's sentence

20   does not follow the legislative preference for

21   proportionality, that the sentence is way out of line for

22   the events that occurred, and I would ask the court at this

23   time to reconsider the sentence, and to sentence Mr. Moore

24   in line with sentences for other people who have committed

4

1    random violent acts that did not result in lasting physical

2    harm or death.  Thank you.

3         THE COURT:  Mr. McAvoy.

4         MR. MCAVOY:  Your Honor, for the most part I adopt the

5    arguments I made earlier. This is obviously the second time

6    the defendant has been sentenced for these offenses.  The

7    court has heard a great deal of evidence and a great deal of

8    argument.  There's only two, I guess, very brief points I

9    wanted to address based solely on the oral argument of Ms.

10   Lenik that we've just heard.  The first is that I disagree

11   with her characterization of the appellate court's decision.

12   I do not believe they suggested that the court's earlier

13   sentence was excessive; merely that because of the law it

14   was a sentence that was not available to the court, and I

15   think that's as far as we can take their commentary on the

16   court's sentence.  In fact, if there was any further

17   commentary in the appellate court's decision I think the

18   commentary would have been along the lines of, but we agree

19   that it was an appropriate sentence, it just simply wasn't

20   available to the court.  That's all I have to say about that

21   suggestion that it was excessive.

22       I have another argument that she made that I want to

23   address, was just simply the proportionality idea;

24   specifically the argument that this sentence is more than

5

1    murderers get, and that type of an argument, and the only

2    thing I'll say, that repeatedly Ms. Lenik called this

3    offense, this offense, this offense, and I simply wanted to

4    point out that in fact the defendant is being sentenced for

5    multiple offenses, and that's part of the reason that the

6    sentences appear so excessive.  It's because it's not just

7    one crime, he didn't do just one random thing, it was a

8    series of events that constituted a series of offenses.

9    They were discrete, both legally and even in time, and in

10   his geographic location on the day of the attack, and it's

11   only because of his repeated criminal activity that it seems

12   altogether excessive.

13        THE COURT:  Well, I've reviewed Ms. Lenik's motion,

14   written motion; I've considered her comments, I've again

15   reviewed the transcript of the sentencing hearings, and I'm

16   going to deny the motion to reconsider.  Ms. Lenik, do you

17   wish to have a notice of appeal filed --

18        MS. LENIK:  Yes, your Honor.

19        THE COURT:   -- for the appellate defender?

20        MS. LENIK:  Yes, I have a 604(d) certificate, and I

21   actually have the transcript to return.

22        THE COURT: All right, I'm going to direct the circuit

23   clerk's office to file the notice of appeal in this matter.

24   I'm going to appoint the appellate defender of the State of

6

1    Illinois to represent the defendant on appeal.

2    The circuit clerk is directed to notify the appellate

3    defender of their appointment.  We'll be in recess, counsel.

4    THESE WERE ALL THE PROCEEDINGS HAD IN THIS CAUSE ON THIS

5    DATE AS HEREIN CONTAINED.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1    STATE OF ILLINOIS)

2                    ) Ss

3    CHAMPAIGN COUNTY )

4                OFFICIAL COURT REPORTER'S CERTIFICATE

5        I, Nancy Sivertsen, Official Court Reporter in and for

6    the Sixth Judicial Circuit of Illinois, Urbana, Illinois, do

7    hereby certify that the foregoing Transcript of Proceedings

8    is a true, complete, and correct transcript of all the

9    proceedings had in the aforesaid cause on the aforesaid date

10   as herein contained.

11       Dated this 17th day of November, 2003.

12

13

14

15

16                        Official Court Reporter

17

18

19

20

21

22

23

24

                            8



STATE OF ILLINOIS
COUNTY OF CHAMPAIGN } ss.

**FILED** Criminal No. \_\_\_\_ 98-CF- 1558
SIXTH JUDICIAL CIRCUIT

NOV 19 1998

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT, CHAMPAIGN COUNTY,

ILLINOIS, in the year of our Lord One Thousand Nine Hundred and \_\_\_\_ NINETY-EIGHT

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the State of Illinois, upon their oaths do present:

THAT \_\_\_\_ DEDRIC T. MOORE \_\_\_\_

late of said County, on the \_\_\_\_ 25th \_\_\_\_ day of \_\_\_\_ February \_\_\_\_ 19 \_\_ 98 ,

in the year of our Lord one thousand nine hundred \_\_\_\_ Ninety-Eight \_\_\_\_ at and within

the said County of Champaign and State of Illinois aforesaid committed the offense of

ATTEMPT(FIRST DEGREE MURDER)-CLASS X FELONY,

in that the said defendant, with the intent to commit

the offense of First Degree Murder, in violation of 720

Illinois Compiled Statutes, 5/9-1(a)(1), performed a

substantial step towards the commission of that offense,

in that he tied the feet and hands of Lori Hansen, poured

a flammable liquid onto Lori Hansen and her surroundings,

and then set the surroundings on fire, and flipped a

lit cigarette onto Lori Hansen, with the intent to kill

Lori Hansen, in violation of 720 Illinois Compiled

Statutes, 5/8-4(a).

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

_____    C000001

COUNT _____II_____

98-CF-1558

·THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the

name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____DEDRIC T. MOORE_____

_____

late of said County, on the __25th__ day of _____February_____ 19 __98__ ,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

HOME INVASION–CLASS X FELONY,

in that the said defendant, not a peace officer acting
in the line of duty, knowingly and without authority,
entered the dwelling of Lori Hansen, located at 512A
S. New Street, Champaign, Illinois, knowing Lori Hansen
to be present within that dwelling, and intentionally
caused injury to Lori Hansen, in that he struck Lori
Hansen about the head and body with his hands and feet,
and tied Lori Hansen's hands and feet and neck, and choked
Lori Hansen, knocked her down and dragged her, in violation
of 720 Illinois Compiled Statutes, 5/12-11(a)2.

**FILED**

SIXTH JUDICIAL CIRCUIT

 NOV 19 1998

Linda S. Frank

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and

dignity of the said People of the State of Illinois.

_____

C000002

COUNT _____    III                                                    98-CF-1558

·THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the

name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____    DEDRIC T. MOORE    _____

_____

late of said County, on the ___25th___ day of _____February_____ 19____98____,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

## AGGRAVATED ARSON-CLASS X FELONY,

in that the said defendant, while committing an Arson,
in violation of 720 Illinois Compiled Statutes, 5/20-1,
knowingly, and by means of fire, partially damaged a
building of Lori Hansen, occupant, located at 512A S.
New Street, Champaign, Illinois, knowing that Lori Hansen
was present therein, and without the consent of Lori
Hansen, in violation of 720 Illinois Compiled Statutes,
5/20-1.1(a)(1).

**FILED**

SIXTH JUDICIAL CIRCUIT

🅐 NOV 19 1998

Linda S. Frields
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and

dignity of the said People of the State of Illinois.

C000003

98-CF-1558

COUNT _____ IV _____

·THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____ DEDRIC T. MOORE _____

_____

late of said County, on the __25th__ day of _____ February _____ 19 __98__,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

### AGGRAVATED ARSON-CLASS X FELONY,

in that the said defendant, while committing an Arson, in violation of 720 Illinois Compiled Statutes, 5/20-1, knowingly, and by means of fire, partially damaged a building of Harry Washburn, owner, located at 512A S. New Street, Champaign, Illinois, knowing that Lori Hansen was present therein, and without the consent of Harry Washburn, in violation of 720 Illinois Compiled Statutes, 5/20-1.1(a)(1).

**FILED**

SIXTH JUDICIAL CIRCUIT

**A** NOV 19 1998

Linda S. Frank

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

_____

C000004

COUNT _____V_____

98-CF-1558

·THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____DEDRIC T. MOORE_____

_____

late of said County, on the __25th__ day of _____February____ 19____98____,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

### AGGRAVATED CRIMINAL SEXUAL ABUSE-CLASS 2 FELONY,

in that the said defendant committed an act of Criminal Sexual Abuse, in violation of 720 Illinois Compiled Statutes, 5/12-15(a)(1), against Lori Hansen, in that the defendant, by the use of force, knowingly fondled and touched the breast of Lori Hansen, for the purpose of the sexual arousal of the defendant, and in doing so, caused bodily harm to Lori Hansen, by ~~stroking~~ striking Lori Hansen about the head and body with his hands and feet, and tying Lori Hansen's feet and hands, in violation of 720 Illinois Compiled Statutes, 5/12-16(a)(1).

**FILED**

SIXTH JUDICIAL CIRCUIT

**A** NOV 19 1998

Linda S. Field
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

C000005

COUNT ___VI___                                                    98-CF-1558

·THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the

name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____ DEDRIC T. MOORE _____

_____

late of said County, on the __25th__ day of _____February_____ 19 __98__ ,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

RESIDENTIAL BURGLARY-CLASS 1 FELONY,

in that the said defendant knowingly and without authority,

entered into the dwelling place of Lori Hansen, located

at 512A S. New Street, Champaign, Illinois, with the

intent to commit therein a theft, in violation of 720

Illinois Compiled Statutes, 5/19-3.

**FILED**

SIXTH JUDICIAL CIRCUIT

A NOV 19 1998

Linda S. Frerich

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and

dignity of the said People of the State of Illinois.

C000006

## IN THE CIRCUIT COURT OF CHAMPAIGN COUNTY, ILLINOIS

During the Month of ___NOVEMBER___, A.D. 19__98__

---

### THE PEOPLE OF THE STATE OF ILLINOIS

**vs.**

DEDRIC T. MOORE

**FILED**

SIXTH JUDICIAL CIRCUIT

**A** NOV 19 1998

Linda S. Frichs

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

---

### INDICTMENT

CT I ATTEMPT(FIRST DEGREE MURDER)
CT II HOME INVASION

For _____

CT III & IV AGGRAVATED ARSON
CT V AGGRAVATED CRIMINAL SEXUAL ABUSE

CT VI RESIDENTIAL BURGLARY

---

### A TRUE BILL

Foreman of the Grand Jury

---

### WITNESSES

D.Shepard, Champaign Police Department

Bond fixed in the amount of

$_____

_____

**Judge**

C000007

**FILED**
SIXTH JUDICIAL CIRCUIT

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

NOV 19 1998

PEOPLE OF THE STATE OF ILLINOIS     )
VS. ____Kedric Moore____           )
                                    )  CASE NO. _98CF1558_  _Linda S. Frerichs_
                                                           CLERK OF THE CIRCUIT COURT
                                                           CHAMPAIGN COUNTY, ILLINOIS  **F**

## EXPANDED RECORD OF COURT PROCEEDINGS ON ARRAIGNMENT

__X__  Mick McAVOY _____ appears on behalf of the People.

__X__  Deft. appears personally/in custody. ____ Deft. does not appear

__X__  Deft. advised as to right to counsel of choice or court-appointed counsel indigent. Deft. furnished with a copy of the PETITION/INFORMATION/INDICTMENT and advised as to the nature of the charge(s) and possible penalty(ies).

____  Appearance of appointed/private counsel _____

____  Entry of Appearance placed on file this date.

____  Affidavit of Assets and Liabilities on file.

____  Representation that _____ represents Deft. on pending case and deft. remains indigent. D. Lenik obo

__X__  Motion for appointed counsel allowed/denied D. Lenik/PD/appointed

____  _____ appointed; Ms. Lenik appears for bond only.

____  On Deft's motion, cause continued to __Tuesday, Dec. 1, 1998__ at 1:30 p.m. in Courtroom F for appearance of counsel. (20)

____  Cause continued for hearing on Petition to _____

____  PRELIMINARY HEARING SET FOR __12/08/98__ at 3:15 p.m. Courtroom F

__X__  Preliminary hearing waived. Not guilty plea entered.

__X__  SET FOR PRE-TRIAL __01/27/99__ at __2:30__ in Courtroom A.

__X__  Pre-Trial Orders and Pre-Trial Discovery Orders entered.
                                    2/   /99
____  MISDEMEANOR Pre-Trial set for __1/   /99__ at _____ Courtroom J.

____  Information as to above-named Deft. only withdrawn as superseded by indictment.

____  Deft. advised pursuant to Ch.38, 115-4.1 as to the consequences of a failure to appear in Court when required.

__XX__  Bond to continue/ is/set $ __250 T__ is reduced to $ _____

____  Defendant's motion for recognizance allowed/denied.

____  Bond forfeiture previously entered vacated ( _____ hearing vacated) and bond reinstated. (50)

____  Court finds probable cause.

____  Defendant remanded to the custody of the Sheriff(57)/DOC(56).

____  Bond further conditioned upon Defendant initiating NO CONTACT whatsoever with _____ (38)

____  Bond forfeiture hearing set _____, at 1:30 p.m. in Courtroom F

____  Warrant to issue.  Bond set in the amount of $ _____ (FTA/42)

____  Warrant issued. (46)

____  Cause dismissed. (58)

____  Other _____

DATE __Nov. 19, 1998__          JUDGE/CLERK __JBF/arj__ 00008

**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT**
**CHAMPAIGN COUNTY, ILLINOIS**

*D.T.*

PEOPLE OF THE STATE OF ILLINOIS )
)
vs. )
)
_MOORE, DEDRIC_ )    Case No._____
Defendant )

### AFFIDAVIT IN SUPPORT OF REQUEST FOR APPOINTED ATTORNEY

    I am the defendant in this case.  I ask the Court to appoint a lawyer for me because I cannot afford to pay for a lawyer.  I state under oath or affirmation that the following facts are true:

1. Name: _Dedric Moore_    2. Date of Birth: _8-13-78_

3. Street Address: _509 S Fifth_    4. Phone#:_____

City and State: _Champaign IL_    5. Soc Sec#_____

6. Family:
   a. Check one: Single_✓_Married____Separated_____Divorced____

   b. Check all that are true: I live with: No one____Spouse____Parent_____
   Child(ren)_✓_ Other: _girlfriend_____

   c. How many people other than yourself do you support? _N/A_____

   d. Are you Paying Child Support? NO _✓_____YES_____

   e. If yes, is it court-ordered? NO_____YES_____

   f. How much child support are you **paying per month?**_____

   g. Does your family receive welfare payments? NO_____YES_____

      If YES, how much **per month?**_____

   h. Does anyone support you and/or your family? NO_____YES_____

7. Job:a._____    _____
   (employer's name)    (kind of work)

   b._____
   Employer's address: Number/Street    City    State    Zip

   c. How long have you been working at this job?_____

   d. How much do you earn **per month?** $_____

8. If you are unemployed:

   a. When were you last employed? _7-29-98_____

   b. At what job? _Papa Johns/ Manpower temp service_

   c. Do you expect to be called back to work? NO_✓___YES_____

   d. If yes, when may you be called back?_____

   e. Are you receiving unemployment benefits? NO_____YES_____

      If yes, how much **per month?** $_____

↓**-OVER-**↓    C000009

9. Are you physically and mentally able to work?  NO_____  YES_____

   If no, explain:_____

   _____

10. Are you a student?  NO_____  YES_____  AT _____

11. Do you receive any kind of income, benefits or payments?  (including public aid, social security, pensions, income from property, deposits, investments and trusts of any kind, child support and maintenance, etc.)

    NO_____  YES_____  $_____monthly from _____

12. Do have any property?

    a. NO_____  YES_____: House, mobile home, other land or building valued at $_____
    b. NO_____  YES_____: Bank accounts amounting to  $_____
    c. NO_____  YES_____: Anything with a value more than  $100.00?
                 Item:_____Value:_____
                 Item:_____Value:_____
                 Item:_____Value:_____
    d. NO_____  YES_____: Money owed to me $_____by_____

13. Do you owe any money to others?

    a. NO_____  YES_____: House, mobile home or other mortgage balance $_____
    b. NO_____  YES_____: Other loans and/or debts:
       Owed to:_____For What?_____Total Amount Owed:_____
       Owed to:_____For What?_____Total Amount Owed:_____
       Owed to:_____For What?_____Total Amount Owed:_____

All of my statements above are true. If an attorney is appointed to represent me, I understand that now or any time up to 90 days after final judgment is entered in this case,  the court may order me to pay all or part of the costs for such an attorney.

X _____
                 Defendant

SUBSCRIBED & SWORN to or affirmed

before me on____11/19/98____

_____
       Clerk/Judge

## PLEASE NOTE:  SUPPLY ALL INFORMATION REQUESTED.
## DO NOT LEAVE ANY QUESTION UNANSWERED!

2/98 Affidavit

C000010

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

The People of the State of Illinois )
)
vs. )    NO. 98-CF- _1558_
)
_Cedric Moore_ )
Defendant. )

**FILED**

SIXTH JUDICIAL CIRCUIT

**NOV 19 1998**

## PRE-TRIAL ORDER AFTER INDICTMENT, WAIVER, OR UPON FINDING OF PROBABLE CAUSE

Appearance of ____Mick McAvoy_____ for the People.

Linda S. Frich
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS    **F**

Defendant appears with    WALTER DING,      ED PIRAINO,    / DIANA LENIK \

[X] Defendant having been arraigned on the Indictment pleads not guilty and demands trial by jury.

OR

[X] Defendant having been fully advised of his rights to demand a preliminary hearing, to confront and cross-examine the witness or witnesses against him, to present evidence on his own behalf, and to have the Court determine whether there is probable cause to believe that he has committed one or more felony offenses as charged in the Information, the Court finds that the defendant knowingly, understandingly and voluntarily waives such preliminary hearing.  Defendant pleads not guilty.

OR

( ) The Court having heard the evidence and arguments on preliminary hearing and being fully advised in the premises, finds probable cause to believe that each defendant named in the caption above has committed one or more felony offenses as charged in the Information.

**WHEREFORE, IT IS ORDERED THAT:**

(1)  The People and defendant are to provide discovery information in accordance with the accompanying Pre-trial Discovery Order entered this date.

(2)  Each party must file all pre-trial motions no later than 35 days from today's date.

(3)  Pursuant to General Order Number 79-1 entered January 23, 1979, this cause is assigned to the Honorable J.G. Townsend for pre-trial on __January 27, 1999__ at 2:30 p.m. in Courtroom A.

(4)  Each Defendant is advised pursuant to 725 ILCS 5/115-4.1, that if he fails to appear in court when required for trial, his failure to appear will constitute a waiver of his right to confront witnesses against him and his trial could proceed in his absence.

DATE:  _November 19, 1998_            _____
                                                          JUDGE

12/97 PTORDER.DOC

C000011

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

PEOPLE OF THE STATE OF ILLINOIS )
                                )
vs.                             )      No. 98-CF-_____
                                )
                                )
_____ )
            Defendant           )

**FILED**
SIXTH JUDICIAL CIRCUIT

**NOV 19 1998**

Linda S. Frerichs
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS    **F**

## PRE-TRIAL DISCOVERY ORDER

The Defendant's and State's motion for discovery are allowed as follows:

It is HEREBY ORDERED that the State, pursuant to Supreme Court Rule 412, shall disclose to defense counsel for the above-named Defendant the following material and information within its possession or control:

1. The names and last known addresses of persons whom the State intends to call as witnesses, together with their relevant written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and a list of memoranda reporting or summarizing their oral statements which the State does not consider substantially verbatim. Any such memoranda which the State does not disclose to defense counsel shall be submitted to the court for examination in camera and disclose to defense counsel if found to be substantially verbatim reports.

2. Any written or recorded statements and the substance of any oral statements made by the accused or by a co-defendant, and a list of witnesses to the making or acknowledgment of such statements.

3. If Grand Jury minutes were recorded by a court reporter, a transcript of those portions of said minutes containing testimony of the accused and relevant testimony of persons whom the State intends to call as witnesses.

4. Any reports or statements of experts, made in connection with this cause, including results of physical or mental examinations and of scientific tests, experiments or comparisons. Oral reports or statements of experts shall be reduced to writing by said experts.

5. Any books, papers, documents, photographs, or tangible objects which the State intends to use as evidence or which were obtained from or belong to the said Defendant.

6. Any record or prior criminal convictions which may be used for impeachment of persons whom the State intends to call as witnesses.

7. Any material or information within its possession or control which tends to negate the guilt of the said Defendant as to the offense charged, or would tend to reduce his punishment therefore.

IT IS FURTHER ORDERED that the State shall comply with the aforesaid order not later than ten days hereof at a time and place and in a manner mutually agreeable to itself and defense counsel whereby the materials and information may be inspected, obtained, tested, copied or photographed. If the parties cannot agree on a time, place and manner of compliance with this order, the State will proceed in accordance with Supreme Court Rule 412(e), subparagraphs (i) and (ii).

IT IS FURTHER ORDERED that if subsequent to compliance with the above order, the State discovers additional material or information which is subject to disclosure under the terms of this order, it shall promptly disclose such material or information to counsel for the Defendant and also notify the Court of its existence.

IT IS HEREBY ORDERED that counsel for the above-named Defendant pursuant to Supreme Court Rule 413 shall inform the State of any defenses which the Defendant intends to make at a hearing or trial, including affirmative defenses, non-affirmative defenses, alternative, and inconsistent defenses.

IT IS FURTHER ORDERED that said defense counsel shall furnish the State with the following material and information within his possession or control or within the possession or control of the Defendant:

1. The names and last known addresses of persons he intends to call as witnesses, together with their relevant written or recorded statements, including memoranda reporting or summarizing their oral statements and any record of prior criminal convictions of said witnesses known to the Defendant or his defense counsel.

2. Any books, documents, photographs, or tangible objects he intends to use as evidence or for impeachment.

3. Any reports or statements of experts, made in connection with this case, including results of physical or mental examinations, and of scientific tests, experiments or comparisons, except that those portions of reports containing statements made by the Defendant may be withheld if defense counsel does not intend to use any of the materials contained in the report at a hearing or trial. Oral reports or statements of experts shall be reduced to writing by said experts.

IT IS FURTHER ORDERED that said defense counsel shall comply with the aforesaid order within twenty days hereof at a time and place and in a manner mutually agreeable to said defense counsel and the State's Attorney whereby said material and information may be inspected, obtained, tested, copies or photographed during specified reasonable times and at places reasonably accessible to the State's Attorney.

IT IS FURTHER ORDERED that if subsequent to compliance with the above order, the Defendant or his counsel discover additional material or information which is subject to disclosure under the terms of this order, he shall promptly disclose such information or material to the State's Attorney and also notify the Court of its existence.

IT IS FURTHER ORDERED that if the State has obtained discovery from the Defendant then the State shall disclose to defense counsel not less than seven days before trial or a hearing or at such other time as the Court may direct, the names and last known addresses of persons whom the State intends to call as witnesses in rebuttal, together with a specific statement as to the substance of the testimony such witnesses will give at the trial or hearing, and the following materials:

1. The witnesses' written or recorded statements, memoranda containing substantially verbatim reports of their oral statements, and list of memoranda reporting or summarizing their oral statements which the state does not consider substantially verbatim. Any such memoranda which the State does not disclose to defense counsels shall be submitted to the Court for examination in camera and disclosed to defense counsel if found to be substantially verbatim reports.

2. If Grand Jury minutes were recorded by a court reporter, a transcript of those portions of said minutes containing testimony of the rebuttal witnesses.

3. Any record of prior criminal convictions which may be used for impeachment of the rebuttal witnesses.

DATE: ___November 19, 1998___          _____
                                                    JUDGE

11/97 DISORDER.DOC



## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

**FILED**
SIXTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| **THE PEOPLE OF THE STATE OF ILLINOIS,** | ) | |
| **Plaintiff,** | ) | **DEC 0 4 1998** |
| **-vs-** | ) | **NO: 98-CF-1558** |
| | ) | |
| **DEDRIC T. MOORE,** | ) | Linda S. Frede |
| **Defendant.** | ) | CLERK OF THE CIRCUIT COURT CHAMPAIGN COUNTY, ILLINOIS |

### AFFIDAVIT OF MAILING

Julie Ogle, being first duly sworn on her oath, deposes and states that she did, at the request of

Heidi Ladd on the ___4th___ day of December, 1998, deposit a true and accurate copy of the attached

Discovery and reports, in the above-entitled cause in the U.S. Mail at the Post Office in Urbana, Illinois, in

an envelope with sufficient postage attached to carry the same to its destination to the following named

person at the address below:

Diana Lenik, Attorney at Law, 202 W. Green Street, Urbana, IL

_(signature)_

Subscribed and Sworn to Before Me
this ___4th___ day of December, 1998

_(signature)_
NOTARY PUBLIC

**OFFICIAL SEAL**
**VIRGINIA ANN KIETZMAN**
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/6/02

C000014

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

**THE PEOPLE OF THE STATE OF ILLINOIS,** )

                **Plaintiff,** )

  **-vs-** )  **No: 98-CF-1558**

                       )

**DEDRIC T. MOORE,** )

                **Defendant.** )

**FILED**
SIXTH JUDICIAL CIRCUIT

DEC 0 4 1998

Linda S. Frobish
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## DISCOVERY

Now come the People of the State of Illinois by JOHN C. PILAND, State's Attorney of and for the

County of Champaign, State of Illinois, and in answer to defendant's motion for discovery respectfully

state:

    1. Pursuant to Supreme Court Rule 412(a)(1) the People provide the following names and last

known addresses of persons who the People intend to call as witnesses:

    Lori Hansen, c/o Champaign County State's Attorney's Office, Urbana, IL
    Detective Don Shepard, Champaign Police Department, Champaign, IL
    Detective Charlie Shepard, Chamapign Police Department, Champaign, IL
    Officer Chad Shipley, Champaign Police Department, Champaign, IL
    Officer Mary Bunyard, Champaign Police Department, Champaign, IL
    Harry Washburn, 916 Lincolnshire, Champaign, IL
    Lillie Moore, 512 ½ S. New, Champaign, IL
    Timothy Scott, 618 W. Green #2, Champaign, IL
    Francis Mulligan, 618 W. Green #2, Champaign, IL
    Matthew Eastham, 618 W. Green #3, Champaign, IL
    Dena Sacuka, 1400 W. Park, Urbana, IL
    Bob Ricord, 510 S. Elm, Champaign, IL
    David Perksinson, 510 S. Elm, Champaign, IL
    Beverly Perkinson, 510 S. Elm, Champaign, IL
    Officer Timothy Atteberry, Champaign Police Department, Champaign, IL
    Officer Doug Martin, Champaign Police Department, Champaign, IL
    Sgt. Jim Summers, Champaign Police Department, Champaign, IL
    Representatives of the Champaign Fire Department
    Dr. Koandajrelu Paraskathi, Covenant Medical Center, 1400 W. Park Street, Urbana, IL
    Medical Personnel of Covenant Medical Center, 1400 W. Park Street, Urbana, IL
    Representatives of Arrow Ambulance, 210 E. University Avenue, Champaign, IL
    Officer Brian Karbach, Champaign Police Department, Champaign, IL
    Officer Lisa Staples, Champaign Police Department, Champaign, IL
    Officer Charles Caudill, Champaign Police Department, Champaign, IL
    Lt. Eddie Bain, Champaign Fire Department, 307 S. Randolph, Champaign, IL
    Detective Mark Strzesak, Champaign Police Department, Champaign, IL
    Detective Zane Ziegler, Champaign Police Department, Champaign, IL
    Maxine Brosius, 714 Arlington Court, Champaign, IL
    Ellen Pelz, 714 Arlington Court, Champaign, IL
    Bobby Cekander, 715 Arlington Court, Champaign, IL
    Representatives of Don's Amoco, 102 S. Mattis, Champaign, IL
    Detective Brad Yohnka, Champaign Police Department, Champaign, IL
    Representatives of Bank One
    Barb Doyle, First of America Bank, 30 E. Main Street, Champaign, IL
    Kim Barker, Bank One, Champaign, IL

Jo Brooks, First Midwest Bank, 812 W. Springfield, Champaign, IL
Sgt. Don Shelton, Champaign Police Department, Champaign, IL
Becky Cobb
Detective Robb Morris, Champaign Police Department, Champaign, IL
Emmanuel Mare, 108 E. Healey #8, Champaign, IL
Charlene Stevens, 1703 W. University Avenue, Champaign, IL
Jennifer Stevens, 1703 W. University Avenue, Champaign, IL
Sgt. Eric McGee, Champaign Police Department, Champaign,IL
Sgt. Scott Swan, Champaign Police Department, Champaign, IL
Detective Don Atkins, Champaign Police Department, Champaign, IL
Officer Bruce Ramseyer, Champaign Police Department, Champaign, IL
William Kilpatrick, RN, Carle Foundation Hospital, 611 W. Park, Urbana, IL
Donrico Holtzclaw, 509 S. 5th Street #6, Champaign, IL
Alison Leveridge, Washington and Prairie
Dorothy Cummings, 512 S. New #A, Champaign, IL
Larry Hansen, c/o Champaign County State's Attorney's Office, Urbana, IL
Mark Mooney, 512 South Pine, Champaign, IL
David Sherrick, Champaign Police Department, Champaign, IL
Investigator James Davis, Champaign County State's Attorney's Office, Urbana, IL
Detective Joe Gallo, Champaign Police Department, Champaign, IL
Officer Charles Glass, Champaign County Correctional Center, Urbana, IL
Michael Kyrouac, Illinois State Police, 2125 S. First Street, Champaign, IL
Officer Carlos Guerrero, Evanston Police Department, Evanston, IL
John R. Dobson, 703 W. Healey, Champaign, IL
Topper Steinman, 3706 Meadow Lane, Champaign, IL
Vernon Moir, United Services Professional Building and Repair Contractors, P.O. Box 1034,
     Mahomet, IL
Jennifer Law, 47 Michelle Lane, Urbana, IL
Kevin Zeeb, Illinois State Police Forensic Sciences Laboratory, 2040 Hill Meadows Drive,
     Springfield, IL
John Carnes, Illinois State Police Forensic Science Laboratory, 2040 Hill Meadows Drive,
     Springfield, IL
Dana Pitchford, Illinois State Police Forensic Science Laboratory, 2040 Hill Meadows Drive,
     Springfield, IL
Suzanne Kidd, Illinois State Police Forensic Science Laboratory, 2040 Hill Meadows Drive,
     Springfield, IL
Glenn Schubert, Illinois State Police Forensic Science Laboratory, 2040 Hill Meadows Drive,
     Springfield, IL
Paula Cardosi, Illinois State Police Forensic Science Laboratory, 2040 Hill Meadows Drive,
     Springfield, IL
Representatives of Telephone/Utility Company
Jamie Rayburn, Arrow Ambulance, 210 E. University Avenue, Champaign, IL
Carol Steinman, 3706 Meadow Lane, Champaign, IL
Karon Williams, 509 ½ Robinson Court, Champaign, IL
Robert Hickman, 503 Robinson Court, Champaign, IL

2. Statements and memoranda required to be disclosed pursuant to Supreme Court Rule

412(a)(1) pertaining to the witnesses listed in sub-paragraph one are hereto attached.

3. On or about the 25th day of February, 1998, the defendant made oral statements witnessed by

Lori Hansen, the substance of which is contained in the reports of Chad Shipley and Don Shepard, a true

and accurate copy of which is attached hereto.

On or about the 4th day of March, 1998, the defendant made oral statements witnessed by Don Shepard and Mark Strzesak, the substance of which is contained in the reports of Mark Strzesak, a true and accurate copy of which is attached hereto.

On or about February 24 to February 25, 1998, the defendant made oral statements witnessed by Jennifer Stevens, the substance of which is contained in the reports of Mark Strzesak and Don Shepard, a true and accurate copy of which is attached hereto.

On or about February 23 to February 25, 1998, the defendant made oral statements witnessed by Emmanuel Moore, the substance of which is contained in the reports of Mark Strzesak, Don Shepard, Charlie Shepard, and Robb Morris, a true and accurate copy of which is attached hereto.

On or about the 4th day of March, 1998, the defendant made oral statements witnessed by Mark Strzesak, David Sherrick and Don Shepard, the substance of which is contained in the report of Don Shepard, a true and accurate copy of which is attached hereto.

On or about the 4th day of March, 1998, the defendant made oral statements witnessed by David Sherrick and Don Shepard, the substance of which is contained in the report of Don Shepard, a true and accurate copy of which is attached hereto.

On or about January to June, 1998, the defendant made oral statements witnessed by Jennifer Law, the substance of which is contained in the report of Don Shepard, a true and accurate copy of which is attached hereto.

The defendant made a series of oral statements witnessed by officers and possibly others, as set forth in the attached reports.

4.  This matter was presented to the Grand Jury on November 19, 1998.  The witness was Don Shepard.  A transcript of the Grand Jury minutes is not available at this time.  However, a transcript will be prepared upon request by defense counsel.

5.  Reports, affidavits and statements of experts in connection with this case are attached hereto. Any notes, charts, and/or documents pertaining to these reports may be viewed upon reasonable request to the Office of the State's Attorney.

6.  The People are aware of prior convictions of persons whom the People intend to call as witnesses as follows:

Donrico Holzclaw, 97-CF-1411, Attempt Burglary

C000017

7.  Pursuant to Supreme Court Rule 412(b) the People disclose that there has been no electronic surveillance of conversations to which the defendant was a party, or of his premises.

8.  Pursuant to Supreme Court Rule 412(c) the People disclose that any material or information within their possession which tends to negate the guilt of the defendant as to the offense charged or which would tend to reduce his/her punishment therefore is contained in the attached materials.

9.  The People have items of physical evidence which they may introduce at trial as set forth in the attached reports.  These items may be inspected by the defense counsel upon reasonable request to the Office of the State's Attorney.

The People have the following items of physical evidence:   photograph(s); diagram(s); extension cord; tape; clothing items; stockings; portions of stockings; mask; shoes; rope/twine/tie items; knife; blood samples; DNA samples; fingerprints; latent prints; records and documents; hair; swabs; paper(s); receipt(s); video(s); recording(s); transcript(s); purse and contents; financial cards and documents; coat(s); telephone company records; pieces of window; cigarettes; cigarette butts; beer bottles/cans; records of the Champaign County Correctional Center; cassette tapes; cigarette packages; cigarette butts; DNA samples; charts; glass, checks; wallet; keychain; bag; cassette tapes; table; calling card; lighter; shoes; shoe strings; hairs, fibers; utility knife.   These items may be inspected by defense counsel upon reasonable request to the Office of  the State's Attorney.

Respectfully submitted,

JOHN C. PILAND
State's Attorney for Champaign County

By: _____

Heidi Ladd
Lead Prosecutor

E-FILED
Friday, 04 May, 2007  05:24:29 PM
Clerk, U.S. District Court, ILCD

## IN THE CIRCUIT COURT OF CHAMPAIGN COUNTY, ILLINOIS

During the Month of _____NOVEMBER_____, A.D. 19__98__

THE PEOPLE OF THE STATE OF ILLINOIS

vs.

DEDRIC T. MOORE

**FILED**
SIXTH JUDICIAL CIRCUIT

**A**  NOV 19 1998

_____S. _____
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

**INDICTMENT**
CT I ATTEMPT(FIRST DEGREE MURDER)
CT II HOME INVASION

For _____

CT III & IV AGGRAVATED ARSON
CT V AGGRAVATED CRIMINAL SEXUAL ABUSE

CT VI RESIDENTIAL BURGLARY

**A TRUE BILL**

Bruce Mory
Foreman of the Grand Jury

**WITNESSES**

D.Shepard, Champaign Police Department

Bond fixed in the amount of

$_____

_____
Judge

C000019

STATE OF ILLINOIS  
COUNTY OF CHAMPAIGN  } ss.

**FILED**  
SIXTH JUDICIAL CIRCUIT

Criminal No. _____    98-CF-_____

**A**    NOV 19 1998

CHAMPAIGN COUNTY, ILLINOIS S.F.

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT, CHAMPAIGN COUNTY, ILLINOIS, in the year of our Lord One Thousand Nine Hundred and __NINETY-EIGHT__

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the State of Illinois, upon their oaths do present:

THAT _____ DEDRIC T. MOORE _____

late of said County, on the ___25th___ day of ___February___ 19 _98_,

in the year of our Lord one thousand nine hundred ___Ninety-Eight___ at and within the said County of Champaign and State of Illinois aforesaid committed the offense of

ATTEMPT(FIRST DEGREE MURDER)-CLASS X FELONY,

in that the said defendant, with the intent to commit the offense of First Degree Murder, in violation of 720 Illinois Compiled Statutes, 5/9-1(a)(1), performed a substantial step towards the commission of that offense, in that he tied the feet and hands of Lori Hansen, poured a flammable liquid onto Lori Hansen and her surroundings, and then set the surroundings on fire, and flipped a lit cigarette onto Lori Hansen, with the intent to kill Lori Hansen, in violation of 720 Illinois Compiled Statutes, 5/8-4(a).

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

C000020

COUNT _____ **II** _____

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____ **DEDRIC T. MOORE** _____

_____

late of said County, on the **25th** day of _____ **February** _____ 19 **98** _____,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

**HOME INVASION-CLASS X FELONY,**

in that the said defendant, not a peace officer acting in the line of duty, knowingly and without authority, entered the dwelling of Lori Hansen, located at 512A S. New Street, Champaign, Illinois, knowing Lori Hansen to be present within that dwelling, and intentionally caused injury to Lori Hansen, in that he struck Lori Hansen about the head and body with his hands and feet, and tied Lori Hansen's hands and feet and neck, and choked Lori Hansen, knocked her down and dragged her, in violation of 720 Illinois Compiled Statutes, 5/12-11(a)2.

**FILED**

SIXTH JUDICIAL CIRCUIT

**A** NOV 19 1998

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

C 000021

COUNT _____ **III** _____

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____ **DEDRIC T. MOORE** _____

_____

late of said County, on the __25th__ day of _____ **February** _____ 19_____ **98** ____.

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

## AGGRAVATED ARSON-CLASS X FELONY,

in that the said defendant, while committing an Arson, in violation of 720 Illinois Compiled Statutes, 5/20-1, knowingly, and by means of fire, partially damaged a building of Lori Hansen, occupant, located at 512A S. New Street, Champaign, Illinois, knowing that Lori Hansen was present therein, and without the consent of Lori Hansen, in violation of 720 Illinois Compiled Statutes, 5/20-1.1(a)(1).

**FILED**
SIXTH JUDICIAL CIRCUIT

**A**
NOV 19 1998

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

C000022

COUNT _____IV_____

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____ **DEDRIC T. MOORE** _____

late of said County, on the __25th__ day of _____**February**_____ 19 __98__.

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

## AGGRAVATED ARSON-CLASS X FELONY,

in that the said defendant, while committing an Arson, in violation of 720 Illinois Compiled Statutes, 5/20-1, knowingly, and by means of fire, partially damaged a building of Harry Washburn, owner, located at 512A S. New Street, Champaign, Illinois, knowing that Lori Hansen was present therein, and without the consent of Harry Washburn, in violation of 720 Illinois Compiled Statutes, 5/20-1.1(a)(1).

**FILED**
SIXTH JUDICIAL CIRCUIT
**A**  NOV 19 1998

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

C000023

COUNT _____
## V

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____ DEDRIC T. MOORE _____

_____

late of said County, on the __25th__ day of _____ **February** 19_____ **98**_____,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

### AGGRAVATED CRIMINAL SEXUAL ABUSE-CLASS 2 FELONY,

in that the said defendant committed an act of Criminal Sexual Abuse, in violation of 720 Illinois Compiled Statutes, 5/12-15(a)(1), against Lori Hansen, in that the defendant, by the use of force, knowingly fondled and touched the breast of Lori Hansen, for the purpose of the sexual arousal of the defendant, and in doing so, caused bodily harm to Lori Hansen, by striking Lori Hansen about the head and body with his hands and feet, and tying Lori Hansen's feet and hands, in violation of 720 Illinois Compiled Statutes, 5/12-16(a)(1).

## FILED
SIXTH JUDICIAL CIRCUIT

**A** NOV 19 1998

Linda S. Frisin
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

C000024

COUNT _____VI_____

THE GRAND JURORS, Chosen, selected and sworn in and for the County of Champaign, in the name and by the authority of the People of the State of Illinois, upon their oath do further present:

That _____DEDRIC T. MOORE_____

_____

late of said County, on the **25th** day of **February** 19 **98**,

at and within the said County of Champaign and State of Illinois, aforesaid, committed the offense of

## RESIDENTIAL BURGLARY-CLASS 1 FELONY,

in that the said defendant knowingly and without authority, entered into the dwelling place of Lori Hansen, located at 512A S. New Street, Champaign, Illinois, with the intent to commit therein a theft, in violation of 720 Illinois Compiled Statutes, 5/19-3.

**FILED**
SIXTH JUDICIAL CIRCUIT

**A** NOV 19 1998

CLERK OF THE CIRCUIT COURT.
CHAMPAIGN COUNTY, ILLINOIS

Contrary to the form of the Statute in such case made and provided and against the peace and dignity of the said People of the State of Illinois.

_____

C000025

# CHAMPAIGN COUNTY SHERIFF DEPARTMENT AND CORRECTIONAL CENTER
## 204 E. MAIN STREET
### URBANA, ILLINOIS 61801-2799
### (217) 384-3821

INMATE HISTORY RECORD          TODAY'S DATE   11-18-98

FPM #
47029-0   REF DATE:  00-00-00    00:00

                                           D.O.B.
        MOORE          DEDRIC        TREMAINE    08-13-78

DESCRIPTION-
        SEX  RACE  HGT  WGT  HAIR  EYES  PLACE OF BIRTH
        M    B     604  220  BLK   BRO   URBANA                IL

MARKS-
REF DATE   TP   U/L   R/L   BODY PART   DESCRIPTION
00-00-00   MI   U           FACE        MISSINT TOP TOOTH
00-00-00   OT   U           FACE        HAS A SLIGHT MUSTACHE
00-00-00   PR   U     L     EAR         PIERCEED EAR/ONE HOLE
00-00-00   SC   U           FACE        ALL OVER

NUMBERS-
        SOC. SEC.    D.L. #        ST   FBI #          IBI #        IL DOC #
        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  M60017878230  IL   857802AB2      32113240 (+) K-53438

MARITAL STATUS-  S  RELIGION-  CHRISTIAN

REFERENCES/ADDRESSES-
REF DATE  TYP  NAME            ADDRESS            CITY          ST
ZIP
              REL/OCCUP            PHONE
08-04-98  RES                 1601 CRUSING LANE  CHAMPAIGN     IL
61820
              RESIDENCE
08-04-98  EMP  MANPOWER       SPRINGFIELD AVENUE CHAMPAIGN     IL
61820
              TEMP SERVICES
08-04-98  EMG  NO ONE

08-04-98  ATT  NOT AT THIS TIME

08-04-98  PHN  KENYO          FIFTH ST           CHAMPAIGN     IL
61820
              FRIEND               398-1687
08-03-98  RES                 1601 CRUSING LN    CHAMPAIGN     IL
61820
              RESIDENCE
08-03-98  EMP  MANPOWER       SPRINGFIELD AVENUE CHAMPAIGN     IL
61820
              TEMP SERVICES
08-03-98  EMG  JENNIFER STEVENS  UNIVERSITY AVENUE CHAMPAIGN   IL
61820
              FRIEND               352-3953
08-03-98  ATT  NOT AT THIS TIME

08-03-98  PHN  JENNIFER STEVENS  UNIVERSITY AVENUE CHAMPAIGN   IL
61820
              FRIEND               352-3953
05-23-98  RES                 108 E HEALEY       CHAMPAIGN     IL
61801

05-23-98  EMP  UNEMPLOYED

C000026

05-23-98 EMG KARON WILLI●               ● CHAMPAIGN                IL
51801
              FRIEND                  398-6442
05-23-98 ATT NONE

INMATE HISTORY RECORD          TODAY DATE  11-18-98

MOORE           DEDRIC          TREMAINE      08-13-78

05-23-98 PHN REFUSED AT 1027HRS.

03-10-98 RES                    512 S. NEW           CHAMPAIGN              IL
61820
                                    352-2308
03-10-98 EMP MANPOWER           SPRINGFIELD AVE      CHAMPAIGN              IL
61820
             FACTORY
03-10-98 EMG NO ONE

03-10-98 ATT NONE

03-10-98 PHN KARON WILLIAMS                          CHAMPAIGN              IL
61820
             FRIEND(COMP CC)        398-6442
02-10-97 RES                    512 -1/2 S. NEW      CHAMPAIGN              IL
61820
                                    356-7175
02-10-97 EMP UNEMPLOYED

02-10-97 EMG PATRICIA MOORE     512 - 1/2 S. NEW     CHAMPAIGN              IL
61820
             MOTHER                 356-7175
02-10-97 ATT MALCOMB BARNES     202 W. GREEN         URBANA                 IL
61801

02-10-97 PHN NOT AT THIS TIME

12-19-96 RES                    512 1/2 SOUTH NEW ST CHAMPAIGN              IL
61821
                                    217-356-7175
12-19-96 EMP MANPOWER INCORP    SPRINGFIELD AVENUE   CHAMPAIGN              IL
61821
             GENERAL LABORER        217-352-7875
12-19-96 EMG TRICIA HOLTZCLAW   512 1/2 SOUTH NEW ST CHAMPAIGN              IL
61821
             MOTHER                 217-356-7175
12-19-96 ATT BRENT OLMSTEAD     101 EAST MAIN STREET URBANA                 IL
61801
             PUBLIC DEFENDER        217-384-3714
12-19-96 PHN TRICIA HOLTZCLAW   512 1/2 SOUTH NEW ST CHAMPAIGN              IL
61821
             MOTHER                 217-352-7875
12-19-96 MED STATE FARM         MBR#=00000000000     BNF#=                  G#
             HEALTH INSUR.
11-18-96 RES                    512 1/2 S. NEW       CHAMPAIGN              IL
61820
                                    356-7175
11-18-96 EMP MANPOWER           SPRINGFIELD          CHAMPAIGN              IL
61820
             ELECTRONIC WARE
11-18-96 EMG TRISHA HOLTZCLAW   512 1/2 S. NEW       CHAMPAIGN              IL
61820
             MOTHER                 356-7175
11-18-96 ATT BRETT OLMSTEAD     MAIN ST              URBANA                 IL
61801
             ATT                    328-0263
11-18-96 PHN ANGELE DECKER      3RD &FIRST           ST. JOSEPH
61873

C000028

```
                              FRIEND                    469-7610
03-06-96 RES                            512 1/2 NEW ST         CHAMPAIGN         IL
61820
                                                356-7175
03-06-96 EMP BOB EVANS                  MARKET ST             CHAMPAIGN         IL
61820
              BACK LINE                         356-1006
03-06-96 EMG LILLIE MOORE               512 1/2 NEW ST        CHAMPAIGN         IL
61820
              GRANDMOTHER                       356-7175
03-06-96 ATT BRETT OLMSTEAD

03-06-96 PHN KARON WILLIAMS             STATE ST              CHAMPAIGN         IL
61820
              FRIEND                            398-4165
03-06-96 MED STATE FARM                 MBR#=00000000000      BNF#=             G#
              HEALTH INSUR.
```

C000029

**INMATE HISTORY RECORD**          **TODAY DATE  11-18-98**

MOORE              DEDRIC              TREMAINE      08-13-78

| | | | | | |
|---|---|---|---|---|---|
| 11-02-95 RES | | 1313 S. FREDRICK | CHAMPAIGN | | IL |
| 61821 | | | | | |
| | | 355-6798 | | | |
| 11-02-95 EMP WOODY'S | | HICKORY POINT MALL | DECATUR | | IL |
| | COOK | 875-2092 | | | |
| 11-02-95 EMG DANTE MOORE | | 1313 S. FREDRICK | CHAMPAIGN | | IL |
| 61821 | | | | | |
| | BROTHER | 355-6798 | | | |
| 11-02-95 ATT NONE | | | | | |

11-02-95 PHN HEATHER COBB
             COMPLETED 2210          356-8444

INCIDENCES-

| REF DATE | TYP | DATE | TIME | AGENCY | OFFICER | LOCATION/COMMENT | TYPE |
|---|---|---|---|---|---|---|---|
| 08-04-98 | ARR | 08-04-98 | 1742 | CPD | 7794 SWANEY | 1706 PRINCETON | |
| 08-04-98 | ARV | 08-04-98 | 1810 | CCCC | 7794 SWANEY | CCCC | |
| 08-04-98 | BOK | 08-04-98 | 1825 | CCCC | 5327 KOLAKOWSKI | AGCY#: C  98 09420 | |
| 08-03-98 | ARR | 08-03-98 | 0218 | CPD | 7729 DOVE | 1202 N MATTIS | P |
| 08-03-98 | ARV | 08-03-98 | 0300 | CCCC | 7729 DOVE | CCCC | |
| 08-03-98 | BOK | 08-03-98 | 2044 | CCCC | 5327 KOLAKOWSKI | AGCY#: C  98 09275 | |
| 08-03-98 | REL | 08-04-98 | 1515 | CCCC | 5353 SCHROEDER | CCCC | 3 |

(CASH BOND)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 05-23-98 | ARR | 05-23-98 | 0053 | CPD | 762 CHERRY | 100 E WHITE | |
| 05-23-98 | ARV | 05-23-98 | 0145 | CCCC | 762 CHERRY | CCCC | |
| 05-23-98 | BOK | 05-23-98 | 1023 | CCCC | 5355 CARPENTER | AGCY#: C  98 06268 | |
| 05-23-98 | REL | 06-22-98 | 1215 | CCCC | 5339 ANGLIN | CCCC | 10 |

(SERVED SENTENCE OF INCARCERATION)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 03-10-98 | ARR | 03-10-98 | 1630 | CCSD | 5563 FEENEY | LOBBY D-TOWN JAIL | |
| 03-10-98 | ARV | 03-10-98 | 1654 | CCCC | 5563 FEENEY | CCCC | |
| 03-10-98 | BOK | 03-10-98 | 2020 | CCCC | 5328 CARGO | AGCY#:   00 00000 | |
| 03-10-98 | REL | 03-11-98 | 1645 | CCCC | 5328 CARGO | CCCC | 3 |

(CASH BOND)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 02-10-97 | ARR | 02-10-97 | 1415 | CCSD | 11 | CRT RM A | P |
| 02-10-97 | ARV | 02-10-97 | 1420 | CCCC | 11 | CCCC | |
| 02-10-97 | BOK | 02-10-97 | 2005 | CCCC | 318 CAIN | AGCY#:   00 00000 | |
| 02-10-97 | REL | 02-20-97 | 0600 | CCCC | 5327 KOLAKOWSKI | CCCC | 12 |

(TRANSFER TO STATE CORRECTIONS TO SERVE SENTENCE)

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 12-19-96 | ARR | 12-19-96 | 0915 | OTHR | | PROBATION OFC/URBANA | P |
| 12-19-96 | ARV | 12-19-96 | 1000 | CCCC | 5531 MC CALLISTER | CCCC | |
| 12-19-96 | BOK | 12-19-96 | 1154 | CCCC | 5303 LENOIR | AGCY#:   00 00000 | |
| 12-19-96 | REL | 12-21-96 | 1422 | CCCC | 5303 LENOIR | CCCC | 3 |

(CASH BOND)

C000030

```
11-18-96  ARR  11-18-96  0900    CCCC    569 VALENTINE      COURT ROOM A
    P
11-18-96  ARV  11-18-96  0529    CCCC    569 VALENTINE      CCCC
11-18-96  BOK  11-18-96  1152    CCCC   5335 MCCALLISTER    AGCY#:     00 00000
11-18-96  REL  11-24-96  0900    CCCC   5341 GASS           CCCC
10
               (SERVED SENTENCE OF INCARCERATION)

03-06-96  ARR  03-06-96  1215    CCSD   5573 BURGESS        CRT RM D
    P
```

INMATE HISTORY RECORD                    TODAY DATE  11-18-98

        MOORE              DEDRIC           TREMAINE    08-13-78

03-06-96 ARV  03-06-96  1220   CCCC    5573 BURGESS         CCCC
03-06-96 BOK  03-06-96  1230   CCCC    5320 GLASS           AGCY#:     00 00000
03-06-96 REL  04-04-96  1201   CCCC    5336 CARTER          CCCC
10
              (SERVED SENTENCE OF INCARCERATION)

11-02-95 ARR  11-02-95  1645   CPD      753 CLARK           MARKET PLACE MALL
P
11-02-95 ARV  11-02-95  2140   CCCC     753 CLARK           CCCC
11-02-95 BOK  11-02-95  2202   CCCC     318 CAIN            AGCY#:     00 00000
11-02-95 REL  11-03-95  1505   CCCC    5333 LAWHEAD         CCCC
6
              (RELEASE ON PERSONAL RECOGNIZANCE)

 CRIMINAL CHARGES-
REF DATE       DOCKET/WARRANT   OFFENSE                          BOND
08-04-98       98 CF  1225      CT-1 THEFT W/P FORG*DISMISSED*
08-04-98                        CT-2 THEFT W/P FORGERY CONV
08-04-98       98 TR 17188      OP UNINSRD M/V*SENT FINE/COSTS
08-04-98       98 CF  1089      *ATT BURGLARY*
08-04-98                        *ILDOC 30 MO W/CR/TM 95 DAYS*
08-04-98       96 OP   533      *** NOT IN ON THIS ***
08-03-98       98 CF  1089      CT-1 BURGLARY                    1,000
08-03-98                        CT-2 THEFT W/P FORGERY CONV
05-23-98       98 CM   320      FTA          SENT CCCC
03-10-98       98 CM   320      OBSTRUCTING A P.O.               1,000
02-10-97       95 CF  1317      FORGERY **SENT. IDOC 4 YRS****
12-19-96       95 CF  1317      PTR/PROB/ORIG OFFENSE/FORGERY    3,000
11-18-96       95 CF  1317      FORGERY
03-06-96       93 J    330
11-02-95       95 CF  1317      FORGERY

 OTHER AGENCY HOLDS-
REF DATE       DOCKET/WARRANT   OFFENSE                          BOND
08-04-98                        SP 984492 **SENT IDOC**

 DISPOSITIONS-
REF DATE    DATE              DISPOSITION

08-03-98    08-04-98  98-CF-1089 (1) BURGLARY (2) THEFT W/PRIOR/BOND
08-03-98    08-04-98  $1000/POSTED 10%/CONT TO 9/23/98 1430 HRS CTRM A

05-23-98    06-22-98  98-CM-320 FTA / SENT TO 30 DAYS IN CCCC W/CR/TM
05-23-98    06-22-98  30 DAYS/JUDGE FORD
05-23-98    06-22-98  SENTENCE COMPLETED - RELEASED

03-10-98    03-11-98  98-CM-320 OBS. A P.O.POSTED 10% OF $1000 AND
03-10-98    03-11-98  RELEASED W/A CRT DTE OF 0423981000 CRT RM J.

02-10-97    02-10-97  95-CF-1317 CTI FORGERY.SENT. TO IL DEPT. OF CORR.
02-10-97    02-10-97  FOR A TERM OF 4YRS W/CR/TM 12 DAYS SERVED AUTH
02-10-97    02-10-97  JUDGE TOWNSEND. TRANS.TO JOLIET CORR.CENTER BY
02-10-97    02-20-97  TRANS TO JOLIET CC BY OFCR BILASCHKI AND DOC OFCR

12-19-96    12-21-96  95-CF-1317-PTR/FORGERY-POSTED 10% OF $3000 & RELEA
12-19-96    12-21-96  ED W/A CRTDTE OF 010797 AT 1030 HRS IN CRTRM A

11-18-96    11-18-96  95-CF-1317 FORGERY/SENT TO 30 MOS PROBATION G0A0032

INMATE HISTORY RECORD          TODAY DATE  11-18-98

MOORE                DEDRIC        . TREMAINE     08-13-78

11-18-96  11-18-96 90 DAYS IN CCCC/TO BE RELEASED ON 11/24/96 AT
11-18-96  11-18-96 0900 HRS/REMAINING 83 DAYS NOT TO BE SERVED AT
11-18-96  11-18-96 THIS TIME/JUDGE JENSEN
11-18-96  11-24-96 SENTENCE COMPLETED RELEASED.MDG341

03-06-96  03-06-96 93-J-330 SENT CCCC 30 DAYS W/CR/TM 0 DAYS EOS ON
03-06-96  03-06-96 4-4-96 AT 1200 HRS/JUDGE PARKINSON.
03-06-96  03-07-96 SENT STANDS  AUTH JUDGE PARKINSON
03-06-96  04-04-96 SERVED SENTENCE ,RELEASED.

11-02-95  11-03-95 95-CF-1317 FORGERY - ROR, JUDGE CLEM
11-02-95  11-03-95 CRT DATE: 01/04'96 .. CRT RM A .. 1330 HRS

C000033

**STATE'S ATTORNEY INDEX**                                        11/1

8/98

FILE DATE: 11/03/95                    CASE #: 95 CF  1317

          (LAST)       (FIRST)     (MIDDLE)
DEF. NAME: MOORE       DEDRIC      T      CODEFENDANTS?: Y
RACE: B  SEX: M  DOB:  8/13/78
   ALIAS:
  VICTIM: GARY AND AL'S
        SMITH       DEBRA
  AGENCY: C95-16287
STATE'S ATTY: LADD           DEF. ATTY: BECKETT, J
DATE OF OFFENSE: 11/02/95 DATE OF DISPOSITION:  2/13/96
ORIGINAL D.C.: 12/29/95    MIS/FEL D.C.:  1/26/96
   P/H DATE:           GJ DATE:
              DISPOSITION
        POG FORGERY-CLASS 3;24 MOS COND DISCH;COSTS;
        RESTITUTION $100;50 PSWH;PROB FEE
O/C CT CODE   STATUTE      DESCRIPTION
C   1 1080100 38-17-3(a)(2)     FORGERY/ISSUE/DELIVER DOCUMENT
O   1 1080100 38-17-3(a)(2)     FORGERY/ISSUE/DELIVER DOCUMENT

C00003

STATE'S ATTORNEY INDEX

8/98

FILE DATE:  7/15/96                          CASE #: 95 CF  1317

            (LAST)           (FIRST)          (MIDDLE)
DEF. NAME: MOORE            DEDRIC           T            CODEFENDANTS?: Y
RACE: B   SEX: M   DOB:  8/13/78
    ALIAS:
   VICTIM: PTR COND.DISCH
           STATE
   AGENCY: U96-3757
STATE'S ATTY: FRUEHLING                    DEF. ATTY:
DATE OF OFFENSE:  7/05/96 DATE OF DISPOSITION: 11/15/96
ORIGINAL D.C.:                  MIS/FEL D.C.:
     P/H DATE:                      GJ DATE:
                        DISPOSITION
            ADMITS & STIPS:30 MOS PROB;COSTS;FEE;50 PSWH;$100
            REST;90 DAYS CCCC;$10/MO PROB FEE
            11/18/96 ORDERS ENTERED; REM HRG:9/15/97
 O/C CT CODE    STATUTE          DESCRIPTION
 O   1 5020200 56.5-705(c)       MANU/DEL CANNABIS/10-30 GRAMS
 O   1         FILED PTR AS TO    THIS INCIDENT

8/98

FILE DATE: 12/04/96                    CASE #: 95 CF   1317

            (LAST)         (FIRST)        (MIDDLE)
DEF. NAME: MOORE          DEDRIC         T        CODEFENDANTS?: Y
RACE: B   SEX: M   DOB:  8/13/78
   ALIAS:
  VICTIM: COBB           HEATHER
  AGENCY: P96-452
STATE'S ATTY: MCAVOY                    DEF. ATTY: BARNES, MA
DATE OF OFFENSE: 12/02/96 DATE OF DISPOSITION:  1/07/97
ORIGINAL D.C.:                  MIS/FEL D.C.:
    P/H DATE:                      GJ DATE:
                             DISPOSITION
            FOUND IN VIOLATION;RESENT ON 2/10/97 TO
            4 YEARS D.O.C.
            2/19/97-APPEAL DISM;MOTION FOR IMPCT INCAR-DENIED
O/C CT CODE    STATUTE         DESCRIPTION
O    1  999850 38-12-30        VIOLATE ORDER PROTECTION
O    1         FILED PTR AS TO  THIS INCIDENT

C000036

**STATE'S ATTORNEY INDEX**

8/98

FILE DATE:  3/10/98                    CASE #: 98 CM    320

         (LAST)          (FIRST)        (MIDDLE)
DEF. NAME: MOORE          DEDRIC        TREMAINE   CODEFENDANTS?:
RACE: B   SEX: M   DOB:  8/13/78
  ALIAS:
  VICTIM: GALLO            DETECTIVE
  AGENCY: C98-0
STATE'S ATTY: JETT                    DEF. ATTY: PD
DATE OF OFFENSE:  3/10/98 DATE OF DISPOSITION:  6/22/98
ORIGINAL D.C.:  4/23/98        MIS/FEL D.C.:  6/22/98
    P/H DATE:                    GJ DATE:
                     DISPOSITION
          POG: CT I, CLASS A; 12 MOS. C/D; 30 DAYS CCCC W/CR
          30 DAYS; $5 ACF; COSTS; 100 HRS. PSW

| O/C | CT | CODE | STATUTE | DESCRIPTION |
|-----|----|------|---------|-------------|
| C | 1 | 1330000 | 38-31-1 | RESIST/OBSTRUCT PEACE OFFICER |
| O | 1 | 1330000 | 38-31-1 | RESIST/OBSTRUCT PEACE OFFICER |

STATE'S ATTORNEY INDEX                                 11/1
8/98

FILE DATE:  8/04/98                    CASE #: 98 CF   1089

              (LAST)           (FIRST)        (MIDDLE)
DEF. NAME: MOORE            DEDRIC          T           CODEFENDANTS?:
RACE: B   SEX: M    DOB:  8/13/78
    ALIAS:
    VICTIM: KUHN            LAYLA
    AGENCY: C98-9275
STATE'S ATTY: LADD                      DEF. ATTY: PIRAINO, E
DATE OF OFFENSE:  8/01/98 DATE OF DISPOSITION: 11/03/98
ORIGINAL D.C.:  9/23/98        MIS/FEL D.C.: 10/21/98
    P/H DATE:                        GJ DATE:
                                 DISPOSITION
          POG: CT IV, CLASS 3; 30 MOS. DOC W/CREDIT 95 DAYS;
          $10 ACF; COSTS; DISMISS CTS I, II, & III AND 98-CF
          -1225
O/C CT CODE    STATUTE             DESCRIPTION
O    1 1110000 38-19-1             BURGLARY
O    2 1014100 38-16-1(a)(1)       THEFT/CON/PRIOR CONVIC <300
C    4  725100 38-8-4(A)           ATTEMPT
C    4 1110000 38-19-1             BURGLARY



# Champaign Police Department



## Report Form

This document contains neither recommendations or conclusions of CPD. It is property of CPD and is loaned to you or your agency; it and its contents are not to be distributed by you or outside your agency.

| Any offender suspected of using | | Date/Time Reported 02/25/1998 0259 Wed | | | | | | Event # 79802383 | |
|---|---|---|---|---|---|---|---|---|---|

| Offense Descriptions | Crime Code | CSA | Act. | # Pr. | Force | Circumstances | Place | Weapon | Bias |
|---|---|---|---|---|---|---|---|---|---|
| Murder-First Degree | 0110 | A | | | Yes | 010 | 090 | 65 | ** |
| Aggravated Arson | 1025 | | | | Yes | 010 | 090 | 65 | ** |
| Home Invasion | 0650 | | | | Yes | 010 | 090 | 65 | ** |
| Agg Criminal Sexual Abuse | 1562 | | | | Yes | 010 | 090 | 65 | ** |
| Motor Vehicle Theft | 0910 | | | | Yes | 010 | 304 | 65 | ** |

| Date/Time Occurred (Start) 02/25/1998 0255 Wed | Date/Time Occured (End) 02/25/1998 0259 Wed | | Date/Time Reported 02/25/1998 0259 Wed | Time Dispatched 0300 | Time Arrived 0302 | Geo Code 573-01 F |
|---|---|---|---|---|---|---|

| Assigned Officer Shipley, C #7772 | Other Officers Bunyard, M #7763 | Watch 3 | Related Case Number | Investigator Assigned Shepard, D #7797 | |
|---|---|---|---|---|---|

| Location Occured 512 S. New | City Champaign, | Location Type Apartment |
|---|---|---|

## VICTIM

| Name: Last Hansen | First Lori | Middle K | Address 512 A  S. New St. | City Champaign, Il. | Tx # () 359-4843 |
|---|---|---|---|---|---|

| AKA (includes maiden names) | | Alias DOB(s) | | | Employment Code D |
|---|---|---|---|---|---|

| Employer/School | Address | City | | Tx # | |
|---|---|---|---|---|---|

| Injury Code O | Victim Code I | Hospital Covenant | Treated by Dr. Parasakthi | Gang | Gang Name |
|---|---|---|---|---|---|

| DOB 02251998 | Age 28 | Race W | Sex F | Ht. 508 | Wt. 120 | Hair Bro | Eyes Grn | Business Name | |
|---|---|---|---|---|---|---|---|---|---|

| Corporation/Owner Name | | Corporate Address | | City, State | |
|---|---|---|---|---|---|

| Vehicle Color Gry | Year 1984 | Make Toyota | Model | Body Pickup Truc | License 1459JD | VIN JT4RN60S7E5012959 |
|---|---|---|---|---|---|---|

| Name: Last Washburn | First Harry | Middle H | Address 916 Lincolnshire | City Champaign, Il. | Tx # () 356-1758 |
|---|---|---|---|---|---|

| AKA (includes maiden names) | | Alias DOB(s) | | | Employment Code Y |
|---|---|---|---|---|---|

| Employer/School Self Employed | Address | City | | Tx # | |
|---|---|---|---|---|---|

| Injury Code | Victim Code I | Hospital | Treated by | Gang | Gang Name |
|---|---|---|---|---|---|

| DOB 06031947 | Age 50 | Race W | Sex M | Ht. 507 | Wt. 210 | Hair Gry | Eyes Haz | Business Name | |
|---|---|---|---|---|---|---|---|---|---|

| Corporation/Owner Name | | Corporate Address | | City, State | |
|---|---|---|---|---|---|

| Vehicle Color | Year | Make | Model | Body | License | VIN |
|---|---|---|---|---|---|---|

## SYNOPSIS

Officers responded to scene of a fire at 512 S. New. Upon arrival, it was learned that an unknown male suspect forcefully entered the victim's apartment. The suspect battered, robbed, and sexually abused the female inside the apartment. The suspect then set fire to the apartment, and fled in victim's vehicle.

| Assigned Officer Shipley, C #7772 | Location Occured 512 S. New | City Chm |
|---|---|---|

C 00 0039
T97 904

| Date/Time Occurred (Start) | Date/Time Reported | Event # |
|---|---|---|
| 02/25/1998 0255 Wed | 02/25/1998 0259 Wed | 79802383 |

### WITNESS

| W ☐ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Moore | , Lillie | J | B | F | 11231938 | Retired | |
| Z ☒ | Address | | | City, State | | | Home # | Work # |
| | 512 1/2 S. New | | | Champaign, Il. | | | (217) 352-2308 | |

### WITNESS

| W ☐ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Holtzclaw | , Patricia | | B | F | 12221956 | | |
| Z ☒ | Address | | | City, State | | | Home # | Work # |
| | 1605 E. 3rd St | | | Corinth, MS | | | (601) 281-9848 | |

### WITNESS

| W ☐ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Scott | , Timothy | A | W | M | 07101977 | Parkland Student | |
| Z ☒ | Address | | | City, State | | | Home # | Work # |
| | 618 W. Green #2 | | | Champaign, Il. | | | (217) 359-8519 | |

### WITNESS

| W ☐ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Mulligan | , Francis | Brian | W | M | 05071977 | Menard's | |
| Z ☒ | Address | | | City, State | | | Home # | Work # |
| | 618 W. Green #2 | | | Champaign, Il. | | | (217) 359-8519 | (217) 359-6100 |

### WITNESS

| W ☐ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Eastham | , Matthew | E | W | M | 09111968 | Collegiate Cap & Gown | |
| Z ☒ | Address | | | City, State | | | Home # | Work # |
| | 618 W. Green #3 | | | Champaign, Il. | | | | (217) 351-9500 |

### WITNESS

| W ☒ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Sawka | , Dena | | W | F | | Covenant | |
| Z ☐ | Address | | | City, State | | | Home # | Work # |
| | 1400 W. Park | | | Urbana, Il. | | | | () 337-2131 |

### WITNESS

| W ☒ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☒ | Ricord | , Bob | A. | W | M | 09071957 | Kmart | |
| Z ☐ | Address | | | City, State | | | Home # | Work # |
| | 510 S. Elm St. | | | Champaign, Il. | | | () 356-8578 | () 367-3331 |

### WITNESS

| W ☒ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Perkinson | , David | W. | W | M | 02061962 | Colorado Steakhouse | |
| Z ☐ | Address | | | City, State | | | Home # | Work # |
| | 510 S. Elm St. | | | Champaign, Il. | | | () 356-8578 | () 359-6776 |

### WITNESS

| W ☒ | Name | | | Race | Sex | DOB | Employer/School | |
|---|---|---|---|---|---|---|---|---|
| R ☐ | Perkinson | , Beverly | D | W | F | 02221943 | Carlos O'Kelly's | |
| Z ☐ | Address | | | City, State | | | Home # | Work # |
| | 510 S. Elm St. | | | Champaign, Il. | | | () 356-8578 | () 355-9680 |

| Assigned Officer | Location Occured | City |
|---|---|---|
| Shipley, C #7772 | 512 S. New | Ch |

0000040
(404)

Page 3 of 4

| Date/Time Occurred (Start) | Date/Time Reported | Event # |
|---|---|---|
| 02/25/1998 0255 Wed | 02/25/1998 0259 Wed | 79802383 |

## RELATIONSHIP MAITRIX

| Offensse | Victim | Rel. | Offender |
|---|---|---|---|
| Aggravated Arson | Washburn, Harry H | ST | |
| Offensse | Victim | Rel. | Offender |
| Murder-First Degree | Hansen, Lori K | ST | |

## SCENE

| Photos Taken [X] | Film # | Scene Processed [X] | Latents Lifted [ ] |
|---|---|---|---|
| Badge # 7763 | | Badge # 7797 | Badge # |

Evidence Collected
- [X] Blood
- [ ] Glass Fragments
- [X] Hairs
- [ ] Footwear Impressions
- [ ] Pry Marks
- [ ] Fibers
- [ ] Debris
- [ ] Other (Describe)

## PROPERTY

| Description | Loss | Quant. | Measure | Prop. | Drug | Serial # | Value |
|---|---|---|---|---|---|---|---|
| 512 S. New, Apt A | 2 | 1 | | 646 | | | 5,000.00 |

| Evidence? | Where Item Located: | | Leads # | Dispo. |
|---|---|---|---|---|
| No | [ ] Stolen From   [ ] Seized From | | | |

| | Total Value | 25,000.00 |
|---|---|---|

## OFFENDER

| Name | Address | City |
|---|---|---|
| | | |

| AKA (includes maiden names) | Alias DOB(s) | Employment Code | Tx # |
|---|---|---|---|
| | | | |

| Description (Clothing etc.) | Social Security # | DLN | DL State |
|---|---|---|---|
| Baggie Clothes,red coat,blue jeans,grn shoes | | | |

| Employer/School | Address | City | Tx # |
|---|---|---|---|
| | | | |

| DOB | Age | Race | Sex | Ht. | Wt. | Hair | Eyes | Distinguishing Features |
|---|---|---|---|---|---|---|---|---|
| | 25 | B | M | 509 | 160 | XXX | Bro | Dark complected |

| Injury Code | Gang | Gang Name | Show Up: Date/Time | Show Up Location | Show Up Officer |
|---|---|---|---|---|---|
| N | | | | | |

| Miranda | Ofc. Name | Miranda Date/Time |
|---|---|---|
| No | | |

| Vehicle Color | Year | Make | Model | Body | License | VIN |
|---|---|---|---|---|---|---|
| Gry | 1984 | Toyota | | Pickup Truc | 1459JD | JT4RN60S7E5012959 |

| **Can suspect be identified?** ............ F | Yes | **Can suspect be named?** ................... I | No |
|---|---|---|---|
| **Can suspect be located?** ................... G | No | **Can suspect be described?** ............... J | Yes |
| **Has suspect been previously seen?** H | No | **Can suspect vehicle be identified?** .. K | Yes |

| Assigned Officer | Location Occured | City |
|---|---|---|
| Shipley, C #7772 | 512 S. New | Ch... |

C 0 0 0 4 1

904

Page 4 of 4

## VEHICLE

| Date/Time Occurred (Start) | Date/Time Reported | Event # |
|---|---|---|
| 02/25/1998 0255 Wed | 02/25/1998 0259 Wed | 79802383 |

| Color | Year | Make | Model | Body Style | License # | State | Month | Year |
|---|---|---|---|---|---|---|---|---|
| Gry | 1984 | Toyota | | Pickup Truck | 1459JD | IL | 06 | 98 |

| VIN | Vehicle Locked ☒ | Insured By | | Value |
|---|---|---|---|---|
| JT4RN60S7E5012959 | Keys in Car ☒ | | | $2,000.00 |

| Owner By License | Name: Last Hansen | First Lori | Middle K. | Race W | Sex F | DOB 04101969 |
|---|---|---|---|---|---|---|

| Address 512 S. New | Home Phone () 359 - 4843 | Work Phone | Employer U of I student |
|---|---|---|---|

| Owner By VIN | Name: Last Same | First | Middle | Race | Sex | DOB |
|---|---|---|---|---|---|---|

| Address | Home Phone | Work Phone | Employer |
|---|---|---|---|

Describe Damage

Misc Identifiers/Accessories

Location Recovered

Date/Time Recovered

Towed by

Towed to

Eligible for Release **No**

Owner or Reporting Agency Notified by

Date/Time Notified

Leads #

Entered by

Canceled by

| | | |
|---|---|---|
| Is there a significant MO present | A | No |
| Was there a witness to the offense? | B | No |
| Was there a definite limited opportunity for anyone except suspect to commit offense? | C | No |
| Is there usable physical evidence? | D | No |
| Is stolen property traceable | E | No |

Data Entry By | Copied By | Copied For: Inv. ☐ SA ☐ Other ☐ | Filed By | Leads #

Investigator Assigned **Shepard, D #7797** | Cleared By

Supplemental Reports Pending ☒ 744, 746, 736, 714

By Whom **Bunyard, M #7763** | Followup by Assigned Officer ☐

Reporting Officer's Signature C W Shipley | Badge/ID No 7772 | Date 02-25-98 | Approved (Supervisor) | Badge/ID No 904 | Date

VERSION 97-07-15a




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT 02251998 025900 | DATE AND TIME OF THIS REPORT Same | CONTROL NUMBER 79802383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION Murder-First Degree | LOCATION 512 S. New | | |

On 02-25-98, I was dispatched to 512 S. New, Apt A, reference a Arson report.
Multiple officers assisted with this call. Ofcr. Atteberry 761, and officer Martin,
were the first to arrive at the scene at 0302 hrs. The Champaign Fire Dept.
arrived at the scene at 0303 hrs. Sgt. Summers had also arrived prior to me.
Ofcr. Bunyard and I, were assigned as a two officer unit. Ofcr. Bunyard also
assisted with this call.

At approximately 0320 hrs, Ofcr. Bunyard and I arrived at the scene. Upon
arrival , I noticed that the Fire Dept. had extinguished the fire. The dwelling
appeared to have been severely damaged by fire. That observation was made
only from the outside. I never entered the dwelling. Immediately after I arrived, I
spoke with the victim, Lori.

Lori told me essentially the following. Lori arrived at her apartment this morning
at approximately 0255 hrs. Lori entered her front door and was attempting to
close the door behind her. Before Lori could get the door closed, an unknown
male suspect forced his way through Lori's partially open door. Lori attempted to
stop the suspect from entering, but she was overpowered by his strength. Once
inside, the suspect punched Lori multiple times throughout her face and body. I
could see apparent bruises on her face and body. The suspect tied Lori's hands
together, using some type of twine or electrical wire. The suspect immediately
started asking Lori, "where is Chad?" The name Chad meant nothing to Lori.
The suspect also asked,"where is Eric." The name Eric also meant nothing to
Lori. Lori thought the suspect may have mistaken her for someone who knew
Chad or Eric, and she thought the suspect was looking for them. The suspect
also used a twine rope or electrical wire to tie her feet together. The suspect
then dragged Lori to her bathtub, and forced her to get into the tub. The suspect
used some type of tape to cover her mouth so she could not scream. The
suspect started rummaging through her apartment, looking for money. The
suspect got Lori's purse from somewhere inside the apartment, and got out
some of her ATM bank cards. At some point during the contact, the suspect
forced Lori to give him her personal identification numbers for her ATM cards.
Lori provided the suspect with those proper PIN numbers. Lori did not have her
account numbers available at this time, but told me the accounts were from First
of America and Bank One banks. The suspect placed some type of end table on
Lori as she was in the tub. Lori thought the suspect was going to leave her at
the time to use her ATM cards. The suspect left the bathroom for a few seconds,
but Lori does not believe he left the apartment. The suspect returned into the

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER C. W. Shipley | BADGE/ID NO. 7772 | DATE 02-25-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. 904 | DATE |

C 0 0 0 0 4 3




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT<br>02251998 025900 | DATE AND TIME OF THIS REPORT<br>Same | | CONTROL NUMBER<br>79802383 | CASE NUMBER |
|---|---|---|---|---|
| CLASSIFICATION<br>Murder-First Degree | | LOCATION<br>512 S. New | | |

bathroom, and dragged Lori out of the tub. Lori told me the suspect hog-tied her, by tying her hands to her feet with twine. The suspect made Lori lay face down in the area of her living room and/or kitchen. The suspect accused Lori of giving him a false PIN number. Lori told him that she did not give him a false number, and begged him to leave, go try the number and not to return.

The suspect then put his hands inside Lori's shirt and started fondling her breasts. The suspect also put his mouth on her breast. The suspect stopped fondling her after a few brief moments. Lori told me she was not sexually assaulted.

As Lori was still laying face down, Lori felt a warm liquid trickling on her head/hair. Lori believes the suspect urinated on her head. Lori then noticed the suspect was pouring some type of liquid on her and around her living room. Lori thought that liquid smelled like paint, or possibly some type of fire accelerant. The suspect then threw a cigarette on the floor, igniting the accelerant on her floor. As the fire started, Lori and the suspect continued to struggle briefly, but the suspect eventually had to leave because the fire got to large and dangerous. The suspect then left Lori laying on the floor, with her hands and feet still tied together. Lori narrowly escaped death or injury by crawling/hopping to a bedroom that was not yet on fire. Lori managed to close that bedroom door and start untying her hands and/or feet. Lori quickly opened a bedroom window and jumped out to save herself. Lori immediately went to a neighbor to call police.

After the suspect left, Lori noticed that her truck was missing from the street in front of her apartment. Lori remembered that the suspect took her keys at some point throughout the contact. Lori's truck, a 1984 Toyota, gray in color with gray topper, license 1459JD, was most likely used by the suspect to get away from the scene. That information was broadcasted immediately to all local police departments by METCAD, but no officers were able to locate her truck. Lori was also concerned that the suspect possessed a key to her parents home. That key was on the ring of keys which the suspect took. I also told METCAD to give that information to UPD, so they could check their residence at 2302 Brookins Circle.

I rode in the ambulance with Lori to Covenant Hospital, where I continued to interview her. At Covenant, Lori was treated by Dr. Parasakthi, and registered

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER<br>C. W. Shipley | BADGE/ID NO.<br>7772 | DATE<br>02-25-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO.<br>904 | DATE |

C000044

 

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, It and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT 02251998 025900 | DATE AND TIME OF THIS REPORT Same | | CONTROL NUMBER 79802383 | CASE NUMBER |
|---|---|---|---|---|
| CLASSIFICATION Murder-First Degree | | LOCATION 512 S. New | | |

nurse, Dena. Dena took several items of evidence from Lori's body, and gave those items to me for evidentiary purposes.

I have packaged the following items as evidence. Item 1, a sample of the victim's blood, taken by Dena at Covenant. Item 2, a fingernail specimen taken by Dena at Covenant. Item 3, a sample of blood taken from victim's hands, unknown if victim's or suspect's blood. Item 4, sample of victim's hair. Item 5, a standard cotton swab, the same as Dena used to collect other evidence.

Later this morning, Lori met with Detective D. Shepard, to give him further information. After their meeting, I spoke with Lori again to clarify some of the information she had given me earlier. Lori told me essentially the following.

The attack occurred early this morning, when Lori returned home, from driving a friend of her's home. Lori thinks that she had approximately $25.00 in currency in her purse. She is not certain if the suspect took her purse from the house, but she believes he emptied the contents of her purse, and took cash and her bank cards. Lori did not actually see a gas can with the suspect, but smelled something like an accelerant. Lori said the suspect must have brought a gas can, since she had nothing like that in or outside of her apartment.

Lori could only describe the suspect as being a black male, 20-30 years of age, 5"09", 160 lbs, wearing baggie clothes, a red jacket with hood pulled up, blue jeans, and green shoes. She described the suspect as being dark complected and having a low tone of voice. Lori said she could probably identify the suspect if she saw him again.

Earlier this morning, Harry met me at Covenant. Harry explained that he was the owner of Lori's apartment. Harry estimated the damage of the apartment at $25,000.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER C.W. Shipley | BADGE/ID NO. 7772 | DATE 02-25-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) Sgt. S. Douglas | BADGE/ID NO. 904 | DATE |

C000045




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98 0300 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Attempted Murder | 512 S. Elm St. | | |

Officers were dispatched to a possible burglary with smoke coming from the apartment at 510 S. New St.

Officer Martin and I were the first officers on scene, and noticed that there were flames visible in the front window of 512 S. New St. There were several persons in the yard in front of 512 S. New St., and we initiated contact with these persons.

A female, later learned to be the victim, Lori, approached me and advised that she was unaware of whether 512 1/2 (attached to 512 S. New St. as a duplex) S. New St. was occupied.

I advised METCAD that we needed CFD for an involved fire, and then I attempted to contact anyone inside of 512 1/2, with no answer to my knocking.

While waiting for CFD's arrival, I asked Lori what part of her apartment was burning, and how it started. Lori exclaimed that "everything that he poured gas on and lit is on fire".

I asked Lori who had done this and she said that the guy who had beaten her had set fire to her apartment.

I began conducting a preliminary interview with Lori. I asked her very basic questions regarding this incident and Lori provided me with the following:

An unknown B/M forced his way into her home and asked for "Chad and Eric". Lori told him that she didn't know who he was talking about. The suspect "beat the shit out of" her, tied her up, "pissed" on her head, stole the keys to her truck (as well as an item with her mother's name and address and a house key to her mother's home). The suspect then set fire to her apartment, while she was inside, tied up.

Lori provided the following description of the suspect:

B/M wearing a large, red jacket with a hood, and blue jeans.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | C 0 0 0 0 4 b |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 022598 @ 0259hrs | 022598 @ 0330hrs | 798-2383 | |
| **CLASSIFICATION** | | **LOCATION** | |
| Aggravated Arson/Attempted Murder | | 512-A S. New Street, Champaign | |

On the above date at 0330hrs I responded to 514-A S. New Street in reference
to photographing a recent duplex in which an arson and attempted murder had
recently taken place. Upon my arrival Ofc. T. Atteberry was on the scene and
directed me to the residence. I met with CFD Lt. Bain (Arson investigator) who
was conducting his investigation.

I began photographing the scene with film numbers 1407 (frames 14-24) and
836 (frames 1-12). A log of the photos are as follows:

Film 1407:
Frame:

    14. Outside of residence facing front door.
    15. same as above but at different angle.
    16. Back yard showing outside of back bedroom window.
    17-24. same as #16

Film 836
Frame:

    1-5. Inside residence of back bedroom showing back window and picture
        on table under window.
    6-9. Inside of bathroom, inside of tub showing extension cord, and toilet
        showing water with oil deposits.
    10. Knife found in the hallway near door to front bedroom.
    11. open drawer in kitchen
    12. Tape in the back yard of 510-A S. New Street, suspected of coming
        from victim's hair.

I collected an extension cord found in the bath tub of the residence which is
suspected of being the item used to tie the victim up with while she was in the
tub. I also collected a knife in the hallway near the door to the front bedroom, a
piece of tape found in the back yard to 510-A S. New Street which is from the
victim's hair and a roll of clear tape found near the curb near the driveway to
512-A S. New Street. All of these items have been placed into evidence.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 714 | 022598 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) Sgt. | BADGE/ID NO. 905 | DATE C000047 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT 022598/ | DATE AND TIME OF THIS REPORT 022598/0545 | CONTROL NUMBER 798-2383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION Agg Arson/Home Invasion | LOCATION 512 New | | |

In reference to this file, I talked with Patricia who had arrived at the scene just after Police had arrived.

Patricia stated that her mother and her had just arrived back in town from a nine hour drive.   Patricia said that her mother lives in the apartment next to the victims.   Patricia said that she does not know much about the victim, only that she has been there for several months.   Patricia stated that they did stop several times during the trip home, which did prolong the trip somewhat. Patricia stated she did not know of any problems that the victim may have had.

I then talked with  Francis and Timothy who live at 618 W Green. Timothy and Francis were both standing on the rear porch of their residence when I met with them.   They stated that they were in the living room and heard the sirens and observed the lights and came out to see what was going on.

Timothy and Francis stated that they did not observe any strange activity in the past several hours.   They stated that they both did not know the victim, only observed her coming and going.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. 736 | DATE 02-25-98 |
|---|---|---|---|
| DATA ENTRY BY Brian Karbach | APPROVED (SUPERVISOR) | BADGE/ID NO. 805 | DATE |

3000048



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02251998 0255 | 02251998 0535 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Agg Arson & Home Invasion | 512 S. New |

On 02/25/98 at approximately 0255 hours, METCAD dispatched a burglary call with a possible fire. I responded to the scene to assist.

Upon arrival, I assisted other officers to keep people away from the residence while the Champaign Fire Department personnel were working at putting out the fire. I saw a green vehicle pull up on the south side and two black females exited, later identified as Lillie and Patricia. Lillie is Patricia's mother. I spoke with both Lillie and Patricia and learned they had just gotten back in town from Mississippi. Lillie is the resident in the south portion of the duplex.

My primary duty while at the scene was to prevent entrance to the immediate area of the duplex. I also spoke with some of the residents in neighboring houses. The first person with whom I spoke was Lillie. Lillie told me she has lived in the south portion of the duplex for approximately two (2) years. Lillie did not know Lori by name but said they had spoken briefly several different times. Lillie said she did not know Lori to have had any problems with anybody nor she ever heard any fighting or arguing from Lori's half of the duplex.

Lillie told me the only odd thing that happened since Lori moved in was back in August or September of 1997. According to Lillie, early one morning at approximately 0300 hours in the summer of 1997, an unidentified white male knocked on her window asking for an unidentified person named Robert. Lillie had never seen this man before and would not be able to identify him if she saw him again. Lillie said he may have been looking for the people who lived in the other half before Lori moved in.

Lillie told me one of the tenants of the other half of the duplex was a man named Charles and his wife Sarah. She was not certain of their last name and she did not associate with them. Lillie said he sometimes walked up and down the street naked and was only able to say he had some problems that made him move out. She was not sure what these problems were.

Lillie said she had been gone to Mississippi since the morning of Friday, 02/20/98. She and her daughter, Patricia, had returned from Mississippi approximately five (5) minutes after police and fire personnel arrived at her duplex reference this case. Lillie told me the only person who had access to her duplex while she was gone this weekend was her grandson, Donrico.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | L.A. STAPLES | 7746 | 02251998 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| | | 905 | 8800049 |

## SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency; it and its contents are not to be distributed by you or outside your agency.

_____ of _____

| Date and Time of Original Report | Date and Time of This Report | Event # | Case Number |
|---|---|---|---|
| 022598     0259 | 022598      0530 | 798-02383 | |

| Classification | Location |
|---|---|
| Attempted Murder | 512 S. New |

**DETAILS OF INVESTIGATION (Additional Suspect, Victim, Witness Info)**

On 022598 at approximately 0259 I responded to 512 S. New in reference to a burglary/arson. Upon arrival Ofc. Tim Atteberry gave me a paper bag containing the following items:

- 1 pr. Levis size 7
- 1 lg. gray jacket
- 1 pr. white sox
- 1 pr jockey for her underwear - white
- 1 green long sleeve shirt
- 1 size 34 A Chantilly Maiden firm bra, which was given to CFD Arson Investigator Ed Bain.

It should be noted the clothes were soiled with some time of fire accelerant. I kept posession of the clothes and logged them into evidence on 022598 at 0515 and placed them in the impound bay. Lori was wearing the clothes during the time of the attempted murder.

At Covenant Medical Center I took pictures of Lori's injuries roll # 1410 1-24 and roll 1426 #1+2.

| Referral Case Numbers | Signature Reporting Officer | Badge/ID No. | Date |
|---|---|---|---|
| | Mary Bunyard | C000051 | |
| Typed By | Approved (Supervisor)  Sgt. A Bain | | |

# EVIDENCE

CHAMPAIGN, ILLINOIS 61820

| | EVIDENCE | |
|---|---|---|
| | SAFEKEEPING | |
| | CONTRABAND | |
| | RECOVERED PROPERTY | X |

OFFENSE NO. 79P-2393

OFFICER'S NAME AND NUMBER: Burns 2dd 7

| | DATE AND TIME OF OFFENSE | SEIZED |
|---|---|---|
| | 02259 | 0259 |

TYPE OF CRIME

| | JUVENILE | ADDRESS | HOME PHONE | WORK PH. |
|---|---|---|---|---|

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH |
|---|---|---|---|---|
| OWNER | Hansen | LoRi | | 512 S New |
| SUSP. #1 | | | | |
| SUSP. #2 | | | | |
| SUSP. #3 | | | | |
| VICTIM | | | | |
| OTHER | | | | |

| NO. | EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CKED | SERIAL NUMBER | DATA # | BIN |
|---|---|---|---|---|---|---|
| 1 | 52 | levis size 7 blue | | | | |
| 2 | 53 | 1 lg grey jacket | | | | |
| 3 | 54 | 1 pr white sox | | | | |
| 4 | 55 | 1 pr jockey underwear → white | | | | |
| 5 | 56 | gren long sleeve shirt | | | | |

**EVIDENCE ROOM USE ONLY**

REMARKS:

[X] RETAIN UNTIL NO EVIDENTIARY VALUE

[ ] RELEASE ON DEMAND

[ ] DESTROY

| INITIAL STORAGE BY OFFICER | | CKER # _____ | | |
|---|---|---|---|---|
| [ ] | [X] | [ ] | | |
| IMPOUND BLDG. | IMPOUND BAY | OTHER _____ | | |

DATE AND TIME EVIDENCE BOOKED

| EVIDENCE CLERK |
|---|

C000052

2:07-cv-02015-MPM-DCB    # 1125    Page 35 of 35

# EVIDENCE

**CHAMPAIGN, ILLINOIS 61820**

| EVIDENCE | |
| --- | --- |
| SAFEKEEPING | ☐ |
| CONTRABAND | ☐ |
| RECOVERED PROPERTY | ☒ |

| TYPE OF CRIME | JUVENILE |
| --- | --- |
| Attempted Murder | |

DATE AND TIME
OF OFFENSE: 022558@0a55
SEIZED: 0a558@0330

OFFENSE NO. **798-2383**

OFFICER'S NAME AND NUMBER: Caudill 7/...

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHO |
| --- | --- | --- | --- | --- | --- | --- | --- |
| OWNER | | | | | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Hansen | Lori | | | 512-A S. New St., Champaign | | |
| OTHER | | | | | | | |

| NO. EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEAD CLEARED | SERIAL NUMBER | DATA # | BIN |
| --- | --- | --- | --- | --- | --- |
| 1 | ¢3 Extension cord | | | | |
| 2 | 42 Piece of tape | | | | |
| 3 | 45 Roll of clear tape | | | | |
| 4 | 46 Knife w/ simulated wood handle | | | | |

**REMARKS:**

☒ RETAIN UNTIL NO EVIDENTIARY VALUE  ☐ RELEASE ON DEMAND  ☐ RELEASE ON DEMAND  ☐ DESTROY

| INITIAL STORAGE BY OFFICER | ☐ IMPOUND BLDG. | ☐ IMPOUND BAY | ☐ OTHER | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
| --- | --- | --- | --- | --- | --- |
| K | | | | | |

CKER #: 11

EVIDENCE ROOM USE ONLY

C000053

E-FILED
Friday, 04 May, 2007 05:55:06 PM
Clerk, U.S. District Court, ILCD

# EVIDENCE

CHAMPAIGN, ILLINOIS 61820

| OFFENSE NO. |
|---|
| 798-02383 |

| | SAFEKEEPING | X |
| | CONTRABAND | |
| | RECOVERED PROPERTY | |

OFFICER'S NAME AND NUMBER: C.W. Shrples

| DATE AND TIME OF OFFENSE | TYPE OF CRIME | JUVENILE |
|---|---|---|
| 05-98  0255 | Attempted Murder | |
| SEIZED 02-25-98  0303 | | |

| LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|
| OWNER | | | | | | |
| SUSP #1 | | | | | | |
| SUSP #2 | | | | | | |
| SUSP #3 | | | | | | |
| VICTIM #3 Hansen, Lori  K. | | | 04-10-69 | 512 S. New, Apt A  Champaign, IL. | 359-4843 | 77 |
| OTHER | | | | | | |

| NO. EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LENS CHECKED | SERIAL NUMBER | | DATA # | BIN |
|---|---|---|---|---|---|---|
| 1 | 47 | Sample of victim's blood, taken by Coverat | | | | |
| 2 | 48 | Fingernail specimen, taken by Coverat | | | | |
| 3 | 49 | Sample of blood taken from victim's hands, unknown if victim's or suspects. | | | | |
| 4 | 4A | Sample of victims hair. | | | | |
| 5 | 5P | Standard Cotton Swab. | | | | |
| | | | | | | |

| | EVIDENCE ROOM USE ONLY |
|---|---|

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE    ☐ RELEASE ON DEMAND    ☐ DESTROY

| | | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
|---|---|---|---|

| INITIAL STORAGE BY OFFICER | ☒ | LOCKER # 3 | ☐ IMPOUND BLDG. | ☐ IMPOUND BAY | ☐ OTHER |

C000054



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT<br>02-25-98 | DATE AND TIME OF THIS REPORT<br>02-25-98  1125 | CONTROL NUMBER<br>798-02383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION<br>Arson / Att. Murder | LOCATION<br>512 S. New    Unit A | | |

On 02-25-98 I was briefed on an Arson/Attempt Murder that took place at 512 S. New St. apartment A. After receiving information regarding the incident Det. Johnston and I went to the scene at 512 S. New. Upon our arrival we were informed that the vehicle taken in this incident had been found approx 1 block west of our location in front of 717 W. Arlington Ct.  Det. Johnston and I then went to this location and secured the vehicle for later processing. Det. Johnston and I canvassed the area seeking any possible witnesses. I tried contacting residents at 715 and 713 Arlington Ct. with negative results. I then spoke with Maxine Brosius at 714 Arlington Ct. I explained to Maxine my investigation and asked if she had seen anyone in the area at the time of this incident. Maxine stated she had been sleeping and did not hear or see anything. I then spoke with Ellen Pelz at 712 Arlington Ct. Ellen stated she was at work from 11:00 P.M. till 8:00 A.M. and had no knowledge of the incident.

Det. Johnston contacted METCAD and requested a tow truck to tow the victims vehicle to CPD for processing. Don's Amoco did respond to 717 Arlington and did tow the vehicle to CPD. Det. Johnston and I followed the vehicle to CPD where it was parked in the north bay area to be processed by state crime scene tech Mike Kyrouac.

At about 1100 hrs I went back to the area of 717 Arlington to continue my canvass of the area. As I pulled up in front of 716 Arlington I noticed a white piece of paper next to the curb on the south side of the street in front of 717 Arlington. The paper was crumpled up but appeared to be fresh, meaning it was not stained or dirty. I checked the paper without picking it up and found markings on it from a Cash Station. At that time I notified Det. C. Shepard to bring a camera to my location to photograph the item prior to me collecting it. It should be noted that when I first observed the item it was being blown from the wind from east to west along the south curb. I did place the blade of my pocket knife on the paper to keep it from being blown away. Photo graphs were taken with the knife blade holding the paper in place. After Det. C. Shepard photographed the paper I then collected it. The paper was taken CPD where it was un-crumpled and an address was located on the paper for the Cash Station. The address revealed 812 W. Springfield. Also found on the paper was the last four numbers of the victims account number.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER<br>Det. Mark Strzesak | BADGE/ID NO.<br>7711 | DATE<br>03-01-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE<br>C00055 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT 02-25-98 | DATE AND TIME OF THIS REPORT 02-25-98 1125 | CONTROL NUMBER 798-02383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION Arson / Att. Murder | | LOCATION 512 S. New    Unit A | |

Det. Yohnka called the bank at 812 W. Springfield and requested bank personnel to retrieve any video from the Cash Machine located at this address. It should also be noted that the time on the receipt from the Cash Station indicated it was used at 0231 hrs. around the same time of the incident.

Det. Yohnka and I then went to 812 W. Springfield where we met with bank personnel. We were given the video tape of the night early morning of 02-25-98. This was taken to CPD where it was reviewed. At 0233 hrs, indicated on the video tape, the suspect was captured on video in the victims vehicle using the Cash Machine at 812 W. Springfield. Det. Ziegler was able to make still photos from the video of the suspect in the video. The video tape was then placed into evidence along with the receipt found at 717 Arlington. See attached copy of receipt.

I was able to contact Robby W. Cekander at 715 Arlington Ct. Robby stated he did notice the victims vehicle parked in front of 717 Arlington. Robby stated he noticed the vehicle at about 0725 hrs as he was leaving for work. Robby stated the vehicle had not been parked there the night before at around 2300 hrs. Robby stated he knew this because his friend was visiting and left at this time. His friend had been parked in the spot where the victims vehicle was located.

At about 1330 hrs Det. C. Shepard and I went back to the area where the victims purse had been located. Det. C. Shepard and I searched the area for any other items of evidentiary value. None located. We then went to Colonial Pantry at Prospect and Springfield to retrieve any video from the previous night in an attempt to identify the suspect. At that time it was unknown if the suspect might of purchased any items during the evening. The video was retrieved at approx 1435 hrs. The video was taken to the Champaign Police Department where it was viewed. The suspect was not captured on video at the store. The video was placed into evidence pending further investigation.

Det. C. Shepard and I then went to 512 S. New St. to search the area for any items of evidentiary value. While checking the alley located north of the residence I located a red plastic gas container along with a container marked Peak Antifreeze. We had been informed that a possible accelerant used in the fire might have been gasoline. At that time Det. C. Shepard photographed the

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Det. Mark Strzesak | BADGE/ID NO. 7711 | DATE 03-01-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE G000056 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, It and It's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98 | 02-25-98  1125 | 798-02383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Arson / Att. Murder | 512 S. New    Unit A |

items and they were collected. The items were taken to CPD where it was determined that the red container, usually used for the transportation of gasoline, contained a diluted mixture of antifreeze. The container marked Peak Antifreeze also contained antifreeze in its undiluted form. I spoke with Ed Bain from the Champaign Fire Department. Ed informed me that the area where the gas container and Peak Antifreeze had been searched and at that time the containers were not there. He stated they had been placed in their location after fire and police personnel had left. At this time it was believed that the containers were not related to this incident but will be placed into evidence pending further investigation.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Det. Mark Strzesak | BADGE/ID NO. 7711 | DATE 03-01-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. 706 | DATE |

C 0 0 0 0 5 7

# CHAMPAIGN POLICE DEPARTMENT - MULTIPLE WITNESS

1 OF 2

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | DATA CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 2-25-98 | 2-25-98  1115 | 998-2083 | |

| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
|---|---|---|---|---|---|---|---|
| **W** | Bossius | Maxine | | W | F | 2-13-20 | |
| **I** | ADDRESS 714 Arlington Ct | | | HOME PHONE 356-0520 | | | WORK PHONE |
| **T** | NAME LAST Palz | FIRST Ellen | MIDDLE | RACE W | SEX F | DOB 3-1-57 | EMPLOYER/SCHOOL Carle |
| **N** | ADDRESS 712 Arlington Ct. | | | HOME PHONE 352-9136 | | | WORK PHONE |
| **E** | NAME LAST Cekander | FIRST Robby | MIDDLE W | RACE W | SEX M | DOB 6-9-71 | EMPLOYER/SCHOOL Self |
| **S** | ADDRESS 715 Arlington Ct. | | | HOME PHONE 352-2628 | | | WORK PHONE |
| **S** | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |
| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |
| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |
| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |
| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |
| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |
| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |
| | NAME LAST | FIRST | MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
| | ADDRESS | | | HOME PHONE | | | WORK PHONE |

| SIGNATURE | BADGE 711 | DATE | APPROVED (SUPERVISOR) Sgt | BADGE | DATE 3/1/98 |
|---|---|---|---|---|---|

C000058

798-2383



**CASH STATION®**
Receipt

DATE    TIME    MACHINE
02/25/98  02:31  SS4256

CARD NUMBER
XXXXXXXXXXXX3413-000

LOCATION
812 SPRINGFIELD ROAD

RECORD NO.    6076
INQUIRY
FROM CHECKING

ACCT BAL      $1710.

THANK YOU
* Cash Station is a registered trademark of Cash Station, Inc.
BALANCE DOES NOT REFLECT OUTSTANDING OR UNPOSTED
transactions are subject to proof and verification.
ESCO - C66438

# CHAMPAIGN POLICE DEPARTMENT
## CHAMPAIGN, ILLINOIS 61820

# EVIDENCE

Page 1

| | | |
|---|---|---|
| OF OFFENSE | DATE AND TIME | 2-25-98 |
| | SEIZED | 2-25-98  1125 |

TYPE OF CRIME: _Hom / Att Murder_   JUVENILE

OFFENSE NO. 798-8823

EVIDENCE: ☒ SAFEKEEPING  CONTRABAND  RECOVERED PROPERTY

OFFICER'S NAME AND NUMBER: _M. Stevens  71_

| LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|
| OWNER | | | | | | |
| SUSP. #1 | | | | | | |
| SUSP. #2 | | | | | | |
| SUSP. #3 | | | | | | |
| VICTIM | Hausen, Lori K | | 4-13-69 | 512 A S New | | |
| OTHER | | | | | | |

| ITEM NO. | EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | SERIAL NUMBER | DATA # | BIN |
|---|---|---|---|---|---|
| 32 | | Cost Station Receipt  machine 564256  address 812 W. Springfield | | | |
| | | Card number xxxxx - 8413-000 | | | |
| 33 | | TDK E-HG  VHS Video Tape from First Midwest Bank | | | |
| | | 812 W. Springfield | | | |
| 34 | | Maxell PH Plus VHS Video Tape from Colonial Pantry | | | |
| 35 | | Red Cooler w/ Containers which appears to be mixtures of Anti-Freeze | | | |
| 36 | | Blue Container marked Peak Anti-Freeze containers which appears | | | |
| | | to be undiluted anti-freeze | | | |

REMARKS: ☐ RETAIN UNTIL NO EVIDENTIARY VALUE   ☐ RELEASE ON DEMAND   ☐ DESTROY

Please send item #32 to State lab for processing for possible latent prints
Items #33 #34 will be kept in investigation division
Items #35 + #36 will be kept in evidence bay

| INITIAL STORAGE | ☐ | :CKER # _____ | ☐ IMPOUND RI'NG | ☐ IMPOUND RAY | ☐ OTHER | ATE AND TIME 'IDENCE BOOKED | ☐ EVIDENCE CLERK |
|---|---|---|---|---|---|---|---|

C000060

EVIDENCE CONTROL ONLY

## CHAMPAIGN POLICE DEPARTMENT
### VEHICLE TOW-IN REPORT

OWNER: _Hansen, Lori_
SOS)  (Name)

CONTROL NUMBER: c _798-2383_

_512 S. New_
(Street Address)

SUBJECT ARRESTED: _____

_Champaign_
(City)          .(State)    (Zip)

SUBJECT ARRESTED: _____

**TOW INFORMATION**

DATE _2-25-98_ TIME _0945_ TOWED FROM _717 Arlington_

VIOLATION: _____

OFFICER _____ ADDT'L AUTHORIZATION _____

ADDRESS _____ PHONE _____

**VEHICLE INFORMATION**

MAKE _Toyota_ MODEL _____ YR ____ COLOR _Grey_ STYLE _Pick Up_

LICENSE # _1459JD_ YR _98_ STATE _IL_ VIN _JT4RN60S7ES012959_

STICKER # _____ CITY _____ STATE _____ EXPIRES _____

**VEHICLE CONDITION**

PARTS MISSING _____

DAMAGE _____

INVENTORY: KEYS _X_ RADIO _____ BATTERY _____ OTHER _____
(see reverse)

ODOMETER _____

**TOWING INFORMATION**

FIRM _Dons Amoco_ ADDRESS _____

TOWED TO: _CPD_ BADGE # _____ DRIVER _____ (Signature)

**RELEASE INFORMATION**

RELEASE WITH PROOF OF OWNERSHIP _____ HOLD _____ AUTHORITY _____

HOLD RELEASED: DATE _____ TIME _____ AUTHORITY _____

DATE VEH RELEASED _____ RELEASED TO _____
(Signature)

** NOTICE TO REGISTERED OWNER:

You may reclaim your vehicle by tendering proof of ownership or proof of the right to possession of the vehicle along with payment of all towing and storage charges. You may request a tow review in regard to the removal and impoundment of this vehicle within seven (7) days from the date the vehicle was towed. Such a request must be in writing addressed to the Champaign Police Dept., c/o Traffic Services Office, 82 E University Ave., Champaign, IL 61820. Failure to request such a tow review within the prescribed time limit shall be deemed a waiver of the right to a review.

C000061

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

1

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| | 02-25-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempted Murder | |

At 0830 hours on 02-25-98 while assisting in this follow-up investigation, I
attempted to trace the stolen ATM card from the victim. It had been reported
that a First of America checkbook and an ATM card was stolen from the victim,
Lori Hanson during the attack.

I contacted Barb Doyle, bank officer at First of America who provided Lori
Hanson's First of America ATM number: 443 001 770 003 8413, a combination
ATM/ VISA/debit card. Barb determined the card had not been used as a VISA
or debit card. There were two attempts to use the ATM at 3:37 a.m. (Kalamazoo,
Michigan time) which is 2:37 a.m. Champaign, Illinois time. Withdrawals in the
amounts of $500 and $700 were attempted at unknown ATM location. A trace
was put on the transaction and the location would be determined within 24
hours. Barb stated that if the attempt was made at a First of America ATM they
would be able to determine the address at this time. Therefore, the attempt was
not made at one of their ATM's. $1.50 service charge was being added to the
transaction which would account for why neither of the attempts was successful.
There is a $500 limit available, but the $1.50 service fee put the amount over
$500 and the transaction was denied.

Barb Doyle determined that the last check from the checkbook that was stolen
was check #312. Therefore, the checks 313 through 325 were the possible
stolen checks. That account number is 521119 4476. Barb Doyle said she
would leave $200 in the checking account and freeze the account. Therefore if
an attempt was made to use the ATM card perhaps an identification could be
made from the video tape of the subject..

It was reported there was a possibility that Lori Hanson's Bank One checkbook
and ATM card was also taken. However, it was not positive because the house
as set on fire. Kim Baker determined the checking account number is 617 310
537   ATM/debit card number 4060324090286967. I contacted Bank One
corporate security, 317 321 7894 and spoke with Kim Baker in loss prevention
There was no activity on this account since this incident occurred.

This account will be frozen with $100 cash available if an attempt is made by the
suspect to use the ATM card, so a video tape of the transaction is possible.

I distributed a bank alert on these missing ATM cards and checkbooks, so CPD
will be notified if the checks are forged/cashed.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Brad Yohnka | I 34 | 02-25-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | C300062 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

2

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT 02-25-98 | CONTROL NUMBER 798-2383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION **Attempted Murder** | LOCATION | | |

I called ATM facilities near the victim's residence. At approximately 11:30 a.m.
Detective Strzesak reported he found an ATM receipt in the street not far from
where the victim's truck was recovered. The account number on the ATM
receipt was the victim's First of America account number. It was used at 812
West Springfield (First Midwest Bank) at 0231 hrs on 02-25-98. I called First
Midwest Bank and spoke with bank officer Jo Brooks and requested she get the
video tape from their ATM from last night. Detective Strzesak and I went to First
Midwest Bank and seized the video tape at 12 p.m. on 02-25-98. The video tape
was viewed at CPD. It shows a young, black male in the victim's stolen truck at
the ATM. He was wearing a hood and ball cap pulled down over his eyes. It
appeared he had a nylon stocking over his face. He appeared to have wide face
and husky build wearing a multicolor coat.

This investigation will continue.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Detective Brad Yohnka | BADGE/ID NO. I 34 | DATE 02-25-98 |
|---|---|---|---|
| DATA ENTRY BY ckm | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT 2/26/98  15:00 | CONTROL NUMBER 798-2383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION Aggravated Arson | LOCATION C.P.D. | | |

I was contacted at my residence per phone by Det. Don Shepard (797). Det. Shepard requested assistance with photo equipment/photography. I responded to CPD per his request, to photograph the victim in this case.

I did meet with the victim (Lori) at CPD Investigations Conference Room. There, I took 10 - 11 photos to include:

1)   **right arm -**          bruises, abrasions;
2)   **neck (right side) -**   linear abrasions, possible bruise;
3)   **right hand / fingers -** cut, burns
4)   **left arm -**           bruises

All photos are made on 400 ISO color-negative film designated #1421.

(I was not otherwise involved with this case)

- END -

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. 924 | DATE 2/26/98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

C000064

| D A | Date and Time of Original Report 2-25-98 | | Date and Time of This Report 2-27-98 | | Event # 798 - 2383 | Case Number |
|---|---|---|---|---|---|---|
| I N F O | Classification ARSON / ATT - MURDER | | | Location 512 A S New | | |

I responded with Det. Don Shepard to 512A S. New in regards to this case. We arrived at about 0900am. Officer Randy Cunningham was at the scene and Crime Scene tape was in place around the residence. We gained access to the inside after the door was unlocked.(See D.Shepard's report for individual's name)

The residence opened into a living room which was extensively burned. The kitchen area was located to the east of the living room and ~~was~~ opened. ENTRANCE There was a rear door to the east and the refrigerator to the south of the door along the east wall. To the south of the refrigerator on the counter was a beer can. This was photographed by me. To the south of the living room was a short hallway. To the straight south from this hallway was the bathroom. To the east of the entrance of the bathroom was a bedroom. On the floor just outside this bedroom was a pair of pink shorts. These were also photographed by me. There was another room to the west of the entrance to the bathroom where we found a wooden type end table with three paper cards lying around it. These each had footprints transferred onto them. It is unknown at this time who the footprints belong to. These along with the end table were all photographed by me. In the bathroom behind the door was a cigarette butt. I also photographed this item. Det. Don Shepard seized all of these aforementioned items to be placed into evidence.

I was then notified by a white female who was with the victim's father that the victim's truck was just up the street. I looked up Arlington and could see a gray pickup truck approximately a block away parked in the 700 block of Arlington on the south side of the street facing our location. Det.'s Johnston and Strezsak responded to this location and assisted with the tow in of the truck to CPD. (see their reports)

I responded with D. Shepard to where the victim's purse had been

| Referral Case Numbers | Signature Reporting Officer *Det. Cl. F. Sled* | Badge/ID No. | Date |
|---|---|---|---|
| Typed By | Approved (Supervisor) | C000065 | |

## SUPPLEMENTARY/CONTINUATION REPORT

_____ of __/__

| O A | Date and Time of Original Report 2-25-98 | Date and Time of This Report 2-27-98 | Event # 798- 2383 | Case Number |
|---|---|---|---|---|
| N F O | Classification ARSON/ AT- MURDER | | Location 512 A S.NEW | |

located in a mud puddle off an alley. This was just to the north a block from where the truck was located. The purse had been moved by the lady who found it from the puddle in the alley to the side of a garage just to the north of this. I photographed the purse first and then took photos of where the purse was currently lying and also the puddle it was found in. This was done in the same photo.

I then responded to the area of where the truck had been located. In the middle of the street in the 700 block of Arlington I saw a black colored nylon hose which was balled up and lying there. This was located between the residence and truck. It was approximately 75 feet to the east of the truck. It had what appeared to be white brittle hairs on it and appeared to have been cut with something. I photographed this item depicting the stocking, it's relation to where the truck was located, and relation to the the residence. I then wearing rubber gloves placed it into a bag to be placed into evidence. I then located a multi-colored bic lighter also lying in the middle of the street in the same block only about ten feet in front of the truck. This was to the east of the truck and west of the stocking. I also photographed this item and then again wearing rubber gloves placed it into a separate sack to be placed into evidence. I then stood by with Dets. Johnston and Strezsak while the tow truck hooked onto the truck to be towed to CPD.( These items were seizedaround 0940am and 0945 am)

At CPD I placed each of the two aforementioned items into separate plastic bags and sealed them for eveidence.

At about 1300 hours Det. Strezsak and I went back to this area and did a canvass on foot of the whole area again. We located a red plastic gas can and a blue plastic "Peak" anti-freeze jug sitting just to the east of two dumpsters which were located to the north of

| A C M I | Referal Case Numbers | Signature Reporting Officer | Badge/ID No. 3520 | Date 2-27-98 |
|---|---|---|---|---|
| | Typed By | Approved (Supervisor) | | |

C000066

## SUPPLEMENTARY/CONTINUATION REPORT

_____ of _____

| Date and Time of Original Report | Date and Time of This Report | Event # | Case Number |
|---|---|---|---|
| 2-25-98 | 2-27-98 | 768-2383 | |

| Classification | Location |
|---|---|
| ARSON /ATT. MURDER | 512 A S. NEW |

an alley which was loacted to the north east of the residence which was burned. These dumpsters were approximately 75-100 feet to the north of the back of the residence. I photographed these items also in regards to the residence and separately. Det. Strezsak then collected them and we transported them to CPD where he took custody of these items. We again wore rubber gloves to transport them to and from my squad car and into CPD. CFD investigator Eddie Bain was contacted of these two items.

A video had been seized from the ATM machine that depicted the suspect attempting to get money from an ATM machine from within the victims truck. It clearly depicted the license plate of her truck then the suspect in it. This was a black male wearing a very distinct red with white and dark trim. It appeared that the suspect could have possibly had a .     .    nylon stocking over his face and was wearing something white, possibly gloves, on his hands. The truck stopped short of the ATM machine, but in the view of the camera, for a short period of time before proceeding to the machine. The suspect looked like Dedric Moore but I could not be sure. I know Dedric from previous police contacts and know that his grandmother, Lilie Moore, lives in the other side of the duplex where this incident occurred.I have contacted Dedric there prior to this incident and know that he was staying there also sometimes. It was relayed to me that Lilie had been out of town when this incident occured and had just returned on the morning after police had arrived to process the scene. Dedric also has a half brother named Don Rico Hotlzclaw who I have also contacted there in the past on police related matters. Both are black males and in their late teens. I contacted Dedric Moore at this address approximately a month and a half ago in regards to an allegation of the possibility of a runaway being held up there.

Dedric Moore b/m dob:8-13-78 6'4" 220 lbs.

DonRico Holtzclaw b/m dob;5-24-80 5'9" 160 lbs.

| Referral Case Numbers | Signature Reporting Officer | | Badge/ID No. | Date |
|---|---|---|---|---|
| | | | | |
| Typed By | Approved (Supervisor) | | | |

C00006.7

## SUPPLEMENTARY/CONTINUATION REPORT

____ of __

| | Date and Time of Original Report | Date and Time of This Report | Event # | Case Number |
|---|---|---|---|---|
| D.O.R. | 2-25-98 | 2-27-98 | 788 - 2383 | |
| INFO | Classification ARSON / ATT. MURDER | Location 512 A- S- NEW | | |

On 2-26-98 Det. Don Shepard re-interviewed the victim and learned that she has black pantie-hose in the resience. I re-packaged the black nylon stocking I had located into a brown paper sack after opening the original plastic bag it was placed in. I separated the two and included the plastic bag in the paper sack along with the stocking. If the suspect wore this it could include head hair and or saliva contents.

I met with Becky Cobb who had dealt with Dedric in the past in regards to her daughter and a relationship between the two which had gone sour to where an order of protection was obtained against Dedric. I took . two photos of the suspect from the ATM machine. I asked her to look at them and tell me if she knew who it was. This was done at about 1300 2-26-98. She said "It looks like Dedric but I can not be sure". She said she has had no contact with him since his incarceration approximately a year and a half ago. She did not know if he had a jacket of this nature or any green tennis shoes.

At approximately 1520 pm on 2-26-98 Det. Strezsak and I returned to 512 A S New. Det. D. Shepard had obtained the key to the residence from the victim. We were looking for black nylon stockings which might have been cut up. Lying in a pile of rubbish in the areaof the kitchen table on the floor just into the kitchen area I spotted a pair of black nylon pantie hose. A closer observation revealed that one leg had been cut off of the hose. I photographed this item at close range and from a distance to show where it was found in regards to these rooms. I then seized. it, placing it into a brown paper sack and later sealed it at CPD and placed it into evidence. We resecured the place at about 1530 hours. Attempts have been made to speak with Lilie Moore but we have not been able to contact her but only briefly when she told me she was scared having this happen so close to her residence and that she was not missing a gas can and has not seen one

| Referral Case Numbers | Signature Reporting Officer | | Badge/ID No. | Date |
|---|---|---|---|---|
| | Dt- U. F. Sl Q | | | |
| Typed By | Approved (Supervisor) | | C000068 | |

# SUPPLEMENTARY/CONTINUATION REPORT

_____ of ____

| D | Date and Time of Original Report 2-25-98 | Date and Time of This Report 2-27-98 | Event # E88-238.3 | Case Number |
|---|---|---|---|---|
| I N F O | Classification ARSON/ ATT. MURDER | Location 512 A. S. NEW | | |

around                              her                         residence.
The photographs I have taken of all the aforementioned items was
using        film        numbers        1267,1396,and        1345.

| A C M I N | Referral Case Numbers | Signature Reporting Officer | Badge/ID No. | Date |
|---|---|---|---|---|
| | Typed By | Approved (Supervisor) | C000069 | |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0300 | 03-04-98  1330 | 798-02383 | |
| CLASSIFICATION | LOCATION | | |
| Attempt Murder / Agg Arson | 512 S. New St.   Unit A | | |

On 03-04-98 at about 1330 hrs Det. D. Shepard and I went to 512 S. New St. Unit B to speak with the resident Lillie Moore. After knocking on the door we were greeted by a black male who identified himself as Dedric Moore, grandson of Lillie Moore. I asked Dedric if Lillie was home and he stated she was in Mississippi and would not return until Friday 03-06-98.

Det. Shepard and I had the opportunity to have a conversation with Dedric about the incident that happened on 02-25-98. We asked Dedric if he knew anything about the incident or had seen anyone in the area that might have been responsible for the incident. Dedric stated several times he was out of town the night of the incident. He stated he had not seen anyone hanging around the victims apartment and stated she kept to her self. I asked Dedric if he could think of anyone who might be responsible for this act. Dedric stated he thought it might be "mob" related and stated maybe the Chinese Mob or the Mexican Mob. He stated the reason he thought this was due to the bizarre circumstances involved but did not go into detail. We asked Dedric if we could step inside to talk with him due to his door being open and the heat escaping. Dedric stated the heat wasn't working and was reluctant to let us in to talk. Our conversation ended and we left the area.

After talking with Dedric we then contacted Sgt. Daniels and informed him of our conversation. We asked for investigators to locate and interview Dedric's brother and girlfriend to see if Dedric was in fact out of town the night of the incident. Det. Morris informed us the he spoke with Emmanuel Moore, brother of Dedric. Emmanuel stated Dedric was in town the night of the incident and was staying with him. Emmanuel stated Dedric had left his residence at about midnight or a little after midnight on the night of this incident. Emmanuel stated Dedric returned home at about 0400 hrs the same morning.

Det. C. Shepard spoke with Jennifer Stevens, girlfriend of Dedric. Jennifer told Det. C. Shepard that she had paged Dedric around midnight on the night of this incident. She stated Dedric had called her back and informed her that he was at First and Springfield. She stated they spoke via telephone but she did not see him until the next day. Jennifer also informed Det. C. Shepard that he smoked Newport Cigarettes the same brand that was found in the victims apartment.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Det. Mark Strzesak | BADGE/ID NO. 7711 | DATE 03-05-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | 00000070 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0300 | 03-04-98  1330 | 798-02383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempt Murder / Agg Arson | 512 S. New St.   Unit A |

After speaking with investigators involved Det. D. Shepard contacted the SA's Office and informed them of the details of the interviews. We felt at that time we had enough information to obtain a search warrant for the residence at 512 S. New St. Unit B and also the person of Dedric Moore. We met with Heidi Ladd at the SA's Office and a search warrant for both 512 S. New St. Unit A and the person of Dedric Moore was drawn up. The warrant was granted by Judge Diffanis.

At about 1900 hrs investigators from the Champaign Police along with Sgt. McKee and Sgt. Swan executed the warrant at 512 S. New Unit A. At that time I knocked on the east door of the residence and was greeted by Dedric Moore. I explained to Dedric that a search warrant had been granted for this location along with a search warrant for his person. Det. D. Shepard read Dedric the warrants and provided Dedric with a copy of each. A second subject was located in the residence, identified as Jennifer Stevens.

Investigators searched the residence of 512 S. New St. Unit A. As Jennifer was getting ready to leave she put on a coat the resembled the coat viewed in the video from the ATM. At that time the coat was seized and photographed by Det. Atkins. It was then collected by Det. D. Shepard.

While searching the living room I located a second coat that resembled the coat in the video. It should be noted that the coats seized were multi colored with different patterns. At that time we did not have a picture from the video to compare the jackets so both were seized to compare with the video. The second jacket was found balled up behind the couch in the livingroom. It was located in the south west corner of the livingroom. The coat was photographed by Det. Atkins and collected by Det. D. Shepard. I also located what appeared to be a black shoe string in the same corner. This was also photographed by Det. Atkins and collected by Det. D. Shepard.

Dedric was placed into handcuffs for his safety and also the safety of officers involved. He was transported to Carle Hospital by Officer Ramseyer. The purpose of going to Carle was to collected blood and hair samples from Dedric. At Carle Hospital the handcuffs were removed and he was seen by William Kilpatrick an R.N. at Carle. William did take hair samples from Dedric's head.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER  Det. Mark Strzesak | BADGE/ID NO. 7711 | DATE 03-05-98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

000071

 

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, It and It's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0300 | 03-04-98  1330 | 798-02383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempt Murder / Agg Arson | 512 S. New St.   Unit A |

These were placed into an envelope and given to Det. D. Shepard. Both Det. Shepard and I were present when the hair samples were taken. Also taken by William was two vials of blood. These also were taken in the presence of Det. D. Shepard and myself. The vials were given to Det. D. Shepard. Both the hair samples and blood were placed into evidence by Det. D. Shepard. See his supplement.

After samples were taken, Dedric was then transported back to his residence by Officer Ramseyer.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Det. Mark Strzesak | 7711 | 03-05 ̄ ̄ |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

C 0 0 0 0 7 2

| Date and Time of Original Report 2-25-48 | | Date and Time of This Report 3-5-98 | Event # 798- 238 | Case Number B |
|---|---|---|---|---|
| Classification ARSON / Atr. murder | | | Location 512 A S New | |

It should be noted that in my initial response to 512 A S. New with Det. Don Shepard we located in the west bedroom several pieces of balled up string on the floor. This was also photographed by me using the same film number as previously mentioned and collected by Det. D. Shepard.

On 3-4-98 Det. Brad Yohnka and I went to 1730 Paula Drive where we spoke with Donald Brown; b/m dob:8-8-79 5'9" 155 lbs.tx:359-7534. Donald was informed that we were investigating an Arson where a girls house was set on fire. He denied knowing where New Street was and had to be explained of it's location. He was very cooperative and told us that on 2-25-98 (last Tues) he had received a call from Mike Huffman b/m around noon. Mike asked him to meet him at the Econo Lodge in room 241. He walked up there and arrived around 1600-1700. There was a black female named Teresa, two other black males named "QT" and "Bello"and Mike. They stayed there and drank with some smoking marihuana until he left at around 0500 am. He said they had ordered a pizza from Domino's on W. Bradley during this time which he thought "QT" had called in. He said he left at 0500am because he had to be home to get his little sister up for school. He walked home and knocked on his grandfather's bedroom window. Grandfathers name is Lucious Washington. Washington then let him in the house. He added on Monday night he stayed at the DAys Inn motel with Michael Huffman also because Michael's mother has kicked him out.

I asked him if he had anything to do with this and he denied having anything to do with this or being in the area at any time. I asked him what kind of coats he wore and he showed me a black one lying beside him. I asked him if he had any others and he said he did in his room. He then gave me permission to go with him and look at them. In his room he showed me three other coats, none which matched the description of the one in the video. I was able to look in the

| Referral Case Numbers | Signature Reporting Officer | Badge/ID No. 7E 2.0 | Date |
|---|---|---|---|
| Typed By; | Approved (Supervisor) | C000015 | |

**SUPPLEMENTARY/CONTINUATION REPORT**

_____ of _____

| D A | Date and Time of Original Report 2-25-98 | | Date and Time of This Report 3-5-98 | | Event # 768-2383 | Case Number |
| N F O | Classification ARSON /Att Murder | | Location 512 A s New | | | |

closet and in his room.

Yohnka then asked if he had heard anything about this incident and he said he had. He told us the following: He said that four or five days ago on Hedge Road a black male he called "Stud" unknown name had asked he and his cousin "T 7" Terry Brown, if he knew anybody that wanted to buy a stero. He claimed that he got the stereo at Helig-Meyers and it was new. Donald said they looked at it and it was not new. He knows they only sell furniture at this store anyway. "Stud" then told them that his "ole ladys" house had burned down and he had no place for it so they were selling it. He told them that he had TV's, a play station and other items he could get anytime but did not say where they were located. He described this male as black, 18-21 yoa, 5'10"-6', 155lbs. dark skinned, wearing a black hood with a stocking hat with the words "pycho" in red and blue on it. He was wearing a white and brown thick coat. "1st down" type coat with those words on it. He said this male does not live in this area but stays with a female up there at times. he is a heroin addict and drives a blue car that is in the area. He was willing to go with us and point out the houses he frequents. Donald pointed out the addresses of 1315 Hedge a black and white house and 1312 Hedge where he pointed out the car parked in the driveway. This was a 1985 Chevy Chevette Il. license TKR 245. The registration checks to Latasha Y Williams b/f 3-27-74 5'2" 135lbs. of this address. A note in the computer system under this license relayed that Ricky Whitley b/m dob:5-16-57       6'4"       200lbs. drives       this       car       alot. located                 but                   could           get           them.

| Referral Case Numbers | Signature Reporting Officer | | Badge/ID No. 752 | Date 3-5-9 |
| Typed By | Approved (Supervisor) | C000014 | | |

SUPPLEMENTARY/CONTINUATION REPORT                    _____ of _____

| D A | Date and Time of Original Report 2-25-98 | Date and Time of This Report 3-5-9B | Event # 798-2383 | Case Number |
|---|---|---|---|---|
| N F O | Classification Arson/Attempla | | Location 512A Snew | |

On 3-4-98 I met with Jennifer Stevens w/f dob:8-26-80 at Central
High School at about 1430 hours. Jennifer Stevens 1703 W University
Senior at Central tx:352-3953.

Jennifer is the girlfriend of Dedric Moore. I told her I wanted to
find out some information on where Dedric has been staying last
week. I had learned that he had told detectives that he was out of
town on the night of this incident. Jennifer told me the following: On
Monday Feb 23rd she was with Dedric until around 10:00pm. They had
gone to her dads, William Stevens out by Staley road tx:359-9298 in
her car so she could get some money from her dad. This was about 1700
and Dedric stayed in the car. They went to her house on University
until she took him to his brother's apartment at 108 E Healey at about
10:00pm. She went home and paged him at about midnight and he called
her back. She said he said he was at the pay phone at 1st and
Springfield. They talked for about a half and hour and she said she
thought he went back to his brothers and she went to bed.

She saw him again at about11:00am the next day 2-24-98 when she left
shcool for an appointment and then picked him up at his brothers for
lunch. She then picked him back up at about 1745 at his brothers and
they stayed there until about 1830. They then went to her house and
stayed there with her mother present until about 10:00 when she took
him to his brothers house and dropped him off. She then went home and
again paged him at about 11:30 pm and he again called her from what he
told her was the pay phone at 1st and Springfield. They talked for
about 15 minutes and she again went to bed. She thought he was going
back to his brothers. She saw him again the next day again at lunch
and he told her that his grandmother Lilly and mother Pat had came to
his brothers and woke them around 0600-0700 am and told them that some
one had tied up and beat the girl next to Lilly's duplex and then set
it on fire.

| Referal Case Numbers | Signature Reporting Officer Det - Ch.F. Seel | Badge/ID No. | Date |
|---|---|---|---|
| Typed By | Approved (Supervisor) | C0000-75 | |

| D A | Date and Time of Original Report 2-25-98 | Date and Time of This Report 3-5-98 | Event # 798-2383 | Case Number |
|---|---|---|---|---|
| N F O | Classification Arson / Att. Murder | | Location 512 A S.New1 | |

I told her I knew that Lilly had been out of town and asked if
Dedric had been staying there. She told me that he had been but a
couple of nights after Lilly left he went to stay with his
brother. She wasn't sure why but thought it was because all of his
friends were there. She added that she thought it was Friday night
2-28-98 when he went back to stay at Lilly's again.

She said he smokes Newport cigarettes and they have seen the victim
at the duplex before and she has had short conversations with her but
never saw Dedric talk to her. I asked her what kind of coat he wore
and she told me it was a blue jean jacket with a brown collar. This is
the only coat she has seen him wear and dark tennis shoes.

At about 1530 I went to 1703 W University to speak with
Jennifer's mother. She was not at home so I left my business card to
have her page me upon her arrival.

At about 1730 she called me and told me she was going to have a
guest for dinner and wanted to know if she could page me after her
guest left. I told her this would be ok. I then received another page
from Charlene at about 0900pm. I arrived at her residence at about 915
pm. Charlene wanted to talk with me in the car away from her daughter
first. She at first let me know about Jennifer being stopped on a
traffic violation and speaking with Sgt. Swan. She asked me if Dedric
had down this and I told her we were checking into that and were
unsure at this time. She told me that the police had taken Jennifer's
coat earlier on this night and looked through her date book and said
she had bought this coat for Jennifer at the outlet mall in Tuscola on
2-12-98. She knew because this was President's day and there was no
school. She told me she had been out of town in New Orleans for Mardi
Gras. She left on 2-21-98 at midnight and arrived back home on 2-26-98

| Referral Case Numbers | Signature Reporting Officer | Badge/ID No. | Date |
|---|---|---|---|
| Typed By: | Approved (Supervisor) | C000076 | |

| Date and Time of Original Report | Date and Time of This Report | Event # | Case Number |
|---|---|---|---|
| 2-25-98 | 3-5-98 | 788-2383 | |

| Classification | Location |
|---|---|
| ARSON / ATT-MURDER | 512 A S NEW |

in the morning. She said that Jennifer had been suposed to have stayed with Topper Stineman and his wife. Their phone number is 359-2852. She said she was not supposed to be at their residence especially with Dedric. I then presented her with a blown up printout of a photograph of the suspect in the victim's truck at the ATM machine on the night of this incident. It was the same that I had previously shown to Becky Cobb.(2-25-98 2:34:34A) I asked Charlene if she knew this person. She studied it for a minute or so and said it looked like Dedric.

We then went into the house and spoke with Jennifer. She admitted she had lied to me the first time and said that on each night she had dropped Dedric off at his brothers on E. Healey at about 2000 hours. She then payed him at the times she said to her own pager. When the number appeared on her pager she called him at this number. She said she did not know the numbers but Charlene gave me the pager number. 621-2173. Charlene said she would check into getting the print out of numbers for the pager and get back with me. Jennifer told me that Dedric had not used her coat and she had it every night. She said he always wears dark tennis shoes and never a ball cap. She has seen him with gloves on only once all winter and they were black.(Her pager is through Ameritech) They both gave me permission to check the rooms for any items I might think were pertinant. I found none. I then showed the same photo I showed Charlene to Jennifer. She studied it for 3 or four minutes. Charlene and I both asked her if it was Dedric. After this silence Charlene asked her again and she said "it looks like him". She then asked me what he had done to the girl and I commented that I could not disclose that information at this time but no one should have to go through what she did. Jennifer immediately ran into the bathroom and started vomitting and crying.

| Referral Case Numbers | Signature Reporting Officer | Badge/ID No. | Date |
|---|---|---|---|
| | | | |
| Typed E, | Approved (Supervisor) | C000077 | |



C000078

## SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency; it and its contents are not to be distributed by you or outside your agency.

| | Date and Time of Original Report | Date and Time of This Report | Event # | Case Number |
|---|---|---|---|---|
| D A T A I N O | 02-25-98 0259HR | 030598 | 78P-2383 | |
| | Classification Search Warrant | | Location 512 S. New. South Apt. | |

DETAILS OF INVESTIGATION (Additional Suspect, Victim, Witness Info)

On 030498 I was assigned to watch a residence with Det Schweighart awaiting a search warrant for the premises. Stake Out was from approx 3:30 to 7:15 PM. At that time Dept. Don Shephard and Det Mark Strezenk arrived with the search warrant and it was served.

I took photos of the front of residence, the rear and the items seized as evidence using film # #1434 1-6.

| Referral Case Numbers | Signature Reporting Officer | Badge/ID No. | Date |
|---|---|---|---|
| | Det Donald J Cintoro | G000079 | |
| Typed B. | Approved (Supervisor) | | |

# CHAMPAIGN POLICE PHOTOS

CASE _798-02382_

SUBJECT _AG ARSON / ATT MURDER_
DATE _3-4-98_ TIME _1930_

LOCATION _512# B S NEASS_
INV. OFFICERS _I 97_
PHOTOGRAPHER _I-33_
REMARKS _1~6_

FILM # _1434_



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| Wednesday February 25, 1998 | Saturday March 7, 1998 | 7 98 2383 | |
| CLASSIFICATION | LOCATION | | |
| Arson | 512 South New, Champaign | | |

This follow-up is in reference to an arson that occurred in the early morning hours of
Wednesday February 25, 1998 at 512 South New, Champaign.

I assisted in the investigation by interviewing Emmanuel Moore and Donrico Holtzclaw.
Both young men are grandson's of the victim's neighbor, Lilly Moore. Both Emmanuel
and Donrico made taped statements, copies of the transcripts are attached. Both also
gave permission to allow a search of their respective apartments - nothing of interest in
this case was located.

Additionally, I asked Donrico if he would be willing to voluntarily submit blood and hair
specimens for comparison to evidence located at the scene. Donrico asked if he was
required to give the samples - I told him he was not. After some consideration Donrico
agreed to give the specimens. While at Carle Hospital, a person admitting Donrico into
the ER inquired about a parent or guardian consenting for him to have the specimens
taken - Donrico is seventeen. I explained to the clerk that Donrico is "functionally
emancipated" and that there was no one serving as his legal guardian to sign their
consent for him.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 7169 | 03.07.98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | |
| Det. Morris | Sgt. | 901 | C000081 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

1

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98 | 03-04-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Arson | 512 1/2 South New Street | | |

Recorded interview taken at 108 East Healey #8 from Emmanuel Moore by
Detective Robb Morris.  Detective Joe Johnston is also present.

Q: Emmanuel can you recount for us what you remember about that evening?

A: I, I was sitting here, I was asleep, sleep in the bed with

Q: At home?

A: I'm sitting at home with my two kids in the bed.  'Bout four o'clock we notice a
ring, I hear ring at the door, so I get up, you know, to come see who it is.  You
know, it's my mother and my grandmother.  So they come in.

Q: Let me stop you for just a second.  Who is your grandmother?

A: Lillie Moore.

Q: Okay and Lillie lives next door to the house that

A: Yeah, she, she stays right next door, same duplex.

Q: Okay.

A: And so after she came over they started you know, telling me what
happened, you know, and asked where my brothers was and stuff.  And I told
'em I don't know, you know he been in and out all night.  You know

Q: Okay.

A: I gave him my key and stuff 'cause he couldn't you know, get at the house
over there.

Q: And who's your brother?

A: Dedrick Moore.

Q: Okay.  Go ahead.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Detective Robb Morris | BADGE/ID NO. I 69 | DATE 03-05-98 |
|---|---|---|---|
| DATA ENTRY BY ckm | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE C000082 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

2

| DATE AND TIME OF ORIGINAL REPORT<br>02-25-98 | DATE AND TIME OF THIS REPORT<br>03-04-98 | CONTROL NUMBER<br>798-2383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION<br>Arson | LOCATION<br>512 1/2 South New Street | | |

A: Okay. So after that, you know, they was, you know looking for him. Wanting to know, you know, like where he was and stuff. And I was like, you know, I don't know. 'Bout the last time that I have seen him, you know was like 20, 12:30 or one. And so after that, you know, that, you know, he showed up like shortly after they left and stuff. You know we went looking for him and stuff. And couldn't find him, but you know he came like shortly after, shortly after my grandma and them left. And so I mean that was, you know, that was pretty much it for that night.

Q: Okay what time did your grandma leave?

A: Leave from here?

Q: Uh huh.

A: Probably about, about four, 4:30.

Q: So 4:30 Dedrick shows up and what happens?

A: He's, he's wanting to know 'cause we had to page him. You know I was paging him, you know, blowing his pager up and stuff. And so it was like he just came in. He was like what's going on man, what's going on you know, you know, I was like, like what you mean what's going on. I just, I was like man, you know, you ain't hear what happen, over at the house and shit, you know he didn't know. He thought I was playing. Shit and I told him, you know and he was like some, something happed at grandma's. I'm like no man, ain't nothing happen at grandma's. I said the lady next door, she said that somebody done went over there and set the house on fire. You know, and beat her up and stuff. So he just, you know, he's looking like, you know, he ain't believe this shit nothing like that. And so by that time, say my grandmother had came over 'bout ten in the morning and I told them what happened from there. So that was about it.

Q: Okay. You said that the last time you saw Dedrick was between 12:30 and one in the morning.

A: 12:30 and one.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER<br>Detective Robb Morris | BADGE/ID NO.<br>I 69 | DATE<br>03-05-98 |
|---|---|---|---|
| DATA ENTRY BY<br>ckm | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

C000083

E-FILED
Friday, 04 May, 2007  05:25:39 PM
Clerk, U.S. District Court, ILCD

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

3

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98 | 03-04-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Arson | 512 1/2 South New Street |

Q:  Okay.  Had he been here for awhile before he left at that time?

A:  Yeah.  'Bout here all day.

Q:  So you think he'd been hanging out here all day and then about 12:30 or one o'clock in the morning he left.  And then he came back at 4:30 or so.

A:  Yeah, yeah that's usual.

Q:  Okay.

A:  I mean he, that be the time when he be out with his woman or some shit.

Q:  Okay thank you very much.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Robb Morris | I 69 | 03-05-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000084 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

1

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98 | | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Arson | 512 South New | | |

Recorded interview of Donrico Holtzclaw at his residence, 404 East Clark #2, by
Detective Robb Morris. Detective Joe Johnston is also present.

Q: Donrico can you tell me what you remember about the, late in the eveing on
the 24th and the early morning hours of the 25th?

A: I was here asleep. My brother came.

Q: Which brother?

A: Donte sometime in the middle of the night, come here asking me have I seen
my brother Dedrick. And I like no. And he explained to me that, what had
happened next door. That somebody had broke in there. Beat the lady up.
Taped her up. Peed on her and set her house on fire and stole her car.

Q: Okay. Do you know why and, and Donte for the record is also known as
Emmanuel. Is that right?

A: Right, right.

Q: Okay. Do you know why Donte was looking for Dedrick?

A: My mom, my mom brought him over here.

Q: Your mom brought him over here. Was anybody else with them?

A: I don't know, well I don't know you know.

Q: Okay.

A: I guess my grandma.

Q: All right, but she didn't come inside.

A: Hum um.

Q: All right. Did they say why they wanted to find Dedrick?

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Robb Morris | I 69 | 03-06-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | |

C000085



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

2

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98 | | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Arson | 512 South New |

A: No, just looking for him.

Q: Okay.  Who told you about what happened to the woman in the apartment next door?

A: (Unclear) told me.

Q: Yeah well you got information about what happened to her during the course of this incident right?

A: Um hum.

Q: Who, how'd you get that information?  Who told you about that?

A: Donte just told me what happened to her.

Q: Okay so Donte gave you the rundown.  All right.  Do you remember about what time it was that he came over?

A: It was in the middle of the night.  Probably about four, 3:30 or four or something I don't know.  I don't know.  I was asleep on the couch.

Q: Anybody else here with you at the time?

A: My other (unclear).  He was in the back asleep.

Q: What's his name?

A: Antwan.

Q: Do you his last name?

A: He, Jones.

Q: Jones okay.  All right.

A: He know Donte came that night.

Q: Okay.  Thank you.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Robb Morris | I 69 | 03-06-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000086 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency. It and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 | 03/09/98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Attempt Murder | 512 1/2 S. New St. | | |

On 03/09/98 at approximately 1145 hrs. Detective Yonka and myself located Dedric T.
Moore at 108 E. Healey St. in apartment number eight. I informed Dedric that a search
warrant had been issued for his person. I read the warrant to Dedric and issued him a
copy of the warrant. I advised Dedric that he was required to report to the Champaign
County Jail, in downtown Urbana, on 03/10/98 at 1530 hrs., for an in person line-up.

Dedric acknowledged the warrant and indicated that he would comply with the warrant.
I advised Dedric that if he did not comply with the court order, a warrant would be
issued for his arrest.

I spoke with Captain Young at the Champaign County Jail. I informed him of the time
and date of the line up and requested his assistance.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 712 | 03/09/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| | | | C000087 |

 

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

1

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

Lieutenant Gamble called me at home at about 0310 hours and requested that I respond to 512 South New regarding a burglary and theft of a vehicle. I arrived at about 0355 hours and Champaign Fire Department personnel were on the scene along with CPD patrol officers.

I spoke with Officer Tim Atteberry briefly, who said he was the first officer on the scene. He had spoken with the listed victim, Lori Hansen. She had been transported to Covenant ER for treatment. The victim told Officer Atteberry that when she got home, the suspect forced his way into the house, pushed her to the floor, tied her up. He stole her ATM card and truck, then set the house on fire as he left.

Officer Chuck Caudill was at the scene with the arson investigator, Eddie Bain. See their follow-up reports for details.

On the east side of the house just south of the back door, I found a broken window. Glass was on the ground under the window. There was what appeared to be blood on the window sill, the broken glass and the ground. I collected glass standards from the window, from the ground and one piece of glass which had what appeared to be blood spatter on it. I have secured those items and entered them in CPD evidence. They have been sent to the ISP crime lab for processing.

I went to Covenant ER to interview and photograph the victim, Lori Hansen's injuries. I met with Officer Mary Bunyard and Officer Chad Shipley. They said they had taken a few photographs of Lori. I photographed her injuries on film 1364 and 1266 frames 1-8. She had cuts and abrasions to her hands, her back and arms. She had what looked like ligature marks on each side of her neck.

People present at the hospital while I was there were:
Lori's mother, Linda Creutzburg, white female, DOB: 01-20-44, 2302 Brookens Circle, Urbana, 328 2375, work: 337 2186.

Lori's father, Larry G. Hansen, white male, DOB: 07-16-41, 604 County Road 200 E, Sidney, 688 2589.

I left the hospital and waited for Lori to arrive at CPD to be interviewed. Lori was treated and released by RN Dena Sawka, white female, DOB: 08-08-70 and Dr. Parasakthi.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | 000088 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

2

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

I spoke to the victim at CPD at 0630 hours.  She said she was out with a friend, Allison Leveridge on 02-24-98 at a bar on West Clark Street.  She said Allison's phone numbers spell E-L-M-I-K-E-O and Allison lives at Washington and Prairie. Lori said they left the bar at about 1:30 a.m. and she drove Allison home to Washington and Prairie, then drove directly home herself.  She parked her truck facing south on the west curb across the street in front of her house.  She had her keys in her hand when she approached her door.  She opened the door and stepped inside.  She heard something behind her.  She had the keys in her hand as she turned around and saw a black male, who pulled opened her storm door and came inside the house behind her.  Lori tried to push the door shut and screamed.

Lori said the suspect pushed his way into the house and grabbed her.  He turned her around so that her back was against his chest.  He put his right hand over her mouth.  She felt he had gloves on.  He was pushing down on her, telling her to lay down on her back, but he forced to the floor on her stomach.  She said the suspect asked, where's Chad.  Lori said he tied her with something like a rope, but it was thinner than rope.  She thought he brought it with him, but she was not sure.  He also took her cordless phone from the coffee table in the living room and took it to the back room.  He was gone a few minutes and returned to the living room.  The rooms at the back of her apartment are the bathroom and two bedrooms.  Her bedroom is on the east side of the apartment and the other bedroom is on the west end of the residence with the bathroom between them. The suspect put a pair of her shorts over her head covering her face.  He kept talking about Chad and asking where Chad was.  She could tell he was ransacking the living room even though she could not see him.  He asked her how much money she had and where her purse was.  He asked her if she had an ATM card.  She told him to look in the black bag that had camels on it.  He dumped all the bags on the floor.  There is also a duffel bag that he dumped on the floor directly in front of her.  He found the camel bag and ATM cards and asked her what the PIN was for the ATM.  She said she told him the PIN for the First of America ATM.  He took two other ATM cards.  One was on a Bank One account in Milwaukee, however, that account is closed.  She said he took another card on Bank One in Champaign, however, it has not worked for her for more than a month.  She said both those ATM cards were on the coffee table in the living room.

She said he only tied her wrists together in front of her the first time he tied her up.  He later tied her feet and used another cord which she thought was an

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19 98 |
| DATA ENTRY B. | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | 00089 |




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

3

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

electrical cord from her house to tie her feet in what she described as "hogtied".
She thought he took the gloves off when he tied her up. He asked her about
how much money she had. She told him she had $25. He commented about the
money in her checking account, so she believes he found the balance in her
checkbook. She said the suspect gagged her with tape from the drawer by the
kitchen sink. He asked her if she had tape. She said tape was in the drawer
next to the sink. He took the shorts off her head and wrapped the tape around
her head several times and covering her mouth. She told him she couldn't
breathe. He loosened the tape from her nose so she could breathe. She was on
the floor where the kitchen and living room meet. She said he rambled about
Chad and also mentioned Eric. When she asked him about Chad, he said he
was a white dude who owed him money and didn't say anything else about
Chad. He did not mention Eric again.

She said when she was on the floor, he opened a beer and asked if she minded
if he had a beer. She could see through the leg of the shorts over her head that
he was sitting in a chair in the kitchen, smoking a cigarette and drinking the can
of beer. She heard the refrigerator door opening and closing and when he
opened the beer. He asked her if her car was an automatic or stick shift. He
said he would take her with him to the ATM to get money. She said after he said
that was when he got the white electrical cord and tied her wrists to her ankles
(hogtied).

Officer Caudill said he found an electrical cord on the floor and he kept it as
evidence.

Lori said that after he hog-tied her, he carried her from the living room floor and
sat her in the bathtub on her back. Her hands were over her left shoulder and
tied to her ankles behind her. The shorts were still on her head, but she could
tell he was wrapping a cord around the soapdish in the bathtub to tie her to the
soapdish. He said a couple of times that he would return if the PIN was wrong
on the ATM cards and she would regret it. She remembers during this incident,
he said several times he wasn't going to hurt her. But he insinuated he would
hurt her if the PIN's were not correct. She told him the PIN's were correct. He
needed to leave and not worry about coming back because the PIN's were
correct.

She heard him leave the room and the front door open and close. She said it
was quiet a couple of minutes. Then she became aware he was in the room with

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | 1 97 | 03-19-98 |
| DATA ENTRY B | APPROVED (SUPERVISOR) | BADGE/ID NO | C000090 |
| ckm | | | |




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

4

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

her again because of the sound. When he walked back into the room, he asked what she was doing. She was so nervous and afraid she had urinated while she was sitting in the bathtub. She said she was just sitting there. He left the room for a minute, when he returned he put an end table on top of her. She moved and said something like, ouch or that hurts because the leg of the table was pinching her legs against the bathtub. He left the room and it was quiet for awhile. She said he had turned on the TV in the living room and at different times he adjusted the volume from soft to loud and back again. She thought he might be using the TV to cover his voice. She does not recall at what time during this incident he turned the TV on or the volume up or down.

She said he came back in the house because he walked into the bathroom. She was still tied up in the tub with her face covered. He said, "you're cool". He said he was going to get a knife from the kitchen and cut her loose. He left the room. When he returned he took the table off of her. He cut the cord that tied her wrists to her ankles and lifted her out of the bathtub and put her on the floor in front of the bathroom. When he was cutting the cord, he asked her if she had any sharp knives in the house and commented those knives weren't very sharp. She could see him through the leg of the shorts. He leaned toward her feet as though he was going to untie her feet. She told him to leave and she would take care of it. She said he said something like, oh, you don't want me to help with your feet, huh and stood up.

She said he next put a cord or rope around her neck. She saw something pass her face and felt it around her neck and he was pulling up on it, strangling her. She said her wrists were still tied in front of her and her ankles were still tied. She tried to pull the cord off her neck. Her mouth was still taped also. She thinks the shorts came off of her head during this struggle. She could not scream or talk while she was being choked. He loosened whatever he was choking her with and she asked, "why are you doing this to me? What'd I do?" He said she lied to him about the maximum amount that could be withdrawn in one day on her ATM. She said she did not know about a maximum amount of daily withdrawals. She asked if he tried the ATM and he said he tried to withdraw $100. He left the her on the floor in front of the bathroom and milled around in the living room and kitchen.

When he returned, he put a hand under her shirt and fondled her breasts. He commented, "you have little breasts, why?" He walked away for a couple minutes. When he returned he pulled her blouse up and sucked on her right

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | 000091 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

5

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Home Invasion | 512 South New #A |

breast. Then he went to the kitchen. Lori said she was laying on the floor facing the east bedroom with her back toward the hallway. He walked up behind her and she felt a warm liquid stream on her head and face. She said she tried to move around and get the shorts back on her face. However, they were soaked, so she turned her head so her face was on the floor. She said the liquid was on the tape on her mouth and seeping though the cracks. She pinched her lips shut to keep the liquid from coming in her mouth. She said it smelled like urine and he said, "when you drink that much beer, you gotta take a piss".

He then walked into the living room/kitchen area. She could hear him moving around. She smelled a flammable substance. He then returned to her and she felt a liquid being sloshed around on her and the floor. It also smelled like the odor from the living room/kitchen area. She thought this smelled like a shoe polish wax. He then walked away to the living room/kitchen area.

She looked over her shoulder and saw a fire in the living room. She got to her feet and hopped into the west bedroom. She was standing in the west bedroom behind the end table that had been on top of her in the bathtub. She looked across the room and saw a lamp with no bulb in it. She thought she could use it for defense in case he returned. At about that time, he appeared in the doorway and she tried to reach the lamp. He caught her arms and drug her by her arms down the hallway into the living room where the fire was still burning. She tried to pull away from him as he was dragging her. When they got to the living room, a floor lamp was near the hallway at the edge of the living room. She grabbed the lamp and pushed it over on him. The subject hit her repeatedly with his fist. He finally knocked her to the floor. He continued to hit and kick her in the head, back and body. She said she was in the hallway toward the bathroom when she saw him flip the lit cigarette he was smoking toward her. The cigarette hit her and landed on the floor next to her. She quickly brushed it away onto the bathroom floor. She got to her feet and was able to get into the west bedroom and shut the door. However, the door does not lock. She tried to open the bedroom window, but couldn't get it open. She thought she should get low on the floor and she was able to get her hands and feet untied. She opened the door and ran through the house and out the rear kitchen door which faces east.

Lori ran to the neighbor's on the north side of her house and beat on the door. The neighbor she knows only by, David came to the door. She told him someone robbed her and set her house on fire and to call 9-1-1. She ran back into her house through the kitchen door. She turned on the lights and the bulbs all

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | 000092 |




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

6

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

exploded in the house. She thought she would get her two cats that were in the bedroom. There was so much smoke she could not get to the bedroom. She turned to run out the door and as she passed her kitchen stove, she heard a hissing sound. She noticed there was no flame on the burners, so she turned all four knobs off. Three of the knobs were turned on high filling the house with gas. The fourth knob was not on.

She ran out the rear kitchen door again and went to the front of the house. She thought she would open the front door to let the smoke escape, but the front door was locked. She said the suspect had to have locked the front door and went out the back door. Before the front door had been open because she had unlocked the door and entered the house and he forced his way in behind her. She had not closed the front door or locked it. She said the back door had been locked and when she went out the back door to escape the fire, the door was standing open. Therefore, the suspect must have gone out the back door.

Lori returned to the east side of the house and looked for something to break the bedroom window at the east side of the building. A neighbor named, Bob came over with a piece of wood and threw it through the window. She grabbed pieces of glass from the window frame and threw them to the side. She thought she cut herself. She got on top of the trash can and leaned inside the bedroom and called her cats. She could hear one of them wheezing and whimpering. She could not see anything and did not find her cats. The fire department arrived and started to put out the fire. Lori was transported to Covenant ER for treatment.

Lori described the suspect as a black male, approximately 18-32. She thought he was younger than 30, but she was not sure. She said he was a minimum of 5'9"-5'10", but she did not think he was real tall. She said he was wearing baggy clothes and she did not know what his body type was. He did not wear glasses. He was wearing a large baggy jacket with a hood. She said it was mostly red with black and white trim and long sleeves. He was wearing baggy blue jeans and she described the tennis shoes he was wearing as olive green suede and she thought he wore off-white, soft gloves, maybe wool or acrylic.

She said he did not enunciate clearly and she had to ask him to repeat himself. She said he spoke with a low, soft voice and mumbled. She said he kept repeating, where's Chad and I'm not going to hurt you.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 0 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE ID NO | |
| ckm | | | DC 0 0 0 0 9 3 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

7

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Home Invasion | 512 South New #A |

Lori said the shorts he put over her head were her shorts he got from her bedroom on the east side of the house. She said the shorts were pink with a drawstring and should be on the floor in the hallway by the bathroom and east bedroom. She said the end table he put on top of her in the bathtub was in the southwest bedroom. She untied herself by that table and that's where the bindings should be. She said the cigarette he flipped at her should be on the bathroom floor. She smokes Camel Lights and she did not know what kind of cigarette he flipped at her. She said that during this entire incident the only light on in the house was in the living room because she turned it on when she entered the house and he forced his way in. She said she did not get a real good look at his face due to the lighting. In fact, there were times when she was laying on the floor in the living room. She was afraid if he noticed her looking at him, he would hurt her or kill her. She tried not to look at him.

I radioed Officer Caudill at the scene to make sure he collected the evidence Lori mentioned. He had left the scene. I contacted Officer Randy Cunningham, who responded to the house and kept the house secure for further processing. Detective Charles Shepard and I went to the house. Upon entry I found the pink shorts laying on the floor in the hallway just outside the bathroom and east bedroom. I found the end table in the southwest bedroom with several items that appeared to be shoestrings and cords on the floor next to the table. I found a cigarette butt on the floor in the bathroom. I found a 12 ounce beer can on the counter next the refrigerator in the kitchen and four aluminum beer cans on the kitchen floor. I collected all these items and entered them in CPD evidence. Detective Charles Shepard photographed the items and the scene. See his follow-up for the film number and details.

It should be noted that the 12 ounce beer can sitting on the counter was a Miller High Life beer. Four pieces of paper with shoe impressions on them were on the floor of the southwest bedroom near the end table. They were collected and entered in CPD evidence. I collected the four Miller High Life 12 ounce beer cans from the kitchen floor. However, a plastic bag was laying on the floor just inside the back door with other Miller High Life cans in it. It appeared the four Miller cans found on the floor could have come out of that bag if the bag had been disturbed.

In the front yard in front of the house, I collected a 12 ounce Busch beer can and entered it in CPD evidence.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-9 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE ID I | DATE |
| ckm | | | G 0 0 0 0 9 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency. It and it's contents are not to be distributed by you or outside your agency.

8

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | | LOCATION | |
| Home Invasion | | 512 South New #A | |

As I left the house to go to my squad car, I was approached by Dorothy N. Cummings, white female, DOB: 11-03-21, 705 1/2 West Springfield, 356-3089. She was carrying a checkbook. The pad of checks had the name Lori Hansen, 512 South New #A on it. Dorothy said she found the items in a bag in a mud puddle in the alley directly behind her house next to the garage. I asked her to return there with the items and I would come there to collect them. I took custody of the checkbook and she returned to her garage.

I collected the items of evidence from 512 South New #A and photographs were taken. Detective Charles Shepard and I responded to 705 1/2 West Springfield. In the alley directly behind her house was a black, cloth handbag with camels stamped on it. This fit the description of Lori's purse. Detective Charles Shepard photographed the items and I collected them for evidence. They were found at 0815 hours in a mud puddle by Dorothy Cummings. I took these items to CPD and secured them in a jail cell. I secured the door with evidence tape and kept the key for that cell locked in my desk drawer. I laid the contents of the purse out to dry. There were various items with Lori's name on them. Also in the purse was an empty 12 ounce beer bottle, Honey Brown brand. Also in the purse was a Unisonic cell phone. After these items dried, I secured them in packages and turned them in to CPD evidence on 03-03-98.

As we were leaving 512 South New to go to 705 1/2 West Springfield, Lori Hansen's father, Larry G. Hansen was standing in front of 512 South New. He pointed out that Lori's truck was parked to the west approximately a block away from her house. The truck was found parked going east at the south curb in the 700 block of Arlington Street. Detectives Strzesak and Johnston secured the vehicle at that address.

Detective Charles Shepard photographed the truck and assisted in canvassing the area. See reports for details.

It should be noted Detective Charles Shepard found a piece of black nylon which appeared to have been used as a mask and Detective Strzesak found a receipt from an ATM transaction at the bank at Springfield and Prospect Avenues.

Lillie J. Moore, black female, DOB: 11-23-38, 512 1/2 South New, 352-2308 lives in the south half of Lori Hansen's duplex. Lillie was out of state on the night in question. I spoke to her at CPD on 02-25-98 at 1100 hours. Her daughter, Patricia E. Holtzclaw, black female, DOB: 12-22-56, 1605 East Third, Corinth,

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-9? |
| DATA ENTRY B | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | 000095 |




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

9

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

MS, 601-284-9848 also came to CPD. When I first responded to this call, Patricia and Lillie pulled into the driveway as the fire trucks arrived at the house. They were interviewed briefly by Officer Staples and provided a phone number where they could be contacted. After I left Covenant ER I called and scheduled the appointment for them to come to CPD. Lillie said she went to Mississippi to visit her daughter for a few days. She said she and her daughter had been traveling for approximately nine hours. They had to pull over to let the fire trucks pass them enroute to Lillie's address. They said they had no idea who could have been responsible for this incident. Patricia confirmed they had been on the road for approximately nine hours from Mississippi. She said they arrived at about 3 a.m. and had to stop and let the fire trucks pass. Lillie said Patricia has two sons: Dedrick T. Moore, black male, DOB: 02-21-80, who has been living with her periodically. He also stays with his brother Emmanuel D. Moore at 108 East Healey #8. Patricia's other son is Donrico S. Holtzclaw, black male, DOB: 05-24-80, who also stays with her periodically. However, he had not been there for the last few days because the landlord said he did not want the two grandsons there because of problems that had occurred with them in the past.

On 02-26-98 at 1030 hours I spoke to victim, Lori Hansen at CPD to go over details of this incident. I also wanted to show her items of evidence that were collected in her apartment. Lori was accompanied by her mother. She described the incident as initially described and she added other details she remembered since the initial interview.

She stated that when she parked her truck at her home after dropping her girlfriend, Allison off, she did not see or hear anyone in the area as she walked from her truck to her house. It should be noted there are no trees in the front yard for anyone to hide behind. She thought the suspect may have been behind the house. The driveway to the house from the street is on the north side of the building and goes to a small parking area on the east side (rear) of the house. She said it is possible someone was in that area out of her sight and after she opened her door he quickly forced his way inside the house.

Lori said she is not clear at what time he started tying her up. She said he forced her to the floor as soon as they got into the house. She said he checked the pockets of her jeans and her coat. He rolled her from side to side after he had her tied up to get to the things out of her pockets. He got the $25 cash from her pocket at that time. He commented it was a little more than $25. She thought she may have had $26 or $27 which was what was left from the $30

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE. |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-1_ _ _ |
| DATA ENTRY | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |

ickm

00096

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

10

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

withdrawal she made with her ATM card earlier in the day. It makes sense to
her that he tied her hands immediately so she could not flee. He got her
cordless phone and took it to the back room. He was gone a couple minutes
and returned to the living room where she was on the floor. Then he tied her
feet. She was not sure if he tied her hands as soon as he pushed her to the
floor or came back and tied her hands and feet. She said she was so upset she
could not recall clearly the chain of events that occurred.

He immediately began asking her where Chad was and she does not know who
he was talking about. She said he spoke in a very low tone and did not
enunciate clearly. She had some difficulty understanding him part of the time.
She thought he did not ask where Eric was until after her face was covered and
her mouth was taped. She said when she thinks back, it is possible she had her
brother's name (Eric) written on something and he may have seen it. She said
she asked who Eric was, the suspect said Chad was a white dude that owed him
money. The suspect did not say who Eric was. Lori thinks the suspect saw the
name Eric on something in the house and just threw that name in. She said part
of the time her difficulty in hearing the subject was due to him turning the TV
volume up and down.

The suspect asked her how much money she had and if she had ATM cards.
She told him she had $25 and the money and the ATM card was in the bag with
camels on it. He ransacked several items and eventually found the bag with
camels on it. He asked her what the ATM PIN was and she told him. Later, he
asked her again and she had the impression he was confirming the number like
he had written it down or was writing it down.

She said when he asked for the PIN for her ATM, she has two PIN's because her
ATM is also a check card. She gave him the two, four digit PIN's: 2810 and
1972. The ATM also serves as her student ID and check cashing card.

After he found her wallet and the ATM card, he asked if she had any tape. She
told him the tape was in the drawer in the kitchen. He then taped her mouth
shut. She said he adjusted the tape at one point because she told him she was
having difficulty breathing. She said she was laying on the floor with her mouth
taped and he commented if she minded if he had a beer. She heard the
refrigerator door open and the sound of a can being opened. She could see
through the leg opening of the shorts over her head that he was in the kitchen
smoking a cigarette and drinking a beer.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 0; |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | |
| ckm | | | |

000097




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

11

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

She said she remembers when she opened the refrigerator to get the beer, he said "Honey Brown". She said she had 12 ounce bottles of Honey Brown beer and one Miller High Life can in the refrigerator. She said the night before (Monday evening) she had put two 12 ounce cans of Miller High Life in the refrigerator. She drank a can of Miller later in the evening. She said there was no one else in the house between that time and when this incident happened.

Lori said she lives by herself and the only other person who has a key is her mother. Her mother, Linda Creutzburg, said she had not been to Lori's house and did not drink any beer. It should be noted that when I was in the house with Detective Charles Shepard to collect evidence, I found one 12 ounce Miller High Life beer can sitting on the counter next to the refrigerator. There were 12 ounce bottles of Honey Brown beer in the refrigerator, but no cans of beer.

Lori said a plastic bag was hanging on the inside door knob of the back door next to the refrigerator containing empty 12 ounce cans for recycling. She said that bag was knocked off onto the floor when she ran out to use the neighbor' phone to report the fire. She said she had put all the cans in the bag and there was no beer can on the counter. She said the cans on the floor would have most likely been in the bag hanging on the door knob when it fell onto the floor.

She said after the subject drank the beer, he hogtied her and said he was going to the bank to try the ATM card. He carried her into the bathtub and tried to tie her to the soap dish. Lori explained what happened next the same way she described the incidents when I interviewed her initially. She said the end table he put on her in the bathtub had been in the living room in the corner of the southeast wall. She said that when she wet her pants while sitting in the bathtub, she was shaking harder than she has shaken in her life because she was so afraid he was going to kill her or seriously hurt her. After it was quiet for awhile, he returned to the bathtub and took the table off of her. He told her he was cool. He said he was going to get something from the kitchen to cut the cords. He returned with a knife and cut the cord on her hands. He said the knife was dull. She described everything as she did in the initial interview. She added that after he tried to strangle her, fondled her breasts under her blouse and sucked on her breast, he came back and urinated on her head. Then she heard him in the living room moving around and could smell something like shoe polish paste, but she could not hear him pouring anything though. Right after that he stood behind her and she could feel him pouring liquid on her that smelled like the odor in the living room.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY B | APPROVED (SUPERVISOR) | BADGE/ID | DATE |
| ckm | | | 000098 |




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

12

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

She again stated that when she had her back to him and she believes he was urinating on her, she heard a zipper being opened. At that time he said, "after you drink that much beer, you have to take a piss". He walked away and she could feel the liquid seeping through the tape at her mouth. She pinched her lips shut. She said the liquid smelled like urine. She said she is positive this liquid was not a flammable liquid because of the odor.

She said that later when he poured something on her that smelled like shoe polish, she thought it smelled like something that was flammable. A short time after he walked away from her was when she noticed the living room floor was on fire. She got to her feet and went to the southwest bedroom. She said he came into the room and grabbed her wrists and arms and drug her into the living *Room* where the fire was. She was trying to get away and knocked a floor lamp onto him. He started beating her with his fists until she fell to the floor. He kicked her and beat her and then flipped a lit cigarette on her. She was able to brush it off and onto the bathroom floor.

I showed her items of evidence I had collected at her house after I had interviewed her initially. I showed her the cigarette butt I found on the bathroom floor. It was marked Newport. She said she does not smoke Newports and it was not her cigarette and none of her friends had smoked cigarettes in the bathroom. She said there were no cigarettes on her floor prior to this incident.

I showed her a cigarette lighter that Detective Charles Shepard found on the street in front of her truck when it was recovered. She identified it as her cigarette lighter and it had been in her coat or jeans pocket. The suspect would have taken it out of her pocket when he was checking her pockets.

I showed her the piece of black nylon Detective Charles Shepard found on the street near the truck when it was recovered. She said that looked like a piece of the leg that had been cut off of her black tights ~~that had been cut off~~ that were in her bedroom.

I showed her the checks that were given to me by Dorothy Cummings. Lori identified the checks and the cards with them as her property. She identified the bag with the camels on it that was recovered from the mud puddle. Lori identified the pair of shorts I found in the hallway as the shorts that were put over her face.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NC | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NC | DATE |
| ckm | | | |

 

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

13

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

She identified the group of strings I found on the floor in the southwest bedroom as the bindings she was tied with. She identified one of the strings as a toy she made for her cat. She said the suspect would have found this in the house and tied her with it. She said the nylon rope was used on her hands and the black shoe strings were used on her feet. The white shoe strings was to connect her hands and feet in a hogtied position. That is the homemade cat toy.

She identified the purse and bag with the camels on it, the shorts that were on her head, the wallet, the end table that was put on top of her in the bathtub. She identified the Uniden cordless phone as the phone the suspect picked up in the living room and carried with him.

She identified a U of I keyring that had an ATM card and student ID on it as being hers.

She identified the wallet and the Honey Brown 12 ounce beer bottle that was found in her purse. She said that would have come from her refrigerator, however, she did not have that beer bottle in her purse. The suspect would have put it in her purse.

Sergeant Don Shelton photographed Lori's injuries again on film #1421. See his follow-up report for details.

Eddie Bain, Champaign Fire Department investigator was present during this interview. He had various items of evidence he collected at the time of the incident which he turned over to me. Those items were entered in CPD evidence.

On 03-03-98 at 1000 hours, I spoke to Lori Hansen at her mother's home. She called and said she had found a pair of shoes which the shoe strings had been removed from. I got those shoes from her. I photographed the shoes on film 1381, photos 8-10. Lori said she believes the shoe strings that were used to tie her feet came from this pair of shoes which were in the southeast bedroom.

I also retrieved a VHS video tape from Detective Morris on 03-06-98 at 1530 hours. He had picked it up at the Mobil station on West Springfield Avenue. See his follow-up report for details. I will view that tape to see if it shows someone buying gasoline on the night of this incident.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-1 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | |




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

14

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

There were several items of evidence sent to the ISP crime lab for processing on 03-04-98. Those items are listed on the crime lab sheets. A copy has been attached to this report. See them for details.

I received a call from Mark R. Mooney, white male, DOB: 06-24-54, 512 South Pine, 359-2559, work: 356-7606, who had seen suspicious activity before this incident on 02-24-98. I spoke to Mark at CPD on 03-03-98 at 1800 hours. He said he saw a black male, about 5'11", 18-22 yoa, stocky build standing at the corner of New and Healey at about 1310 hours or 1315 hours. As Mark drove by the subject stared at him strangely. Later when Mark drove by again, the subject was still standing there just hanging around. What drew Mark's attention was that the subject seemed overdressed for the weather. It was a warm day and the subject was wearing a red and gold jacket or sweatshirt with a hood on his head. The subject was not wearing glasses and had no facial hair. Mark thought he would recognize the subject again.

Detectives Strzesak and Charles Shepard found the receipt from the ATM transaction where an attempt to use Lori's ATM was made. They seized a VHS video tape of that incident. The date and time stamped on the tape is 02-25-98 at about 0235 hours. This was during the time Lori was tied up and sitting in the bathtub when the long period of quiet time occurred. The 9-1-1 call came in to police dispatch at 0259 hours. Lori said the incident started at about 0145 hours. This would confirm that the subject left the house. The video tape shows the vehicle the subject is in approaching the ATM. It also shows the front license plate which matches the license plate on Lori's truck. The truck shown in the video tape when the subject attempted to use Lori's ATM card can be identified as Lori's truck. Detective Ziegler printed some still photos from that tape They have been attached to this report. The subject in the photos very strongly resemble Dedrick T. Moore. When Detective Charles Shepard viewed the tape, he thought the subject was Dedrick T. Moore. Detective Charles Shepard showed the still photos to other police personnel, who stated they believe it looks like Dedrick T. Moore, but cannot be positive. See his follow-up reports for details.

It appears the suspect has something black, possibly a nylon mask on his face. The still photo stamped 02-25-98 at 02:34:58 a.m. shows a very distinct line across the lower part of the chin making the upper part very dark and the lower part (neck area) is very light.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 0 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE NO | |
| ckm | | | C000101 |

 

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

15

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

On 03-04-98 at 1330 hours Detective Mark Strzesak and David K. Sherrick, white male, DOB: 11-30-74, 344-6530 (law intern) accompanied me to 512 B South New Street to speak to Dedrick Moore. Dedrick answered the door. During our conversation Detective Strzesak asked Dedrick if he had seen anything peculiar around the neighbor's house recently or if he had knowledge of any problems. He said he did not know what happened or who did it and he was out of town that night. Detective Strzesak asked him if he had an idea who might have done this. He said he thought the mob did it. I asked him what he meant. He said he thought the Chinese mob or the Mexican mob was responsible for this incident. I asked him why he thought that. He said because the girl was beat up and the mob would carry gasoline with them.

Dedrick told us he had been staying at 512 B, his grandmother's house periodically. He said he has a key to the house, since his grandmother and his mother left on Friday morning for Mississippi after this incident occurred on Tuesday. He said he is watching his grandmother's house since this incident occurred. He said he did not have a key before that.

He said his brother, Donrico S. Holtzclaw, black male, DOB: 05-24-80 had also been staying there before this incident and had a key. However, he moved out a week and a half or two weeks ago. Dedrick said his grandmother had been out of town for a few days prior to this incident.

Dedrick said he was living with his brother, Emmanuel D. Moore, black male, DOB 03-07-76, 108 East Healey #6, no phone when this incident occurred, however, he was out of town. He refers to Emmanuel as Donte.

Dedrick did speak softly and did not enunciate his words clearly. His face matches the person seen in Lori's truck in the video tape at the ATM. I noticed he has two teeth missing just to the left of his upper center teeth. The still photo stamped 02-25-98 at 02:34:10 a.m. you can see a dark area in the upper left gum next to the center teeth. The subject's mouth is partially open and there is a distinct dark spot in the same location where Dedrick's teeth are missing.

As a result of other detectives interviews on the date of this incident, it was determined that Dedrick was in town when this incident occurred. As a result a search warrant was issued for 512 South New #B and a separate search warrant was issued for Dedrick T. Moore's hair, blood and inked fingerprints. Those warrants were served on 03-04-98. The hair and blood was collected in my

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | C000102 |
| DATA ENTRY BY ckm | APPROVED (SUPERVISOR) | BADGE/ID NO | |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

16

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

presence at Carle ER by RN William E. Kilpatrick, DOB: 11-26-70, white male at
2015 hours. Those items were secured in CPD evidence and sent to the ISP
crime lab. I collected his inked fingerprints at CPD after we left Carle Hospital.
He was given a ride home by Officer Ramseyer and released.

Dedrick and his girlfriend, Jennifer E. Stevens, white female, DOB: 08-26-80,
1703 West University, senior at Central HS were at 512 South New #B when the
search warrant was served. There were two coats in the house which had a very
strong resemblance to the coat worn by the suspect in the video tape of the ATM
transaction. A package of Newport cigarettes was on the kitchen table just
inside the back door. Dedrick T. Moore showed me his Illinois ID card showing
his address as 512 B South New Street when I asked for it. A black shoe string
was found in the southwest corner of the living room behind the couch. There
was a W-2 wage and tax statement form belonging to Dedrick T. Moore in the
house, along with his social security card. These items were seized and photos
taken of the items. The items were then entered in CPD evidence.

After examining the coats and comparing them to the still photos from the ATM
transaction, I determined that neither of the coats was the coat worn at the time
of the incident. I photographed the coats on film 1381, photos 11-end. I
returned Jennifer Stevens coat to her. I returned the other coat to Dedrick
Moore along with his social security card on 03-05-98 at 0930 hours. Dedrick
thought the coat was his grandmother's, Lillie Moore.

Dedrick agreed to come to CPD and talk to me at 1330 hours. I spoke to him in
the presence of David K. Sherrick (intern) at CPD. I asked Dedrick where he
was when this incident occurred. He said he wasn't really out of town. He said
he was in Urbana. I asked how he got to Urbana and what time he left. He said
he paged a friend, who he only knows by first name, white female, Jennifer,
approx. 28 yoa, who has a nine year old daughter. He said he has known her
for three years, unknown phone number or address. He said she lives by MTD
in Urbana. However, when I asked him how he contacted her, he said he paged
her, 292-2400. He said that was her pager number and he used the pay phone
at Ken Lee's on South First Street at about 1230 a.m. She called him back at
that pay phone and then picked him up in the parking lot at Piccalilli Liquors on
South First Street. He said Jennifer drove him to Urbana and dropped him off at
Malcolm's house. He said he did not know Malcolm's last name. He said
Malcolm is a black male, nickname: Scott. He said Malcolm turned 23 yoa on
02-14-98. He did not know Malcolm's address, but he lived on Vine Street

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR | BADGE | |
| ckm | | | C 0 0 0 1 0 3 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

17

| DATE AND TIME OF ORIGINAL REPORT<br>02-25-98  0259 hrs | DATE AND TIME OF THIS REPORT<br>03-17-98 | CONTROL NUMBER<br>798-2383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION<br>Home Invasion | LOCATION<br>512 South New #A | | |

between Prairie and Lynn. Malcolm just moved to Waukegan just before March 1, 1998. I asked to describe which side of the street Malcolm's house was on if you're going west from Prairie toward Prospect. He said it would be on the left side. He corrected himself and said Malcolm lives in Champaign, not Urbana. He said it is a two story gray house and Malcolm lives on the lower level.

I asked him how long he was there. He said he was in and out the entire night until he went home about 3:30 a.m. He said he was helping Malcolm clean and move because he was evicted and had to be out by March 1st. He said a black/white female, he only knows as Jody, at least 21 yoa, who has a couple kids was there. He said she is Robert Williams' girlfriend. Williams is a black male, 23 yoa. He said Malcolm, Jody and Robert Williams were there.

Dedrick said they went to Hardee's on West Bradley at 3:30 a.m. and got a sandwich. They took him to 108 East Healey where his brother, Donte and Donte's girlfriend's two children were present. Dedrick said he thinks the other roommate, Tavarius Harris was also home. However, he does not remember seeing or talking to Tavarius. Dedrick said Donte told him about this incident at that time. Donte told him their mother, Patricia and grandmother, Lillie had stopped by at 3 a.m. or 3:30 a.m. They told Donte the neighbor girl had been beat up and the house burned. Dedrick said he went to bed.

Dedrick said his mother and grandmother returned to the apartment at about 6 a.m. and woke him and Donte. That was when they told him the neighbor woman was raped, hit and the house was set on fire.

I asked Dedrick how long it had been since he stayed at his grandmother's house on South New Street before this incident. He said he has not stayed at that address since before Valentine's Day 1998. He said his grandmother was there at that time. He said Lillie left a few days prior to this incident for Mississippi for a funeral. He said Lillie gave him keys to the house on Friday after this incident when she returned to Mississippi with his mother. He said he has only spent the two nights there just prior to me talking to him.

I asked Dedrick if he had any substance abuse problems or he does any drugs. He said, I like my beer and I drink a lot and I smoke cigarettes a lot. I asked him whose cigarettes (Newport brand) were on the kitchen table when the search warrant was executed at his grandmother's house the night before. He said they were his cigarettes.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER<br>Detective Don Shepard | BADGE/ID NO<br>I 97 | DATE<br>03-19-98 |
|---|---|---|---|
| DATA ENTRY E:<br>ckm | APPROVED (SUPERVISOR) | BADGE/ID NO | |

00000104




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

18

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Home Invasion | 512 South New #A |

I again asked Dedrick who he thought may have committed this crime. He said he thought the Chinese or Mexican mob did this crime. He said, "who carries gas in their pocket and beats people up. Maybe, I've seen too many movies." Dedrick was adamant that he wanted the victim to look at him to see if he was the suspect in this case. He commented the news media said the suspect was 5'9" and he is 6'3". I told him that sometimes the news media is incorrect and the description in the news was not necessarily the correct description of the suspect.

I asked him if he would take a polygraph exam and he agreed. He wanted to do it right then so he could get this cleared up. I explained we had to schedule an appointment for a polygraph exam. I called Mark Murphy to schedule a polygraph exam and it was scheduled for 03-11-98 at 0900 hours. Dedrick was adamant he wanted this taken care of. When I informed him of the date and time of the polygraph, he asked if he should contact an attorney and he was very reluctant to take the polygraph exam. I told him I could not advise him if he should talk to an attorney or not. I told him it was not required that an attorney be present and that in my experience, attorney's do not attend a polygraph exam. I asked him if I could photograph him and started to take a 35 mm camera out of the case. He refused to let me photograph him.

Dedrick left and I attempted to call pager 292-2400. I received a recording that this number was no longer in service.

I contacted Jim Davis at the State's Attorney's office and requested the phone records for that number.

On 03-06-98 Detective Yohnka, Dave Sherrick and I drove west on Vine Street between Prairie and Lynn looking for the house where Malcolm Sandlin lives. There is only one two story gray house on the south side of the road between Prairie and Lynn. It should be noted I asked Dedrick which side of the street the house would be on if you were driving toward Prospect from State Street (west). He said it was on the left side of the street. There was no answer at either of the doors at the house. I checked the mailbox and found three pieces of mail addressed to 405 West Vine #A:

1. Daphaney Hoffman, canceled on 02-27-98 from Ameritech.
2. Julie A. Bosler, canceled 03-04-98 from Carle.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | 000105 |

 

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

19

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

3. Malcolm N. Sandlin canceled 03-01-98 from Illinois Power.

Another item of mail in the mailbox for upstairs was addressed to 405 West Vine #B to Brian Roberts canceled 03-04-98 from U of I Psychological services.

I obtained the phone number 398-9671 for the pay phone at Ken Lee's on South First Street. I gave this phone number to Jim Davis at the SA's office to receive the phone activity during the timeframe of this incident.

I was ultimately able to locate the landlord for 405 West Vine Street and spoke to (Reginald T. Jones, black male, DOB: 10-19-67, 3329 West William, 355 6545) him by phone on 03-07-98 at 1200 hours. Reginald said that Malcolm Sandlin was from the Chicago area and things were not working out with Malcolm as a tenant. Reginald told Malcolm things were not working out and if he would move out by February 20th or 21st he (Reginald) would forget about the money Malcolm owed him for February. Reginald said he went to 405 West Vine #A on 02-23-98 and Malcolm was still there. Reginald told Malcolm if he did not move out he would have to pay rent for February. Malcolm said he was waiting on a truck and he would be gone by Tuesday (the next day). Reginald said he returned to 405 West Vine #A on 02-24-98 at about 1800 hours. At that time Malcolm was moved out and the only thing left was some garbage that needed to be carried out of the house. Reginald said he had to clean up the garbage. Reginald changed the locks so no one could get in the house. He said he has the house rented to another tenant at this time.

Reginald does not know where Malcolm Sandlin is or how to contact him. I had Detective Strzesak check with the US Post Office for a forwarding address for Malcolm. I have attached to this report the form Detective Strzesak submitted to the post office stamped 03-12-98. It is checked "no change of address order on file".

I have not been able to locate a Jennifer, who Dedrick said picked him up on the night of this incident. When I receive the phone records for that pager number and the pay phone at Ken Lee's, they will be attached to this report. Dedrick said this Jennifer is not his girlfriend, Jennifer Stevens. He said the Jennifer who picked him up is about 28 yoa and his girlfriend is 17 yoa.

I have received a letter from American Family Insurance regarding the claim filed by Lori Hansen. It is attached to this report. I will get an estimate of the costs to

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | |
| DATA ENTRY ckm | APPROVED (SUPERVISOR) | BADGE/ID NO | C000106 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

20

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Home Invasion | 512 South New #A |

repair the damage at 512 A South New Street from the property owner and it will be attached to this report.

On 03-07-98 a search warrant was issued for Dedrick T. Moore, to participate (stand) in a line-up and produce his voice at that line-up and allow photographs to be taken. He was given notice by Detectives Joe Gallo and Brad Yohnka and told to be at CCSO to participate in the line-up at 3:30 p.m. on 03-10-98. He did not show up. An arrest warrant was issued for Dedrick T. Moore for obstructing a police officer. See report 798-03112 for details of that incident.

When Detective Strzesak and I were turning in the arrest warrant to the CCSO master control, Dedrick walked in at approximately 4:30 p.m. I arrested him at that time and he was taken into custody at CCSO. Ultimately another warrant was issued ordering Dedrick to stand in the line-up, produce his voice and photographs. That warrant was issued on 03-11-98. Dedrick did stand in a line-up on 03-11-98 at 10:30 a.m. Jailer Glass, CCSO provided a sheet of paper showing the six people who participated in the line-up including their names and information, as well as a sheet of paper showing the names and physical descriptions and dates of birth. That information is attached to this report.

Prior to viewing the line-up I photographed the six participants on film 1394, photos 1-11. I handed each of the participants a sheet of paper which had three statements on it that each one was to recite when they were viewed. I have attached a copy of that paper to this report. Prior to conducting the line-up I read the Wade-Gilbert warning to Dedrick T. Moore. During the line-up and my contact with Dedrick, the public defender's office had a representative there for counsel for Dedrick.

Before Lori Hansen viewed the line-up I read a form to her entitled, Line Up Instructions for Witnesses. She filled it out and it is attached to this report.

It should be noted there are comments on the back of the page in Lori Hansen's handwriting. She checked the box that she does not identify anyone in the line-up, however, her comments refer to numbers three and number six in the line-up being the closest resemblance to the suspect. It was hard for her to tell if that was the suspect due to the impaired ability to hear them clearly when they spoke

When Lori viewed the line-up she viewed each of the six individuals one at a

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY E | APPROVED (SUPERVISOR) | BADGE/ID NO | |
| ckm | | | C000107 |

 

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

21

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

time.  I had instructed them to enter the viewing room, single file and turn facing the window where Lori would see all six at the same time.  Each subject was instructed to step forward in numerical order one at a time.  They would face the window and jailer Glass instructed them to turn to the left, then face him and he was behind them.  He then told them to face forward again and speak clearly and recite the three statements on the form.  As each of the participants finished reading the statements, he returned to his place and the next person would follow the same instructions.

It should be noted that each person in the line-up held a card in front of their chest as they were viewed.  After they completed the line-up procedure the first time, I asked Lori if there was anyone she wanted to see or hear again.  She asked if she could see and hear numbers 1,2,3 & 6.  We went through the procedure again with those four participants.  Lori was standing quietly for a few moments.  I asked her if she wanted to see or hear anyone again.  She asked if she could see and hear number three and number six again.  We went through the procedure for a third time.  She stood quietly a few moments.  I asked her if she wanted to see or hear anyone again.  She asked to see number three and number six again.  After she viewed and heard them again, she continued to stand quietly.  I asked her if she wanted to see or hear anyone again.  She asked to see and hear number three.  After she viewed and heard number three again, she asked to see number six again.  She viewed and heard number six again and then she said she was finished.  The six participants were escorted out of the viewing area.

After Lori filled out the form indicating she did not identify anyone in the line-up. I asked her what it was about numbers three and six that drew her attention. She said she thought number three looked like he was taller than the suspect. Number three was Dedrick T. Moore, who is 6'3"-6'4".  She said number three looked like the face of the person she dealt with and his voice sounded like the suspect. however, she thought he was too tall. She said number six did not have the voice of the suspect, but did match the shape of the face of the suspect.

I asked Lori what the lighting was and at what angle she viewed the suspect during this encounter.  She said the only light that was on in the house was the living room light and she turned it on when she entered the house.  He came in behind her and turned her around and pushed her face down on the floor.  She said the only time she viewed him after that was when she was on the floor, looking up at a glance or when she was on the floor after he took her out of the

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | 197 | 03 19 98 |
| DATA ENTRIE | APPROVED (SUPERVISOR) | BADGE/ID N | |
| ckm | | | C000108 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

22

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Home Invasion | 512 South New #A |

bathtub and she saw him briefly through the leg of the shorts on her head. She said he was bending over her and she tried not to look at him because she thought if he saw her looking at him, he would kill her or seriously hurt her. I asked if she saw him when he was dragging her by the arms down the hallway. She said she turned her head and looked behind her as he drug her forward because she was trying to get away from him.

I asked Lori if any of the six people in the line-up had any reason to be in her truck or house or handled any of her property. She said none of them would have any reason to be in her house or truck. I asked her if any of the people in the line-up looked familiar to her. She said number four looked like someone she may have gone to school with many years ago, but she does not know for sure. She said that person would never had been in her house or truck or would have handled any of her property. She does not know his name and is not sure if she did go to school with him.

It should be noted that individual number six is Andrew Pettigrew who has been in custody since January 1998. Individual number three, who she described as sounding like the suspect and the face that looks like the suspect was Dedrick T. Moore.

It also should be noted that Detective Charles Shepard went to 512 A South New Street at my request after I interviewed Lori Hansen the second time (02-26-98). I instructed him to look for any kind of garment that the nylon legging he found in the street in front of the victim's truck might have been cut off of. Detective Charles Shepard found a pair of black nylon tights/pantyhose in the kitchen which looked similar to the material and color of the piece of material he found in the street. He collected that item and entered it in CPD evidence. Those items have been submitted to the ISP crime lab at this time.

ISP crime scene technician Mike Kyrouac dropped off the photos developed from processing the truck after it was recovered. Those photos are included in this report.

It should be noted that when the truck was processed a piece of paper was laying on the seat. There were two four digit numbers written on it. Kyrouac photographed that item, but did not collect it. When I went into the impound bay to release the truck to Lori on 02-26-98, I noticed this item laying on the seat. Lori said the two, four digit numbers on the paper were the two PIN she gave the

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 03-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO | DATE |
| ckm | | | |

P 0 0 0 1 0 9

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

23

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs | 03-17-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Home Invasion | 512 South New #A |

suspect at the time of this incident. I collected that item and entered it in
evidence at CPD. Lori called me the next day and said she found a utility knife
by the seat in the truck which should have been in the kitchen drawer with the
tape. She said she did not put the knife in her truck. I collected the knife and
the pair of black tennis shoes she found in her house. She thinks the shoe
strings were taken out of and a bundle of cord from the kitchen drawer on 02-26-
98 at 1300 hours . She retrieved the the bundle of cord from her house while
getting her personal property. Those items were entered in CPD evidence.
Those items have been sent to the State crime lab.

It should be noted that Dedrick Moore told me that he arrived home at
approximately 3:30 a.m. and his mother and grandmother had all ready been
there and talked to his brother, Emmanuel and left. I arrived at the scene of this
incident at approximately 3:55 a.m. Dedrick's mother and grandmother were
talking to Officer Lisa Staples. I personally saw them there and saw them get in
the car and leave. Officer Staples pointed them out to me. Therefore, it would
have been impossible for them to have been to Dedrick's house, talked to his
brother, Emmanuel and leave before Dedrick got home at 3:30 a.m. according to
Dedrick.

Additional follow up investigation will be done as information develops.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | |
| DATA ENTRY BY | APPROVED (SUPERVISOR, | BADGE/ID NO | C000110 |
| ckm | | | |

798-2383



# AMERICAN FAMILY INSURANCE GROUP

2600 W RICHWOODS BLVD • PEORIA IL
PO BOX 3220 • PEORIA IL 61612-3220 • PHONE: (309) 688-0622

March 3, 1998

Det. Don Shepard #7797
City of Champaign Police Dept
82 East University Av
Champaign, IL 61820

RE:     Case # **C98-02383**
        Our Claim No.:  521-078991
        Our Insured:    Hansen, Lori
        Date of Loss:   2/25/98

Dear Detective Shepard:

American Family Insurance Company insures Lori Hansen, formerly of 512 S New St, Champaign, IL. We insure her contents and will be called upon to make payment for damages. This could run into $1,000s' of dollars. If a suspect is apprehended, please make sure our Subrogation rights are protected and pass this letter to the States Attny office to contact us.

If I can be of any assistance to you or your department, please let me know.

Respectfully,

DeWayne Householter
American Family Insc.
PO Box 2339
E Peoria IL 61611-2339
direct phone line 309/698-3928
Claims Department

Copy to Agent: Mashid Schnackel  066/832

Claims Department
dh

CHAMPAIGN COUNTY SHERIFF'S OFFICE
LINE-UP

CASE # _798-2383_
DATE _03-11-98_
TIME _10:30 HR_

| NAME OF RESIDENT | | DOB | AGE | WGT. | HGT. | EYES | HAIR | NUMBER |
|---|---|---|---|---|---|---|---|---|
| Redding, Ricky | 32830 | 4-4-69 | 28 | 245 | 510 | Bro | Blk | |
| Campbell, Aaron | 39474 | 7-12-74 | 23 | 240 | 601 | Bro | Blk | |
| Pettigrew, Andrew ✓ | 36507 | 1-1968 | 30 | 220 | 570 | Bro | Blk | |
| Bass, James | 43082 | | | | | Bro | Blk | |
| Mccollum, Kevin | 52194 | | | | | Bro | Blk | |
| Moore, Dedric | 47029 | 8-13-78 | 19 | 225 | 603 | Bro | Blk | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

SUBJECT OF LINE-UP _Moore, Dedric_

AGENCY _Champaign PD_

OFFICER _Don, Shepard_

ATTORNEY _____

_C Glass # 5320_
**Signature of Preparing Officer**

C000112

798.2383




PETTIGREW  ANDREW
FPM#:  36507
Photo#:  1009305

CAMPBELL  AARON
FPM#:  39474
Photo#:  1008633



FPM#:
Photo#:



MOORE  DEDRIC
FPM#:  47029
Photo#:  1011277



MCCOLLUM  KEVIN
FPM#:  52194
Photo#:  1010643

FPM#:
Photo#:



DING  RICKY
#:  32830
#:  1008638



JAMES
35

000113

**E-FILED**
Friday, 04 May, 2007  05:26:03 PM
Clerk, U.S. District Court, ILCD

*798-2383*

# PRIOR TO LINEUP IDENTIFICATION
## (WADE/GILBERT WARNING)

1. Although you do not have a right to refuse to appear in a lineup, you do have a right to have a lawyer present when witness(es) to the crime view the lineup.

2. If you are unable to pay for a lawyer, a lawyer will be appointed to represent you during the lineup free of any cost to you.

3. *(Where voice identification desired).*  You and the other participants in the lineup will be asked to repeat certain words, phrases or sentences spoken by the person who committed the crime. You have no right to refuse to repeat them.  (*If the Miranda warning has been given, it should also be explained that the right to remain silent does not apply to voice identification procedures.)*

C000114



798-2383



**City of Champaign**

**Police Department**

**82 East University Avenue
Champaign, Illinois 61820**

TODAY'S DATE IS MARCH 10, 1998

I'M NOT GOING TO HURT YOU

WHERE'S CHAD?

798-2383



# ity of Champaign

**Police Department**

82 E. University Avenue
Champaign, IL 61820

## LINE-UP INSTRUCTIONS FOR WITNESSES

1. You will be asked to look at several persons, who will each be displaying a number.

2. Look for the features that are permanent. Disregard any temporary features, such as the length and style of hair, clothing, jewelry, and makeup that they may have.

3. Just because we asked you here does not mean we believe the person we are looking for is in this line-up.

4. For each line-up that you view, you will be asked whether you can identify one person, if any, from that line-up.

5. If you identify, or do not identify anyone, indicate it at the bottom of the form.

6. The fact that other people may be here to view a line-up should not be of any concern to you whatsoever.

7. Do not discuss your case or this line-up with anyone else until after you have viewed the line-up and left the area of the line-up.

8. Please understand that to protect the integrity of the investigation, at the conclusion of the lineup, the police will not be able to provide any information about who was in the line-up, or other possible witnesses or evidence.

I <u>DO</u> IDENTIFY THE SUSPECT AS THE PERSON WITH NUMBER_____ (initials_____)

I <u>DO NOT</u> IDENTIFY ANYONE FROM THIS LINE-UP. (initials _lkh_ )    comment →

Name of witness: _Lori Hansen_

Signature: X _Lori Hansen_    Date _3-11-98_

Witness: _Dan Shepard_    Date _3-11-98_

Case Number _798-2383_

C000116

14

798-02383



# City of Champaign

**Police Department**

**82 East University Avenue
Champaign, Illinois 61820**

Postmaster
Champaign Il 61820
City, State, ZIP Code

Date: 3-10-98

## REQUEST FOR CHANGE OF ADDRESS OR BOXHOLDER
## INFORMATION NEEDED FOR SERVICE OF LEGAL PROCESS

Please furnish the new address or the name and street address (if a boxholder) for the following:

Name: Malcolm Sandlin

Address: 405 W. Vine A

NOTE: The name and last known address are required for change of address information. The name, if known, and post office box address are required for boxholder information.

The following information is provided in accordance with 39 CFR 265.6(d)(4)(ii). There is no fee for providing boxholder information. The fee for providing change of address information is waived in accordance with 39 CFR 265.6(d)(1) and corresponding Administrative Support Manual 352.44a.

1. Capacity of requester (e.g., process server, attorney, party representing himself: Detective Champaign Police

2. Statute or regulation that empowers me to serve process (not required when requester is an attorney or a party acting pro se - except a corporation acting pro se must cite statute):

3. The names of all known parties to the litigation:

4. The court in which the case has been or will be heard:

5. The docket or other identifying number if one has been issued:

6. The capacity in which this individual is to be served (e.g., defendant or witness):

### WARNING
THE SUBMISSION OF FALSE INFORMATION EITHER (1) TO OBTAIN AND USE CHANGE OF ADDRESS INFORMATION OR BOXHOLDER INFORMATION FOR ANY PURPOSE OTHER THAN THE SERVICE OF LEGAL PROCESS IN CONNECTION WITH ACTUAL OR PROSPECTIVE LITIGATION OR (2) TO AVOID PAYMENT OF THE FEE FOR CHANGE OF ADDRESS INFORMATION COULD RESULT IN CRIMINAL PENALTIES INCLUDING A FINE OF UP TO $10,000 OR IMPRISONMENT OF NOT MORE THAN 5 YEARS, OR BOTH (TITLE 18 U.S.C. SECTION 1001).

I certify that the above information is true and that the address information is needed and will be used solely for service of legal process in conjunction with actual or prospective litigation.

Signature

Printed Name: Mark Arzesek

Address: 82 E. University Ave

City, State, ZIP Code: Champaign Il 61820

### FOR POST OFFICE USE ONLY

_____ No change of address order on file.
_____ Moved, left no forwarding address.
_____ No such address.

NEW ADDRESS OR BOXHOLDER'S
NAME AND STREET ADDRESS

POSTMARK

CHAMPAIGN
MAR 12
1998

C000117



**ILLINOIS STATE POLICE**
Division of Forensic Services
Bureau of Crime Scene Services

## Crime Scene Report

| | | Crime Scene Investigator | |
| --- | --- | --- | --- |
| | | **Michael Kyrouac** | |

| Requesting Department | Requesting Department Case Number | B.C.S.S. Case Number | Classification |
| --- | --- | --- | --- |
| Champaign P.D. | 798-2383 | MM98-1688-9-1 | Attempted Murder |

| Date, Time, By Whom Notified (Name) | Date and Time of Arrival | Weather | Temperature |
| --- | --- | --- | --- |
| 2/25/98 10:10 a.m.<br>ISP Command Center | 2/25/98 1:13 p.m.<br>Wednesday | Clear | 63⁰ Outside<br>62⁰ Inside |

| Evidence Transported to Laboratory | Date and Time Received at Laboratory | Received by | F.S.C. Case Number |
| --- | --- | --- | --- |
| N/A | N/A | N/A | N/A |

| Evidence Retained by Agency | Date and Time | Received by | Other Laboratory |
| --- | --- | --- | --- |
| #1 - #7 | 02/25/98   3:55 p.m. | Detective Don Shepard | N/A |

| Photography | Sketch | Latents | Other Evidence |
| --- | --- | --- | --- |
| Yes | No | Yes | Yes |

| | |
| --- | --- |
| Victim #1  Lori C. Hanson<br>F/W, DOB 04/12/69<br>512 South New Street<br>Champaign, Illinois<br><br>Vehicle:  Grey 1984 Toyota pickup truck,<br>Illinois registration 1459 JD,<br>VIN  JT4RN60S7E5012959 | Suspect    M/B |

On Wednesday, 02/25/98, at approximately 10:10 a.m., Crime Scene Investigator Michael Kyrouac was contacted by the Illinois State Police Command Center and advised that the Champaign Police Department was requesting assistance processing a recovered stolen vehicle. CSI Kyrouac telephoned the Champaign Police Department and was advised that the above-described vehicle had been stolen from the victim in connection with an arson/attempted murder. The vehicle was currently secured in the impound bay at the police department.

At approximately 1:13 p.m., CSI Kyrouac arrived at the Champaign Police Department and met with Detective Joe Johnston. CSI Kyrouac was advised that approximately 2:55 a.m., the victim arrived at her residence at which time the suspect appeared at the door and forced his way into the residence. The suspect tied the victim's hands together, and placed the victim in a tub. The suspect searched the victim's residence, and at one point obtained from the victim

| Page | Crime Scene Investigator | | I.D. Number | Initials | Date |
| --- | --- | --- | --- | --- | --- |
| 1 of 3 | Michael Kyrouac  *MK* | | 3544 | | |

C000118



**Illinois State Police**
**Division of Forensic Services**
**Bureau of Crime Scene Services**

| | |
|---|---|
| MM98-1688-9-1 | |
| **B.C.S.S. Case Number** | |
| 798-2383 | |
| **Requesting Agency Case Number** | |

## Crime Scene Report

the PIN numbers for the victim's ATM card bank cards. The suspect moved the victim to the living room, where her hands were bound to her feet. The suspect allegedly fondled the victim's breasts, and the victim believed he urinated on her head. The suspect then poured some type of accelerant on the victim and on the floor of the apartment, and set the accelerant afire with a cigarette. The suspect then departed. The victim was able to move to a bedroom, untie herself and escape from the apartment. The victim observed that her vehicle was missing.

CSI Kyrouac was advised that the victim's vehicle was recovered approximately one block from the victim's residence. The vehicle was towed to the Champaign Police Department and secured in the impound bay pending processing.

The vehicle was examined, photographed and processed by CSI Kyrouac.

During examination and processing, the following observations were made: The above-described vehicle was parked in the bay facing west. The doors were observed to be unlocked. The driver's door window was down approximately one inch. The vent window was closed. No damage was observed to the exterior of the vehicle.

Examination and processing of the exterior of the driver's door disclosed partial latent fingerprints approximately 7 inches to the rear of the side view mirror. Smudges with no identifiable ridge detail were developed above the exterior handle and along the rear edge of the door.

The cab was equipped with twin fabric-covered bucket seats, with a console located between the seats. The floor was covered with grey carpet. Rubber floor mats were located on the driver and passenger floorboard. The floor mats were observed to be dirty. Examination of the floor mats disclosed no identifiable footwear impressions. The odometer displayed 93359.2 miles. The trip odometer displayed 31.4 miles. The ignition key, which was attached to a key ring with several keys and a red and white key chain, was present in the ignition switch. Examination and processing of the key chain and keys disclosed no identifiable latent prints.

Examination of the interior of the driver's door disclosed two dark-colored hairs attached to the fabric below the interior handle. CSI Kyrouac taped the driver's seat and seat back to collect any hairs or fibers present.

One grey "Maxell" brand cassette tape and one "Camel Lights" cigarette box were observed on the driver's floor near the gas pedal. Two empty "Camel Lights" cigarette packages and assorted papers were observed in an open compartment in the center console and wedged between the driver's seat and console. One piece of yellow construction paper with the numbers, "1972" and "2810" printed in black ink was observed in the open compartment. A closed compartment was located in the rear of the center console. The compartment was opened and found to contain parking tickets, and assorted receipts and papers along with two $1 bills. One black potato chip bag was observed on the passenger floor.

| Page | Crime Scene Investigator | I.D. Number | Initials | Date |
|---|---|---|---|---|
| 2 of 3 | Michael Kyrouac | 3544 | clm | 000119 |



**Illinois State Police**
Division of Forensic Services
Bureau of Crime Scene Services

| MM98-1688-9-1 |
|---|
| **B.C.S.S. Case Number** |
| 798-2383 |
| **Requesting Agency Case Number** |

## Crime Scene Report

Examination and processing of the vehicle interior disclosed a partial fingerprint on the turn signal lever.

The truck bed was equipped with a fiberglass "topper". One box of "Castrol GTX" oil and one piece of rubber weatherstripping were observed in the bed.

Collected as physical evidence from the vehicle were the following exhibits:

| | |
|---|---|
| Exhibit #1 | Sealed envelope containing latent lift card from exterior of driver's door between mirror and handle. |
| Exhibit #2 | Sealed envelope containing taping of driver's door. |
| Exhibit #3 | Sealed paper bag containing "Maxell" cassette tape from driver's floor. |
| Exhibit #4 | Sealed paper bag containing "Camel Light" cigarette box from driver's floor. |
| Exhibit #5 | Sealed paper bag containing sealed paper fold with two dark-colored hairs from interior of driver door below handle. |
| Exhibit #6 | Sealed envelope containing latent lift card from turn signal lever. |
| Exhibit #7 | Sealed paper bag containing two empty "Camel Lights" packages from compartment in center console. |

At approximately 3:35 p.m., CSI Kyrouac completed the processing of the vehicle.

At approximately 3:55 p.m., Exhibits #1 through #7 were receipted to Detective Don Shepard at the police department.

At approximately 4:00 p.m., CSI Kyrouac departed the Champaign Police Department.

The exposed photographic film was mailed to the Bureau of Crime Scene Services Photo Laboratory in Springfield. Upon receipt, the photographs will be forwarded to the Champaign Police Department, and the negatives will be maintained in the crime scene case file.

| Page | Crime Scene Investigator | I.D. Number | Initials | Date |
|---|---|---|---|---|
| 3 of 3 | Michael Kyrouac *MK* | 3544 | clm | |

C 0 0 0 1 2 0

pg 1 of 2

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0255 | 06-23-98  2033 | 79802383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Murder-First Degree-Attempted | 512 S. New St |

On 06-23-98, I assisted Ofcr. Guerrero at 1302 N. Prospect, Arby's, reference a criminal sexual abuse report. I submitted a supplemental report to Ofcr. Guerrero's original report, of my interview with the suspect, Kevin.

While speaking with the suspect, Kevin, I noticed several similarities between Kevin, and the suspect in a separate case, which I had taken the original report on 02-25-98. That report was titled Attempted First Degree Murder.

Kevin is a 24 year old black male, dark complected, 6'01", weighing approximately 200 lbs. Kevin has a very noticeable space in the left front row of his lower teeth. The pictures taken of the suspect in 798-02383, indicate that the suspect may have had a similar spacing in his teeth. Also, Kevin has a very prominent jaw structure, as the suspect did in this previous case. Kevin has large lips, also similar to the suspect. Kevin's nose is very rounded at the tip, much like the suspect in this case.

The victim of Ofcr. Guerrero's sexual abuse case tonight, was a white female. The victim in this previous case was a white female. I noticed that while I spoke with Kevin, he was smoking a thin cigar, with a plastic tip. I recalled that the suspect in the previous case was a cigarette smoker.

Ofcr. Guerrero arrested Kevin tonight, for criminal sexual abuse. Ofcr. Guerrero took a Polaroid photo of Kevin tonight, and he gave the photo to me. Later at CPD, I compared tonight's Polaroid, with the picture of the suspect in this previous case, which is posted on the bulletin board in the hallway at CPD. I noticed that Kevin looks very similar to the suspect in this previous case.

I have attached the Polaroid photo with this supplemental report.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| 79807583 | C. W. Shipley | 7772 | 06-23-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| | | 581 | C 0 0 0 1 2 1 |

Pg 2 of 2

# CHAMPAIGN POLICE DEPARTMENT

MULTIPLE OFFENDER/~~~~~~~~~~

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to your agency; it and its contents are not to be distributed by you or outside your agency.

| Date and Time Reported | Date and Time of This Report | Event # | Case # |
|---|---|---|---|
| 02-25-98  0255 | 06-23-98  2033 | 798-02383 | |

| O □ Name | Address | City, State | U □ Tx # |
| J □  Johnikin, Kevin A. | 4 Bay Tree    Shadow Wood | C ☒  None |
| AKA (includes Maiden Name) | Alias DOB(s) | | Employment Code   Y |

| Description (clothing, etc.) | Social Security # | DLN & State | City, State | U □ Tx # |
| black pants / gray Arby's shirt | 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 | J525-5017-4017 | | C ☒  359-2207 |

| Employer/School | Address | | | | | |
| Arby's | 1302 N. Prospect | | | | | |

| DOB | Age | Race | Sex | Ht. | Wt. | Hair | Eyes | Distinguishing Features |
| 01-17-74 | 24 | B | M | 6'01" | 200 | Blk | Bro | space in left lower teeth |

| Injury Code | Gang | Gang Name | Show up: Date/Time | Location | Conducting Officer |
| N | N | | | | |

| Arresting Officer | Location of Arrest | Date/Time Arrested | Transported By | Disposition |
| NA | | | | |

| Miranda: | Ofc Name | Date/Time | Arrest #'s | Arrest Type |
| Y ___ N ✓ | | | | |

| Vehicle: Color | Year | Make | Model | Body | License | VIN |
| | | | | | | |

| O □ Name | Address | City, State | U □ Tx # |
| A □ | | C □ | |
| AKA (includes Maiden Name) | Alias DOB(s) | | Employment Code |

| Description (clothing, etc.) | Social Security # | DLN & State | City, State | U □ Tx # |
| | | | C □ | |

| Employer/School | Address | City, State | U □ Tx # |
| | | C □ | |

| DOB | Age | Race | Sex | Ht. | Wt. | Hair | Eyes | Distinguishing Features |
| | | | | | | | | |

| Injury Code | Gang | Gang Name | Show up: Date/Time | Location | Conducting Officer |
| | | | | | |

| Arresting Officer | Location of Arrest | Date/Time Arrested | Transported By | Disposition |
| | | | | |

| Miranda: | Ofc Name | Date/Time | Arrest #'s | Arrest Type |
| Y ___ N ___ | | | | |

| Vehicle: Color | Year | Make | Model | Body | License | VIN |
| | | | | | | |

| O □ Name | Address | City, State | U □ Tx # |
| A □ | | C □ | |
| AKA (includes Maiden Name) | Alias DOB(s) | | Employment Code |

| Description (clothing, etc.) | Social Security # | DLN & State | City, State | U □ Tx # |
| | | | C □ | |

| Employer/School | Address | City, State | U □ Tx # |
| | | C □ | |

| DOB | Age | Race | Sex | Ht. | Wt. | Hair | Eyes | Distinguishing Features |
| | | | | | | | | |

| Injury Code | Gang | Gang Name | Show up: Date/Time | Location | Conducting Officer |
| | | | | | |

| Arresting Officer | Location of Arrest | Date/Time Arrested | Transported By | Disposition |
| | | | | |

| Miranda: | Ofc Name | Date/Time | Arrest #'s | Arrest Type |
| Y ___ N ___ | | | | |

| Vehicle: Color | Year | Make | Model | Body | License | VIN |
| | | | | | | C000122 |

| Reporting Officer Signature | Badge/ID No. | Date | Approved (Supervisor) | |
| C.L. Shipen | 772 | 06-23-98 | Sgt. John Lynch | 06/4/98 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, It and it's contents are not to be distributed by you or outside your agency.

1

| DATE AND TIME OF ORIGINAL REPORT · | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hours | 07-16-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

When I spoke to Dedrick at CPD on 03-05-98 at 1330 hours, he said he had
been picked up by a white female, named Jennifer LNU at Piccadilly Liquors.
He said he paged her 292-2400 from the pay phone at Ken Lee's on South First
Street. He said he was taken to Malcolm's (LNU) house to help move that night.
Dedrick said he went to Hardee's prior to going home at about 3:30 a.m. on 02-
25-98.

I have not been able to locate or identify Jennifer. 292-2400 does not exist
according to phone records. Jim Davis, Champaign County State's Attorney
Investigator requested those records and was advised that number has not been
issued.

I located Malcolm Sandlin, 405 West Vine Street, #A, lower level. I checked with
Illinois Public Aid office and was told they have a record of Malcolm receiving a
government check at 3510 South Rhodes, #604 Chicago under the name
Nathaniel Brakes. I called Chicago Police Department and requested that a
patrol officer attempt to locate Malcolm. Chicago PD advised they were not able
to locate anyone at that address.

I spoke to Steve Burgett, 384-4086 or 384-7739 American Software Distributing
Corp., 502 East Anthony Drive, Urbana. He said Malcolm Sandlin had worked
there, but has quit. The address they had was 902 East 10 First Street,
Chicago. I asked Chicago PD and asked a patrol officer attempt to locate
Malcolm. Chicago PD advised that Malcolm Sandlin does not live at that
address, nor do the residents have any knowledge of Malcolm Sandlin or his
whereabouts.

I have not been able to locate Robert Williams or his mixed girlfriend, Jody LNU.
However on 03-31-98 at 1430 hours I spoke to Mary A. Moore, white female,
DOB: 06-29-57, general manager for Hardee's 1806 West Bradley, 359-8711.
Dedrick said this is the Hardee's he went to before he went home on the night of
this incident. Mary said there is no detail tape for the day, however, between
0300 hours and 0400 hours on that date, there was a total of eight transactions
which totaled $16.93. She said there was no way to tell what a specific
purchase was.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | 197 | 07-17-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000123 |



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

2

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hours | 07-16-98 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Home Invasion | 512 South New #A |

On 03-24-98 at 0900 hours the owner of 512 South New, Harry Washburn
delivered a packet showing the amount of damage incurred at that address as a
result of the fire. Those documents are attached to this report. The total amount
of damages was $27,388.52.

On 03-24-98 at 1600 hours I spoke to John R. Dobson, white male, DOB: 07-11-
17, 703 West Healey, 352-3086. He informed me he found an Illinois ID card in
the grass between the neighbor's yard behind his house and his garage. There
is a fence there and the ID card was laying between the fence and his garage.
The ID card was entered in CPD.

On 03-26-98 at 10:30 hours I went to his house and photographed the area
where the ID was found and the relationship to the location where the victim, Lori
Hansen's stolen truck was recovered on film 1397 photos 5 though the end. The
ID was in a straight line north of where the truck was and a general straight line
from the ID north to where the camel bag (stolen from Lori's house) was found in
the mud puddle in the alley.

On 03-31-98 at 1430 hours I spoke to Lilly Moore by phone after I talked to
Dedrick at her house on 03-04-98 when we served the search warrant. I was
able to contact her at her daughter's house, Patricia Holtzclaw, 601 284 9848.
Lilly said the only person who knew she was coming home on 02-25-98 was
Donrico Holtzclaw, her grandson. She said she did not give Dedrick a key to her
house, nor did she give Dedrick permission to stay there after the fire occurred.
She said left town on the Friday after this incident. She went to her daughter's
house. Dedrick spoke to her since then by phone and told her he went to her
house with the police so they could search it. It should be noted that Dedrick
told me, when I served the search warrant that his grandmother had given him a
key to the house on that Friday she left town and asked him to stay there and
keep an eye on the house for her. He said he only spent two nights there just
prior to talking to me.

On 03-31-98 at 1515 hours I spoke to Jennifer Stevens at school. She was
Dedrick's girlfriend at the time of this incident. She said that on the night of 02-
24-98 she spent the night with her girlfriend at Topper Steinman's, 359 2852.
She said she called Dedrick from that address two times on the night of 02-25-
98. I recited phone numbers listed on the phone records I had obtained from
Jim Davis. She said she did not recognize any of the phone numbers of calls
made on 02-24-98 at 22:28:36.6 hours (800 822 8286) through 02-25-98 at

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | 197 | 07-17-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | |
| ckm | | | C000124 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

3

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hours | 07-16-98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Home Invasion | 512 South New #A | | |

02:19:28.0 hours (352-3182). These were numbers called from the pay phone at
Ken Lee's.

The phone records of the pay phone show a list of calls made from the phone
and the calls that were received at the pay phone and where the call originated
from.

Dedrick said he paged Jennifer at 292 2400 from Ken Lee's pay phone at about
1230 a.m. on 02-25-98. That pager number is not valid. The phone numbers
that made calls to that pay phone during that timeframe: 12:30 a.m. shows no
calls were made at all. The last call before 12:30 a.m. was made from 359 5450
at 19:29:52.5 hours. When that number is called, a loud, shrill beep is heard
which is indicative of a fax machine. I tried to fax a message, but got a response
of, busy. The first call after 12:30 a.m. to the pay phone was from 359 2852 at
22:07:50.9 hours on 02-25-98. Directly below it was a call from 359 2852 at
22:08:29.5 hours. 359 2852 is registered to Topper Steinman, where Jennifer
Steven's, Dedrick's girlfriend was staying. She said she made those phone
calls.

The calls made from Ken Lee's pay phone according to the phone log were: 02-
24-98 at 23:31:12.2 hours to 800 375 4285. I receive a message in Spanish
when that number is called which is like a menu, then it disconnects.

The next phone call was made on 02-25-98 at 02:19:28.0 hours to 352 3182.
Regan J. Hunt, white female, DOB: 04-21-76 answers that phone. She said that
is the University Group Rental agency, 309 South First Street.

I am also requesting through the SA's Office that the phone records be obtained
for Jennifer Steven's pager number, 621 2173 and Topper Steinman's
residence, 359 2852. It should be noted that in Detective Charles Shepard's
follow-up report after he spoke to Jennifer Steven's, she told him Dedrick would
page her and give the phone number where he was. She would then call him
back at that phone number. I spoke to Jennifer Stevens today by phone and
confirmed that was accurate. When I receive the phone records from the SA's
Office I will attached them to this report after comparing them to the witness
statements in this case.

This report will be attached to the original casefile.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | 197 | 07-17-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm          -- | | | C 0 0 0 1 2 5 |

798·2383

**UNITED SERVICES**
**PROFESSIONAL BUILDING & REPAIR CONTRACTORS**
**P.O. BOX 1034, MAHOMET, IL  61853**
**(217)586-4226   (309)662-2595**
**FAX LINE (217)586-4224**
**FEDERAL ID NO. 37-1259259**
**03/01/98**

Client: Harry Washburn

Property Addr: 512 S New Street
Champaign, IL

Estimator: Vernon E Moir                    Bus. Ph: (217)586-4226
                                             Fax: (217)586-4224

Reference: Mike Devocelle                    Bus. Ph: (217)359-4855
           Adjuster                          Fax: (217)367-4011
  Company: Cincinnati Companies
  Address: P.O. Box 6935
           Champaign, IL 61826-6935

Estimate: WASHH98-020

Thank you for allowing us to be of service to you!

---

## RESTORER'S STATEMENTS

The following  estimate is limited to what I was  able  to  inspect
visually and the statements of the owner or adjuster.  The scope of the
repairs submitted represents only my professional  opinion and in no way
reflects any interest or impact on the final settlement.

The dollar amount at the end of this scope is what I believe to be a
fair market price for performing the work.

This  estimate  may  contain  a list  of  allowances for specific
items  such as  carpet,  vinyl  floor covering,  light fixtures, and
appliances.

This a fixed price contract.  No individual line item prices can
be taken from this estimate by  themselves  because  the  estimate is
written in a  generalized  pricing  fashion to give an 'overall scope'
for the project. This generates a price 'package' to satisfy the needs

798.2383

of the insurance industry. One line item price may not reflect all the costs and related burdens to United Services for that item. Individual prices, therefore, must be confirmed by United Services or listed on the allowance sheet.

In the demolition process, damaged materials and items removed will become the property of United Services for disposal at their discretion unless other arrangements are made with the owner prior to the signing of this contract.

Cleanliness of the property during restoration is of great concern to us. Even with all precautions taken, some construction dust will accumulate at times. Please bear with us.

City codes at times will require updating for the safety of the occupants or public. Electrical, plumbing, hvac, and construction code changes are not covered by the insurance industry. Although every effort will be made to alert the owner before work starts of any extra expenses, building inspectors, at their descretion may at any time require some updating.

Due to weather and/or changing from one phase of the work to another, there may be times when no workers are on the jobsite. This is only a temporary situation and should be no cause for alarm to the owner.

As per Illinois state law, you have the right to cancel within three working days of the signing of this contract.

Preexisting damages to the property not related to this loss are not covered in the contract (i.e. - scratched doors, dented hardwood floors, torn vinyl flooring). Any such areas need to be confirmed with United Services.

All workmanship is guaranteed for two full years from the completion date. Smoke odor eradication carries an unlimited warranty.

·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

THANK YOU FOR USING UNITED SERVICES
WE APPRECIATE YOUR BUSINESS
AND WE WILL PROVE IT!

ON THE FOLLOWING PAGES:
A room by room, item by item description of what is neccessary to restore your property to a condition equal to (or better than) what it was originally.

Definition of terms used in the following estimate;

C000127

798-2383

R & R  = Remove the old item and replace with new item.
R      =  Remove item temporarily and reset it for use again.
Detach and Reset = Remove item temporarily and reset it for
                   use again

C000128

798-2383

**UNITED SERVICES**

Harry Washburn                                      03/01/98   Page:4

**Room: Attic**                     LxWxH:   29'0" x   27'4" x   3'0"
-----------------------------------------------------------------------
Framing repair - four trusses, to city code (including                1 EA
  removal of soffit for access)
R&R Batt insulation -  4" - R11 for ceilings                        793 SF
Seal attic roof sheathing for odor control, 144 sf, matt            144 SF
  brown
Deodorize attic of both apartments (enter total SF of              793 SF
  floor in unit)
-----------------------------------------------------------------------


**Room: LIVING ROOM**              LxWxH:   13'7" x   10'4" x   8'0"
  **Subroom 1: Cloak**             LxWxH:    3'0" x    2'0" x   8'0"
-----------------------------------------------------------------------
R&R 5/8" drywall (substituted for plaster) - hung, taped,          544 SF
  with smooth finish (original paster had sand finish)
R&R Batt insulation -  4" - R11, west and north walls              192 SF
  (ceiling included in attic)
Rewire - average room (listed in  "Electrical")      [ELSEWHERE]   147 SF
R&R Exterior door, 3'0 steel, 6 panel                                1 EA
Detach & Reset Original Storm door assembly                          1 EA
Door lockset & deadbolt - exterior                                   1 EA
R&R Interior door, closet - lauan / mahogany - new slab              1 EA
  and hinges only, no jamb or trim
Door lockset - interior                                              1 EA
R&R Wood window - double hung, 10 - 15 sf                            1 EA
Storm window - aluminum, 3 - 11 sf, triple track                     1 EA
R&R Casing for entrance door and window                             35 LF
R&R Window stool & apron                                             4 LF
R&R Closet Shelving - 16" (2 each) - in place                        6 LF
Baseboard - 2 1/4" colonial                                         45 LF
Paint the walls & ceiling - two coats                              544 SF
Paint baseboard - two coats                                         45 LF
Paint door (per side)                                                4 EA
Paint/finish wood window (per side)                                  2 EA
R&R Glue down carpet, material allotment $9.47 per square           19 SY
  yard
-----------------------------------------------------------------------

C000129



798-2383

**UNITED SERVICES**

Harry Washburn                                              03/01/98   Page:5

| | | |
|---|---|---|
| Room: KITCHEN | LxWxH: | 13'2" x   9'0" x   8'0" |
| Subroom 1: Cabinet Offset | LxWxH: | 10'4" x   3'10" x   8'0" |

---

| | |
|---|---|
| R&R 5/8" drywall (substituted for plaster) – hung, taped, with smooth finish | 532 SF |
| R&R Batt insulation – 4" – R11, east and north walls (ceiling included in attic) | 192 SF |
| Rewire – average room (listed in "Electrical")          [ELSEWHERE] | 159 SF |
| R&R Exterior door,  steel, 6 panel | 1 EA |
| Storm door assembly | 1 EA |
| Door lockset & deadbolt – exterior | 1 EA |
| R&R Wood window – double hung, 10 – 15 sf | 1 EA |
| Storm window – aluminum, 3 – 11 sf, triple track | 1 EA |
| R&R Casing for entrance door and window | 29 LF |
| R&R Window stool & apron | 4 LF |
| Baseboard – 2 1/4" colonial | 37 LF |
| Paint the walls & ceiling – two coats | 532 SF |
| Paint baseboard – two coats | 45 LF |
| Paint door (per side) | 2 EA |
| Paint/finish wood window (per side) | 2 EA |
| R&R Vinyl floor covering (sheet goods) original may clean  [WAITING] | 20 SY |
| R&R Cabinetry – lower (base) units – material allotment $75 per lineal foot | 9.08 LF |
| R&R Cabinetry – upper (wall) units – material allotment $50 per lineal foot | 10.25 LF |
| R&R Counter top – post formed Formica | 11 LF |
| Sink – double – Detach & reset | 1 EA |
| R&R Sink faucet | 1 EA |
| R&R Light fixture (over sink) fixture allotment $22,          [ELSEWHERE] installation figured in "electrical" bid | 1 EA |
| R&R Light fixture, dining area, hanging, fixture          [ELSEWHERE] allotment $42 | 1 EA |
| NOTE: Stove and refrigerator are usually listed as contents and so are not included in this estimate. | |

---

| | | |
|---|---|---|
| Room: HALL | LxWxH: | 5'8" x   2'10" x   8'0" |
| Subroom 1: Offset | LxWxH: | 2'10" x   2'5" x   8'0" |
| Subroom 2: Linen | LxWxH: | 2'10" x   2'0" x   8'0" |

---

| | |
|---|---|
| R&R 5/8" drywall (substituted for plaster) – hung, taped, with smooth finish | 190 SF |
| NOTE:  Original plaster walls and ceiling will remain in linen closet. | |
| Rewire – average room (listed in "Electrical")          [ELSEWHERE] | 30 SF |

*798-2383*

**UNITED SERVICES**

Harry Washburn                                    03/01/98  Page:6
                    Continued - HALL
-------------------------------------------------------------------
R&R Interior door, 2 bedrooms and bath - lauan / mahogany                3 EA
 - slab only, no jamb or trim
Door lockset - interior                                                  3 EA
Baseboard - 2 1/4" colonial                                             12 LF
Paint the walls & ceiling - two coats                                  259 SF
Paint baseboard - two coats                                             12 LF
Paint door (per side)                                                    3 EA
Strip paint/finish from door jambs, 4" - 8" wide                        51 LF
Paint door jambs, two coats (per side)                                   3 EA
R&R Glue down carpet, material allotment $9.47 per square                4 SY
 yard
Paint linen shelving, 16" wide                                          10 LF
R&R Folding door - linen closet                                          1 EA
Paint cold air return (cover)                                            1 EA
R&R Light fixture, ceiling,  fixture allotment $22,                      1 EA
 installation figured in "electrical" bid
-------------------------------------------------------------------


Room: Furnace Room                    LxWxH:    3'6" x    2'6" x   8'0"
-------------------------------------------------------------------
R&R Furnace - forced air, (and plenum) (awaiting bid)                    1 EA
R&R Water heater - 30 gallon, flue connections and copper                1 EA
 piping as needed
Painting  or cleaning of gas, water, and flu piping -                  0.6 EA
 Minimum charge
Rewire - average room (listed in  "Electrical")       [ELSEWHERE]        9 SF
Paint the walls & ceiling - two coats                                   77 SF
Paint baseboard - two coats                                             12 LF
R&R Glue down carpet, material allotment $9.47 per square                1 SY
 yard
Folding door                                                             1 EA
 NOTE: Duct cleaning by others
-------------------------------------------------------------------


Room: BATH                            LxWxH:    6'4" x    5'0" x   8'0"
-------------------------------------------------------------------
R&R Marlite tub surround complete w/trim - up to 65 sf                   1 EA
R&R Sink faucet                                                          1 EA
Bathtub faucet trim (handles, spout, riser, shower head)                 1 EA
R&R Medicine cabinet, single mirror door                                 1 EA
Light fixture,  allotment $22, installation figured in                   1 EA
 "electrical" bid

*798-2383*

**UNITED SERVICES**

rry Washburn                                            03/01/98   Page:7
                        **Continued – BATH**

--------------------------------------------------------------------------------
R&R Bathroom ventilation fan (in electrical bid)        [ELSEWHERE]        1 EA
Seal/prime walls / ceilings – one coat                                   214 SF
Paint the walls & ceiling – two coats                                    214 SF
R&R Vinyl floor covering (sheet goods) original may clean  [WAITING]       4 SY
R&R Shower curtain rod                                                     1 EA
R&R Soap dish, chrome                                                      1 EA
R&R Toilet paper holder – chrome                                          1 EA
R&R Towel bars, 24", 18", 12" (on door)                                   3 EA
R&R Nick-nack Shelving – wood, 6"                                        1.5 LF
--------------------------------------------------------------------------------


Room: Front Bedroom                  LxWxH:   10'3" x    9'8" x   8'0"
 Subroom 1: Closet                   LxWxH:    5'0" x    2'0" x   8'0"
--------------------------------------------------------------------------------
Drywall repair – cracks in plaster                                       0.4 EA
R&R Wood window – double hung, 10 – 15 sf                                   1 EA
R&R Casing for  window                                                    12 LF
R&R Window stool & apron                                                   4 LF
Storm window – aluminum, 3 – 11 sf                                         1 EA
Seal walls / ceilings – one coat                                         541 SF
Paint the walls & ceiling – two coats                                    541 SF
Paint shelving, 16" wide (2 each)                                          6 LF
 aint baseboard – one coat                                                54 LF
.aint/finish wood window (per side)                                        2 EA
Paint door (per side)                                                      1 EA
R&R Light fixture, ceiling,  fixture allotment $22,       [ELSEWHERE]      1 EA
 installation figured in "electrical" bid
R&R Glue down carpet, material allotment $9.47 per square                  14 SY
 yard
R&R Bypass mirrored door set – (should clean)             [NOT BID]        1 EA
--------------------------------------------------------------------------------


Room: REAR BEDROOM                   LxWxH:    9'8" x    8'9" x   8'0"
 Subroom 1: Closet                   LxWxH:    6'4" x    2'0" x   8'0"
--------------------------------------------------------------------------------
Drywall repair – cracks in plaster                                       0.4 EA
R&R Wood window – double hung, 10 – 15 sf                                   1 EA
R&R Casing for  window                                                    12 LF
R&R Window stool & apron                                                   4 LF
Storm window – aluminum, 3 – 11 sf                                         1 EA
Seal walls / ceilings – one coat                                         527 SF
Paint the walls & ceiling – two coats                                    527 SF

798-2383

**UNITED SERVICES**

Jarry Washburn                                           03/01/98   Page:8
                        Continued – REAR BEDROOM
--------------------------------------------------------------------------------
Paint shelving, 16" wide (1 each)                                    6.33 LF
Paint baseboard – one coat                                            54 LF
Paint/finish wood window (per side)                                    2 EA
Paint door (per side)                                                  1 EA
R&R Light fixture, ceiling,  fixture allotment $22,    [ELSEWHERE]     1 EA
 installation figured in "electrical" bid
R&R Glue down carpet, material allotment $9.47 per square            13 SY
 yard
R&R Bypass mirrored door set – (should clean)         [NOT BID]       1 EA
--------------------------------------------------------------------------------


Room: **EXTERIOR**
--------------------------------------------------------------------------------
Paint exterior soffit – wood, front of house                        120 SF
Paint exterior soffit – wood, rear of 512 "A" only                   40 SF
Paint gutter / downspout, same areas as soffit                      180 LF
--------------------------------------------------------------------------------


Room: Electrical
--------------------------------------------------------------------------------
Electrical repair – as per bid                                        1 EA
--------------------------------------------------------------------------------


Room: MISCELLANEOUS
--------------------------------------------------------------------------------
Building Permits                                                    0.3 EA
General clean-up at job's end, ready for occupancy                    6 HR
Dumpster load – Large                                                 1 EA
 NOTE: Cleaning of smoked walls, ceilings, and exterior surfaces will be performed by
 Servpro.  All other repairs necessary for habitation of the apartment will be performed
 by United Services.
--------------------------------------------------------------------------------

798-2383

Harry Washburn

UNITED SERVICES

03/01/98  Page:9

Grand Total

------------
$27,388.52
============

Vernon E Moir
Estimator

798-2383



LIVING ROOM
10'4 X 13'7

12'9 X 13'2

2'0 X 3'0

2'0 X 5'0

2' X 1'10

3'6 X 2'6

5'8 X 2'10

2'10 X 2'5

2'10 X 2'4

FRONT BEDROOM
9'8 X 10'3

6'4 X 5'0

2'0 X 6'4

REAR BEDROOM
9'8 X 8'9

WASHBURN
APARTMENTS

512 S NEW
CHAMPAIGN

C000135

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98  0259 HR | 08/19/98  1300 HR | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| First Degree Murder: Attempt | 512 South New | | |

When I interviewed Dedric Moore about his whereabouts on the date and time of this incident, He told me that he had paged a W/F whom he did not know her last name. Her first name was Jennifer and she was about 28 years old. She lives over in Urbana near MTD. She has a daughter about 9 years old. He has known her for about three years. He said that he paged her at 292-2400 from the pay phone at Ken Lee's store on south First street at about 12:30 a.m. and she called him back there. She picked him up at Piccadili Liquor parking lot on South First street.

I have received the phone records and no calls came in to the pay phone or were made from the pay phone at Ken Lee's store during that time frame. It has also been determined that the pager number 292-2400 has never been issued.

I received police report #798-9275 to investigate. It is a vehicle burglary report that Dedric Moore was arrested in. In that report he names a Jennifer Law as an alibi. However when officers spoke to her she was not an alibi for him.

In seeing her address and age, I called her to speak to her about this case. Thinking that she might be the alibi he was referring to in this case. She came to CPD and gave me a taped statement today. I have attached the transcript to this report and entered the micro cassette tape into evidence at CPD. See the transcript for details.

When talking to her during the statement, she did not recall her old phone number that Dedric used to call her at, nor his phone number that he gave her to call him at. She went home and called me with them. **They were: Her phone #383-2180 and his phone #352-2380.** Her old phone number does not appear at all on the phone records of that pay phone.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 7197 | 08/19/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| Det. D. Shepard | | | |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

1

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

Q: Would you please state your first name for me ma'am?

A: Jennifer.

Q: And you middle initial?

A: L.

Q: Your last name?

A: Law.

Q: And how do you spell your last name?

A: L-a-w.

Q: Your birthday?

A: 11-21-71.

Q: And what's your current address?

A: 47 Michelle Lane in Urbana.

Q: And how long have you lived there?

A: About two years.

Q: And what's your phone number?

A: 384 6576.

Q: And how long have you had that phone number?

A: Since July 9th.

Q: Of 1998?

A: Yes.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000137 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

2

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

Q: What was your phone number before that?

A: I'm not sure.

Q: Do you remember any part of it?

A: The 2-3-9.

Q: Do you know any of the last four numbers at this point?

A: No.

Q: Do you have some means at home that you could retrieve that information for me?

A: Yes.

Q: Okay.  Who all lives with you?

A: Me, my daughter and Danielle Lockette.

Q: How old's Danielle?

A: 20.

Q: Do you know when her birthday is?

A: August 1st.

Q: And what race is she?

A: She's mixed.

Q: What's your daughter's name?

A: Shawnee Kelphomma.

Q: Could you please spell the first name?

A: S-h-a-w-n-e-e

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000d 38 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

3

| DATE AND TIME OF ORIGINAL REPORT 02-25-98  0259 hrs. | DATE AND TIME OF THIS REPORT 08-19-98  1023 hours | CONTROL NUMBER 798-2383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION First Degree Murder | | LOCATION 512 South New Street | |

Q: Her last name?

A: K-e-l-p-h-o-m-m-a.

Q: And her birthday?

A: 07-09-93.

Q: So you had your phone number changed on your daughters birthday?

A: Yeah.

Q: Okay. Why did you have your phone number changed?

A: Switched companies.

Q: Okay. Are you aware the tape player is on?

A: Yes.

Q: And is it true that you came in today because I called you and asked you to come in to talk to you about some issues?

A: Yes.

Q: Do you know a Dedrick Moore?

A: Yes.

Q: How do you know Dedrick?

A: I dated him for awhile.

Q: I want to show you a picture here. See if this is the same Dedrick Moore that we're talking about. I'm showing you a booking photo. It's a Champaign County Sheriff's Office mugshot profile that the date is 12-12-97 at 2333 hours. Do you recognize that picture?

A: Yes.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Detective Don Shepard | BADGE/ID NO. I 97 | DATE 08-19-98 |
|---|---|---|---|
| DATA ENTRY BY ckm | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

C000139

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

4

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| First Degree Murder | 512 South New Street | | |

Q: And who is that picture of?

A: Dedrick.

Q: Okay, that's the Dedrick you dated?  When did you meet Dedrick?

A: January or February.

Q: Of 1998?

A: Yeah.

Q: And when was it you started dating him?

A: Probably May.

Q: Of this year?

A: Yeah.

Q: How long did you date him?

A: Couple months.

Q: When was the last time you talked to him?

A: Probably the middle of June.

Q: Have you talked to him since you've had your phone number changed?

A: No.

Q: Does he know your new phone number?

A: No.

Q: Did he know your previous phone number?

A: Yes.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | 0000140 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

5

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

Q: Did he call you at that phone?

A: Yes.

Q: How often did he call you?

A: At first prbably four or five times a week.  And then it kinda went down to maybe twice a week.

Q: Did, do you have a pager?

A: No.

Q: Have you ever had a pager?

A: No.

Q: Has he ever called you in the middle of the night?

A: Yeah.

Q: Or late at night?

A: Yeah.

Q: Did he ever ask you to come pick him up late at night?

A: Yeah.

Q: Have you ever picked him up late at night?

A: No.

Q: Have you ever come and picked him up to give him a ride somewhere?

A: Yes.

Q: And what time of day would that have been?

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000141 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

6

| DATE AND TIME OF ORIGINAL REPORT<br>**02-25-98  0259 hrs.** | DATE AND TIME OF THIS REPORT<br>**08-19-98  1023 hours** | CONTROL NUMBER<br>**798-2383** | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION<br>**First Degree Murder** | | LOCATION<br>**512 South New Street** | |

A: Middle afternoon, late afternoon.

Q: Do you remember anytimes you picked him up, where you took him to?

A: No, we always met at like, Osco Drugs or Champaign Post Office or some other place.

Q: Have you ever picked him up at Piccadilly Liquor on South First Street?

A: No, I was supposed him up, but I didn't show up.

Q: What time of day was that?

A: It was, it was at night 'cause we were gonna go to Bradley's together, but I didn't pick him up.

Q: Do you remember what night of the week?

A: Probably Thursday.

Q: Do you remember what time of night it was you was supposed to pick him up?

A: I was s'posed to be there at ten, no, 9:30.

Q: And when was it that you made those arrangements?  Was it earlier that day or?

A: Yeah, earlier that day.

Q: So was it still daylight do you think?

A: Oh yeah, yeah.

Q: Was that conversation for the plans by telephone?

A: Yeah.

Q: Or in person?

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER<br>**Detective Don Shepard** | BADGE/ID NO.<br>I 97 | DATE<br>08-19-98 |
|---|---|---|---|
| DATA ENTRY BY<br>ckm | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

C000142

# SUPPLEMENTARY/CONTINUATION REPORT

* This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

7

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

A: Telephone.

Q: You said that you been to Osco's on Green Street with him.  Have you ever taken him to West Vine Street in Champaign?

A: No.

Q: Did you ever drop him off at anyone's house to help them move?

A: No.

Q: You said that your daughter is five years old.

A: Yeah.

Q: And is that the only child that you have?

A: Yes.

Q: When you first met him, do you remember where it was that you met him?

A: Cochrane's.

Q: That's a, a bar in Champaign?

A: Yes.

Q: And did he introduce himself or tell you his name?

A: Yes.

Q: What name did he tell you?

A: Khalifa.

Q: Did he spell it for you?

A: Yeah, I asked him how to spell it later.

Q: And how did he tell you it's spelled?

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Detective Don Shepard | BADGE/ID NO. I 97 | DATE 08-19-98 |
|---|---|---|---|
| DATA ENTRY BY ckm | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

C 0 0 0 1 4 3

E-FILED
Friday, 04 May 2007  05:26:26 PM
Clerk, U.S. District Court, ILCD

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

8

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| First Degree Murder | 512 South New Street | | |

A:  K-h-a-l-i-f-a.

Q:  Did you ever find out, well obviously you did, let me ask you, how did you find out that his true identity was Dedrick instead of Khalifa?

A:  'Cause I started seeing another guy that he had went to school with and I showed him the picture and he said that his name wasn't Khalifa, that it was Dedrick.  And I questioned him about it.  And he lied, said that that wasn't his name.  And then finally whenever he went to jail, he wanted me to come and visit him.  So I had to know his real name, so he, that's when he told me his real name.

Q:  Okay so the friend that you started dating went to school with Dedrick.

A:  Yeah.

Q:  What's his name?

A:  Ryan Kennedy.

Q:  Ryan Kennedy?

A:  Yeah.

Q:  Where did you get the picture of Dedrick at that you showed Ryan?

A:  I took it.  It was at my house.  I had took it.

Q:  So it's like a Polaroid?

A:  No it, it's just regular pictures.  I just had developed.

Q:  Okay.  On your own personal camera.

A:  Yeah.

Q:  So when you asked Dedrick about that, you said that he still denied being Dedrick?

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | | BADGE/ID NO. | DATE |
|---|---|---|---|---|
| | Detective Don Shepard | | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | | BADGE/ID NO. | DATE |
| ckm | | | | |

C000144

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, It and it's contents are not to be distributed by you or outside your agency.

9

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

A:  Yeah, until he had went to jail.

Q:  Do you know when he went to jail?

A:  Uh, God

Q:  How long was he in jail?

A:  He had to do 30 days.

Q:  Did he tell you why?

A:  No.  He had been pulled over or something with, he said he had been pulled over with someone and they took him 'cause he had a warrant out or something.  It was something like that he said.

Q:  So he called you then at your house?

A:  Um hum.

Q:  From the county jail.

A:  Um hum.

Q:  And he wanted you to come visit him?

A:  Um hum.

Q:  And do you remember what your conversation was with him about his identity at that time when he wanted you to come and visit?

A:  Nothing really.  He just acted like basically I knew, so

Q:  You knew what?

A:  It's like, I knew his name.  You know, he was like well, you know I'm in here under Dedrick.

Q:  So you'd asked him what name he was under?

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | |

C000145

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

10

| DATE AND TIME OF ORIGINAL REPORT 02-25-98  0259 hrs. | DATE AND TIME OF THIS REPORT 08-19-98  1023 hours | CONTROL NUMBER 798-2383 | CASE NUMBER |
|---|---|---|---|
| CLASSIFICATION First Degree Murder | LOCATION 512 South New Street | | |

A: Yeah, yeah, I had asked him.  And then plus he wanted me to call his mother to three-way for him to, he wanted her to bail or yeah, he wanted to bail him out, but she wouldn't ever come down here, so *her*

Q: Where's she at?

A: Mississippi.

Q: Okay.  So did you go visit him then?

A: No.

Q: Okay.  Have you talked to him since then?

A: Since he got out?

Q: Right.

A: Yeah couple times.

Q: But the last time that you talked to him you said was mid-June.

A: Yeah.

Q: Okay.  Had, did you have any knowledge of his grandmother's house catching on fire?

A: No.

Q: Did he ever talk to you about it or tell you anything about it?

A: No.

Q: Well, what kind of car do you drive?

A: A '93 Ford Escort.

Q: And what color is it?

A: Maroon.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER Detective Don Shepard | BADGE/ID NO. I 97 | DATE 08-19-98 |
|---|---|---|---|
| DATA ENTRY BY ckm | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |

C000146

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

11

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |
| CLASSIFICATION | | LOCATION | |
| First Degree Murder | | 512 South New Street | |

Q: And do you know your license plate number?

A: Let's see maybe C703893.

Q: C-7-0-3-9-9-3.

A: Yeah.

Q: Okay. Well, I believe, oh, before we stop, I showed you a still frame photo which is date and time stamped 02-25-98 at 02:34:34 A. Do you recognize the person that's in that picture?

A: It looks like Dedrick.

Q: Can you tell for sure it's Dedrick?

A: No.

Q: Okay. But you, you think it's a strong resemblence or it looks like him?

A: Yeah.

Q: Okay. Well, I think that's all the questions I needed to ask you. And I appreciate you coming in today. I'll stop the tape player now and terminate the interview. The time is 1033 hours. I'm turning the tape player back on now. It's 1034 hours. Actually I shut it off for a minute and we were discussing about where his grandmother lived and her house catching on fire. Is that accurate?

A: Yes.

Q: And you told me that you had picked him up at a brick duplex before?

A: Yeah.

Q: Do you know the street that duplex is on?

A: I can't remember the name of it right now. But it's right off of, well, you can get, between Springfield and Green Street.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | |
| ckm | | | C000147 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

12

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

Q: Is it east or west of Prospect?

A: It's east.

Q: East of Prospect.

A: Yeah.

Q: Is it very far east of Prospect?

A: God, (unclear) I don't think so.

Q: You don't think it's very far.

A: I can't think of where, where it is.

Q: Okay.

A: Prospect, I'm trying to think.

Q: You said that you picked him up there before.

A: Yeah.

Q: Did he have a key to get in or out or do you know?

A: He must of, 'cause I'd been over there a coupla times before. I mean I'd even, he said that he lived with his brother over there. 'Cause I had called, actually I had the phone number over there for awhile. I had called him a couple times over there. And I had his, his pager number. 'Cause at first he was just calling me or he told me to page him and I said well why can't I call your house, you know, if you're supposed to be seeing me or whatever, you know, why can't I call your house? And then he ended up giving me the phone number over there.

Q: So you called him a couple times there.

A: Yeah, I called him over there.

Q: Do you remember the phone number?

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000148 |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

13

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

A: I'm sure I got it written down at home.  I don't know it right now.

Q: Okay.  When you went over to pick him up, was there anyone else there?

A: No.

Q: Was you ever inside there?

A: No.

Q: Did you see him enter the door or come out the door?

A: Yeah.

Q: Did he use a key to unlock the door so he could go in?

A: I'm not real sure.  He left, he went in and out the back most of the time.  He didn't go in and out the front.

Q: Okay.  Did he ever tell you who lived there?

A: Just him and his brother is what he told me.

Q: Did he ever mention his grandmother living there?

A: No.

Q: Did he ever tell you that that place caught on fire?

A: He, he didn't say it was his.  He said it was the one next door.

Q: The building next door that caught on fire.

A: Yeah.

Q: Or the unit next to

A: The unit next door.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | Detective Don Shepard | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| ckm | | | C000149 |




# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency. It and it's contents are not to be distributed by you or outside your agency.

14

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02-25-98  0259 hrs. | 08-19-98  1023 hours | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| First Degree Murder | 512 South New Street |

Q: Did he say how it caught on fire or anything about how the fire started?

A: No.

Q: Okay. Do you remember when that was?

A: (Unclear)

Q: Or in reference to how long after you met him?

A: It was probably couple months after I had met him I think. It hadn't been that long.

Q: Had not been very long.

A: No, no.

Q: Okay. Well, I think that's all, all I have to ask you and we'll stop the tape player now and the time is 1037 hours. Thank you.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | | BADGE/ID NO. | DATE |
|---|---|---|---|---|
| | Detective Don Shepard | | I 97 | 08-19-98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | | BADGE/ID NO. | DATE |
| ckm | -- | | | C 0 0 0 1 5 0 |

# EVIDENCE

**CHAMPAIGN POLICE DEPARTMENT**
CHAMPAIGN, ILLINOIS 61820

| | EVIDENCE ☒ | OFFENSE NO. |
| --- | --- | --- |
| | SAFEKEEPING | |
| | CONTRABAND | |
| | RECOVERED PROPERTY ☐ | |

PAGE 01

OFFENSE NO. 797-232

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| OWNER | | | | | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Hansen | Lori | K | 04/16/89 | 513 A  S. New, Champ | | |
| OTHER | | | | | | | |

DATE OF OFFENSE DATE AND TIME SEIZED: 03/25/99

TYPE OF CRIME: 

JUVENILE

OFFICER'S NAME AND NUMBER

| I.D. NO. | EXHIBIT NO. | TYPE OF PROPERTY – DESCRIPTION – MODEL NO. – SOURCE – ETC. | LAST CHECKED | SERIAL NUMBER | DATA # | BIN |
| --- | --- | --- | --- | --- | --- | --- |
| 1 | 1 | One cigarette butt | | | | |
| 2 | 2 | one cut t laces | | | | |
| 3 | 3 | (4) pieces of paper w/blood smears | | | | |
| 4 | 4 | (1) miller High Life 12 oz beer can | | | | |
| 5 | 5 | Life 12 oz beer can (1) five miller High | | | | |
| 6 | 6 | (1) busch light beer can | | | | |
| 7 | 7 | (1) pair Red sheets | | | | |
| 8 | 8 | (1) pair | | | | |
| 9 | 9 | (1) film canister with hair ... | | | | |
| 10 | 10 | (1) film container with glass standard from S/E bedroom window on ground | | | | |
| 10 | 10 | (1) film container with glass standard from window from door S/E bedroom | | | | |
| 11 | 11 | (1) piece of cable ... | | | | |

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE  ☐ RELEASE ON DEMAND  ☐ DESTROY

Items #1 through 9 collected at crime ... ; items #10, #11 
collected at vehicle

INITIAL STORAGE BY OFFICER

☐ IMPOUND BLDG. ☐ IMPOUND BAY ☐ OTHER

'KER #

DATE AND TIME 'IDENCE BOOKED

EVIDENCE CLERK

EVIDENCE ROOM USE ONLY

C000151

OWNER

# CHAMPAIGN POLICE DEPARTMENT

**CHAMPAIGN, ILLINOIS 61820**

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
**SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER**

# EVIDENCE

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

TYPE OF CRIME: ATTEMPT MURDER

| | EVIDENCE |
|---|---|
| SAFEKEEPING | ☑ |
| CONTRABAND | ☐ |
| RECOVERED PROPERTY | ☐ |

OFFENSE NO. 98-2232

OFFICER'S NAME: D. Sheward 795

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | | | | | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Hansen | Lori | K | | | | |
| OTHER | | | | | | | |

DATE AND TIME OF OFFENSE: 02-25-98
SEIZED: 02/25/98

| EXHIBIT NO. | TYPE OF PROPERTY – DESCRIPTION – MODEL NO. – SOURCE – ETC. | SERIAL NUMBER | DATA # | BIN |
|---|---|---|---|---|
| 12 | (2) personal checks | | | |
| 13 | (2) cards | | | |
| 14 | (1) coasters | | | |
| 15 | (1) beer bottle | | | |
| 16 | (1) small coin purse | | | |
| 17 | (1) W of I key chain | | | |
| 18 | (1) black wallet | | | |
| 19 | (1) bag w/ camel figures | | | |
| 20 | (1) cup | | | |
| 21 | (1) drivers | | | |
| 22 | (1) filing | | | |
| 23 | (1) sealed paper bag | | | |

☐ RETAIN UNTIL NO EVIDENTIARY VALUE
☐ RELEASE ON DEMAND   ☐ DESTROY

REMARKS:

| | LOCKER # 11 | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
|---|---|---|---|
| INITIAL STORAGE BY OFFICER | | | |

IMPOUND: ☐ BLDG.  ☐ BAY  ☐ OTHER

C000153

OWNER

# CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

# EVIDENCE

|  | EVIDENCE | X |
| --- | --- | --- |
| | SAFEKEEPING | |
| | CONTRABAND | |
| | RECOVERED PROPERTY | |

OFFENSE NO. 742-2-3-

| | TYPE OF CRIME | |
| --- | --- | --- |
| DATE AND TIME | ATTEMPT | |
| OF OFFENSE | MURDER | JUVENILE |

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| OWNER | | | | | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Masters | Lori | K | | | | |
| OTHER | | | | | | | |

OFFICER'S NAME Sheard 797

| ITEM EXHIBIT NO. | DATE AND TIME SEIZED | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CODED | SERIAL NUMBER |
| --- | --- | --- | --- | --- |
| 24 | 02/25/98 | (1) sealed paper bag containing entry table | | |
| 25 | 02/25/98 | (1) paper bag w/paper(s) desk base | | |
| 26 | 02/25/98 | (1) sealed envelope containing latent lift | | |
| 27 | 02/25/98 | (1) sealed paper bag cont'g (2) empty "Camel Lights" packs | | |
| 28 | 02/25/98 | (1) envelope containing (1) AmerTech Calling card, (1) Amoco charge card, (1) Quick Cash charge card, (1) AAA card end table | | |

OFFICER

C000155

REMARKS:  ☒ RETAIN UNTIL NO EVIDENTIARY VALUE   ☐ RELEASE ON DEMAND   ☐ DESTROY

Items #24 through #26 recovered by
Item #27 recovered by
Item #28

| INITIAL STORAGE BY OFFICER | LOCKER # | ☐ IMPOUND BLDG. | ☒ IMPOUND BAY | ☐ OTHER | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
| --- | --- | --- | --- | --- | --- | --- |

| EVIDENCE ROOM USE ONLY | | |
| --- | --- | --- |
| DATA # | BIN. | |

# CHAMPAIGN POLICE DEPARTMENT

**CHAMPAIGN, ILLINOIS 61820**

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
**SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER**

# EVIDENCE

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

| | | | | | |
|---|---|---|---|---|---|
| DATE AND TIME OF OFFENSE | TYPE OF CRIME | | JUVENILE | | |
| 2-25-18 | | | | | |

| EVIDENCE | |
|---|---|
| SAFEKEEPING | ☒ |
| EVIDENCE | |
| CONTRABAND | |
| RECOVERED PROPERTY | |

OFFENSE NO. **79K 2253**

DATE AND TIME SEIZED: 2-25-18  3:40

TYPE OF CRIME: AT. MURDER/ARSON

OFFICER'S NAME AND NUMBER: DET. C. SHEPARD  TFPO

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE / | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | | | | | | | |
| SUSP. #1 | UNK | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Maual | Lee | | 4/14/51/A | NEW | | |
| OTHER | | | | | | | |

| EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEAD CHECKD | SERIAL NUMBER | DATA # | BIN |
|---|---|---|---|---|---|
| 29 | BLACK NYLON GARMET (level ... ... ... ) | | | | |
| | Aristan | | | | |
| 30 | BLK LEATHER, BLACK & WHITE | | | | |

EVIDENCE ROOM USE ONLY

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE    ☐ RELEASE ON DEMAND    ☐ DESTROY

Final Disposition ... Authorized

| INITIAL STORAGE BY OFFICER | OFFICER # | ☐ IMPOUND BLDG. | ☐ IMPOUND BAY | ☐ OTHER | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
|---|---|---|---|---|---|---|

OWNER

C000157



# CHAMPAIGN POLICE DEPARTMENT

**CHAMPAIGN, ILLINOIS 61820**

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

    PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
**SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER**

C000158

# EVIDENCE

## CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

| | EVIDENCE | | |
|---|---|---|---|
| SAFEKEEPING | | ☒ | |
| CONTRABAND | | ☐ | |
| RECOVERED PROPERTY | | ☐ | |

OFFENSE NO. 746 2 3 5 3

OFFICER'S NAME A.J.C. SHEPARD

TYPE OF CRIME: ARSON / ATT. Arson

| ITEM / EXHIBIT NO. | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | | | | | | | |
| SUSP #1 | | | | | | | |
| SUSP #2 | | | | | | | |
| SUSP #3 | | | | | | | |
| VICTIM | HARSHAL COAL | | | ILL A. UNIV | | | |
| OTHER | | | | | | | |

DATE OF OFFENSE: 2-25-98    DATE AND TIME SEIZED: 2-26-98 15:20

| ITEM / EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CHECKED | SERIAL NUMBER | DATA # | BIN |
|---|---|---|---|---|---|
| 3#3 | SEALED BAG CONTAINING ONE PAIR OF BLACK NYLON HOSE W/ GROWTH. ONE LIQS MASSING | | | | |

C000159

REMARKS: ☐ RETAIN UNTIL NO EVIDENTIARY VALUE    ☐ RELEASE ON DEMAND    ☐ DESTROY

| | DATE AND TIME ENCE BOOKED | EVIDENCE CLERK |
|---|---|---|

INITIAL STORAGE BY OFFICER

☐ ER # //    ☐ IMPOUND BLDG.    ☐ IMPOUND BAY    ☐ OTHER

OWNER

# CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER

C000160

# EVIDENCE

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

| | | TYPE OF CRIME | | EVIDENCE | ☒ | OFFENSE NO. 798-3363 |
|---|---|---|---|---|---|---|
| | | | JUVENILE | SAFEKEEPING | | |
| | | | | CONTRABAND | | OFFICER'S NAME M. Strzesk 711 |
| DATE AND TIME OF OFFENSE | DATE AND TIME SEIZED | | | RECOVERED PROPERTY | | |
| 2-25-98 | 2-25-98 1125 | Agg / Att Murder | | | | |

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | | | | | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Hansen, Lori K | | 4-13-69 | 512 A S Neil | | | |
| OTHER | | | | | | | |

| ITEM | EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CHECKED | SERIAL NUMBER | EVIDENCE ROOM USE ONLY DATA # | BIN |
|---|---|---|---|---|---|---|
| 32 | 32 | Cash Station Receipt Machine S6q256 address 812 W Springfield card number xxxxx 84/3-0000 | | | | |
| 33 | 33 | TDK E-HG VHS Video Tape from First Midwest Bank 812 W. Springfield | | | | |
| 34 | 34 | Maxell PH Pls VHS Video Tape from Glass 1 Pl. J | | | | |
| 35 | 35 | Ref container containing what appears to be print in of Aufhieze | | | | |
| 36 | 36 | Blue Cooler molded Pol [illegible] picture containing what appears to be undiluted and freeze | | | | |

REMARKS: ☐ RETAIN UNTIL NO EVIDENTIARY VALUE  ☐ RELEASE ON DEMAND  ☐ DESTROY

Items Seal. Items # 32 to State lab for processing for [illegible] / / — + .
Items #33 +34 will be kept in security [illegible]
Items #35 & #36 will be kept in [illegible]

| INITIAL STORAGE BY OFFICER. | [ LOCKER # ] ☐ IMPOUND BLDG. | ☐ IMPOUND BAY | ☐ OTHER | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
|---|---|---|---|---|---|

C000161

OWNER

# CHAMPAIGN POLICE DEPARTMENT

**CHAMPAIGN, ILLINOIS 61820**

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
**SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER**

C000162

-cv-02015-MPM-DGB    # 12-3    Page 30 of 33

# EVIDENCE

**CHAMPAIGN, ILLINOIS 61820**

| | TYPE OF CRIME: | JUVENILE |
|---|---|---|

EVIDENCE ☑
SAFEKEEPING
CONTRABAND
RECOVERED PROPERTY

OFFENSE NO. 76?-?-???

OFFICER'S NAME

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | | | | | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | | | | | | | |
| OTHER | | | | | | | |

DATE AND TIME OF OFFENSE: 2/2/98
SEIZED: 2/2/98 by ...

| ITEM | EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CHECKED | SERIAL NUMBER | DATA # | BIN |
|---|---|---|---|---|---|---|
| | 37 | one swab of skin scraping victim | | | | |
| | 37 | ... labeled "item #3" from CFD | | | | |
| | 38 | one microscope cover slide | | | | |
| | | sample 2 labeled "item #3" from CFD | | | | |
| | 39 | one metal container plug sample | | | | |
| | | #1 labeled "item #1" from CFD | | | | |
| | 40 | one pair of black tennis shoes "Vans" | | | | |
| | 41 | one folding knife (yellow/black) 3.0 lock | | | | |
| | 42 | one bundle of cord | | | | |

**EVIDENCE ROOM USE ONLY**

REMARKS: ☑ RETAIN UNTIL NO EVIDENTIARY VALUE    ☐ RELEASE ON DEMAND    ☐ DESTROY

Send to State Crime Lab

| INITIAL STORAGE BY OFFICER | LOCKER # | IMPOUND BLDG. ☐ | IMPOUND BAY ☐ | OTHER ☐ | DATE AND TIME BOOKED | EVIDENCE CLERK |
|---|---|---|---|---|---|---|

C000167

OWNER

# CHAMPAIGN POLICE DEPARTMENT

**CHAMPAIGN, ILLINOIS 61820**

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
**SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER**

C000164

# EVIDENCE

## CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | | TYPE OF CRIME | JUVENILE | | PAGE ___ of ___ | |

| | EVIDENCE | | | RECOVERED PROPERTY | OFFENSE NO. 79 8-2283 | |
|---|---|---|---|---|---|---|
| | SAFEKEEPING ☒ | CONTRABAND | AND NUMBER | | | |

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | Hansen | Luk. | | | 512 S. New | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | | | | | | | |
| OTHER | | | | | | | |

| OF OFFENSE | DATE AND TIME | |
|---|---|---|
| 02259 | 0259 | |
| SEIZED | | |
| 02259 | | |

OFFICER'S NAME  Burns 2nd 76

| ITEM EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CHECKED | SERIAL NUMBER | EVIDENCE ROOM USE ONLY DATA # | BIN |
|---|---|---|---|---|---|
| 1 52 | levis size 7 blue | | | | |
| 2 53 | 1 lg grey jacket | | | | |
| 54 | 1 pr white sox | | | | |
| 55 | 1 pr yellow v stripe x white | | | | |
| 56 | grn lng sleeve shirt | | | | |

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE ☐ RELEASE ON DEMAND ☐ DESTROY

| | | | | |
|---|---|---|---|---|
| INITIAL STORAGE BY OFFICER | ___ER # | ___ER # | DATE AND TIME 'ENCE BOOKED | EVIDENCE CLERK |
| ☐ IMPOUND BLDG. | ☒ IMPOUND BAY | ☐ OTHER | | |

C000165

OWNER

# CHAMPAIGN POLICE DEPARTMENT

**CHAMPAIGN, ILLINOIS 61820**

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____

**SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER**

C000166

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

# EVIDENCE

| EVIDENCE | | |
|---|---|---|
| SAFEKEEPING | | X |
| CONTRABAND | | |
| RECOVERED PROPERTY | | |

TYPE OF CRIME: HOMICIDE  JUVENILE

OFFENSE NO. 296-2323

OFFICER'S NAME: D. Sheppard 797

| OWNER | | | | | | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|---|
| | DATE AND TIME | SPEED | | | | | | |
| | 03/25/98 | 02:40 pm | | Weapon: murder | | | | |

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | | ADDRESS | | |
|---|---|---|---|---|---|---|---|---|
| OWNER | Severson | Jennifer E | | 5/23/80 | 1702 W University Ave C | | | |
| SUSP. #1 | Maurice | Deleso | T | 08/31/78 | 512 E S New C | | | |
| SUSP. #2 | | | | | | | | |
| SUSP. #3 | | | | | | | | |
| VICTIM | Severson | Lori | K | 5/16/79 | 512 A S New C | | | |
| OTHER | | | | | | | | |

| ITEM | EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LABS CHECKED | SERIAL NUMBER | | EVIDENCE ROOM USE ONLY | | |
|---|---|---|---|---|---|---|---|---|
| | | | | | | DATA # | BIN | |
| 1 | 57 | One bag containing (2) Two Vials of blood | | | | | | |
| | | (from suspect) | | | | | | |
| 2 | 58 | One envelope containing hair specimens | | | | | | |
| 3 | 59 | One envelope containing 2 sketch of | | | | | | |
| | | ink Palm Prints of/of Card of inked | | | | | | |
| | | finger prints Cards suspect 1 | | | | | | |
| 4 | 60 | One inked Card of suspect 1 | | | | | | |
| 5 | 61 | One black shoe string | | | | | | |
| 6 | 62 | One pack of Newport cigarettes | | | | | | |
| | 63 | One W-2 wage + tax statement for suspect | | | | | | |
| 7 | 64 | One hl jacket "Tommy Hilfiger" | | | | | | |
| 8 | 65 | One Red/black Jacket "Tommy Hilfiger" | | | | | | |
| | | One Social security Card of suspect | | | | | | |

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE   ☐ RELEASE ON DEMAND   ☐ RELEASE   ☐ DESTROY

Items # 7, 8 + 10 Released back to Owner    by evidence TM
Jennifer Severson    Items #1 thru 6 stay in evidence room

| INITIAL STORAGE BY OFFICER | ☐ LOCKER # | ☐ IMPOUND BLDG. | ☒ IMPOUND BAY | ☐ OTHER | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
|---|---|---|---|---|---|---|

C000161

OWNER

# CHAMPAIGN POLICE DEPARTMENT

**CHAMPAIGN, ILLINOIS 61820**

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
**SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER**

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

# EVIDENCE

TYPE OF CRIME

| EVIDENCE | ☒ |
| SAFEKEEPING | |
| CONTRABAND | |
| OFFICER'S NAME | |
| RECOVERED PROPERTY AND NUMBER | |

OFFENSE NO. _196?-2787_

| | JUVENILE |

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | | | | | | | |
| SUSP. #1 | Nixon | Deric | T | 08/13/78 | 512 E S New | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Nixon | Eric | K | | 513 A S New | | |
| OTHER | | | | | | | |

| ITEM | EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEGAL CHECKED | SERIAL NUMBER | DATA # | BIN. |
|---|---|---|---|---|---|---|
| | 61 | One (1) envelope containing buck standards from victim | | | | |

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE    ☐ RELEASE ON DEMAND    ☐ DESTROY

Send to Lab

EVIDENCE ROOM USE ONLY

| INITIAL STORAGE BY OFFICER | ☐ LOCKER # _____ | ☐ IMPOUND BLDG. | ☐ IMPOUND BAY | ☒ OTHER | DATE AND TIME EVIDENCE BOOKED | EVIDENCE CLERK |
|---|---|---|---|---|---|---|

C000169

OWNER

# CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

# EVIDENCE

| | | | | TYPE OF CRIME | | JUVENILE | |
|---|---|---|---|---|---|---|---|

EVIDENCE ☑ SAFEKEEPING ☐ CONTRABAND ☐ RECOVERED PROPERTY ☐

OFFENSE NO. _____

OFFICER'S NAME AND NUMBER _____

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | | | | | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | | | | | | | |
| OTHER | | | | | | | |

DATE AND TIME SEIZED _____

| ITEM | EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CHECKED | SERIAL NUMBER | DATE AND TIME EVIDENCE BOOKED | DATA # | BIN |
|---|---|---|---|---|---|---|---|
| 1 | | | | | | | |

EVIDENCE ROOM USE ONLY

REMARKS:

☐ RETAIN UNTIL NO EVIDENTIARY VALUE   ☐ RELEASE ON DEMAND   ☐ DESTROY

INITIAL STORAGE BY OFFICER ☐   'ER # _____   ☐ IMPOUND BLDG.   ☐ IMPOUND BAY   ☑ OTHER   EVIDENCE CLERK

OWNER

C000171

# CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY

OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN

ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE

TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER

C000172

# EVIDENCE

## CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

PAGE 1

OFFENSE NO. _79?-?_

| | EVIDENCE | ☒ |
| --- | --- | --- |
| | SAFEKEEPING | |
| | CONTRABAND | |
| | OFFICER'S NAME AND NUMBER | D Shepard 79 |

RECOVERED PROPERTY ☐

DATE OF OFFENSE: 01/3?/68

DATE AND TIME SEIZED: 02/14/68

TYPE OF CRIME: P.C. theory night over _pt_

JUVENILE

| ITEM | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
| --- | --- | --- | --- | --- | --- | --- | --- |
| OWNER | | | | | | | |
| SUSP. #1 | Moore | Delvic | T. | 02/27/?? | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Hansen | Lori | K | 04/2?/69 | 510 E S New C | | |
| OTHER | Lari | Jennifer | L | 11/2/?? | 47 Michelle Ln, C | | |

| EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO. — SOURCE — ETC. | LEADS CHECKED | SERIAL NUMBER | DATA # | BIN |
| --- | --- | --- | --- | --- | --- |
| 1 | (1) micro cassette tape (statement of suspects) | | 2?4,652? 392.9? | | |

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE    ☐ RELEASE ON DEMAND    ☐ DESTROY

INITIAL STORAGE BY OFFICER ☐    ☐ KER # _____    ☐ IMPOUND BLDG.    ☐ IMPOUND BAY    ☒ OTHER 02/14/?? PROX

DATE AND TIME DENCE BOOKED

EVIDENCE CLERK

C000173

OWNER

# CHAMPAIGN POLICE DEPARTMENT
### CHAMPAIGN, ILLINOIS 61820

## PROPERTY RECEIPT

ON_____I RECEIVED THE ITEMS NUMBERED_____

AS LISTED ON THE OPPOSITE SIDE OF THIS FORM. THESE ITEM(S) WILL BE KEPT IN THE CUSTODY OF THE CHAMPAIGN POLICE DEPARTMENT UNTIL THE COURT HAS DETERMINED A DISPOSITION IN ALL RELATED MATTERS.

PLEASE RETAIN THIS RECEIPT AS EVIDENCE OF YOUR POSSESSION OF THE PROPERTY AT THE TIME OF ITS SEIZURE BY THE POLICE DEPARTMENT.

_____
SIGNATURE AND BADGE NUMBER OF SEIZING OFFICER

C00017

Illinois State Police
Division of Forensic Services
Forensic Sciences Command
**EVIDENCE RECEIPT**

Laboratory Case Number

Page __1__ of __3__

USE BLACK BALL POINT PEN ONLY; INSTRUCTIONS ON REVERSE

| (1) Originating Agency Name | (2) Agency Telephone | (3) NCIC Number | (4) Agency Case Number |
|---|---|---|---|
| CHAMPAIGN City Police | (217)351-4545 | IL100100 | 798-002383 |

| (5) Send report to: Agency address: | City: | Zip Code: |
|---|---|---|
| T. Nearing   82 E. University Ave. Champaign | | 61820 |

| (6) Victim(s) Name(s), Sex, Race, DOB | (7) County of Offense | (8) Date Offense Occurred |
|---|---|---|
| AG Arson / ATTEMPT murder | CHAMPAIGN | 02/25/98 |

(9) Suspect(s) Name(s), Sex, Race, DOB
Lori K. Hansen, F/W, 04/12/69

(11) Printed name of investigating officer if different than (5) above.
Detective Don Shepard

(12) Printed name of the officer and agency delivering evidence.

| (13) Lab Exhibit Number(s) | (14) BCSS Exhibit Number(s) | (15) Agency Exhibit Number(s) | (16) / (17) Evidence description (see instructions) |
|---|---|---|---|
| | | 1 | Cigarette Butt "Newport" |
| | | 2 | Cords & Laces |
| | | 4 | 12 oz. Miller High Life Beer can |
| | | 7 | one pair of Red shorts |
| | | 8 | one piece of paper w/two four digit number |
| | | 12 | Two personal checks #215 & 216 and Two cards |
| | | 13 | one Cordless Telephone |
| | | 14 | one 12 oz. Beer Bottle "Honey Brown" |
| | | 15 | one Black/Brown Coin purse |
| | | 16 | one U of I Key chain Bi-fold |

(18) Lab use only

| (19) Lab Exhibit Number(s) | (20) BCSS Exhibit Number(s) | (21) Date | (22) Time | (23) Received From (Signature) | (24) Received By (Signature) |
|---|---|---|---|---|---|
| | | | | | |

(25) Yes ☐  No ☐  Comments
(26) personal case information the case summary and examination requests
IMPORTANT: List any communicable diseases of risk to lab personnel (e.g., hepatitis, TB, HTLV/LAV II, etc.)

Process for DNA: Agency Exhibits # 1, 4, 7 (urine or semen) 14 & 31
Process for Hairs & fiber: Agency Exhibits # 2, 31, 40, 41, 42, 43, 44, 45, & 48 & 50
   46. Compare findings 2 to 50 for origin
Process for latent prints: Agency Exhibits # 4, 8, 12, 13, 14, 15, 16,
   17, 30, 32, 41, 44, 45, 46
Detect Urinated on Exhibits # 2, 7, 43, 48 & 50, 52, 53, 54, 55 & 56

| (28) BCSS Exhibit Number(s) | (29) Date | (30) Returned By (DFS Employee Signature) | (31) Released to (law enforcement representative signature and agency name) |
|---|---|---|---|
| | | | |

C000175

Illinois State Police
Division of Forensic Services and Identification
Bureau of Forensic Sciences
Bureau of Crime Scene Services
EVIDENCE RECEIPT, Cont'd.

SB Number

Laboratory Number

USE OR USE BLACK BALL POINT PEN ONLY: INSTRUCTIONS ON REVERSE

Page __2__ of __3__

| | (7) BCSS Exhibit Number(s) | (8) Agency Exhibit Number(s) | (9) |
|---|---|---|---|

Originating Agency Name: HAMPAIGN City Police
(2) Victim(s) Name(s): Lori K. Hansen
(3) Agency Case Number: 798-002383
Printed Name of investigating case officer: Detective Don Shepard
(5) Printed name of the officer and agency delivering evidence.

**(10) Evidence description (see instructions)**

| (8) | Agency Exhibit Number | Evidence description |
|---|---|---|
| | 17 | one Black Bi-fold wallet |
| | 29 | one Black Nylon Garment |
| | 30 | one "Bic" Cigarette Lighter (Blk/white) |
| | 31 | one sealed bag containing one pair of Black Nylon Hose |
| | 32 | One Cash Station receipt for transaction at machine #564256 |
| | 37 | One metal Can Containing Victim's Bra |
| | 38 | One metal Can Containing Rug Sample #2 |
| | 39 | one metal Can Containing Rug Sample #1 |
| | 40 | one pair of Black tennis Shoes "VANS" |
| | 41 | one Black/yellow Utility Knife + Ziplock bag |
| | 42 | one bundle of Cord |
| | 43 | one Extension Cord |
| | 44 | one piece Bolts of Clear Tape |
| | 45 | one Roll of Clear Tape |
| | 46 | one Knife w/simulated wood handle |

use only

| (12) Lab Exhibit Number(s) | (13) BCSS Exhibit Number(s) | (14) Date | (15) Time | (16) Received From (signature) | (17) Received By (signature) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

Attach additional case information, use case summary, and examination requests. Important: List any communicable diseases of risk to lab personnel (e.g., hepatitis TB

ompare to match (Items) Exhibits # 29 to 31 & # 44 to 45 & to see it # 46 or 41 was used to Cut #'s 44/45 or #3 & #2 or 42. Also Compare to see if Any Shoes tring Came from # 40 or # 42

| | (20) BCSS Exhibit Number(s) | (21) Date | (22) Returned By (DFS & I Employee Signature) | (23) Released to law enforcement representative signature and agency name) |
|---|---|---|---|---|
| | | | | |
| | | | | |

C000176

ISP6-49 (Rev. 10/90)

BCSS Number

ILLINOIS STATE POLICE
Division of Forensic Services and Identification
Bureau of Forensic Sciences
Bureau of Crime Scene Services
EVIDENCE RECEIPT, Cont'd.

Laboratory Case Number

TYPE OR USE BLACK BALL POINT PEN ONLY; INSTRUCTIONS ON REVERSE

Page 3

| (1) Originating Agency Name | (2) Victim(s) Name(s) | (3) Agency Case Number |
|---|---|---|
| HAMPAIGN City Police | Lori K. Hansen | 799-002383 |

(4) Printed Name of investigating case officer: **Detective Don Shepard**

(5) Printed name of the officer and agency delivering evidence:

| (6b) Exhibit number(s) | (7) BCSS Exhibit Number(s) | (8) Agency Exhibit Number(s) | (10) Evidence description (see instructions) |
|---|---|---|---|
| | | 47 | Sample of Victim's Blood |
| | | 48 | Finger nail specimen |
| | | 50 | Sample of Victim's hair |
| | | 49 | Sample of Blood from Victim's hands |
| | | 51 | Standard Cotton Swab |
| | | 11 | Glass w/suspect blood |
| | | 52 | one pair of "LEVI" Jeans |
| | | 53 | one large gray Jacket |
| | | 54 | one pair of white socks |
| | | 55 | one pair of Jockey under wear |
| | | 56 | one Long sleeve green shirt |

Lab use only

| (12) Lab Exhibit Number(s) | (13) BCSS Exhibit Number(s) | (14) Date | (15) Time | (16) Received From (signature) | (17) Received By (signature) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(8) Attach pertinent case information, the case summary, and examination requests.
IMPORTANT. List any communicable diseases of risk to lab personnel (e.g., hepatitis, TB, HTLV/LAIII, etc.)

Process Exhibits # 37, 38, & 39 for flamable or Combustable agents. Compare # 47 to Exhibit # 47 to #11 & 49. Victim's inked prints are forth coming Puero inury. Thank You.

| (19) Lab Exhibit Number(s) | (20) BCSS Exhibit Number(s) | (21) Date | (22) Returned By (DFS & I Employee Signature) | (23) Released to (law enforcement representative signature and agency name) |
|---|---|---|---|---|
| | | | | |
| | | | | |

1576-69 (Rev. 7/89)

Illinois State Police
Division of Forensic Services
Forensic Sciences Command
**EVIDENCE RECEIPT**

Number
198/688-8-1

Laboratory Number

Page 1 of 1

**OR USE BLACK BALL POINT PEN ONLY; INSTRUCTIONS ON REVERSE**

| (1) Originating Agency Name | (2) Agency Telephone | (3) NCIC Number | (4) Agency Case Number |
|---|---|---|---|
| CHAMPAIGN POLICE DEPARTMENT | (217) 351-4570 | IL100100 | 798-2385 |

(5) Send report to: LT. Nearing    Agency address:    City:    Zip Code:
Don Shepard    82 E. University    Champaign IL    61820

(6) Offense: ATTEMPT MURDER    (7) County of Offense: Champaign    (8) Date Offense Occurred 02/25/88

(9) Victim(s) Name(s), Sex, Race, DOB: LYN C HANSON F/W DOB 04/12/69

(10) Suspect(s) Name(s), Sex, Race, DOB:

(11) Printed name of investigation officer if different than (5) above. Detective Don Shepard

(12) Printed name of the officer and agency delivering evidence.

| (13) Lab Exhibit Number(s) | (14) BCSS Exhibit Number(s) | (15) Agency Exhibit Number(s) | (16) (17) Evidence description (see instructions) |
|---|---|---|---|
| | 1 | 20 | SEALED ENVELOPE CONTAINING LATENT LIFT CARD FROM EXTERIOR OF DRIVERS DOOR BELOW MIRROR & HANDLE |
| | 2 | 21 | SEALED ENVELOPE CONTAINING TAPING OF DRIVER'S SEAT |
| | 3 | 22 | SEALED PAPER BAG CONTAINING "MAXELL" CASSETTE TAPE FROM DRIVER FLOOR |
| | 4 | 23 | SEALED PAPER BAG CONTAINING "CAMEL LIGHT" BOX FROM DRIVERS FLOOR. |
| | 5 | 24 | SEALED PAPER BAG CONTAINING SEALED PAPER FOLD WITH 2 DARK COLORED HAIRS FROM INT. OF DRIVER DOOR BELOW HANDLE. |
| | 6 | 25 | SEALED ENVELOPE CONTAINING LATENT LIFT CARD FROM TURN SIGNAL LEVER |
| | 7 | 26 | SEALED PAPER BAG CONTAINING 2 EMPTY "CAMEL LIGHT" PACKAGES FROM COMPARTMENT IN CENTER CONSOLE. |

(18) Lab use only

| (19) Lab Exhibit Number(s) | (20) BCSS Exhibit Number(s) | (21) Date | (22) Time | (23) Received From (Signature) | (24) Received By (Signature) |
|---|---|---|---|---|---|
| | | | | | |

AFIS Yes☒ No☐  Comments:
Attach pertinent case information, the case summary, and examination requests.
IMPORTANT! List any communicable diseases of risk to lab personnel (e.g., hepatitis, TB, HTLV/LAV II, etc.)

SEE ATTACHED 3 PAGES

Process AGENCY EXHIBITS #20,25 for identification. Process Agency EXHIBITS # 22,23 &26 for latent prints. Process Agency Exhibits #21 for hair. Determine if Agency EXHIBIT #24 is human and compare any found in Exhibit #21 & #24 to Agency Exhibit #50. Also preserve all items & process Exhibit #50 for urine for DNA of suspect if one is identified.

| (28) BCSS Exhibit Number(s) | (29) Date | (30) Returned By (DFS Employee Signature) | (31) Released to (law enforcement representative signature and agency) |
|---|---|---|---|
| 4-7 | 2/25/88 | CSI # Forensic 3541 | Don Shepard |

C000178



| | | (1) Originating Agency Name | (2) Agency Name | (3) NCIC Number | (4) Agency Number |
|---|---|---|---|---|---|
| | | CHAMPAIGN City Police | 217351-4545 IL100100 7 2383 | | |

(5) Send report to: / Agency address: / City: / Zip Code:
LT. Nearing 82 E University Ave. CHAMPAIGN 61820

| (6) Offense | (7) County of Offense | (8) Date Offense Occurred |
|---|---|---|
| AG ARSON / ATT murder | CHAMPAIGN | 02/25/98 |

(9) Victim(s) Name(s), Sex, Race, DOB
Lori K Henson F/W 04/12/69

(10) Suspect(s) Name(s), Sex, Race, DOB
Dedric T. Moore M/B 08/13/78

(11) Printed name of investigating officer (if different than (5) above)
Detective Don Shepard

(12) Printed name of the officer and agency delivering evidence.

| (15) Agency Exhibit Number(s) | (17) Evidence description (see instructions) |
|---|---|
| 57 | (1) bag of 2 vials of Blood (suspect's) |
| 58 | (1) envelope containing hairs (suspect's) |
| 59 | (1) envelope containing (3) sheets of inked prints (suspect's) |
| 61 | (1) black s Items submitted as evidence could be damaged during examination |

(25) AFIS   Yes ☐   No ☐   Comments:
(26) Attach pertinent case information, the case summary, and examination requests
IMPORTANT: List any communicable diseases of risk to lab personnel (e.g., hepatitis, TB, HTLV/LAV II, etc.)

Use EXHIBITS # 57, 58 & 59 for comparison to other
EXHIBITS Already Submitted.

Use EXHIBIT # 61 to Compare to ITEMS in EXHIBIT #2
for similarities. ——— Thank you.

C000179

OR USE BLACK BALL POINT PEN ONLY INSTRUCTIONS ON REVERSE

| Page | of |

(1) Originating Agency Name **CHAMPAIGN City Police** (2) Agency Telephone **(217) 351-4545** (3) NCIC Number **IL 100100** (4) Agency Number **7?-2383**

Agency address: City: **Zip Code:**

(5) Send report to **LT. Nearing 82 E. University Ave Champaign 61820**

(6) Offense **AG ARSON** (7) County of Offense **CHAMPAIGN** (8) Date Offense Occurred **02/25/98**

(9) Victim(s) Name(s), Sex, Race, DOB **Lori K. Hansen, F/W, 04/12/69**

(10) Suspect(s) Name(s), Sex, Race, DOB **Dedric T. Moore, m/R, 08/13/78**

(11) Printed name of investigating officer if different than (5) above. **Detective Don Shepard**

(12) Printed name of the officer and agency delivering evidence.

| (13) Lab Exhibit Number(s) | (14) BCSS Exhibit Number(s) | (15) Agency Exhibit Number(s) | (16) | (17) Evidence description (see instructions) |
|---|---|---|---|---|
| | | b6 | | (1) Card of victim's inked finger prints |
| | | b7 | | (1) Card of victim's Dad's inked finger prints ("Larry Hansen") |

(18) Lab use only

| (19) Lab Exhibit ber(s) | (20) BCSS Exhibit Number(s) | (21) Date | (22) Time | (23) Received From (Signature) | (24) Received By (Signature) |
|---|---|---|---|---|---|

(25) AFIS Yes ☐ No ☐ Comment:
(26) Attach pertinent case information, the case summary and examination requests
IMPORTANT List any communicable diseases of risk to lab personnel (e.g. hepatitis, TB, HTLV/LAV II, etc.)

**Use Agency Exhibit #b6 as illimination prints for other Exhibits submitted**

C000180

**Illinois State Police**
**Division of Forensic Services**
**Forensic Sciences Command**
**EVIDENCE RECEIPT**

SS Number _____

Laboratory Case Number _____

Page ___ of _1_

TYPE OR USE BLACK BALL POINT PEN ONLY; INSTRUCTIONS ON REVERSE

| (1) Originating Agency Name | (2) Agency Telephone | (3) NCIC Number | (4) Agency Case Number |
|---|---|---|---|
| City of Champaign | 217 351-4541 | IL 100100 | 798-2383 |

(5) Send report to: / Agency Address: / City: / Zip Code:
LT. Nearing   82 E. University Ave   Champaign

| (6) Offense | (7) County of Offense | (8) Date Offense Occurred |
|---|---|---|
| AG Arson / Attempt murder | Champaign | 02/25/98 |

(9) Victim(s) Name(s), Sex, Race, DOB
Lori Hansen, F/W, 04/12/69

(10) Suspect(s) Name(s), Sex, Race, DOB
Dedric T. Moore, M/B, 08/13/78

(11) Printed name of investigating officer if different than (5) above.

(12) Printed name of the officer and agency delivering evidence.

| (13) Lab Exhibit Number(s) | (14) BCSS Exhibit Number(s) | (15) Agency Exhibit Number(s) | (16) | (17) Evidence description (see instructions) |
|---|---|---|---|---|
| | | 68 | | one (1) envelope containing hair standards from victim |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(18) Lab use only

| (19) Lab Exhibit Number(s) | (20) BCSS Exhibit Number(s) | (21) Date | (22) Time | (23) Received From (Signature) | (24) Received By (Signature) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(25) AFIS   Yes ☐   No ☐   Comments
(26) Attach pertinent case information: the case summary, and examination requests.
IMPORTANT: List any communicable diseases of risk to lab personnel (e.g., hepatitis, TB, HTLV/LAV II, etc.)

ATT: DANA

Please use these for Comparison of other exhibits already submitted.

Thank you!

| (27) Lab Exhibit Number(s) | (28) BCSS Exhibit Number(s) | (29) Date | (30) Returned By (DFS Employee Signature) | (31) Released to (law enforcement representative signature and agency name) |
|---|---|---|---|---|
| | | | | |
| | | | | |

C000181

copy D.Shepard

# ILLINOIS STATE POLICE
## Division of Forensic Services
## Springfield Forensic Science Laboratory
2040 Hill Meadows Drive
Springfield, Illinois 62702-4696
(217) 782-4975 (Voice) * 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

March 18, 1998

Terrance W. Gainer
*Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL  61820

Laboratory Case #S98-001498
BCSS Case #MM98-1688-9-1
Agency Case #798-002383

OFFENSES:  Arson/Attempted Murder
VICTIM:    Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 4, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---------|----------------|
| 3 | Beer can |
| 5 | Piece of yellow paper |
| 6 | Two checks, two plastic cards |
| 7 | Telephone |
| 8 | Beer bottle |
| 9 | Coin purse with pieces of wet paper inside |
| 10 | Key chain |
| 11 | Wallet, wet receipt |
| 13 | Lighter |
| 15 | Cash station receipt |
| 39 | Cassette tape |
| 40 | Cigarette pack |
| 43 | Two cigarette packs |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 5, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---------|----------------|
| 46 | Inked fingerprints and palmprints of Dedric T. Moore |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 12, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---------|----------------|
| 48 | Inked fingerprints of Lori K. Hansen |
| 49 | Inked fingerprints of Larry G. Hansen |

## EXAMINATION AND RESULTS:
Examination of the items listed above revealed one latent fingerprint suitable for comparison on a receipt
from Exhibit 9.

C000182

3-25-??



Champaign Police Department
Laboratory Case #S98-001498     -2-     March 18, 1998

**EXAMINATION AND RESULTS:** (continued)
Comparison of the suitable latent print to the submitted inked prints did not reveal an identification.
An AFIS search did not reveal an identification.
Photographic copies of the latent print from Exhibit 9 are retained on file.

**REMARKS:**
Latent print examination of Exhibits 20, 23, 24, and 25 (tape and knives) has been deferred pending examination by other sections.
Any additional inquiries pertaining to this case should be directed to this laboratory.

Respectfully submitted,

John E. Carnes
Forensic Scientist

cc: Crime Scene Investigator Michael L. Kyrouac

*copy D-Shepard*

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
2040 Hill Meadows Drive
Springfield, Illinois 62702-4696
(217) 782-4975 (Voice) * 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

March 20, 1998

Terrance W. Gainer
*Director*

Lieutenant Holly Nearing
Champaign Police Department
82 East University Ave
Champaign, IL 61820

Laboratory Case #S98-001724
Agency Case #7982383

OFFENSE:    Arson
SUSPECT:    Holtzclaw Donrico

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 12, 1998:

| EXHIBIT | DESCRIPTION | FINDINGS |
|---|---|---|
| 1 | Sealed Illinois State Police sexual assault evidence collection kit from Donrico Holtzclaw containing: | |
| 1A | Envelope containing stain card | Portion preserved as Exhibit 1A1. |
| 1B | Head hair standards | Inadequate standard for comparison (not enough hairs present to comprise a true representative sample). |
| 1C | Blood Standard | No analysis conducted. |
| 1D | Blood standard | No analysis conducted. |

### REQUESTS:
At such time as 15 additional known pulled head hair samples from the suspect(s) are submitted,
comparisons with the evidence hairs may be conducted.

Please note that these standards were submitted for comparison with evidence from case #S98-1498 and
your agency case #798-2383. If you have any questions regarding this report, please feel free to contact
me.

Respectfully submitted,

*Dana Pitchford*

Dana Pitchford
Forensic Scientist

C000184

Copy D. Shepard

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
### 2040 Hill Meadows Drive
### Springfield, Illinois 62702-4696
#### (217) 782-4975 (Voice) • 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

April 1, 1998

Terrance W. Gainer
*Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL 61820

Laboratory Case #S98-001498
BCSS Case #MM98-1688-9-1
Agency Case #798-002383

OFFENSES: Arson/Attempted Murder
SUSPECT: Dedric T. Moore
VICTIM: Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 4, 1998:

| EXHIBIT | DESCRIPTION | FINDINGS |
|---|---|---|
| 1 | Sealed paper sack containing a cigarette butt | Amylase detected in levels indicative of saliva. Amylase is found in high levels in saliva but can also be found in other body fluids. |
| 2 | Sealed paper sack containing laces, string and cords | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. |
| 4 | Sealed paper sack containing a pair of pink shorts | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. Urine indicated. |
| 12 | Sealed paper sack containing a piece of black stocking | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. Examination for saliva inconclusive. |
| 14 | Sealed paper sack containing a pair of panty hose | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. Damage to construction noted. |
| 19 | Sealed paper sack containing a pair of shoes | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. |
| 26 | Sealed envelope containing a blood standard from Lori Hansen | Portion preserved as Exhibit 26A. |
| 27 | Sealed envelope containing fingernail scrapings from Lori Hansen | Nothing of biological value. |
| 28 | Sealed envelope containing head hair standard from Lori Hansen | Inadequate standard for comparison. |

C000185

Champaign Police Department
Laboratory Case #S98-001498                    -2-                         April 1, 1998

| EXHIBIT | DESCRIPTION | FINDINGS |
|---------|-------------|----------|
| 29 | Sealed envelope said to contain a swab from Lori Hansen's hands | No analysis conducted. |
| 30 | Sealed paper sack said to contain a standard swab for Exhibit 29 | No analysis conducted. |
| 31 | Sealed paper sack containing piece of glass with a stain | Human blood identified. |
| 32 | Sealed paper sack containing jeans | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. Blood-like stains noted. |
| 33 | Sealed paper sack containing a jacket | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. Damage to construction noted. |
| 34 | Sealed paper sack containing socks | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. |
| 35 | Sealed paper sack containing a pair of panties | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris. |
| 36 | Sealed paper sack containing a shirt | This item was taped for removal of apparent hairs, fibers, and miscellaneous debris |
| 38 | Sealed envelope containing tapings from driver's seat | No analysis conducted. |
| 41 | Sealed paper bag containing hairs from interior driver's door | No analysis conducted. |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science Laboratory on March 5, 1998:

| EXHIBIT | DESCRIPTION | FINDINGS |
|---------|-------------|----------|
| 44 | Sealed bag containing blood standard from Dedric Moore | Portion preserved as Exhibit 44A. |
| 45 | Sealed envelope containing head hair standard from Dedric Moore | Standard for comparison. |
| 47 | Sealed bag said to contain a black shoe string | No analysis conducted. |



Champaign Police Department
Laboratory Case #S98-001498                    -3-                    April 1, 1998

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 25, 1998:

| EXHIBIT | DESCRIPTION | FINDINGS |
|---------|-------------|----------|
| 50 | Sealed envelope containing head hair standards from Lori Hansen | Standard for comparison. |

**REQUESTS:**
If you have any questions regarding this report, please feel free to contact me.

**EVIDENCE DISPOSITION:**
The evidence will be held in the laboratory vault and should be picked up within thirty days.

Exhibit(s) 12, 14, 38, 41, 45, 50 and samples from exhibits 2, 4, 19, 32, 33, 34, 35, and 36  have been
transferred to the Southern Illinois Forensic Science Centre for further analysis and will be the subject of a
separate report.

Samples from Exhibit(s) 1, 4, 12, 26, 31, and 44 will be transferred to the DNA section for additional
analysis and will be the subject of a separate report.

Respectfully submitted,

*Dana Pitchford*

Dana Pitchford
Forensic Scientist

cc:  Crime Scene Investigator Michael L. Kyrouac

C000187

copy D. Shepard



# ILLINOIS STATE POLICE
*Division of Forensic Services & Identification*

Jim Edgar
*Governor*

April 6, 1998

Terrance W. Gainer
*Director*

Lieutenant Holly Nearing
Champaign Police Department
82 East University Avenue
Champaign, Illinois 61820

RE:    Agency #798-002383
Springfield Laboratory #S98-1498
Offenses: Aggravated Arson/Attempted Murder
Victim(s): Lori K. Hansen
Suspect(s): Dedric T. Moore

Dear Lieutenant Nearing:

The Illinois State Police Springfield Forensic Science Laboratory has received evidence in your case for biology analysis. Because of our current backlog and a mutual interest in providing timely services, the evidence has been forwarded to the Southern Illinois Forensic Science Centre for analysis. Other section evidence has been retained at the Springfield Laboratory for completion.

If you have any questions pertaining to the biology analysis of the case or if any changes occur in the status of this case, such as court deadlines, dismissal of charges, guilty pleas or other special circumstances, please call the Biology Section or the laboratory director at the Southern Illinois Forensic Science Centre, phone number (618) 457-6714. If you have additional questions or concerns, please call Laboratory Director Michael Galco at the Springfield Laboratory.

Sincerely,

Michael S. Galco
Laboratory Director

MSG:v
Enclosure
cc:  Champaign County State's Attorney's Office

Bureau of Forensic Sciences
Forensic Science Laboratory
2040 Hill Meadows Drive  •  Springfield. IL 62702-4696
(217) 782-4975 (voice)  •  1-(800) 255-5325 (TDD)

C000188



# ILLINOIS STATE POLICE
*Division of Forensic Services & Identification*

Jim Edgar
*Governor*

April 6, 1998

Terrance W. Gainer
*Director*

Lieutenant Holly Nearing
Champaign Police Department
82 East University Avenue
Champaign, Illinois 61820

RE:  Agency #798-002383
Springfield Laboratory #S98-1498
Offenses: Aggravated Arson/Attempted Murder
Victim(s): Lori K. Hansen
Suspect(s): Dedric T. Moore

Dear Lieutenant Nearing:

The Illinois State Police Springfield Forensic Science Laboratory has received evidence in your case for biology analysis. Because of our current backlog and a mutual interest in providing timely services, the evidence has been forwarded to the Southern Illinois Forensic Science Centre for analysis. Other section evidence has been retained at the Springfield Laboratory for completion.

If you have any questions pertaining to the biology analysis of the case or if any changes occur in the status of this case, such as court deadlines, dismissal of charges, guilty pleas or other special circumstances, please call the Biology Section or the laboratory director at the Southern Illinois Forensic Science Centre, phone number (618) 457-6714. If you have additional questions or concerns, please call Laboratory Director Michael Galco at the Springfield Laboratory.

Sincerely,

Michael S. Galco
Laboratory Director

MSG:v
Enclosure
cc:  Champaign County State's Attorney's Office

Bureau of Forensic Sciences
Forensic Science Laboratory
2040 Hill Meadows Drive • Springfield, IL 62702-4696
(217) 782-4975 (voice) • 1-(800) 255-3323 (TDD)

C000189

Illinois State Police
Divis[redacted]orensic Services
Fore[redacted]ences Command
EVIDENCE RECEIPT

Number: [illegible]

Laboratory [redacted]ber: 598[redacted]724

Page ______ of ______

OR USE BLACK BALL POINT PEN ONLY; INSTRUCTIONS ON REVERSE

| (1) Originating Agency Name | (2) Agency Telephone | (3) NCIC Number | (4) Agency Case Number |
|---|---|---|---|
| CHAMPAIGN POLICE DEPT | (217) 351-4570 | IL 0100100 | 7982383 |

(5) Send report to: HOLLY NEAVING — Agency address: 82 E. UNIVERSITY — City: CHAMPAIGN — Zip Code: IL 61820

(6) Offense: AGG. ARSON? — (7) County of Offense: CHAMPAIGN — (8) Date Offense Occurred: 022598

(9) Victim(s) Name(s), Sex, Race, DOB:

(10) Suspect(s) Name(s), Sex, Race, DOB: HOLTZCLAW, DONRICO

(11) Printed name of investigating officer if different than (5) above: MORRIS 769

(12) Printed name of the officer and agency delivering evidence: R. JOHNSON 849

| (13) Lab Exhibit Number(s) | (14) BCSS Exhibit Number(s) | (15) Agency Exhibit Number(s) | (16) / (17) Evidence description (see instructions) |
|---|---|---|---|
| 1 | | 1 | Sealed SEXUAL ASSAULT KIT CONTAINING |
| | | | - BLOOD SPECIMEN |
| | | | - HEAD HAIR |

(18) Lab use only

S=1 head hair samples from Ex 1

| (19) Lab Exhibit Number(s) | (20) BCSS Exhibit Number(s) | (21) Date | (22) Time | (23) Received From (Signature) | (24) Received By (Signature) |
|---|---|---|---|---|---|
| 1 | | 3/12/98 | 11:30a | [signature] | Donna M. Curry |
| 1 | | 3-19-98 | 8:00A | evidence vault | Dana S. Litchford |
| 1B | | 4-1-98 | 3:00p | Dana S. Litchford to SIFSC via reg mail # R731 414 169 | |

AFIS Yes [ ] No [ ] Comments

Attach pertinent case information, the case summary, and examination requests

IMPORTANT: List any communicable diseases of risk to lab personnel (e.g., hepatitis, TB, HTLV/LAV II, etc.)

- ABOVE ITEMS COLLECTED FOR COMPARISON TO EVIDENCE SEIZED FROM SCENE

| (27) Lab Exhibit Number(s) | (28) BCSS Exhibit Number(s) | (29) Date | (30) Returned By (DFS Employee Signature) | (31) Released to (law enforcement representative signature and agency name) |
|---|---|---|---|---|
| | | | | |

[redacted]

C0[redacted]00

copy D. Shepard

# ILLINOIS STATE POLICE

*Division of Forensic Services & Identification*

Jim Edgar
*Governor*

April 6, 1998

Terrance W. Gainer
*Director*

Lieutenant Holly Nearing
Champaign Police Department
82 East University Avenue
Champaign, Illinois 61820

RE: Agency #7982383
Springfield Laboratory #S98-1724
Offense: Aggravated Arson
Suspect(s): Donrico Holtzclaw

Dear Lieutenant Nearing:

The Illinois State Police Springfield Forensic Science Laboratory has received evidence in your case for biology analysis. Because of our current backlog and a mutual interest in providing timely services, the evidence has been forwarded to the Southern Illinois Forensic Science Centre for analysis.

If you have any questions pertaining to the biology analysis of the case or if any changes occur in the status of this case, such as court deadlines, dismissal of charges, guilty pleas or other special circumstances, please call the Biology Section or the laboratory director at the Southern Illinois Forensic Science Centre, phone number (618) 457-6714. If you have additional questions or concerns, please call Laboratory Director Michael Galco at the Springfield Laboratory.

Sincerely,

Michael S. Galco

Michael S. Galco
Laboratory Director

MSG:v
Enclosure
cc: Champaign County State's Attorney's Office

copy D. Shepard

# ILLINOIS STATE POLICE
*Division of Forensic Services*

Jim Edgar
*Governor*

Terrance W. Gainer
*Director*

June 22, 1998

ATTENTION LT HOLLY NEARING
CHAMPAIGN CITY POLICE DEPARTMENT
82 EAST UNIVERSITY AVE
CHAMPAIGN IL 61820

**RE:** **Agency #798-002383**
**B.C.S.S. #MM98-1688-9-1**
**Lab #S98-1498**

OFFENSE: Aggravated Arson/Attempted Murder
VICTIM: Lori K. Hansen
SUSPECT: Dedric T. Moore

RECEIVED: April 3, 1998

FROM: Springfield Laboratory via Registered Mail #R731 414 169

The following is a summary of the items submitted:

| EXHIBIT | ITEM SUBMITTED |
|---|---|
| #2A | Debris from Exhibit #2, cords and laces |
| #4A | Debris from Exhibit #4, red shorts |
| #12 | One piece of black tights |
| #12A | Debris from Exhibit #12 |
| #14 | One pair of black tights |
| #14A | Debris from Exhibit #14 |
| #19A | Debris from Exhibit #19, one pair of tennis shoes |
| #32A | Debris from Exhibit #32, one pair of jeans |
| #33A | Debris from Exhibit #33, one gray jacket |
| #34A | Debris from Exhibit #34, one pair of white socks |

Forensic Sciences Command - Southern Illinois Forensic Science Centre
606 East College Street • Carbondale, IL 62901-3309
(618) 457-6714 (voice) • 1 (800) 255-3323 (TDD)

- 2 -

Champaign City Police Department                                          June 22, 1998
Agency #798-002383
B.C.S.S. #MM98-1688-9-1
Lab #S98-1498

| EXHIBIT | ITEM SUBMITTED |
|---------|----------------|
| #35A | Debris from Exhibit #35, one pair of underwear |
| #36A | Debris from Exhibit #36, one long sleeve green shirt |
| #38 | Taping of driver's seat |
| #41 | Hairs from interior of driver's door handle |
| #45 | Head hair standard from Dedric Moore |
| #50 | Head hair standard from Lori Hansen |

**RECEIVED:**    June 4, 1998          **FROM:** Forensic Scientist Glenn Schubert
                                              under Laboratory Case #S98-1724

| | |
|---|---|
| #1B | Head hair standard from Donrico Holtzclaw |

## EXAMINATION AND RESULTS:

Exhibit #12, one piece of black tights, is consistent in all respects including composition, color, size and structure with the pair of black tights in Exhibit #14; therefore, Exhibit #12 could have originated from Exhibit #14.

Negroid hairs unsuitable for comparison were observed on Exhibit #4A, debris from red shorts, Exhibit #12A, debris from one piece of black tights, Exhibit #33A, debris from gray jacket, and Exhibit #38, taping of driver's seat.

Also observed in some of the above items of evidence examined were Caucasian hairs, animal hairs, fibers, soil particles, botanical material, and miscellaneous debris.

Exhibits #45, #50, and #1B (from Laboratory Case #S98-1724) were not examined.



- 3 -

Champaign City Police Department
Agency #798-002383
B.C.S.S. #MM98-1688-9-1
Lab #S98-1498

June 22, 1998

## EVIDENCE DISPOSITION:

The above items of evidence will be returned to your agency under a separate cover. If you have any questions concerning this report, please feel free to contact this examiner.

Respectfully submitted,

Suzanne M. Kidd
Forensic Scientist

SMK:c
cc: Springfield Laboratory
    Crime Scene Investigator Michael Kyrouac
    Lab Case #S98-1724

C000194

 *copy D. Shepard*

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
### 2040 Hill Meadows Drive
### Springfield, Illinois 62702-4696
### (217) 782-4975 (Voice) • 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

June 29, 1998

Gene P. Marlin
*Acting Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL 61820

Laboratory Case #S98-001498
BCSS Case #MM98-1688-9-1
Agency Case #798-002383
SUPPLEMENTAL REPORT

OFFENSES:  Arson/Attempted Murder
SUSPECT:   Dedric T. Moore
VICTIM:    Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 4, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---------|----------------|
| 20 | Utility knife, plastic bag |
| 23 | Piece of onion |
| 24 | Roll of tape |
| 25 | Knife |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 5, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---------|----------------|
| 46 | Inked fingerprints and palmprints of Dedric T. Moore |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 12, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---------|----------------|
| 48 | Inked fingerprints of Lori K. Hansen |
| 49 | Inked fingerprints of Larry G. Hansen |

## EXAMINATION AND RESULTS:
Examination of Exhibits 20, 23, 24 and 25 revealed one latent print suitable for comparison on the plastic
bag in Exhibit 20.
Comparison of the suitable latent print to the submitted inked prints did not reveal an identification.
An AFIS search did not reveal an identification.
Photographic copies of the latent print from Exhibit 20 are retained on file.

## REMARKS:
The unidentified AFIS latent print was registered in the AFIS unresolved latent print database.  Please
advise this laboratory when the case is closed so that the latent print can be deleted from AFIS.

C000195

7-7-98

Champaign Police Department
Laboratory Case #S98-001498                    -2-                    June 29, 1998

**REMARKS:** (continued)
The evidence will be returned at the laboratory.
Any additional inquiries pertaining to this case should be directed to this laboratory.

Respectfully submitted,

*John E. Carnes*

John E. Carnes
Forensic Scientist

cc:  Crime Scene Investigator Michael L. Kyrouac

C000196...

*copy D. Shepard*

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
### 2040 Hill Meadows Drive
### Springfield, Illinois 62702-4696
#### (217) 782-4975 (Voice) * 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

July 9, 1998

Gene P. Marlin
*Acting Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL 61820

Laboratory Case #S98-001498
BCSS Case #MM98-1688-9-1
Agency Case #798-002383

OFFENSES: Arson/Attempted Murder
SUSPECT: Dedric T. Moore
VICTIM: Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science Laboratory on March 4, 1998:

| EXHIBIT | DESCRIPTION | FINDINGS |
|---------|-------------|----------|
| 16 | Bra | Petroleum product characteristic of gasoline. Medium petroleum product also found. Examples of medium petroleum product are some charcoal starters, mineral spirits, paint thinners, and some torch fuels. |
| 17 | Carpeting | No ignitable liquids were found. |
| 18 | Carpeting | Petroleum product characteristic of gasoline. Medium petroleum product also found. Examples of medium petroleum product are some charcoal starters, mineral spirits, paint thinners and some torch fuels. |

## EVIDENCE DISPOSITION:
The above evidence will be retained in the laboratory evidence vault and should be picked up within thirty days.

If you have any questions regarding this report, please call me.

Respectfully submitted,

*Paula J. Cardosi*

Paula J. Cardosi
Forensic Scientist

cc: Crime Scene Investigator Michael L. Kyrouac

C000197

*copy D. Shepard*

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
2040 Hill Meadows Drive
Springfield, Illinois 62702-4696
(217) 782-4975 (Voice) • 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

August 6, 1998

Gene P. Marlin
*Acting Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL  61820

Laboratory Case #S98-001498
BCSS Case #MM98-1688-9-1
Agency Case #798-002383
SUPPLEMENTAL REPORT

OFFENSES:  Arson/Attempted Murder
SUSPECT:   Dedric T. Moore
VICTIM:    Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 4, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---|---|
| 37 | Latent print lift from exterior of driver door between mirror and handle |
| 42 | Latent print lift from turn signal lever |

**EXAMINATION AND RESULTS:**
Examination of Exhibits 37 and 42 revealed a latent print suitable for comparison on Exhibit 37.
Photographic copies of the latent print from Exhibit 37 are retained on file.

**REMARKS:**
The inked prints have already been returned and should be resubmitted for comparison to this latent print.
Exhibits 37 and 42 will be returned at the laboratory.

Respectfully submitted,

*John E. Carnes*

John E. Carnes
Forensic Scientist

cc:  Crime Scene Investigator Michael L. Kyrouac

*copy D. Shepard*

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
### 2040 Hill Meadows Drive
### Springfield, Illinois 62702-4696
(217) 782-4975 (Voice) * 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

August 13, 1998

Gene P. Marlin
*Acting Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL  61820

Laboratory Case #S98-001498
BCSS Case #MM98-1688-9-1
Agency Case #798-002383
SUPPLEMENTAL REPORT

OFFENSES:  Arson/Attempted Murder
SUSPECT:   Dedric T. Moore
VICTIM:    Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 4, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---|---|
| 37 | Latent print lift from exterior of driver door between mirror and handle |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on August 13, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---|---|
| 46 | Inked fingerprints and palmprints of Dedric T. Moore |
| 48 | Inked fingerprints of Lori K. Hansen |
| 49 | Inked fingerprints of Larry G. Hansen |

## EXAMINATION AND RESULTS:
Comparison of the previously reported suitable latent print on Exhibit 37 to the submitted inked print
cards did not reveal an identification; however, more completely recorded inked fingerprints including the
extreme tip areas and clearly and completely recorded inked prints of the lower joints are needed for a
conclusive comparison.

## REMARKS:
The evidence will be returned at the laboratory.

Respectfully submitted,

John E. Carnes
Forensic Scientist

cc:  Crime Scene Investigator Michael L. Kyrouac

C000199



C000200



C000201



C000202





C000203





C000204





C 0 0 0 2 0 5



C000206



C000207

E-FILED
Friday, 04 May, 2007  05:27:27 PM
Clerk, U.S. District Court, ILCD





C000209





C000210





C000212



C000213



C000214



C000215



C000216



C000217





219

# Champaign Police Department

**Report Form**

This document contains neither recommendations or conclusions of CPD. It is property of CPD and is loaned to you or your agency; it and its contents are not to be distributed by you or outside your agency.

1 of 3

| Any offender suspected of using | | Date/Time Reported 03/10/1998 1600 Tue | | Event # 79803112 |
|---|---|---|---|---|

| Offense Descriptions | Crime Code | CSA | Act. | # Pr. | Force | Circumstances | Place | Weapon | Bias |
|---|---|---|---|---|---|---|---|---|---|
| Resis,Obstruct,Disarm, Peace Ofc. | 3710 | | | | | 008 | 242 | | |

| Date/Time Occurred (Start) 03/10/1998 1530 Tue | Date/Time Occured (End) 03/10/1998 1600 Tue | Date/Time Reported 03/10/1998 1600 Tue | Time Dispatched | Time Arrived | Geo Code 574-01 |
|---|---|---|---|---|---|

| Assigned Officer Shepard, D #7797 | Other Officers Strzesak, M #7711 | Watch 2 | Related Case Number 79802383 | Investigator Assigned |
|---|---|---|---|---|

| Location Occured 108 E. Healey #8 | City Champaign, | Location Type Law Enforcement Building |
|---|---|---|

## VICTIM

| Name: Last GALLO | First JOSEPH | Middle | Address 82 E. University Ave. | City Champaign, Il. | Tx # () 351-4570 |
|---|---|---|---|---|---|

| AKA (includes maiden names) | Alias DOB(s) | Employment Code |
|---|---|---|

| Employer/School | Address | City | Tx # () 351-4560 |
|---|---|---|---|

| Injury Code | Victim Code P | Hospital | Treated by | Gang | Gang Name |
|---|---|---|---|---|---|

| DOB | Age | Race w | Sex m | Ht. | Wt. | Hair | Eyes | Business Name |
|---|---|---|---|---|---|---|---|---|

| Corporation/Owner Name | Corporate Address | City, State |
|---|---|---|

| Vehicle: Color | Year | Make | Model | Body | License | VIN |
|---|---|---|---|---|---|---|

## SYNOPSIS

## WITNESS

| W | Name Yohnka , Brad | Race w | Sex m | DOB | Employer/School City Of Champaign |
|---|---|---|---|---|---|
| RP | | | | | |
| Z | Address 82 E. University Ave | City, State Champaign, Il. | Home # | Work # () 351-4561 | |

## WITNESS

| W | Name Shepard , Donald G | Race w | Sex m | DOB | Employer/School City Of Champaign |
|---|---|---|---|---|---|
| RP | | | | | |
| Z | Address 82 E. University Ave | City, State Champaign, Il. | Home # | Work # () 351-4569 | |

## WITNESS

| W | Name Strzesak , Mark | Race w | Sex m | DOB | Employer/School City Of Champaign |
|---|---|---|---|---|---|
| RP | | | | | |
| Z | Address 82 E. University Ave | City, State Champaign, Il. | Home # | Work # () 351-4570 | |

## RELATIONSHIP MAITRIX

| Offensse | Victim | Rel. | Offender |
|---|---|---|---|

| Assigned Officer Shepard, D #7797 | Location Occured 108 E. Healey #8 | City Champaign, Il |
|---|---|---|

C000220

| Date/Time Occurred (Start) | Date/Time Reported | Event # |
|---|---|---|
| **03/10/1998 1530 Tue** | **03/10/1998 1600 Tue** | **79803112** |

## ARRESTEE

| Name | | | | Address | City |
|---|---|---|---|---|---|
| **Moore** | **Dedric** | **Termaine** | | **108 E. Healey #8** | **Champaign, Il.** |

**Charge**
**Obstructing a Peace Officer**

| AKA (includes maiden names) | Alias DOB(s) | Employment Code | Tx # |
|---|---|---|---|
| | | | |

| Description (Clothing etc.) | Social Security # | DLN | DL State |
|---|---|---|---|
| | **358703380** | **M60017878230** | **Il** |

| Employer/School | Address | City | Tx # |
|---|---|---|---|
| | | | |

| DOB | Age | Race | Sex | Ht. | Wt. | Hair | Eyes | Distinguishing Features |
|---|---|---|---|---|---|---|---|---|
| **8/13/78** | **19** | **B** | **M** | **6'4** | **220** | **Blk** | **Bro** | |

| Injury Code | Gang | Gang Name | Show Up: Date/Time | Show Up Location | Show Up Officer |
|---|---|---|---|---|---|
| | | | | | |

| Arresting Officer | Arrest Location | Date/Time Arrested | Transported By | Disposition |
|---|---|---|---|---|
| **Shepard, D #7797** | **204 E. Main Urbana** | **03101998 1630** | | |

| Miranda | Ofc. Name | Miranda Date/Time | Arrest # | Arrest Type |
|---|---|---|---|---|
| **No** | | | | |

| Vehicle Color | Year | Make | Model | Body | License | VIN |
|---|---|---|---|---|---|---|
| | | | | | | |

| | | | |
|---|---|---|---|
| **Is there a significant MO present** | .................................................................................... | A | No |
| **Was there a witness to the offense?** | .................................................................................... | B | No |
| **Was there a definite limited opportunity for anyone except suspect to commit offense?** | .................................... | C | No |
| **Is there usable physical evidence?** | .................................................................................... | D | No |
| **Is stolen property traceable** | .................................................................................... | E | No |

| Data Entry By | Copied By | Copied For: Inv. ☐ SA ☐ Other ☐ | Filed By | Leads # |
|---|---|---|---|---|
| Investigator Assigned | | Cleared By | | |
| Supplemental Reports Pending: ☐ By Whom | | Followup by Assigned Officer ☐ | | |

| Reporting Officer's Signature | Badge/ID No | Date | Approved (Supervisor) | Badge/ID No | Date |
|---|---|---|---|---|---|
| | | | *St. T~ B Dm~l* | *9Cb* | *3/15/98* |

VERSION 97-07-15a

C000221

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 03/10/98  1600 Hr | 03/10/98 1630 Hr | 798-03112 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Resisting, Obstructing, Disarm/Peace | 108 E. Healey #8 |

While investigating report #798-2383 I developed information that Dedric T. Moore was a suspect in that case. That case is an Aggravated Arson and Attempted Murder. When I interviewed him at CPD on 03/05/98 he told me that he wanted to bring the victim in to view him. In fact he wanted to do it then to get this issue over. I then told him that may be something I would do. I asked him if I could take a few photos of him with the camera and he refused to let me.

A search warrant was issued on 03/07/98 at 09:03 A.M. ordering Dedric to appear in a line-up and to submit to photos and speak. I had the line-up arranged for 1530 Hr. Detectives Joseph Gallo and Brad Yohnka located Dedric at his home on 03/08/98 and told him to be at the Champaign County Sheriff's Office at 204 E. Main, Urbana at 1530Hr (3:30 p.m.) on 03/10/98 to stand in the line-up. See Detective Gallo's report for details.

Detective Strzesak and I were there at that time with the witness that was to view the line-up. Dedric did not show up. We waited until 1600 Hr. Then we went to the State's Attorney's Office to advise of the failure to show up. An arrest warrant was issued then for obstructing a Peace Officer.

Detective Strzesak and I went back to the County Jail at 204 E. Main to have the warrant entered in their records. While there, Dedric came in at 1630 Hr. I then told him he was under arrest for the warrant that I had in my hand. He was taken into custody.

Dedric responded that he was upstairs waiting since 1610 or 1615 Hr. He said that he was given a piece of paper by Detective Gallo that had 4:30 p.m. (1630 Hr) written on it and he had one of the persons upstairs call my office at 351-4569 to find me. He said a message was left on my answering machine. I asked to see the piece of paper and he told me he had no idea where it was. When I got to my office there was no message on my phone.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| 798-02383 | | 7197 | 03/10/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| Det. D. Shepard | | | C 0 0 0 2 2 2 |

*178-311α*

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 | 03/09/98 | 798-2383 | |
| CLASSIFICATION | LOCATION | | |
| Attempt Murder | 512 1/2 S. New St. | | |

On 03/09/98 at approximately 1145 hrs. Detective Yonka and myself located Dedric T. Moore at 108 E. Healey St. in apartment number eight. I informed Dedric that a search warrant had been issued for his person. I read the warrant to Dedric and issued him a copy of the warrant. I advised Dedric that he was required to report to the Champaign County Jail, in downtown Urbana, on 03/10/98 at 1530 hrs., for an in person line-up.

Dedric acknowledged the warrant and indicated that he would comply with the warrant. I advised Dedric that if he did not comply with the court order, a warrant would be issued for his arrest.

I spoke with Captain Young at the Champaign County Jail. I informed him of the time and date of the line up and requested his assistance.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. 712 | DATE 03/09/98 |
|---|---|---|---|
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. 906 | C000223 |



STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

            VS.                          98-MR-<u>10 3</u>

512 SOUTH NEW STREET, UNIT B,
CHAMPAIGN, ILLINOIS, THE SOUTH
SIDE OF A DUPLEX

### SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS or _____:

   ON THIS 4th DAY OF MARCH, 1998, DETECTIVE DON SHEPARD, COMPLAINANT, HAS SUBSCRIBED and sworn to a complaint for search warrant before me.  Upon examination of the complaint I find that it states facts sufficient to show probable cause and I therefore command that the premises of 512 South New Street, Unit B, Champaign, Illinois, the south side of a duplex, be searched and the following instruments, articles and things which have been used in the commission of, or which constitute evidence of, the offenses of Home Invasion and Attempt (Murder):  Multi-colored jacket and/or jacket with dark and light colors; dark tennis shoes; documents, receipts, paperwork from First of America;  ATM debit card; ball cap;  any notes, documents pertaining to these offenses; hooded garments; light-colored gloves;  indicia of ownership/occupancy.

   I further command that a return of anything so seized shall be made without unnecessary delay before me or before Judge _____ _____ or before any court of competent jurisdiction.

                              _____
                                        Judge

Date of Issuance ___3/4___, 1998.
Time of Issuance ___6:54 p.m.___

---

### RETURNED NOT EXECUTED

   I did not execute this warrant within 96 hours from the time of issuance and it is hereby returned to the court as void and not executed.

                              _____
                                        Officer

Date Returned _____, 1998.
Time Returned _____

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY


THE PEOPLE OF THE STATE OF ILLINOIS


                    VS.                        98-MR- 103

512 SOUTH NEW STREET, UNIT B,
CHAMPAIGN, ILLINOIS, THE SOUTH
SIDE OF A DUPLEX

                        SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS or _____ :

     ON THIS 4th DAY OF MARCH, 1998, DETECTIVE DON SHEPARD,
COMPLAINANT, HAS SUBSCRIBED and sworn to a complaint for search
warrant before me.  Upon examination of the complaint I find that it
states facts sufficient to show probable cause and I therefore
command that the premises of 512 South New Street, Unit B, Champaign,
Illinois, the south side of a duplex, be searched and the following
instruments, articles and things which have been used in the
commission of, or which constitute evidence of, the offenses of Home
Invasion and Attempt (Murder):  Multi-colored jacket and/or jacket
with dark and light colors; dark tennis shoes; documents, receipts,
paperwork from First of America;  ATM debit card; ball cap; any
notes, documents pertaining to these offenses; hooded garments;
light-colored gloves;  indicia of ownership/occupancy.


     I further command that a return of anything so seized shall be
made without unnecessary delay before me or before Judge _____
_____ or before any court of competent jurisdiction.

                                   _____
                                              /Judge

Date of Issuance _____3/4____, 1998.
Time of Issuance ___6:57 p.m.___


_____


                    RETURNED NOT EXECUTED

     I did not execute this warrant within 96 hours from the time of
issuance and it is hereby returned to the court as void and not
executed.


                    _____
                                   Officer


Date Returned _____, 1998.
Time Returned _____

C000225

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS


              VS.                      98-MR-_____


THE PERSON OF DEDRIC TREMAINE
MOORE, A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978_____

### COMPLAINT FOR SEARCH WARRANT

Detective Don Shepard, Complainant, now appears before the
undersigned judge of the Circuit Court of said County and requests
the issuance of a search warrant to search the person of Dedric
Tremaine Moore, a Black male, date of birth August 13, 1978, and
seize the following instruments, articles, and things which have been
used in the commission of, or which constitute evidence of, the
offenses of Home Invasion and Attempt (Murder):  Items of
identification, samples of blood, samples of hair, fingerprints.

    Complainant says that he has probable cause to believe, based
upon the following facts, that the above things to be seized are now
located upon the person set forth above:

    1.  Complainant, Don Shepard, is a police officer for the
Champaign Police Department, currently assigned to investigations,
and has been employed as a police officer for 11 years.

    2.  Complainant, Don Shepard, learned the following from his own
investigation and reviewing the investigation of other police
officers of the Champaign Police Department.

    3.  On February 25, 1998 at 3:00 a.m., the Champaign Police
Department was called to 512 South New, Unit A, Champaign, Illinois,
which is a duplex, and took a report from Lori Hansen.

    4.  Lori Hansen reported to Officer Timothy Atteberry, and in
subsequent interviews to Detective Shepard, the following:

    On February 25, 1998, she arrived at her residence at 512 South
    New, Unit A, Champaign, Illinois, at approximately 1:45 a.m.,
    and parked her Toyota pick-up truck in front of that residence.
    As she was entering her residence, a Black male forced his way
    in and forced her to the floor, taking her truck keys from her
    hand.  The male subsequently hog-tied her, gagged her with tape,
    and covered her head with a pair of shorts.  The man then took
    money and an ATM debit card for First of America from her purse,
    and drank a can of beer.  The man then carried her to the
    bathtub, where he left her with an end table on top of her.

    The man left the residence for some time, then returned, removed
    her from the bathtub and partially untied her, and then tried to
    strangle her with the rope.

C000226

The man then fondled Lori Hansen's breasts, then urinated on her head, and then poured something liquid with a chemical smell, like shoe polish, on the living room rug and on her.

The man lit the living room on fire, grabbed her and attempted to drag her into the flames; then beat and kicked her repeatedly, to the ground, and flicked a lit cigarette on her, which she managed to flip away.

The man subsequently left.

5.  Officers of the Champaign Fire Department and the Champaign Police Department processed the scene in and outside 512 South New, Unit A, Champaign, Illinois, and recovered items of evidence which corroborated Lori Hansen's report, including, the butt of a smoked Newport cigarette, an empty can of beer, and Lori Hansen's Toyota pick-up truck, which was now parked approximately 3/4 of a block away.  In the area of that truck, a portion of nylon panty hose that could be used as a mask was recovered.  All items were taken into evidence by the Champaign Police Department for processing.

6.  In the vicinity of the Toyota pick-up truck, officers recovered latent fingerprints, and a receipt dated February 25, 1998 at 2:31 a.m., for an ATM machine located at 812 West Springfield, Champaign, Illinois.  Officers also recovered a piece of paper with Lori Hansen's "pin" numbers.  Lori Hansen had reported to police that she had been forced to state her "pin" numbers to the male, who later repeated them back to her to confirm as if he had written them down.

7.  Detective Mark Strzesak of the Champaign Police Department recovered a videotape of the transaction conducted at the ATM machine which corresponded to that receipt.  The video portrayed Lori Hansen's Toyota pick-up truck being driven by a Black male who appeared to be wearing a multi-colored or light and dark-colored jacket, hooded garment, light gloves, ball cap, and what appears to be a nylon stocking/pantyhose over his face.

8.  Lori Hansen provided a description of the Black male assailant to Detective Shepard as follows:  dark tennis type shoes, off-white gloves, hooded-like jacket, big not heavy coat that she thought was red, black and white.  She further reported that he spoke with a soft voice, and did not enunciate and mumbled.

9.  On February 25, 1998, Detective Charles Shepard viewed a still photograph made from the ATM videotape and observed that the photograph looked like Dedric Tremaine Moore, but he could not be sure.  Detective Charles Shepard is familiar with Dedric Moore from prior juvenile contacts, and knows that Dedric Moore stays with his grandmother, Lilly Moore, at 512 South New, Unit B, Champaign, Illinois.

10.  On March 4, 1998, Detective Don Shepard observed 512 South New, Unit B, Champaign, Illinois, to be the south side of a duplex, and that it is connected to Lori Hansen's unit.

C000227

11.  Detective Don Shepard interviewed Dedric Tremaine Moore, and confirmed that he is a Black male with a date of birth of August 13, 1978.  Detective Shepard questioned Dedric Moore about the incident that occurred on February 25, 1998, and Dedric Moore indicated that he was out of town that night.  Detective Shepard observed that Dedric Moore looked like the man in the ATM videotape.  Dedric Moore also stated that he is paroled to 512 South New, Unit B, Champaign, Illinois, as of the fall of 1997, and that he is staying there at this time.

Detective Don Shepard also observed that Dedric Moore's speech was low and soft, not well enunciated and that he mumbled.

12.  On March 4, 1998, Detective Robb Morris interviewed Emmanuel Moore, the brother of Dedric Tremaine Moore, who reported that Dedric Moore was at 108 East Healey, #8, Champaign, Illinois, on February 24, 1998.  Dedric Moore left at approximately midnight on February 24, 1998, and returned at approximately 4:00 a.m. on February 25, 1998.

13.  Lilly Moore was interviewed by Detective Shepard on February 25, 1998, and she reported that she was gone for several days and arrived home at 512 South New, Unit B, Champaign, Illinois, at approximately 3:00 a.m. when the fire trucks arrived.  She confirmed that Dedric Tremaine Moore stays there periodically.

14.  On March 4, 1998, Detective Charles Shepard interviewed Jennifer Stevens, who identified herself as the girlfriend of Dedric Moore, and learned that Dedric Tremaine Moore smokes Newport cigarettes, and that on February 24-25, 1998, Dedric Moore spoke to her by telephone at approximately midnight and reported he was at First and Springfield, Champaign, Illinois, which is located approximately 6-7 blocks from 512 South New Street, Champaign, Illinois.

FURTHER THE AFFIANT SAYETH NOT.

X _Donald Shepard_
Complainant

Signed and sworn to before me on

_Mar. 4_ , 1998.

_Thomas J. James_
JUDGE

98-MR-103

# SEARCH WARRANT INVENTORY
## (Articles Seized)

I, Donald G. Shepard , being first duly sworn, upon

oath depose and say that pursuant to the authority contained in the within search warrant, I did on

March 4 , 1998, seize and take possession of the following

instruments, articles or things:

1) (1) Illinois I. D. Card of Dedric T. Moore

2) (1) Black Shoe String

3) (1) pack of opened "Newport" Cigarette

4) (1) W-2 Wage & Tax statement of
Dedric T. Moore

5) (1) Red/White/Blue Jacket "REGATTA"

6) (1) Red/Blue/Black Jacket "Tommy Hilf..

7) (1) Social Security Card for Dedric T. Mo...

8) Photo taken of Items Seized and the
residence

Signed and sworn to before me

_____, 19___

800-12-81    WHITE—Court Copy    CANARY—Peace Officer's Copy

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY


THE PEOPLE OF THE STATE OF ILLINOIS


                    VS.                         98-MR- 104


THE PERSON OF DEDRIC TREMAINE
MOORE, A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978

### SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS or _____ :

      ON THIS 4th DAY OF MARCH, 1998, DETECTIVE DON SHEPARD,
COMPLAINANT, HAS SUBSCRIBED and sworn to a complaint for search
warrant before me. Upon examination of the complaint I find that it
states facts sufficient to show probable cause and I therefore
command that the person of Dedric Tremaine Moore, a Black male, date
of birth August 13, 1978, be searched and the following instruments,
articles and things which have been used in the commission of, or
which constitute evidence of, the offenses of Home Invasion and
Attempt (Murder): Items of identification, samples of blood, samples
of hair, fingerprints.

      I further command that a return of anything so seized shall be
made without unnecessary delay before me or before Judge _____
_____ or before any court of competent jurisdiction.

                          _____
                                        Judge

Date of Issuance ____3/4____ , 1998.
Time of Issuance __6:52 pm__

_____

### RETURNED NOT EXECUTED

      I did not execute this warrant within 96 hours from the time of
issuance and it is hereby returned to the court as void and not
executed.


                    _____
                                        Officer


Date Returned _____ , 1998.
Time Returned _____

C000230

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

VS.                                98-MR- \104

THE PERSON OF DEDRIC TREMAINE
MOORE, A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978

SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS or _____:

ON THIS 4th DAY OF MARCH, 1998, DETECTIVE DON SHEPARD,
COMPLAINANT, HAS SUBSCRIBED and sworn to a complaint for search
warrant before me.  Upon examination of the complaint I find that it
states facts sufficient to show probable cause and I therefore
command that the person of Dedric Tremaine Moore, a Black male, date
of birth August 13, 1978, be searched and the following instruments,
articles and things which have been used in the commission of, or
which constitute evidence of, the offenses of Home Invasion and
Attempt (Murder):  Items of identification, samples of blood, samples
of hair, fingerprints.

I further command that a return of anything so seized shall be
made without unnecessary delay before me or before Judge _____
_____ or before any court of competent jurisdiction.

_____
                    Judge

Date of Issuance ___3/4___, 1998.
Time of Issuance ___6:52 pm___

_____

RETURNED NOT EXECUTED

I did not execute this warrant within 96 hours from the time of
issuance and it is hereby returned to the court as void and not
executed.

_____   _____
                              Officer

Date Returned _____, 1998.
Time Returned _____

C000231

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

                    VS.                          98-MR- _104_

THE PERSON OF DEDRIC TREMAINE
MOORE, A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978

### SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS or _____:

    ON THIS 4th DAY OF MARCH, 1998, DETECTIVE DON SHEPARD, COMPLAINANT, HAS SUBSCRIBED and sworn to a complaint for search warrant before me.  Upon examination of the complaint I find that it states facts sufficient to show probable cause and I therefore command that the person of Dedric Tremaine Moore, a Black male, date of birth August 13, 1978, be searched and the following instruments, articles and things which have been used in the commission of, or which constitute evidence of, the offenses of Home Invasion and Attempt (Murder):  Items of identification, samples of blood, samples of hair, fingerprints.

    I further command that a return of anything so seized shall be made without unnecessary delay before me or before Judge _____ _____ or before any court of competent jurisdiction.

                    _Thomas J. Jones_
                              Judge

Date of Issuance ___3/4___, 1998.
Time of Issuance __6:52 pm__

_____

### RETURNED NOT EXECUTED

    I did not execute this warrant within 96 hours from the time of issuance and it is hereby returned to the court as void and not executed.

                    _____
                              Officer

Date Returned _____, 1998.
Time Returned _____

C000232

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

                    VS.                              98-MR-_____

512 SOUTH NEW STREET, UNIT B,
CHAMPAIGN, ILLINOIS, THE SOUTH
SIDE OF A DUPLEX

## COMPLAINT FOR SEARCH WARRANT

Detective Don Shepard, Complainant, now appears before the
undersigned judge of the Circuit Court of said County and requests
the issuance of a search warrant to search the premises of 512 South
New Street, Unit B, Champaign, Illinois, the south side of a duplex,
and seize the following instruments, articles, and things which have
been used in the commission of, or which constitute evidence of, the
offenses of Home Invasion and Attempt (Murder):  Multi-colored jacket
and/or jacket with dark and light colors; dark tennis shoes;
documents, receipts, paperwork from First of America; ATM debit card;
ball cap; any notes, documents pertaining to these offenses; hooded
garments; light-colored gloves; indicia of ownership/occupancy.

    Complainant says that he has probable cause to believe, based
upon the following facts, that the above things to be seized are now
located upon the premises set forth above:

    1.  Complainant, Don Shepard, is a police officer for the
Champaign Police Department, currently assigned to investigations,
and has been employed as a police officer for 11 years.

    2.  Complainant, Don Shepard, learned the following from his own
investigation and reviewing the investigation of other police
officers of the Champaign Police Department.

    3.  On February 25, 1998 at 3:00 a.m., the Champaign Police
Department was called to 512 South New, Unit A, Champaign, Illinois,
which is a duplex, and took a report from Lori Hansen.

    4.  Lori Hansen reported to Officer Timothy Atteberry, and in
subsequent interviews to Detective Shepard, the following:

    On February 25, 1998, she arrived at her residence at 512 South
    New, Unit A, Champaign, Illinois, at approximately 1:45 a.m.,
    and parked her Toyota pick-up truck in front of that residence.
    As she was entering her residence, a Black male forced his way
    in and forced her to the floor, taking her truck keys from her
    hand.  The male subsequently hog-tied her, gagged her with tape,
    and covered her head with a pair of shorts.  The man then took
    money and an ATM debit card for First of America from her purse,
    and drank a can of beer.  The man then carried her to the
    bathtub, where he left her with an end table on top of her.

    The man left the residence for some time, then returned, removed
    her from the bathtub and partially untied her, and then tried to
    strangle her with the rope.

C00023 3

The man then fondled Lori Hansen's breasts, then urinated on her head, and then poured something liquid with a chemical smell, like shoe polish, on the living room rug and on her.

The man lit the living room on fire, grabbed her and attempted to drag her into the flames; then beat and kicked her repeatedly, to the ground, and flicked a lit cigarette on her, which she managed to flip away.

The man subsequently left.

5. Officers of the Champaign Fire Department and the Champaign Police Department processed the scene in and outside 512 South New, Unit A, Champaign, Illinois, and recovered items of evidence which corroborated Lori Hansen's report, including, the butt of a smoked Newport cigarette, an empty can of beer, and Lori Hansen's Toyota pick-up truck, which was now parked approximately 3/4 of a block away. In the area of that truck, a portion of nylon panty hose that could be used as a mask was recovered. All items were taken into evidence by the Champaign Police Department for processing.

6. In the vicinity of the Toyota pick-up truck, officers recovered latent fingerprints, and a receipt dated February 25, 1998 at 2:31 a.m., for an ATM machine located at 812 West Springfield, Champaign, Illinois. Officers also recovered a piece of paper with Lori Hansen's "pin" numbers. Lori Hansen had reported to police that she had been forced to state her "pin" numbers to the male, who later repeated them back to her to confirm as if he had written them down.

7. Detective Mark Strzesak of the Champaign Police Department recovered a videotape of the transaction conducted at the ATM machine, which corresponded to that receipt. The video portrayed Lori Hansen's Toyota pick-up truck being driven by a Black male who appeared to be wearing a multi-colored or light and dark-colored jacket, hooded garment, light gloves, ball cap, and what appears to be a nylon stocking/pantyhose over his face.

8. Lori Hansen provided a description of the Black male assailant to Detective Shepard as follows: dark tennis type shoes, off-white gloves, hooded-like jacket, big not heavy coat that she thought was red, black and white. She further reported that he spoke with a soft voice, and did not enunciate and mumbled.

9. On February 25, 1998, Detective Charles Shepard viewed a still photograph made from the ATM videotape and observed that the photograph looked like Dedric Tremaine Moore, but he could not be sure. Detective Charles Shepard is familiar with Dedric Moore from prior juvenile contacts, and knows that Dedric Moore stays with his grandmother, Lilly Moore, at 512 South New, Unit B, Champaign, Illinois.

10. On March 4, 1998, Detective Don Shepard observed 512 South New, Unit B, Champaign, Illinois, to be the south side of a duplex, and that it is connected to Lori Hansen's unit.



11.  Detective Don Shepard interviewed Dedric Tremaine Moore, and confirmed that he is a Black male with a date of birth of August 13, 1978.  Detective Shepard questioned Dedric Moore about the incident that occurred on February 25, 1998, and Dedric Moore indicated that he was out of town that night.  Detective Shepard observed that Dedric Moore looked like the man in the ATM videotape.  Dedric Moore also stated that he is paroled to 512 South New, Unit B, Champaign, Illinois, as of the fall of 1997, and that he is staying there at this time.

Detective Don Shepard also observed that Dedric Moore's speech was low and soft, not well enunciated and that he mumbled.

12.  On March 4, 1998, Detective Robb Morris interviewed Emmanuel Moore, the brother of Dedric Tremaine Moore, who reported that Dedric Moore was at 108 East Healey, #8, Champaign, Illinois, on February 24, 1998.  Dedric Moore left at approximately midnight on February 24, 1998, and returned at approximately 4:00 a.m. on February 25, 1998.

13.  Lilly Moore was interviewed by Detective Shepard on February 25, 1998, and she reported that she was gone for several days and arrived home at 512 South New, Unit B, Champaign, Illinois, at approximately 3:00 a.m. when the fire trucks arrived.  She confirmed that Dedric Tremaine Moore stays there periodically.

14.  On March 4, 1998, Detective Charles Shepard interviewed Jennifer Stevens, who identified herself as the girlfriend of Dedric Moore, and learned that Dedric Tremaine Moore smokes Newport cigarettes, and that on February 24-25, 1998, Dedric Moore spoke to her by telephone at approximately midnight and reported he was at First and Springfield, Champaign, Illinois, which is located approximately 6-7 blocks from 512 South New Street, Champaign, Illinois.

FURTHER THE AFFIANT SAYETH NOT.

_Donald Shepard_
Complainant

· Signed and sworn to before me on

_Mar. 4_____, 1998.

_Thomas J. James_____
JUDGE

98-MR-104

# SEARCH WARRANT INVENTORY
## (Articles Seized)

I, _Donald G Shepard_, being first duly sworn, upon

oath depose and say that pursuant to the authority contained in the within search warrant, I did on

_March 4_, 19_98_, seize and take possession of the following

instruments, articles or things:

1) 2 vials of blood from Dedric T. Moore
2) Hair specimens from Dedric T. Moore
3) (2) sheets with inked palm prints and one sheet with inked finger prints from Dedric T. Moore

_Donald Shepard_

Signed and sworn to before me

_____, 19 __

600-12-81              WHITE—Court Copy        CANARY—Peace Officer's Copy

C000236

**STATE OF ILLINOIS**
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

VS.                                      98-MR-_____

DEDRIC TREMAINE MOORE,
A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978

SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS or _____:

ON THIS _11_ DAY OF MARCH, 1998, DETECTIVE DON SHEPARD, COMPLAINANT, has subscribed and sworn to a complaint for search warrant before me.  Upon examination of the complaint I find that it states facts sufficient to show probable cause and I therefore command that the person of Dedric Tremaine Moore, a Black male, date of birth August 13, 1978, be searched in that Dedric Tremaine Moore, a Black male, date of birth August 13, 1978 is to appear in and speak in an in person line-up at the Champaign County Correctional Center, Urbana, Illinois, to be viewed and heard by witnesses in the investigation of the offenses of Home Invasion and Attempt (Murder), and that photographs of said line-up and the participants of said line-up may be taken.

I further command that a return of anything so seized shall be made without unnecessary delay before me or before Judge _____ _____ or before any court of competent jurisdiction.

_____
Judge

Date of Issuance _March 11_, 1998.
Time of Issuance _9:27 AM_

_____

RETURNED NOT EXECUTED

I did not execute this warrant within 96 hours from the time of issuance and it is hereby returned to the court as void and not executed.

_____
Officer

Date Returned _____, 1998.
Time Returned _____

C000237

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

VS.                                    98-MR-_____

DEDRIC TREMAINE MOORE,
A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978_____

<u>COMPLAINT FOR SEARCH WARRANT</u>

Detective Don Shepard, Complainant, now appears before the
undersigned judge of the Circuit Court of said County and requests
the issuance of a search warrant to search the person of Dedric
Tremaine Moore, a Black male, date of birth August 13, 1978, and
seize the following instruments, articles, and things which have been
used in the commission of, or which constitute evidence of, the
offenses of Home Invasion and Attempt (Murder):  the compelling of
the appearance and voice of Dedric Tremaine Moore, a black male, date
of birth August 13, 1978, in an in person line-up at the Champaign
County Correctional Center, Urbana, Illinois, to be viewed and heard
by a witness in the investigation of the offenses of Home Invasion
and Attempt (Murder), and by the taking of photographs of said
line-up and the participants of said line-up.

     Complainant says that he has probable cause to believe, based
upon the following facts, that the above things to be seized are now
located upon the person set forth above:

     1.  Complainant, Don Shepard, is a police officer for the
Champaign Police Department, currently assigned to investigations,
and has been employed as a police officer for 11 years.

     2.  Complainant, Don Shepard, learned the following from his own
investigation and reviewing the investigation of other police
officers of the Champaign Police Department.

     3.  On February 25, 1998 at 3:00 a.m., the Champaign Police
Department was called to 512 South New, Unit A, Champaign, Illinois,
which is a duplex, and took a report from Lori Hansen.

     4.  Lori Hansen reported to Officer Timothy Atteberry, and in
subsequent interviews to Detective Shepard, the following:

     On February 25, 1998, she arrived at her residence at 512 South
New, Unit A, Champaign, Illinois, at approximately 1:45 a.m.,
and parked her Toyota pick-up truck in front of that residence.
As she was entering her residence, a Black male forced his way
in and forced her to the floor, taking her truck keys from her
hand.  The male subsequently hog-tied her, gagged her with tape,
and covered her head with a pair of shorts.  The man then took
money and an ATM debit card for First of America from her purse,
and drank a can of beer.  The man then carried her to the
bathtub, where he left her with an end table on top of her.

The man left the residence for some time, returned, removed her from the bathtub and partially untied her, and then tried to strangle her with the rope.

The man then fondled Lori Hansen's breasts, then urinated on her head, and then poured something liquid with a chemical smell, like shoe polish, on the living room rug and on her.

The man lit the living room on fire, grabbed her and attempted to drag her into the flames; then beat and kicked her repeatedly, to the ground, and flicked a lit cigarette on her, which she managed to flip away.

The man subsequently left.

5.  Officers of the Champaign Fire Department and the Champaign Police Department processed the scene in and outside 512 South New, Unit A, Champaign, Illinois, and recovered items of evidence which corroborated Lori Hansen's report, including, the butt of a smoked Newport cigarette, an empty can of beer, and Lori Hansen's Toyota pick-up truck, which was now parked approximately 3/4 of a block away.  In the area of that truck, a portion of nylon panty hose that could be used as a mask was recovered.  All items were taken into evidence by the Champaign Police Department for processing.

6.  In the vicinity of the Toyota pick-up truck, officers recovered latent fingerprints, and a receipt dated February 25, 1998 at 2:31 a.m., for an ATM machine located at 812 West Springfield, Champaign, Illinois.  Officers also recovered a piece of paper with Lori Hansen's "pin" numbers.  Lori Hansen had reported to police that she had been forced to state her "pin" numbers to the male, who later repeated them back to her to confirm as if he had written them down.

7.  Detective Mark Strzesak of the Champaign Police Department recovered a videotape of the transaction conducted at the ATM machine which corresponded to that receipt.  The video portrayed Lori Hansen's Toyota pick-up truck being driven by a Black male who appeared to be wearing a multi-colored or light and dark-colored jacket, hooded garment, light gloves, ball cap, and what appears to be a nylon stocking/pantyhose over his face.

8.  Lori Hansen provided a description of the Black male assailant to Detective Shepard as follows:  dark tennis type shoes, off-white gloves, hooded-like jacket, big not heavy coat that she thought was red, black and white.  She further reported that he spoke with a soft voice, and mumbled, and did not enunciate.  She indicated she might recognize him if she saw and/or heard him speak again.

9.  On February 25, 1998, Detective Charles Shepard viewed a still photograph made from the ATM videotape and observed that the photograph looked like Dedric Tremaine Moore, but he could not be sure.  Detective Charles Shepard is familiar with Dedric Moore from prior juvenile contacts, and knows that Dedric Moore stays with his grandmother, Lilly Moore, at 512 South New, Unit B, Champaign, Illinois.

10.  On March 4, 1998, Detective Don Shepard observed 512 South New, Unit B, Champaign, Illinois, to be the south side of a duplex, and that it is connected to Lori Hansen's unit.

11.  Detective Don Shepard interviewed Dedric Tremaine Moore, and confirmed that he is a Black male with a date of birth of August 13, 1978.  Detective Shepard questioned Dedric Moore about the incident that occurred on February 25, 1998, and Dedric Moore indicated that he was out of town that night.  Detective Shepard observed that Dedric Moore looked like the man in the ATM videotape.  Dedric Moore also stated that he is paroled to 512 South New, Unit B, Champaign, Illinois, as of the fall of 1997, and that he is staying there at this time.

Detective Don Shepard also observed that Dedric Moore's speech was low and soft, not well enunciated and that he mumbled.

12.  On March 4, 1998, Detective Robb Morris interviewed Emmanuel Moore, the brother of Dedric Tremaine Moore, who reported that Dedric Moore was at 108 East Healey, #8, Champaign, Illinois, on February 24, 1998.  Dedric Moore left at approximately midnight on February 24, 1998, and returned at approximately 4:00 a.m. on February 25, 1998.

13.  Lilly Moore was interviewed by Detective Shepard on February 25, 1998, and she reported that she was gone for several days and arrived home at 512 South New, Unit B, Champaign, Illinois, at approximately 3:00 a.m. when the fire trucks arrived.  She confirmed that Dedric Tremaine Moore stays there periodically.

14.  On March 4, 1998, Detective Charles Shepard interviewed Jennifer Stevens, who identified herself as the girlfriend of Dedric Moore, and learned that Dedric Tremaine Moore smokes Newport cigarettes, and that on February 24-25, 1998, Dedric Moore spoke to her by telephone at approximately midnight and reported he was at First and Springfield, Champaign, Illinois, which is located approximately 6-7 blocks from 512 South New Street, Champaign, Illinois.

15.  On March 7, 1998, The Honorable Thomas J. Difanis issued a search warrant compelling the appearance of Dedric Tremaine Moore in an in-person line-up at the Champaign County Correctional Center.

16.  On March 9, 1998, Investigator Joseph Gallo of the Champaign Police Department served a copy of said search warrant on Dedric Tremaine Moore and directed him to appear at the Champaign County Correctional Center, 204 E. Main Street, Urbana, Illinois, at 3:30 p.m. on March 10, 1998 for said line-up.

17.  On March 10, 1998, at 3:30 p.m. Dedric Tremaine Moore did not appear at said line-up as ordered.  Dedric Tremaine Moore was subsequently arrested on a warrant for the offense of Obstructing a Peace Officer in cause 98-CM-320 and is currently being incarcerated at the Champaign County Correctional Center.

**E-FILED**
Friday, 04 May, 2007  05:27:49 PM
Clerk, U.S. District Court, ILCD

**FURTHER THE AFFIANT SAYETH NOT.**

_____

Complainant

    Signed and sworn to before me on

_____, 1998.


_____

JUDGE

C000241

98-MR-115

# SEARCH WARRANT INVENTORY
### (Articles Seized)

I, _Donald Shepard_ , being first duly sworn, upon

oath depose and say that pursuant to the authority contained in the within search warrant, I did on

_March 11_ , 19 _98_ , seize and take possession of the following

instruments, articles or things:

1) The person of Delrico T. Blake, Adult Male, Date of Birth: 08-13-78 to stand in a line-up of (6) six people including himself

2) Six (6) people to stand in a line-up with one piece of paper hung to rear of each people and the paper instruction and one piece of tape and a color photo of each defendant of the line-up

3) 1) One Photographs of the person standing of the line-up
   2) people to stand in a line including their themselves Black _____ of similar description

_Don Shepard_

**Signed and sworn to before me**

_March 11, 1998_ , 19____

_10:54 AM_

_____

C000242

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

VS.                                    98-MR- 114

DEDRIC TREMAINE MOORE,
A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978

## SEARCH WARRANT

TO ALL PEACE OFFICERS OF THE STATE OF ILLINOIS or _____:

ON THIS 7Th DAY OF MARCH, 1998, DETECTIVE DON SHEPARD,
COMPLAINANT, has subscribed and sworn to a complaint for search
warrant before me.  Upon examination of the complaint I find that it
states facts sufficient to show probable cause and I therefore
command that the person of Dedric Tremaine Moore, a Black male, date
of birth August 13, 1978, be searched in that Dedric Tremaine Moore,
a Black male, date of birth August 13, 1978 is to appear in and speak
in an in person line-up at the Champaign County Correctional Center,
Urbana, Illinois, to be viewed and heard by witnesses in the
investigation of the offenses of Home Invasion and Attempt (Murder),
and that photographs of said line-up and the participants of said
line-up may be taken.

I further command that a return of anything so seized shall be
made without unnecessary delay before me or before Judge _____
_____ or before any court of competent jurisdiction.

_____Thomas /-- Jones_____
                                    /Judge /

Date of Issuance ___3/7___, 1998.
Time of Issuance ___9:03 a.m.___

_____

## RETURNED NOT EXECUTED

I did not execute this warrant within 96 hours from the time of
issuance and it is hereby returned to the court as void and not
executed.

Donald Shepard 797
                                    Officer

Date Returned ___03/11___, 1998.
Time Returned ___0925 HR___

C000243

STATE OF ILLINOIS
IN THE CIRCUIT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY

THE PEOPLE OF THE STATE OF ILLINOIS

VS.                                    98-MR-_____

DEDRIC TREMAINE MOORE,
A BLACK MALE, DATE OF
BIRTH AUGUST 13, 1978

COMPLAINT FOR SEARCH WARRANT

Detective Don Shepard, Complainant, now appears before the
undersigned judge of the Circuit Court of said County and requests
the issuance of a search warrant to search the person of Dedric
Tremaine Moore, a Black male, date of birth August 13, 1978, and
seize the following instruments, articles, and things which have been
used in the commission of, or which constitute evidence of, the
offenses of Home Invasion and Attempt (Murder):  the compelling of
the appearance and voice of Dedric Tremaine Moore, a black male, date
of birth August 13, 1978, in an in person line-up at the Champaign
County Correctional Center, Urbana, Illinois, to be viewed and heard
by a witness in the investigation of the offenses of Home Invasion
and Attempt (Murder), and by the taking of photographs of said
line-up and the participants of said line-up.

     Complainant says that he has probable cause to believe, based
upon the following facts, that the above things to be seized are now
located upon the person set forth above:

     1.  Complainant, Don Shepard, is a police officer for the
Champaign Police Department, currently assigned to investigations,
and has been employed as a police officer for 11 years.

     2.  Complainant, Don Shepard, learned the following from his own
investigation and reviewing the investigation of other police
officers of the Champaign Police Department.

     3.  On February 25, 1998 at 3:00 a.m., the Champaign Police
Department was called to 512 South New, Unit A, Champaign, Illinois,
which is a duplex, and took a report from Lori Hansen.

     4.  Lori Hansen reported to Officer Timothy Atteberry, and in
subsequent interviews to Detective Shepard, the following:

     On February 25, 1998, she arrived at her residence at 512 South
New, Unit A, Champaign, Illinois, at approximately 1:45 a.m.,
and parked her Toyota pick-up truck in front of that residence.
As she was entering her residence, a Black male forced his way
in and forced her to the floor, taking her truck keys from her
hand.  The male subsequently hog-tied her, gagged her with tape,
and covered her head with a pair of shorts.  The man then took
money and an ATM debit card for First of America from her purse,
and drank a can of beer.  The man then carried her to the
bathtub, where he left her with an end table on top of her.

C000244

The man le▓ ▓he residence for some time, t▓ ▓returned, removed her from the bathtub and partially untied her, and then tried to strangle her with the rope.

The man then fondled Lori Hansen's breasts, then urinated on her head, and then poured something liquid with a chemical smell, like shoe polish, on the living room rug and on her.

The man lit the living room on fire, grabbed her and attempted to drag her into the flames; then beat and kicked her repeatedly, to the ground, and flicked a lit cigarette on her, which she managed to flip away.

The man subsequently left.

5. Officers of the Champaign Fire Department and the Champaign Police Department processed the scene in and outside 512 South New, Unit A, Champaign, Illinois, and recovered items of evidence which corroborated Lori Hansen's report, including, the butt of a smoked Newport cigarette, an empty can of beer, and Lori Hansen's Toyota pick-up truck, which was now parked approximately 3/4 of a block away. In the area of that truck, a portion of nylon panty hose that could be used as a mask was recovered. All items were taken into evidence by the Champaign Police Department for processing.

6. In the vicinity of the Toyota pick-up truck, officers recovered latent fingerprints, and a receipt dated February 25, 1998 at 2:31 a.m., for an ATM machine located at 812 West Springfield, Champaign, Illinois. Officers also recovered a piece of paper with Lori Hansen's "pin" numbers. Lori Hansen had reported to police that she had been forced to state her "pin" numbers to the male, who later repeated them back to her to confirm as if he had written them down.

7. Detective Mark Strzesak of the Champaign Police Department recovered a videotape of the transaction conducted at the ATM machine which corresponded to that receipt. The video portrayed Lori Hansen's Toyota pick-up truck being driven by a Black male who appeared to be wearing a multi-colored or light and dark-colored jacket, hooded garment, light gloves, ball cap, and what appears to be a nylon stocking/pantyhose over his face.

8. Lori Hansen provided a description of the Black male assailant to Detective Shepard as follows: dark tennis type shoes, off-white gloves, hooded-like jacket, big not heavy coat that she thought was red, black and white. She further reported that he spoke with a soft voice, and mumbled, and did not enunciate. She indicated she might recognize him if she saw and/or heard him speak again.

9. On February 25, 1998, Detective Charles Shepard viewed a still photograph made from the ATM videotape and observed that the photograph looked like Dedric Tremaine Moore, but he could not be sure. Detective Charles Shepard is familiar with Dedric Moore from prior juvenile contacts, and knows that Dedric Moore stays with his grandmother, Lilly Moore, at 512 South New, Unit B, Champaign, Illinois.

10. On March 4, 1998, Detective Don Shepard observed 512 South New, Unit B, Champaign, Illinois, to be the south side of a duplex, and that it is connected to Lori Hansen's unit.

11. Detective Don Shepard interviewed Dedric Tremaine Moore, and confirmed that he is a Black male with a date of birth of August 13, 1978. Detective Shepard questioned Dedric Moore about the incident that occurred on February 25, 1998, and Dedric Moore indicated that he was out of town that night. Detective Shepard observed that Dedric Moore looked like the man in the ATM videotape. Dedric Moore also stated that he is paroled to 512 South New, Unit B, Champaign, Illinois, as of the fall of 1997, and that he is staying there at this time.

Detective Don Shepard also observed that Dedric Moore's speech was low and soft, not well enunciated and that he mumbled.

12. On March 4, 1998, Detective Robb Morris interviewed Emmanuel Moore, the brother of Dedric Tremaine Moore, who reported that Dedric Moore was at 108 East Healey, #8, Champaign, Illinois, on February 24, 1998. Dedric Moore left at approximately midnight on February 24, 1998, and returned at approximately 4:00 a.m. on February 25, 1998.

13. Lilly Moore was interviewed by Detective Shepard on February 25, 1998, and she reported that she was gone for several days and arrived home at 512 South New, Unit B, Champaign, Illinois, at approximately 3:00 a.m. when the fire trucks arrived. She confirmed that Dedric Tremaine Moore stays there periodically.

14. On March 4, 1998, Detective Charles Shepard interviewed Jennifer Stevens, who identified herself as the girlfriend of Dedric Moore, and learned that Dedric Tremaine Moore smokes Newport cigarettes, and that on February 24-25, 1998, Dedric Moore spoke to her by telephone at approximately midnight and reported he was at First and Springfield, Champaign, Illinois, which is located approximately 6-7 blocks from 512 South New Street, Champaign, Illinois.

FURTHER THE AFFIANT SAYETH NOT.

*Donald Shepard*
Complainant

Signed and sworn to before me on

*Mar. 7*            , 1998.

*Thomas J. Jensen*
JUDGE

Menu  Utilities  Compi(...)  Help
------------------------------------------------------------------------
BROWSE    J705308.REPORT.LIST                    Line 00000000 Col 001 080
Command ===>                                              Scroll ===> PAGE
`*********************** Top of Data *********************************

| TYPE CALL | DATE MEDIA | NPA ORIGI | NUMBER ORIGINAT | NPA TERMIN | NUMBER TERMIN | TIME CONNECT | TIME ELAPSED | CARI IX |
|---|---|---|---|---|---|---|---|---|
| 006 | 98/02/23 | 217 | 344-1639 | 217 | 398-9671 | 20:46:21.8 | 17:16.9 | |
| 041 | 98/02/23 | 217 | 398-9612 | 217 | 398-9671 | 21:10:55.9 | 0:42.9 | |
| 006 | 98/02/23 | 217 | 328-4179 | 217 | 398-9671 | 22:21:29.1 | 1:01.6 | |
| 006 | 98/02/24 | 217 | 366-2994 | 217 | 398-9671 | 12:45:12.4 | 3:48.2 | |
| 006 | 98/02/24 | 217 | 359-5450 | 217 | 398-9671 | 19:29:52.5 | 0:47.2 | |
| 006 | 98/02/25 | 217 | 359-2852 | 217 | 398-9671 | 22:07:50.9 | 11:45.0 | |
| 048 | 98/02/25 | 217 | 359-2852 | 217 | 398-9671 | 22:08:29.5 | 11:06.9 | |

******************************* Bottom of Data ******************************

C000247

Menu   Utilities   Compil▮▮   Help
------------------------------------------------------------------------
BROWSE      J705308.REPORT.LIST                    Line 00000000 Col 001 080
Command ===>                                       Scroll ===> PAGE
      ************************** Top of Data **********************************

| ..▮£ | DATE     | NPA  | NUMBER  | NPA    | NUMBER   | TIME        | TIME    | CARI |
|------|----------|------|---------|--------|----------|-------------|---------|------|
| ALL  | MEDIA    | ORIGI| ORIGINAT| TERMIN | TERMIN   | CONNECT     | ELAPSED | IX   |
| .92  | 98/02/23 | 217  | 398-9671| 217    | 379-3807 | 06:23:38.2  | 0:00.0  |      |
| .41  | 98/02/23 | 217  | 398-9671| 800    | 672-1212 | 10:46:47.5  | 3:49.0  | 0333 |
| .41  | 98/02/23 | 217  | 398-9671| 217    | 281-0202 | 15:31:46.4  | 0:22.6  |      |
| .41  | 98/02/23 | 217  | 398-9671| 800    | 888-8000 | 16:47:39.4  | 1:45.8  | 0222 |
| .41  | 98/02/23 | 217  | 398-9671| 800    | 888-8000 | 16:50:25.6  | 2:56.7  | 0222 |
| .41  | 98/02/23 | 217  | 398-9671| 217    | 384-7507 | 17:55:13.0  | 0:26.8  |      |
| .41  | 98/02/23 | 217  | 398-9671| 800    | 899-4722 | 18:10:03.3  | 5:54.3  | 0288 |
| .41  | 98/02/23 | 217  | 398-9671| 217    | 356-5738 | 20:15:20.5  | 0:39.5  |      |
| .41  | 98/02/23 | 217  | 398-9671| 217    | 359-0817 | 20:24:46.7  | 0:33.7  |      |
| .41  | 98/02/23 | 217  | 398-9671| 217    | 366-2309 | 20:39:18.2  | 0:06.2  |      |
| .41  | 98/02/23 | 217  | 398-9671| 217    | 344-1639 | 20:42:58.5  | 3:15.7  |      |
| .41  | 98/02/23 | 217  | 398-9671| 800    | 225-5483 | 21:07:34.2  | 0:39.2  | 0222 |
| .41  | 98/02/23 | 217  | 398-9671| 888    | 401-7562 | 22:19:13.1  | 0:19.9  | 0555 |
| .41  | 98/02/23 | 217  | 398-9671| 217    | 359-0030 | 22:23:27.1  | 3:32.0  |      |
| 41   | 98/02/23 | 217  | 398-9671| 217    | 292-0723 | 22:27:38.6  | 0:14.0  |      |
| 41   | 98/02/23 | 217  | 398-9671| 800    | 229-2206 | 23:18:47.6  | 0:00.0  | 0222 |
| 41   | 98/02/23 | 217  | 398-9671| 800    | 229-2206 | 23:19:46.0  | 1:17.9  | 0222 |

C000248

Menu  Utilities  Compil●  Help
--------------------------------------------------------------------------
BROWSE      J705308.REPORT.LIST                    Line 00000020 Col 001 080
Command ===>                                        Scroll ===> PAGE

|       | 98/02/23 | 217 | 398-9671 | 800 | 229-2206 | 23:21:33.3 | 0:00.0 | 0222 |
| ▪▪    | 98/02/23 | 217 | 398-9671 | 800 | 229-2206 | 23:22:34.1 | 0:00.0 | 022: |
| 41    | 98/02/23 | 217 | 398-9671 | 800 | 229-2206 | 23:23:40.0 | 15:11.6 | 0222 |
| 41    | 98/02/24 | 217 | 398-9671 | 217 | 621-2173 | 10:42:12.8 | 0:22.9 | |
| 41    | 98/02/24 | 217 | 398-9671 | 800 | 781-5398 | 12:38:36.7 | 0:05.8 | 0555 |
| 41    | 98/02/24 | 217 | 398-9671 | 800 | 781-5398 | 13:07:32.6 | 0:04.4 | 0555 |
| 41    | 98/02/24 | 217 | 398-9671 | 217 | 352-1030 | 13:57:19.3 | 1:22.2 | |
| 41    | 98/02/24 | 217 | 398-9671 | 217 | 586-6414 | 13:59:01.0 | 1:00.1 | |
| 41    | 98/02/24 | 217 | 398-9671 | 217 | 292-0398 | 14:10:06.3 | 0:16.9 | |
| 41    | 98/02/24 | 217 | 398-9671 | 217 | 292-0424 | 14:10:41.9 | 0:12.1 | |
| 41    | 98/02/24 | 217 | 398-9671 | 800 | 408-2938 | 16:29:58.1 | 0:09.7 | 0222 |
| 41    | 98/02/24 | 217 | 398-9671 | 217 | 373-7832 | 17:13:18.6 | 2:46.3 | |
| 41    | 98/02/24 | 217 | 398-9671 | 217 | 355-8727 | 17:42:27.9 | 2:44.2 | |
| 41    | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:06:46.3 | 0:37.4 | 0288 |
| 19    | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:07:17.2 | 0:11.5 | 0288 |
| 41    | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:07:37.0 | 0:34.2 | 0288 |
| 19    | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:08:07.0 | 0:08.2 | 0288 |
| 41    | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:08:31.4 | 0:22.3 | 0288 |
| 19    | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:08:49.4 | 0:09.4 | 0288 |
| 41    | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:09:15.5 | 0:05.9 | 0288 |

Menu  Utilities  Compile  Help 

------------------------------------------------------------------------

BROWSE     J705308.REPORT.LIST                    Line 00000040 Col 001 080
Command ===>                                      Scroll ===> PAGE

|     | 98/02/24 | 217 | 398-9671 | 800 | 265-5328 | 18:09:45.0 | 0:42.2 | 0222 |
| .19 | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:10:17.0 | 0:13.3 | 0222 |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:10:39.5 | 0:32.5 | 0288 |
| 119 | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:11:08.2 | 0:08.9 | 0288 |
| 192 | 98/02/24 | 217 | 398-9671 | 217 | 359-1804 | 18:48:28.7 | 0:00.0 |      |
| )41 | 98/02/24 | 217 | 398-9671 | 217 | 621-2101 | 19:24:23.9 | 0:21.2 |      |
| )41 | 98/02/24 | 217 | 398-9671 | 217 | 621-2101 | 19:25:58.3 | 0:25.2 |      |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 962-7986 | 19:43:57.1 | 0:13.4 | 0444 |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 962-7986 | 19:44:33.5 | 0:56.3 | 0444 |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 962-7986 | 19:46:00.9 | 1:09.7 | 0444 |
| 141 | 98/02/24 | 217 | 398-9671 | 888 | 231-4498 | 19:47:43.2 | 0:11.3 | 0555 |
| )41 | 98/02/24 | 217 | 398-9671 | 217 | 356-8512 | 20:20:31.4 | 0:17.7 |      |
| )41 | 98/02/24 | 217 | 398-9671 | 217 | 359-9093 | 20:36:32.8 | 2:09.4 |      |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 822-8296 | 22:28:36.6 | 0:39.4 | 0288 |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 822-8296 | 22:29:34.3 | 0:52.2 | 0288 |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 822-8296 | 22:30:38.8 | 0:52.7 | 0288 |
| 141 | 98/02/24 | 217 | 398-9671 | 800 | 375-4285 | 23:31:12.2 | 5:29.9 | 0222 |
| )41 | 98/02/25 | 217 | 398-9671 | 217 | 352-3182 | 02:19:28.0 | 3:04.2 |      |
| )41 | 98/02/25 | 217 | 398-9671 | 217 | 378-0920 | 12:57:28.1 | 0:08.0 |      |
| 141 | 98/02/25 | 217 | 398-9671 | 800 | 795-9878 | 13:39:45.6 | 1:06.9 | 0211 |

C000250

 Menu  Utilities  Compil●  Help
------------------------------------------------------------------------
BROWSE     J705308.REPORT.LIST                    Line 00000060 Col 001 080
Command ===>                                      Scroll ===> PAGE

|     | 98/02/25 | 217 | 398-9671 | 217 | 367-6189 | 14:26:36.2 | 0:33.3 |      |
|-----|----------|-----|----------|-----|----------|------------|--------|------|
| 4.  | 98/02/25 | 217 | 398-9671 | 217 | 239-5884 | 15:13:55.8 | 1:13.2 |      |
| 10  | 98/02/25 | 217 | 398-9671 | 217 | 384-4339 | 15:54:24.9 | 0:00.0 | 0288 |
| 10  | 98/02/25 | 217 | 398-9671 | 217 | 384-5485 | 15:55:04.0 | 0:00.0 | 0288 |
| 10  | 98/02/25 | 217 | 398-9671 | 217 | 367-1354 | 15:56:11.5 | 0:00.0 | 0288 |
| 41  | 98/02/25 | 217 | 398-9671 | 800 | 888-8000 | 16:01:22.7 | 1:37.7 | 0222 |
| 41  | 98/02/25 | 217 | 398-9671 | 800 | 888-8000 | 16:03:29.2 | 1:30.8 | 0222 |
| 41  | 98/02/25 | 217 | 398-9671 | 217 | 255-8860 | 17:01:48.8 | 0:15.6 |      |
| 41  | 98/02/25 | 217 | 398-9671 | 800 | 797-0079 | 19:31:13.8 | 0:00.0 | 0222 |
| 41  | 98/02/25 | 217 | 398-9671 | 800 | 797-0079 | 19:31:38.3 | 0:00.0 | 0222 |
| 41  | 98/02/25 | 217 | 398-9671 | 800 | 797-0079 | 19:32:00.9 | 0:00.0 | 0222 |
| 41  | 98/02/25 | 217 | 398-9671 | 217 | 893-1234 | 19:32:48.8 | 0:12.8 |      |
| 41  | 98/02/25 | 217 | 398-9671 | 217 | 359-8528 | 19:43:19.0 | 0:19.7 |      |
| 41  | 98/02/25 | 217 | 398-9671 | 217 | 621-2173 | 22:04:23.3 | 0:12.8 |      |

****************************** Bottom of Data ******************************

C000251

798-2383

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

INVESTIGATION OF:          )
                                    )  No: <u>98-MR-131</u>
                                    )
         <u>CPD</u>                        )

**FILED**
SIXTH JUDICIAL CIRCUIT

MAR 2 7 1998

Linda S. Frank
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS    H

## ORDER

This matter having been heard pursuant to a subpoena duces tecum, and the Court being fully advised in the premises, This Court hereby makes the following findings:

1. The party directed by subpoena to turn over the materials subject to the subpoena duces tecum herein has complied with the subpoena;

2. Said party has not filed a Motion to Quash, or objected to said subpoena, nor raised any issues of privilege or confidentiality.

3. The Court conducted an in camera review of the subpoena duces tecum, and materials returned pursuant to said subpoena, and has duly considered and made a finding of the relevancy and materiality, of said materials.

WHEREFORE, the Court hereby orders that the materials returned pursuant to the subpoena duces tecum herein may be made available to the Champaign County State's Attorney's Office.

DATE: ____3/27/98____               ENTER: _Thomas J. Jones_
                                                     JUDGE

ARE-10-95   798-2383

, — Subpoena

the name of the People of the State of Illinois.

# IN THE CIRCUIT COURT OF CHAMPAIGN COUNTY, ILLINOIS

INVESTIGATION
(CPD)

MAR 20 '98

No. 89-MR-131

## SUBPOENA DUCES TECUM

To: Ameritech Security Subpoena Group

ATTN: CLAUDE PAGE

225 West Randolph Street

Chicago, IL 60606

YOU ARE COMMANDED to appear to testify before the Honorable ___ Thomas J. Difanis ___, in Circuit Court Room __"H"__ on the third second floor of the Court House, in Urbana, Illinois, on __March 27__, 19_98_ at __1:30__ o'clock _P_.M.

YOU ARE COMMANDED ALSO to bring the following: _Please conduct a computer study for all calls made to or received at 217-398-9671 beginning February 23, 1998 through February 25, 1998._

in your possession or control.

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISHMENT FOR CONTEMPT OF THIS COURT.

WITNESS, __March 20__ 19 _98_.

(Seal of Court)

_Rita S. [signature]_
Clerk of Court

Name __JOHN C. PILAND/James E. Davis__
Attorney for _Champaign County_
Address _101 E. Main Street, Courthouse_
City _Urbana, IL 61801_
Telephone _217-384-3733_



798-2383

Menu  Utilities  Compilers  Help
--------------------------------------------------------------------------------
ROWSE     J705308.REPORT.LIST                    Line 00000000 Col 001 080
c—mand ===>                                             Scroll ===> PAGE
*************************** Top of Data ********************************

| LL | DATE<br>MEDIA | NPA | NUMBER<br>ORIGIORIGINAT | NPA<br>TERMIN | NUMBER<br>TERMIN | TIME<br>CONNECT | TIME<br>ELAPSED | CARR<br>IX |
|---|---|---|---|---|---|---|---|---|
| 6 | 98/02/23 | 217 | 344-1639 | 217 | 398-9671 | 20:46:21.8 | 17:16.9 | |
| 1 | 98/02/23 | 217 | 398-9612 | 217 | 398-9671 | 21:10:55.9 | 0:42.9 | |
| 6 | 98/02/23 | 217 | 328-4179 | 217 | 398-9671 | 22:21:29.1 | 1:01.6 | |
| 6 | 98/02/24 | 217 | 366-2994 | 217 | 398-9671 | 12:45:12.4 | 3:48.2 | |
| 6 | 98/02/24 | 217 | 359-5450 | 217 | 398-9671 | 19:29:52.5 | 0:47.2 | |
| 6 | 98/02/25 | 217 | 359-2852 | 217 | 398-9671 | 22:07:50.9 | 11:45.0 | |
| 8 | 98/02/25 | 217 | 359-2852 | 217 | 398-9671 | 22:08:29.5 | 11:06.9 | |

***************************** Bottom of Data ********************************



798-2383

Menu  Utilities  Compilers  Help
--------------------------------------------------------------------
ROWSE    J705308.REPORT.LIST                    Line 00000000 Col 001 080
 mand ===> _____        Scroll ===> PAGE
   ************************** Top of Data ******************************

| LL | DATE MEDIA | NPA ORIGI | NUMBER ORIGINAT | NPA TERMIN | NUMBER TERMIN | TIME CONNECT | TIME ELAPSED | CARR IX |
|----|-----------|-----------|-----------------|------------|---------------|--------------|--------------|---------|
| 2  | 98/02/23  | 217       | 398-9671        | 217        | 379-3807      | 06:23:38.2   | 0:00.0       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 800        | 672-1212      | 10:46:47.5   | 3:49.0       | 0333    |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 281-0202      | 15:31:46.4   | 0:22.6       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 800        | 888-8000      | 16:47:39.4   | 1:45.8       | 0222    |
| 1  | 98/02/23  | 217       | 398-9671        | 800        | 888-8000      | 16:50:25.6   | 2:56.7       | 0222    |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 384-7507      | 17:55:13.0   | 0:26.8       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 800        | 899-4722      | 18:10:03.3   | 5:54.3       | 0288    |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 356-5738      | 20:15:20.5   | 0:39.5       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 359-0817      | 20:24:46.7   | 0:33.7       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 366-2309      | 20:39:18.2   | 0:06.2       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 344-1639      | 20:42:58.5   | 3:15.7       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 800        | 225-5483      | 21:07:34.2   | 0:39.2       | 0222    |
| 1  | 98/02/23  | 217       | 398-9671        | 888        | 401-7562      | 22:19:13.1   | 0:19.9       | 0555    |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 359-0030      | 22:23:27.1   | 3:32.0       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 217        | 292-0723      | 22:27:38.6   | 0:14.0       |         |
| 1  | 98/02/23  | 217       | 398-9671        | 800        | 229-2206      | 23:18:47.6   | 0:00.0       | 0222    |
| 1  | 98/02/23  | 217       | 398-9671        | 800        | 229-2206      | 23:19:46.0   | 1:17.9       | 0222    |

C000255

Menu   Utilities   Compilers   Help



---------------------------------------------------------------------------
ROWSE     J705308.REPORT.LIST                    Line 00000020 Col 001 080
~ nand ===>                                        Scroll ===> PAGE

|   |          | 217 | 398-9671 | 800 | 229-2206 | 23:21:33.3 | 0:00.0  | 0222 |
|   | 98/02/23 | 217 | 398-9671 | 800 | 229-2206 | 23:22:34.1 | 0:00.0  | 0222 |
| L | 98/02/23 | 217 | 398-9671 | 800 | 229-2206 | 23:23:40.0 | 15:11.6 | 0222 |
| L | 98/02/24 | 217 | 398-9671 | 217 | 621-2173 | 10:42:12.8 | 0:22.9  |      |
| L | 98/02/24 | 217 | 398-9671 | 800 | 781-5398 | 12:38:36.7 | 0:05.8  | 0555 |
| L | 98/02/24 | 217 | 398-9671 | 800 | 781-5398 | 13:07:32.6 | 0:04.4  | 0555 |
| L | 98/02/24 | 217 | 398-9671 | 217 | 352-1030 | 13:57:19.3 | 1:22.2  |      |
| L | 98/02/24 | 217 | 398-9671 | 217 | 586-6414 | 13:59:01.0 | 1:00.1  |      |
| L | 98/02/24 | 217 | 398-9671 | 217 | 292-0398 | 14:10:06.3 | 0:16.9  |      |
| L | 98/02/24 | 217 | 398-9671 | 217 | 292-0424 | 14:10:41.9 | 0:12.1  |      |
| L | 98/02/24 | 217 | 398-9671 | 800 | 408-2938 | 16:29:58.1 | 0:09.7  | 0222 |
| L | 98/02/24 | 217 | 398-9671 | 217 | 373-7832 | 17:13:18.6 | 2:46.3  |      |
| L | 98/02/24 | 217 | 398-9671 | 217 | 355-8727 | 17:42:27.9 | 2:44.2  |      |
| L | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:06:46.3 | 0:37.4  | 0288 |
| 9 | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:07:17.2 | 0:11.5  | 0288 |
| L | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:07:37.0 | 0:34.2  | 0288 |
| 9 | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:08:07.0 | 0:08.2  | 0288 |
| L | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:08:31.4 | 0:22.3  | 0288 |
| 9 | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:08:49.4 | 0:09.4  | 0288 |
| L | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:09:15.5 | 0:05.9  | 0288 |

798-2383

Menu  Utilities  Compilers  Help
------------------------------------------------------------------------
ROWSE    J705308.REPORT.LIST                          Line 00000040 Col 001 080
  nand ===>                                           Scroll ===> PAGE

|   | 98/02/24 | 217 | 398-9671 | 800 | 265-5328 | 18:09:45.0 | 0:42.2 | 0222 |
|   | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:10:17.0 | 0:13.3 | 0222 |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 225-5288 | 18:10:39.5 | 0:32.5 | 0288 |
| 9 | 98/02/24 | 217 | 398-9671 | 217 | 344-1030 | 18:11:08.2 | 0:08.9 | 0288 |
| 2 | 98/02/24 | 217 | 398-9671 | 217 | 359-1804 | 18:48:28.7 | 0:00.0 |      |
| 1 | 98/02/24 | 217 | 398-9671 | 217 | 621-2101 | 19:24:23.9 | 0:21.2 |      |
| 1 | 98/02/24 | 217 | 398-9671 | 217 | 621-2101 | 19:25:58.3 | 0:25.2 |      |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 962-7986 | 19:43:57.1 | 0:13.4 | 0444 |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 962-7986 | 19:44:33.5 | 0:56.3 | 0444 |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 962-7986 | 19:46:00.9 | 1:09.7 | 0444 |
| 1 | 98/02/24 | 217 | 398-9671 | 888 | 231-4498 | 19:47:43.2 | 0:11.3 | 0555 |
| 1 | 98/02/24 | 217 | 398-9671 | 217 | 356-8512 | 20:20:31.4 | 0:17.7 |      |
| 1 | 98/02/24 | 217 | 398-9671 | 217 | 359-9093 | 20:36:32.8 | 2:09.4 |      |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 822-8296 | 22:28:36.6 | 0:39.4 | 0288 |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 822-8296 | 22:29:34.3 | 0:52.2 | 0288 |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 822-8296 | 22:30:38.8 | 0:52.7 | 0288 |
| 1 | 98/02/24 | 217 | 398-9671 | 800 | 375-4285 | 23:31:12.2 | 5:29.9 | 0222 |
| 1 | 98/02/25 | 217 | 398-9671 | 217 | 352-3182 | 02:19:28.0 | 3:04.2 |      |
| 1 | 98/02/25 | 217 | 398-9671 | 217 | 378-0920 | 12:57:28.1 | 0:08.0 |      |
| 1 | 98/02/25 | 217 | 398-9671 | 800 | 795-9878 | 13:39:45.6 | 1:06.9 | 0211 |

 798-2383

**Menu  Utilities  Compiler's  Help**

---

OWSE    J705308.REPORT.LIST                    Line 00000060 Col 001 080
  and ===>                                     Scroll ===> __PAGE__

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| 98/02/25 | 217 | 398-9671 | 217 | 367-6189 | 14:26:36.2 | 0:33.3 | |
| 98/02/25 | 217 | 398-9671 | 217 | 239-5884 | 15:13:55.8 | 1:13.2 | |
| 98/02/25 | 217 | 398-9671 | 217 | 384-4339 | 15:54:24.9 | 0:00.0 | 0288 |
| 98/02/25 | 217 | 398-9671 | 217 | 384-5485 | 15:55:04.0 | 0:00.0 | 0288 |
| 98/02/25 | 217 | 398-9671 | 217 | 367-1354 | 15:56:11.5 | 0:00.0 | 0288 |
| 98/02/25 | 217 | 398-9671 | 800 | 888-8000 | 16:01:22.7 | 1:37.7 | 0222 |
| 98/02/25 | 217 | 398-9671 | 800 | 888-8000 | 16:03:29.2 | 1:30.8 | 0222 |
| 98/02/25 | 217 | 398-9671 | 217 | 255-8860 | 17:01:48.8 | 0:15.6 | |
| 98/02/25 | 217 | 398-9671 | 800 | 797-0079 | 19:31:13.8 | 0:00.0 | 0222 |
| 98/02/25 | 217 | 398-9671 | 800 | 797-0079 | 19:31:38.3 | 0:00.0 | 0222 |
| 98/02/25 | 217 | 398-9671 | 800 | 797-0079 | 19:32:00.9 | 0:00.0 | 0222 |
| 98/02/25 | 217 | 398-9671 | 217 | 893-1234 | 19:32:48.8 | 0:12.8 | |
| 98/02/25 | 217 | 398-9671 | 217 | 359-8528 | 19:43:19.0 | 0:19.7 | |
| 98/02/25 | 217 | 398-9671 | 217 | 621-2173 | 22:04:23.3 | 0:12.8 | |

****************************** Bottom of Data ******************************

C000258

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

INVESTIGATION OF: )
)          No: 98-MR-131
)
CPD )

**FILED**
SIXTH JUDICIAL CIRCUIT

MAR 2 7 1998

*Linda S. Frisch*
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

H

## ORDER

This matter having been heard pursuant to a subpoena duces tecum, and the Court being fully advised in the premises, This Court hereby makes the following findings:

1. The party directed by subpoena to turn over the materials subject to the subpoena duces tecum herein has complied with the subpoena;

2. Said party has not filed a Motion to Quash, or objected to said subpoena, nor raised any issues of privilege or confidentiality.

3. The Court conducted an in camera review of the subpoena duces tecum, and materials returned pursuant to said subpoena, and has duly considered and made a finding of the relevancy and materiality, of said materials.

WHEREFORE, the Court hereby orders that the materials returned pursuant to the subpoena duces tecum herein may be made available to the Champaign County State's Attorney's Office.

DATE: 3/27/98

ENTER: *Thomas J. Jones*
JUDGE

C000259

1 09:43 FAX 217 384 3816          CHAMPAIGN CO. ST. ATTY.                    ☒002

the name of the People of the State of Illinois.

# IN THE CIRCUIT COURT OF CHAMPAIGN COUNTY, ILLINOIS

INVESTIGATION                    MAR 2 0 '98
   (CPD)                                        No. __89-MR-131__

## S U B P O E N A DUCES TECUM

To: __Ameritech Security Subpoena Group__

__ATTN: CLAUDE PAGE__

__225 West Randolph Street__

__Chicago, IL 60606__

YOU ARE COMMANDED to appear to testify before the Honorable ___Thomas J. Difanis___

_____, in Circuit Court Room __"H"__ on the third floor of the Court House, in Urbana.

Illinois, on ___March 27___, 19_98_ at ___1:30___ o'clock __P__.M.

YOU ARE COMMANDED ALSO to bring the following: __Please conduct a computer__
__study for all calls made to or received at 217-398-9671 beginning__
__February 23, 1998 through February 25, 1998.__

in your possession or control.

YOUR FAILURE TO APPEAR IN RESPONSE TO THIS SUBPOENA WILL SUBJECT YOU TO PUNISHMENT
FOR CONTEMPT OF THIS COURT.

                              WITNESS, ___March 20___ 19_98_.

   (Seal of Court)

                              _Rita Shrob_
                              Clerk of Court

Name __JOHN C. PILAND/James E. Davis__
Attorney for __Champaign County__
Address __101 E. Main Street, Courthouse__
City __Urbana, IL 61801__
Telephone __217-384-3733__

C000260

 798-23-83

 **ity of Champaign**                    **Police Department**

**82 E. University Avenue**
**Champaign, IL 61820**

## Fax Cover Sheet

DATE: 7/16/98

TO: Who Ever                    PHONE: _____

                               FAX: 359-5450

FROM: Detective D Shepard PHONE: 351-4569

                    FAX: **(217) 398-6711**

RE: Criminal Investigation

CC: _____

Number of pages including cover sheet: _____1_____

Message: Please respond with your name and
phone number. Your Fax #359 5450 appears
on phone records obtained in a criminal case.
I'm trying to identify all numbers on the records

This message is intended only for the use of the individual to whom, or entity to which, it is address and may
contain information that is privileged, confidential, and exempt from disclosure under applicable law. If the reader
of the message is not the intended recipient or the employee or agent responsible for delivering the message to
the intended recipient, you are hereby notified that any dissemination, distribution or copying of this
communication is prohibited. If you have received this communication in error, please notify us immediately by
telephone at (217) 351-4568. Thank you.

THE FOLLOWING DOCUMENT HAVE BEEN NONTRANSMITTED.
TRY TO RETRANSMIT.

*798-2383*

| | |
|---|---|
| DOCUMENT # | 3560163—182 |
| TIME SENT | 07. 16 10:23 |
| DESTINATION | 3595450 |
| DST. TEL# | 3595450 |
| PAGE(S) | 0PAGE(S) |
| RESULT | BUSY |

# City of Champaign                    Police Department

**82 E. University Avenue**
**Champaign, IL 61820**

## Fax Cover Sheet

DATE: *7/16/98*

TO: *who Ever*                        PHONE: _____

FAX: *359-5450*

FROM: *Detective D Shepard* PHONE: *351-4569*

FAX: **(217) 398-6711**

RE: *Criminal Investigation*

CC: _____

Number of pages including cover sheet: *1*

Message: *Please respond with your nam*800262...
*t... #359-5450 appears*

798.2383

THE FOLLOWING DOCUMENT HAVE BEEN NONTRANSMITTED.
TRY TO RETRANSMIT.

| DOCUMENT # | 3560163—192 |
|---|---|
| TIME SENT | 07. 16  15:10 |
| DESTINATION | 3595450 |
| DST. TEL# | 3595450 |
| PAGE (S) | 0PAGE (S) |
| RESULT | BUSY |

**City of Champaign**

**Police Department**

82 E. University Avenue
Champaign, IL 61820

## Fax Cover Sheet

DATE: 7/16/98

TO: Who Ever                PHONE:

FAX: 359-5450

FROM: Detective D Shepard  PHONE: 351-4569

FAX: **(217) 398-6711**

RE: Criminal Investigation

CC:

Number of pages including cover sheet: 1

Message: Please respond with your na C000263

798-2383

```
CMD                              MSG COMMAND COMPLETED(I210)
217 359 2852 905    AUG 01 98 *CSR  LIVE  P    1    3           CHMP RWN
CAROL STEINMAN                   ACCT DATE 03-31-95

 CIH 0
ZBU  CS, PST
ZCPI U

---LIST
LN   (DNL) STEINMAN, CAROL & O T
LA   3706 MEADOW LN, CHMP
AML  (A) STEINMAN, S
     /TN 217 359-0030

---BILL
BN1  CAROL STEINMAN
BA1  3706 MEADOW LN
PO   CHAMPAIGN IL 61821
SS   NONE
TAR  0100
ZCPI U, SYSTEM, 09-14-96
---S&E
RP    NOTATION                     TYPE PN  ACT  FU   BD   EBD
                                                     0898      +
```

C000264

798-2383

**CALL DETAIL BILL DATE 03-98    ACCOUNT (217) 359-2852 905    MCDI**

SCREEN 1    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|-|------|------|---------------|------|------|
| ACCOUNT (217) 359-2852 905 | | | DETAIL: | | | 2- 2 | 6:06P | 217-352-7855 | 15 | A |
| LINE (217) 359-2852 | | | MINS | | | 2- 2 | 6:51P | 217-352-7855 | 9 | A |
| 2- 1 | 1:28P | 217-352-1073 | 6 | A | | 2- 2 | 7:36P | 217-352-7855 | 23 | A |
| 2- 1 | 1:34P | 217-352-7855 | 9 | A | | 2- 3 | 4:05P | 217-351-2505 | 2 | A |
| 2- 1 | 2:52P | 217-398-3250 | 73 | A | | 2- 3 | 4:07P | 217-352-7855 | 1 | A |
| 2- 1 | 4:29P | 217-352-7855 | 1 | A | | 2- 3 | 4:21P | 217-352-7855 | 1 | A |
| 2- 1 | 5:22P | 217-398-3250 | 22 | A | | 2- 3 | 5:10P | 217-352-1073 | 11 | A |
| 2- 1 | 6:31P | 217-398-4960 | 1 | A | | 2- 3 | 6:08P | 217-352-7855 | 1 | A |
| 2- 1 | 7:54P | 217-352-7855 | 12 | A | | 2- 3 | 7:07P | 217-352-7855 | 12 | A |
| 2- 1 | 8:40P | 217-352-1073 | 29 | A | | 2- 3 | 7:31P | 217-352-7855 | 10 | A |
| 2- 1 | 9:09P | 217-352-3953 | 9 | A | | 2- 3 | 8:17P | 217-363-1401 | 2 | A |
| 2- 2 | 8:18A | 217-384-4118 | 1 | A | | 2- 3 | 8:32P | 217-352-1073 | 1 | A |
| 2- 2 | 8:20A | 217-367-0914 | 1 | A | | 2- 4 | 3:49P | 217-352-7855 | 1 | A |
| 2- 2 | 3:35P | 217-352-3953 | 1 | A | | 2- 4 | 4:01P | 217-352-7855 | 1 | A |
| 2- 2 | 3:37P | 217-352-7855 | 3 | A | | 2- 4 | 4:01P | 217-351-2505 | 1 | A |
| 2- 2 | 4:02P | 217-351-3838 | 11 | A | | 2- 4 | 4:43P | 217-352-7855 | 1 | A |
| 2- 2 | 5:39P | 217-352-7855 | 4 | A | | 2- 4 | 7:39P | 217-352-3953 | 1 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
SCROLL BACKWARD NOT ALLOWED

C000265

798-2383

CALL DETAIL BILL DATE 03-98     ACCOUNT (217) 359-2852 905     MCDI

SCREEN 2     OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|---|---|---|---|---|---|---|---|---|---|
| 2- 4 | 7:47P | 217-352-1073 | 1 | A | 2- 6 | 4:17P | 217-352-7855 | 3 | A |
| 2- 4 | 7:48P | 217-352-7855 | 3 | A | 2- 6 | 4:38P | 217-352-7855 | 1 | A |
| 2- 4 | 7:50P | 217-398-8114 | 3 | A | 2- 6 | 5:27P | 217-351-2505 | 1 | A |
| 2- 5 | 8:21A | 217-333-3231 | 2 | A | 2- 6 | 6:58P | 217-352-7855 | 15 | A |
| 2- 5 | 3:30P | 217-352-7855 | 6 | A | 2- 6 | 7:27P | 217-352-7855 | 4 | A |
| 2- 5 | 3:36P | 217-352-1073 | 17 | A | 2- 6 | 7:30P | 217-356-2124 | 1 | A |
| 2- 5 | 5:01P | 217-398-3250 | 30 | A | 2- 6 | 7:32P | 217-352-7855 | 9 | A |
| 2- 5 | 6:28P | 217-355-1016 | 1 | A | 2- 6 | 7:41P | 217-352-7855 | 6 | A |
| 2- 5 | 6:45P | 217-352-1073 | 1 | A | 2- 6 | 8:33P | 217-352-7855 | 18 | A |
| 2- 5 | 8:32P | 217-352-3953 | 25 | A | 2- 7 | 6:54A | 217-398-3250 | 47 | A |
| 2- 6 | 7:49A | 217-359-5623 | 2 | A | 2- 7 | 7:44A | 217-398-3250 | 2 | A |
| 2- 6 | 8:27A | 217-352-1100 | 2 | A | 2- 7 | 7:47A | 217-398-3250 | 2 | A |
| 2- 6 | 8:30A | 217-356-6454 | 2 | A | 2- 7 | 7:53A | 217-398-3250 | 23 | A |
| 2- 6 | 8:35A | 217-333-3231 | 25 | A | 2- 7 | 10:11A | 217-352-3953 | 1 | A |
| 2- 6 | 12:18P | 217-333-3231 | 3 | A | 2- 7 | 3:25P | 217-328-4107 | 4 | A |
| 2- 6 | 3:35P | 217-352-3953 | 5 | A | 2- 7 | 3:39P | 217-352-2308 | 1 | A |
| 2- 6 | 4:11P | 217-356-2124 | 7 | A | 2- 7 | 4:42P | 217-398-4960 | 2 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

798-2383

CALL DETAIL BILL DATE 03-98     ACCOUNT (217) 359-2852 905    MCDI

SCREEN 3    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2- 7 | 4:46P | 217-351-6722 | 1 | A | 2- 8 | 3:34P | 217-352-1073 | 1 | A |
| 2- 7 | 4:53P | 217-352-2308 | 5 | A | 2- 8 | 4:00P | 217-352-7855 | 7 | A |
| 2- 7 | 5:57P | 217-352-2308 | 6 | A | 2- 8 | 4:29P | 217-352-1073 | 1 | A |
| 2- 7 | 6:03P | 217-352-6308 | 6 | A | 2- 8 | 4:29P | 217-398-8114 | 1 | A |
| 2- 7 | 6:13P | 217-352-6308 | 2 | A | 2- 8 | 4:30P | 217-398-8114 | 4 | A |
| 2- 7 | 6:16P | 217-356-2124 | 1 | A | 2- 8 | 5:42P | 217-398-8114 | 5 | A |
| 2- 7 | 6:34P | 217-352-3953 | 2 | A | 2- 8 | 5:57P | 217-352-7855 | 2 | A |
| 2- 8 | 10:47A | 217-352-1073 | 1 | A | 2- 8 | 8:32P | 217-398-3250 | 34 | A |
| 2- 8 | 10:48A | 217-352-7855 | 4 | A | 2- 9 | 3:25P | 217-352-7855 | 1 | A |
| 2- 8 | 11:22A | 217-351-8068 | 1 | A | 2- 9 | 3:29P | 217-352-1073 | 17 | A |
| 2- 8 | 11:23A | 217-351-8068 | 1 | A | 2- 9 | 3:49P | 217-351-2505 | 1 | A |
| 2- 8 | 11:28A | 217-351-8068 | 1 | A | 2- 9 | 3:56P | 217-352-3953 | 2 | A |
| 2- 8 | 11:54A | 217-351-8068 | 1 | A | 2- 9 | 3:58P | 217-352-2308 | 1 | A |
| 2- 8 | 11:55A | 217-352-7855 | 2 | A | 2- 9 | 4:10P | 217-398-6442 | 3 | A |
| 2- 8 | 2:01P | 217-352-3953 | 12 | A | 2- 9 | 4:57P | 217-351-5266 | 3 | A |
| 2- 8 | 2:21P | 217-352-3953 | 25 | A | 2- 9 | 5:37P | 217-352-1073 | 17 | A |
| 2- 8 | 2:57P | 217-398-6442 | 30 | A | 2- 9 | 5:57P | 217-352-1073 | 3 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000267

798-2383

CALL DETAIL BILL DATE 03-98        ACCOUNT (217) 359-2852 905    MCDI
                                                          SCREEN 4    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2- 9 | 6:46P | 217-352-7855 | 1 | A | 2-11 | 10:46A | 217-366-1382 | 3 | A |
| 2- 9 | 7:00P | 217-352-7855 | 1 | A | 2-11 | 3:43P | 217-352-3953 | 2 | A |
| 2- 9 | 8:27P | 217-363-1401 | 14 | A | 2-11 | 3:45P | 217-352-7855 | 18 | A |
| 2-10 | 8:07A | 217-351-3956 | 1 | A | 2-11 | 5:59P | 217-352-7855 | 4 | A |
| 2-10 | 8:41A | 217-351-2590 | 13 | A | 2-12 | 9:48A | 217-643-7493 | 2 | A |
| 2-10 | 9:06A | 217-351-2590 | 2 | A | 2-16 | 8:37A | 217-359-4212 | 1 | A |
| 2-10 | 11:12A | 217-344-7827 | 5 | A | 2-16 | 2:19P | 217-333-3231 | 1 | A |
| 2-10 | 2:35P | 217-352-6588 | 1 | A | 2-16 | 2:21P | 217-351-3793 | 5 | A |
| 2-10 | 2:38P | 217-344-7827 | 11 | A | 2-16 | 2:26P | 217-351-4460 | 7 | A |
| 2-10 | 4:04P | 217-352-7855 | 1 | A | 2-16 | 2:36P | 217-398-2441 | 4 | A |
| 2-10 | 6:34P | 217-352-7855 | 2 | A | 2-16 | 3:10P | 217-333-3231 | 1 | A |
| 2-10 | 7:09P | 217-351-6001 | 4 | A | 2-16 | 3:29P | 217-352-7855 | 6 | A |
| 2-10 | 7:14P | 217-352-7855 | 1 | A | 2-16 | 3:35P | 217-352-3953 | 1 | A |
| 2-10 | 7:16P | 217-351-6001 | 6 | A | 2-16 | 4:59P | 217-352-7855 | 25 | A |
| 2-10 | 7:43P | 217-363-1401 | 7 | A | 2-16 | 5:23P | 217-344-7827 | 6 | A |
| 2-10 | 7:50P | 217-363-1401 | 14 | A | 2-16 | 5:35P | 217-352-7855 | 1 | A |
| 2-11 | 10:42A | 217-398-2441 | 2 | A | 2-16 | 5:37P | 217-352-1073 | 3 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000268

798-2383

**CALL DETAIL BILL DATE 03-98      ACCOUNT (217) 359-2852 905      MCDI**

SCREEN 5      OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-16 | 6:03P | 217-398-6800 | 1 | A | 2-18 | 5:46P | 217-352-1073 | 34 | A |
| 2-16 | 7:02P | 217-352-3953 | 1 | A | 2-18 | 6:38P | 217-352-1073 | 1 | A |
| 2-16 | 7:18P | 217-352-7855 | 61 | A | 2-18 | 7:05P | 217-367-7208 | 2 | A |
| 2-16 | 8:22P | 217-355-6270 | 2 | A | 2-18 | 7:07P | 217-328-5931 | 5 | A |
| 2-17 | 3:39P | 217-352-3953 | 9 | A | 2-18 | 7:26P | 217-363-1401 | 1 | A |
| 2-17 | 3:51P | 217-352-1073 | 6 | A | 2-18 | 8:27P | 217-352-1073 | 1 | A |
| 2-17 | 5:02P | 217-351-4400 | 1 | A | 2-18 | 8:27P | 217-352-1073 | 1 | A |
| 2-17 | 5:03P | 217-351-2440 | 3 | A | 2-18 | 8:28P | 217-352-7855 | 26 | A |
| 2-17 | 5:10P | 217-352-7855 | 9 | A | 2-18 | 8:54P | 217-352-7855 | 1 | A |
| 2-17 | 5:28P | 217-352-7855 | 14 | A | 2-18 | 8:55P | 217-398-8114 | 1 | A |
| 2-17 | 5:43P | 217-352-1073 | 1 | A | 2-18 | 8:56P | 217-352-7855 | 17 | A |
| 2-17 | 6:01P | 217-352-7855 | 2 | A | 2-19 | 3:40P | 217-352-7855 | 1 | A |
| 2-17 | 8:18P | 217-398-6442 | 54 | A | 2-19 | 4:35P | 217-352-1073 | 1 | A |
| 2-17 | 10:00P | 217-398-9131 | 37 | A | 2-19 | 5:07P | 217-352-7855 | 9 | A |
| 2-18 | 4:46P | 217-352-7855 | 11 | A | 2-19 | 5:16P | 217-352-1073 | 12 | A |
| 2-18 | 4:56P | 217-352-1073 | 1 | A | 2-19 | 7:35P | 217-363-1401 | 21 | A |
| 2-18 | 4:58P | 217-352-3953 | 3 | A | 2-19 | 9:09P | 217-363-1401 | 1 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000269

798-2383

CALL DETAIL BILL DATE 03-98          ACCOUNT (217) 359-2852 905      MCDI
                                                   SCREEN 6      OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-19 | 9:37P | 217-352-3953 | 2 | A | 2-20 | 8:46P | 217-352-1073 | 1 | A |
| 2-20 | 3:43P | 217-352-7855 | 1 | A | 2-21 | 8:24A | 217-355-2720 | 9 | A |
| 2-20 | 3:43P | 217-352-1073 | 1 | A | 2-21 | 9:30A | 217-356-2124 | 1 | A |
| 2-20 | 3:44P | 217-352-7855 | 1 | A | 2-21 | 10:20A | 217-352-7855 | 5 | A |
| 2-20 | 3:44P | 217-352-1073 | 1 | A | 2-21 | 10:48A | 217-356-2124 | 4 | A |
| 2-20 | 4:19P | 217-352-1073 | 1 | A | 2-21 | 11:00A | 217-352-3953 | 1 | A |
| 2-20 | 4:20P | 217-398-8114 | 3 | A | 2-21 | 12:05P | 217-352-1073 | 1 | A |
| 2-20 | 4:22P | 217-398-8114 | 6 | A | 2-21 | 12:58P | 217-359-4583 | 11 | A |
| 2-20 | 4:59P | 217-586-3874 | 3 | A | 2-21 | 3:35P | 217-352-3953 | 1 | A |
| 2-20 | 5:02P | 217-352-7855 | 10 | A | 2-22 | 7:54A | 217-351-5266 | 2 | A |
| 2-20 | 5:12P | 217-398-1138 | 1 | A | 2-22 | 11:12A | 217-344-4710 | 1 | A |
| 2-20 | 5:12P | 217-352-7855 | 1 | A | 2-22 | 11:13A | 217-469-8001 | 8 | A |
| 2-20 | 5:13P | 217-398-8114 | 1 | A | 2-22 | 11:33A | 217-352-3953 | 2 | A |
| 2-20 | 5:14P | 217-398-8114 | 3 | A | 2-22 | 1:27P | 217-363-1401 | 4 | A |
| 2-20 | 5:16P | 217-352-7855 | 6 | A | 2-22 | 1:57P | 217-356-5506 | 13 | A |
| 2-20 | 6:03P | 217-352-7855 | 27 | A | 2-22 | 4:02P | 217-352-7855 | 8 | A |
| 2-20 | 6:33P | 217-352-7855 | 122 | A | 2-22 | 7:41P | 217-356-2124 | 2 | A |

PF1 = ENTRY SCREEN  PF4 = BACKWARD  PF5 = FORWARD  PRESS CLEAR TO EXIT
                    MORE PAGES TO FOLLOW

798-2383

CALL DETAIL BILL DATE 03-98          ACCOUNT (217) 359-2852 905     MCDI

SCREEN 7    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|---|---|---|---|---|---|---|---|---|---|
| 2-22 | 7:44P | 217-356-2124 | 1 | A | 2-24 | 9:47P | 217-398-6442 | 3 | A |
| 2-22 | 10:02P | 217-398-6442 | 7 | A | 2-24 | 9:51P | 217-398-6442 | 1 | A |
| 2-23 | 3:29P | 217-351-2505 | 1 | A | 2-24 | 10:18P | 217-398-6442 | 17 | A |
| 2-23 | 4:08P | 217-356-2124 | 26 | A | 2-25 | 7:29A | 217-363-1401 | 3 | A |
| 2-23 | 4:34P | 217-351-2505 | 2 | A | 2-25 | 3:26P | 217-352-7855 | 1 | A |
| 2-23 | 4:39P | 217-239-2501 | 1 | A | 2-25 | 3:30P | 217-352-7855 | 1 | A |
| 2-23 | 4:47P | 217-352-7855 | 3 | A | 2-25 | 3:32P | 217-351-2505 | 2 | A |
| 2-23 | 5:19P | 217-359-2598 | 1 | A | 2-25 | 3:34P | 217-352-1073 | 7 | A |
| 2-23 | 6:24P | 217-398-6442 | 7 | A | 2-25 | 4:02P | 217-352-7855 | 1 | A |
| 2-23 | 8:16P | 217-398-6442 | 21 | A | 2-25 | 4:03P | 217-352-1073 | 6 | A |
| 2-23 | 9:28P | 217-398-6442 | 17 | A | 2-25 | 4:09P | 217-352-7855 | 1 | A |
| 2-23 | 9:45P | 217-398-6442 | 39 | A | 2-25 | 4:17P | 217-352-7855 | 2 | A |
| 2-23 | 10:27P | 217-398-6442 | 22 | A | 2-25 | 4:27P | 217-352-7855 | 1 | A |
| 2-24 | 5:05P | 217-352-1073 | 1 | A | 2-25 | 5:42P | 217-352-7855 | 8 | A |
| 2-24 | 5:06P | 217-352-7855 | 1 | A | 2-25 | 6:01P | 217-352-7855 | 1 | A |
| 2-24 | 5:37P | 217-352-7855 | 1 | A | 2-25 | 6:07P | 217-352-7855 | 1 | A |
| 2-24 | 8:50P | 217-398-6442 | 8 | A | 2-25 | 6:20P | 217-359-2598 | 1 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000271

798-2383

E-FILED

Tuesday, 08 May, 2007  05:16 PM
CLERK, U.S. District Court, ILCD

| DATE | TIME | CALLED NUMBER | MINS | BAND | | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|--|------|------|---------------|------|------|
| 2-25 | 6:45P | 217-352-7855 | 35 | A | | 2-26 | 3:35P | 217-351-2505 | 1 | A |
| 2-25 | 7:23P | 217-359-2598 | 1 | A | | 2-26 | 8:36P | 217-352-7855 | 9 | A |
| 2-25 | 7:26P | 217-356-2124 | 1 | A | | 2-26 | 9:12P | 217-352-7855 | 3 | A |
| 2-25 | 7:27P | 217-363-1401 | 1 | A | | 2-26 | 9:46P | 217-352-7855 | 57 | A |
| 2-25 | 7:28P | 217-351-6772 | 1 | A | | 2-26 | 10:42P | 217-363-1401 | 1 | A |
| 2-25 | 7:51P | 217-352-7855 | 3 | A | | 2-26 | 10:44P | 217-356-2124 | 2 | A |
| 2-25 | 8:30P | 217-352-7855 | 22 | A | | 2-27 | 8:08A | 217-363-1401 | 14 | A |
| 2-25 | 10:01P | 217-356-2124 | 3 | A | | 2-27 | 10:05A | 217-352-7855 | 1 | A |
| 2-25 | 10:07P | 217-398-9671 | 12 | A | | 2-27 | 10:27A | 217-352-7855 | 1 | A |
| 2-25 | 10:48P | 217-356-2124 | 19 | A | | 2-27 | 10:37A | 217-352-7855 | 1 | A |
| 2-25 | 11:07P | 217-356-2124 | 7 | A | | 2-27 | 11:13A | 217-352-7855 | 1 | A |
| 2-26 | 7:33A | 217-840-3953 | 2 | A | | 2-27 | 11:46A | 217-352-7855 | 1 | A |
| 2-26 | 8:35A | 217-643-7493 | 2 | A | | 2-27 | 1:06P | 217-352-3953 | 1 | A |
| 2-26 | 8:42A | 217-351-1638 | 2 | A | | 2-27 | 3:09P | 217-355-9217 | 2 | A |
| 2-26 | 11:38A | 217-643-7493 | 2 | A | | 2-27 | 3:47P | 217-351-2505 | 2 | A |
| 2-26 | 11:41A | 217-643-7493 | 2 | A | | 2-27 | 5:55P | 217-351-2505 | 3 | A |
| 2-26 | 3:33P | 217-398-6800 | 2 | A | | 2-27 | 5:58P | 217-359-3534 | 1 | A |

CALL DETAIL BILL DATE 03-98        ACCOUNT (217) 359-2853

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

798-2383

CALL DETAIL BILL DATE 03-98        ACCOUNT (217) 359-2852 905    MCDI

SCREEN 9    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-27 | 8:20P | 217-352-3953 | 2 | A | | | MINUTES | | 2014 |
| 2-28 | 12:56P | 217-363-1401 | 2 | A | | | | | |
| 2-28 | 2:18P | 217-363-1401 | 1 | A | ACCT TOTAL BAND-B | | MSGS | | 0 |
| 2-28 | 2:34P | 217-352-1073 | 2 | A | | | MINUTES | | 0 |
| 2-28 | 7:29P | 217-352-7855 | 25 | A | | | | | |
| 2-28 | 8:19P | 217-352-7855 | 1 | A | ACCT TOTAL BAND-C | | MSGS | | 0 |
| 2-28 | 10:23P | 217-363-1401 | 1 | A | | | MINUTES | | 0 |
| LINE TOTAL BAND-A | | MSGS | | 277 | | | | | |
| | | MINUTES | | 2014 | ACCOUNT TOTAL | | MSGS | | 277 |
| | | | | | | | MINUTES | | 2014 |
| LINE TOTAL BAND-B | | MSGS | | 0 | | | | | |
| | | MINUTES | | 0 | | | | | |
| LINE TOTAL BAND-C | | MSGS | | 0 | | | | | |
| | | MINUTES | | 0 | | | | | |
| ACCT TOTAL BAND-A | | MSGS | | 277 | | | | | |

PF1 = ENTRY SCREEN  PF4 = BACKWARD  PF5 = FORWARD  PRESS CLEAR TO EXIT

END OF CALL DETAIL

798-2383

```
CMD                              MSG COMMAND COMPLETED (I210)
217 359 4843 691        APR 01 98 *CSR  FINAL P    1    1           CHMP RWN
LORI K HANSEN                          ACCT DATE 08-04-97

_BU  CS, SLV
PPC

---LIST
LN   HANSEN, L
LA   512 S NEW, CHMP
DZIP 61820

     ACCOUNT DELETED

     TOTAL EXCLUDING TAXES                                              .00




RP      NOTATION                    TYPE PN  ACT  FU   BD   EBD
                                                                        P
```

C000274

798-2383

CALL DETAIL BILL DATE 03-98    ACCOUNT (217) 359-4843 691    MCDI

SCREEN 1    OF 3

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| ACCOUNT (217) 359-4843 691 | | | DETAIL: | | 2- 8 | 2:14P | 217-355-6410 | 1 | A |
| LINE (217) 359-4843 | | | MINS | | 2- 8 | 2:42P | 217-352-5945 | 1 | A |
| 2- 1 | 12:23P | 217-332-4842 | 6 | A | 2- 8 | 4:02P | 217-332-4842 | 1 | A |
| 2- 1 | 2:49P | 217-328-2375 | 1 | A | 2- 8 | 6:36P | 217-332-4842 | 1 | A |
| 2- 1 | 5:42P | 217-239-4535 | 14 | A | 2- 9 | 4:38P | 217-344-3519 | 6 | A |
| 2- 2 | 3:12P | 217-333-6839 | 2 | A | 2- 9 | 6:28P | 217-344-3519 | 3 | A |
| 2- 3 | 9:14A | 217-333-0289 | 1 | A | 2-10 | 10:00P | 217-328-4019 | 1 | A |
| 2- 5 | 7:16P | 217-332-4842 | 2 | A | 2-10 | 10:19P | 217-398-8662 | 1 | A |
| 2- 6 | 10:34A | 217-244-0713 | 1 | A | 2-10 | 10:21P | 217-356-0421 | 1 | A |
| 2- 6 | 10:49A | 217-359-5915 | 2 | A | 2-10 | 10:39P | 217-344-3519 | 7 | A |
| 2- 6 | 10:50A | 217-333-6839 | 14 | A | 2-12 | 1:29A | 217-355-6410 | 1 | A |
| 2- 6 | 11:07A | 217-337-2186 | 6 | A | 2-12 | 1:33A | 217-356-0421 | 51 | A |
| 2- 6 | 4:48P | 217-332-4842 | 1 | A | 2-12 | 2:25A | 217-351-7476 | 1 | A |
| 2- 7 | 5:02A | 217-356-0421 | 6 | A | 2-12 | 2:26A | 217-355-6410 | 2 | A |
| 2- 7 | 5:07A | 217-356-0421 | 1 | A | 2-12 | 6:38P | 217-344-3519 | 2 | A |
| 2- 7 | 2:46P | 217-332-4842 | 2 | A | 2-13 | 1:38A | 217-355-6410 | 1 | A |
| 2- 7 | 11:34P | 217-398-4846 | 2 | A | 2-13 | 11:18A | 217-344-3519 | 1 | A |

PF1 = ENTRY SCREEN   PP4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

798-2383

**CALL DETAIL BILL DATE 03-98      ACCOUNT (217) 359-4843 691      MCDI**

SCREEN 2      OF 3

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-13 | 11:19A | 217-337-2186 | 1 | A | 2-14 | 9:38P | 217-359-5915 | 1 | A |
| 2-13 | 11:20A | 217-332-4842 | 1 | A | 2-15 | 1:44A | 217-359-5915 | 1 | A |
| 2-13 | 11:30A | 217-239-5460 | 3 | A | 2-15 | 10:25P | 217-384-8111 | 1 | A |
| 2-13 | 11:33A | 217-328-4019 | 1 | A | 2-15 | 10:59P | 217-359-5915 | 3 | A |
| 2-13 | 11:34A | 217-333-6839 | 1 | A | 2-16 | 8:00P | 217-344-3519 | 5 | A |
| 2-13 | 11:35A | 217-355-6410 | 1 | A | 2-17 | 3:17P | 217-333-6839 | 1 | A |
| 2-13 | 11:41A | 217-356-4530 | 1 | A | 2-17 | 3:18P | 217-355-6410 | 2 | A |
| 2-13 | 12:00P | 217-333-6839 | 3 | A | 2-17 | 3:23P | 217-337-2186 | 2 | A |
| 2-13 | 12:03P | 217-332-4842 | 1 | A | 2-17 | 3:26P | 217-333-3530 | 5 | A |
| 2-13 | 12:04P | 217-328-4019 | 3 | A | 2-17 | 5:02P | 217-332-4842 | 2 | A |
| 2-13 | 3:45P | 217-355-9568 | 1 | A | 2-17 | 5:29P | 217-355-6410 | 1 | A |
| 2-13 | 3:48P | 217-355-6410 | 2 | A | 2-17 | 5:33P | 217-398-8662 | 2 | A |
| 2-13 | 3:50P | 217-333-6839 | 2 | A | 2-17 | 9:32P | 217-333-6839 | 2 | A |
| 2-13 | 8:27P | 217-344-3519 | 3 | A | 2-18 | 5:16P | 217-351-7476 | 10 | A |
| 2-14 | 5:33P | 217-328-0382 | 1 | A | 2-18 | 8:33P | 217-344-3519 | 1 | A |
| 2-14 | 5:36P | 217-351-7476 | 4 | A | 2-19 | 11:16A | 217-398-5831 | 2 | A |
| 2-14 | 8:47P | 217-332-4842 | 5 | A | 2-19 | 7:25P | 217-337-0340 | 3 | A |

**PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT**

**MORE PAGES TO FOLLOW**

C000276

798-2383

CALL DETAIL BILL DATE 03-98          ACCOUNT (217) 359-4843 691     MCDI

SCREEN 3      OF 3

| DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|
| 2-19 | 7:27P | 217-344-3519 | 2 | A |
| 2-21 | 12:57P | 217-355-6410 | 34 | A |
| 2-21 | 1:33P | 217-359-5915 | 6 | A |
| 2-21 | 5:12P | 217-688-2589 | 10 | A |
| 2-21 | 10:07P | 217-384-8111 | 1 | A |
| 2-22 | 4:44P | 217-328-2375 | 1 | A |
| 2-23 | 3:42P | 217-344-3519 | 6 | A |
| 2-23 | 4:53P | 217-344-3519 | 17 | A |
| 2-24 | 10:00P | 217-351-7476 | 1 | A |
| 2-24 | 10:01P | 217-398-5858 | 3 | A |

| DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|
| | | MINUTES | | 0 |

ACCT TOTAL BAND-A     MSGS          76
                      MINUTES       302

ACCT TOTAL BAND-B     MSGS          0
                      MINUTES       0

ACCT TOTAL BAND-C     MSGS          0
                      MINUTES       0

ACCOUNT TOTAL         MSGS          76
                      MINUTES       302

LINE TOTAL BAND-A     MSGS          76
                      MINUTES       302

LINE TOTAL BAND-B     MSGS          0
                      MINUTES       0

LINE TOTAL BAND-C     MSGS          0

PP1 = ENTRY SCREEN    PF4 = BACKWARD    PF5 = FORWARD    PRESS CLEAR TO EXIT
                              END OF CALL DETAIL

C000277



Photo#:   1008204
FPM#:    50604
Last:     BROWN
First:    DONALD
Middle:   LAJAUN
Arrested: 11/26/1997
DOB:     08/08/1979
Sex:     MALE
Race:    BLACK
Height:   5'10"
Weight:   150
Charge:  DELIVERY OR POSS.







C000278



# CHAMPAIGN COUNTY

# SHERIFF'S OFFICE

## MUGSHOT PROFILE



| | |
|---|---|
| FPM#: | 51217 |
| LAST NAME: | HOLTZCLAW |
| FIRST NAME: | DONRICO |
| MIDDLE NAME: | SANTEZ |
| ALIAS #1 LAST: | HOLTZCLAW |
| FIRST: | RICO |
| MIDDLE: | S |
| ALIAS #2 LAST: | |
| FIRST: | |
| MIDDLE: | |
| ALIAS #3 LAST: | |
| FIRST: | |
| MIDDLE: | |
| PHOTO DATE & TIME: | 01 / 05 / 98  10:30 |
| DATE OF BIRTH: | 05 / 24 / 80 |
| AGE AT ARREST: | 17 |
| PLACE OF BIRTH: | URBANA        IL |
| SOCAIL SECURITY #: | 336701608 |
| DRIVERS STATE & NO.: | |

### PHYSICAL DESCRIPTION

| | |
|---|---|
| SEX: | MALE |
| RACE: | BLACK |
| HEIGHT: | 5'09" |
| WEIGHT: | 160 |
| EYE COLOR: | BLACK |
| HAIR COLOR: | BLACK |
| HAIR LENGTH: | SHORT |
| HAIR TYPE: | CURLY |
| WIG: | NO |
| FACIAL HAIR: | NONE |
| EYE CHAR.: | NORMAL |
| GLASSES: | NO |
| COMPLEXION: | CLEAR |
| BUILD: | MEDIUM |
| TEETH: | NONE MISSING |
| HAT: | NO |
| EAR RING: | NONE |

### CHARGES

**#1:** 05 BURGLARY
BURGLARY
720 ILCS 5/19-1

**#2:**

**#3:**

**#4:**

### SCARS/MARKS/TATTOOS

#1: OTHER          UPPER          HEAD          GAP BETWEEN FRONT TEETH
#2:
#3:
#4:

1009314   Printed 12/27/97

C000279

# CHAMPAIGN COUNTY

# SHERIFF'S OFFICE

## MUGSHOT PROFILE



| | |
|---|---|
| FPM#: | 47029 |
| LAST NAME: | MOORE |
| FIRST NAME: | DEDRIC |
| MIDDLE NAME: | TREMAINE |
| ALIAS #1 LAST: | |
| FIRST: | |
| MIDDLE: | |
| ALIAS #2 LAST: | |
| FIRST: | |
| MIDDLE: | |
| ALIAS #3 LAST: | |
| FIRST: | |
| MIDDLE: | |
| PHOTO DATE & TIME: | 02 / 12 / 97  23:33 |
| DATE OF BIRTH: | 08 / 13 / 78 |
| AGE AT ARREST: | |
| PLACE OF BIRTH: | URBANA          IL |
| SOCAIL SECURITY #: | 358703380 |
| DRIVERS STATE & NO.: | IL    M60017878230 |

### PHYSICAL DESCRIPTION

| | |
|---|---|
| SEX: | MALE |
| RACE: | BLACK |
| HEIGHT: | 6'04" |
| WEIGHT: | 220 |
| EYE COLOR: | BROWN |
| HAIR COLOR: | |
| HAIR LENGTH: | EAR LENGTH |
| HAIR TYPE: | CURLY |
| WIG: | NO |
| FACIAL HAIR: | NONE |
| EYE CHAR.: | NORMAL |
| GLASSES: | NO |
| COMPLEXION: | CLEAR |
| BUILD: | ATHLETIC |
| TEETH: | STRAIGHT |
| HAT: | NO |
| EAR RING: | LT EAR |

**CHARGES**

#1:

#2:

#3:

#4:

### SCARS/MARKS/TATTOOS

| | | | | |
|---|---|---|---|---|
| #1: | MISSING | UPPER | FACE | MISSINT TOP TOOTH |
| #2: | OTHER | UPPER | FACE | HAS A SLIGHT MUSTACHE |
| #3: | PIERCED | UPPER | LEFT | EAR | PIERCEED EAR/ONE HOLE |
| #4: | SCAR | UPPER | FACE | ALL OVER |

1C00003B  Printed 12/27/97

C000280

IDOL  Inmate Query Results

# Illinois Department of Corrections

## INMATE: B53724 - MOORE, DEDRIC

Parent Institution: VANDALIA
Location:            DISCHARGE
Inmate Status:       Discharge
Discharge reason:    Board Order
Date of Birth:       1969-07-04
Race:                BLK
Sex:                 M
Height:              5'10"
Weight:              173
Hair:                BLK
Eyes:                BRO

### Admission/Release/Discharge Information

Original Admit Date:        1994-02-25
Current Admit Date:         1994-02-25
Tentative Release Date:     1994-04-26
Actual Release Date:
Tentative Discharge Date:   1995-04-26
Actual Discharge Date:      1994-10-26

### Sentencing Information for B53724:

| Mitt # | ClsCnt | Offense | Custody Date | Sentence | County |
|--------|--------|---------|--------------|----------|--------|
| 93CR26986 4 | 1 | CONT SUBS ACT-UNAUTH POSS | 1993-10-15 | 2 yrs 0 mths 0 days | COOK |

Thursd  February 26, 1998

All complaints regarding the accuracy of information contained in these documents should be submitted, in writing, to the Illinois Department of Corrections, P.O. Box 19277, Springfield, IL 62794-9722.

F... 1 of 2

~ '9 AM

C000281

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
2040 Hill Meadows Drive
Springfield, Illinois 62702-4696
(217) 782-4975 (Voice) * 1-(800) 255-3323 (TDD)

Jim Edgar
*Governor*

September 10, 1998

Gene P. Marlin
*Acting Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL  61820

Laboratory Case #S98-001498
BCSS Case #MM98-1688-9-1
Agency Case #798-002383

OFFENSES:  Arson/Attempted Murder
SUSPECT:  Dedric T. Moore
VICTIM:   Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 4, 1998:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 1A | Cigarette butt:  saliva indicated |
| 4B | Material from shorts:  urine indicated |
| 12B | Piece of black stocking:  examination for saliva inconclusive |
| 26A1 | Blood standard:  Lori Hansen |
| 31A | Swabbing of piece of glass:  blood stain |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 5, 1998:

| EXHIBIT | DESCRIPTION |
|---------|-------------|
| 44A1 | Blood standard:  Dedric Moore |

**RESULTS**
DNA from Exhibits 12B, 31A, 26A1, and 44A1 was amplified using the Polymerase Chain Reaction
(PCR) and profiled at the following loci: D3S1358, vWA, FGA, D8S1179, D21S11, D18S51, D5S818,
D13S317, D7S820 and Amelogenin.

A mixture of DNA profiles was identified in Exhibit 12B which matches the combined DNA profiles of
Dedric Moore, Lori Hansen, and at least one other individual. These combined profiles would be expected
to occur in approximately 1 in 2700 Blacks or 1 in 5000 Caucasians.

A DNA profile was identified in Exhibit 31A which matches the DNA profile of Lori Hansen and does
not match the DNA profile of Dedric Moore.

Due to an insufficient amount of human DNA for PCR analysis, Exhibit 4B was not profiled.

Exhibit 1A was not profiled due to no human DNA detected.

Champaign Police Department
Laboratory Case #S98-001498 -2- September 10, 1998

## CONCLUSIONS
The mixture of DNA profiles identified in Exhibit 12B (piece of black stocking) is consistent with having originated from Dedric Moore, Lori Hansen and at least one other individual.

The blood identified in Exhibit 31A (swabbing of piece of glass) is consistent with having originated from Lori Hansen.

## REQUESTS
For results of previous biological examinations, refer to the laboratory report by Springfield Forensic Scientist Dana Pitchford dated April 1, 1998.

If you have any questions regarding this report, please feel free to contact me.

## EVIDENCE DISPOSITION
DNA evidence will be maintained in the laboratory evidence vault until such time as the case has been adjudicated or the evidence is required by the agency.

Respectfully submitted,

Kevin L. Zeeb
Forensic Scientist

cc: Crime Scene Investigator Michael L. Kyrouac

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98  0259 HR | 11/16/98  1645 HR | 798-02383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| ATTEMPTED MURDER | 512 S. NEW |

I obtained a copy of the Arrow Ambulance Run ticket for the date of this incident, from Arrow Ambulance. I have attached it to this report. I am forwarding it to the State's Attorney's Office to be placed with the case.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 7197 | 11/16/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| DET. D. SHEPARD | | | |

C000284

FROM : ARROW EMS                    PHONE NO. :                    Nov. 16 1998 04:43PM P2

141-2585

| | AGENCY | ARROW | | | | |

25-98

| | | |
| 0 3 0 4 | | |
| 0 3 1 8 | | |
| 0 3 2 0 | | |
| 0 3 4 6 | | |

**NATURE OF CALL**
MEDICAL ☐  TRAUMA ☒  ALS ☒ WET ☐  BLS ☐ IL6 ☐  REFUSAL ☐

**DEST. DETERMINED BY**
PATIENT REQUEST ☒  CONTRACT ☐  S.O.P. ☐  MEDICAL AUTHORITY ☐  OTHER

**COMMUNICATIONS**
MED CHANNEL ☐  MEMO ☐  TELEPHONE ☐  PHONE PATCH ☐  OTHER

**ASSISTANCE AT SCENE**
POLICE DEPT. ☒ SPD  CORONER ☐  FIRE DEPT. ☒ SFD  OTHER ☐  Tx BEFORE ARRIVAL ☐

**POSITION FOUND**
STANDING ☐  ENTRAPPED ☐  LYING ☒  SITTING ☐  SIDE L ☐ R ☐

**ROAD CONDITION**
WET/FOG ☐  DRY ☒  HEAVY TRAFFIC ☐  LIGHT TRAFFIC ☒  SNOW/ICE ☐

ACCEPT TIME

PATIENT   Bryan Lori Hansen          AGE 28  SEX F  DOB 4-10-69  PHONE 328-1301

ADDRESS  5112 Smith 513 S New Champaign IL 61820    SS# 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

EMPLOYED BY  Papa Cels                MEDICARE # NO
IPA#/INS #  Self Pay                  MD DIAGNOSIS  R/o smoke inhalation
FMD  on call         CLINIC #         PHONE  S/A
RESPONSIBLE PERSON  Self              EMPLOYED BY  S/A
ADDRESS  S/A

TRANSPORTED FROM  513 S New Champaign IL    PATIENT WEIGHT 120   CURRENT MEDS
TRANSPORTED TO  CMS                  MEDICAL HISTORY  None      UNKNOWN ☐  NONE ☒
CHIEF COMPLAINT  Smoke + Burn        ALLERGIES  UNKNOWN ☐  NONE ☒

**VITAL SIGNS**
TIME 0320  BP 110  R 18  PULS 9

TIME 0320
**LOC/MENTAL STATUS**
ORIENTED ☒  DISORIENTED (4)  INAPPROPRIATE WORDS (3)  INCOMPREHENSIBLE SOUNDS (2)  NO VERBAL RESPONSE (1)  COMBATIVE ☐

**LUNG SOUNDS  R  L**
CLEAR ☒ ☒  WHEEZES ☐ ☐  RALES ☐ ☐  ABSENT ☐ ☐  AFTER INTUBATION ☐ ☐

**RESPIRATIONS**
NORMAL ☒  LABORED ☐  SHALLOW ☐  ADA ☐  NONE ☐

**MOTOR RESPONSE**
OBEYS COMMANDS ☒  LOCALIZED PAIN (5)  FLEXION PAIN (3)  EXTENSION PAIN (2)  NONE (1)

SUBQ EMPHYSEMA  Y N ☐ ☐
JVD  ☐ ☐
TD  ☐ ☐
CAP REFILL > 3"  ☐ ☐

**EYE OPENING**
SPONTANEOUS (4)  TO VOICE (3)  TO PAIN (2)  NONE (1)

**PUPILS   R  L**
PERL ☒  SLUGGISH ☐ ☐  DILATED ☐ ☐  PINPOINT ☐ ☐  NON REACTIVE ☐ ☐

**SKIN**
ASHEN ☐  COOL ☐  CYANOTIC ☐  DRY ☒  FLUSHED ☐  MOIST ☐  MOTTLED ☐  PALE ☐  PINK ☐  WARM ☒

**ABDOMEN**
DISTENDED ☐  RIGID ☐  SOFT/NON-TENDER ☐  TENDER ☐

GCS 15   TS 12

**MEDICATIONS**
| TIME | DRUG | DOSE |
| 0325 | O2 | |

| | 18 AIRWAY | MONITOR | | | |

10.7 AMBU BAG P/A
32 INTUBATION ON  By
17 OXYGEN  4L NC
50 SUCTION
190 CRICOTHYROTOMY By

TRANSFER
BASIC BLS/ALS/ILS
45 CODE 000
MILEAGE
42 RESPONSE TO RES
STANDBY
26 BASKET
24 PRO SPLINT
CERVICAL COLLAR
CID
38 HARE TRACTION
25 PILLOW SPLINT
16 SPINEBOARD
37 KEE DEVICE
27 RESTRAINTS
178 CHEST DECOMPRESSION By
129 INTRAOSSEOUS By
181 PERICARDIOCENTESIS By

34 CPR
☒ MONITOR  By
TELEMETRY  By
☒ IV FLUID  By
DRUGS  By

29 ACE BANDAGE
23 BURN SHEET
21 HOT/COLD PACK
☒ DRESSING
22 IRRIG. SOL.
40 TRAUMA DRSG

19 OB DELIVERY
20 SPLINT
31 MAST SUIT

EXTRICATION W/O TOOLS
EXTRICATION W/ TOOLS
TOTAL EXTRICATION TIME

41 BODY BAG
30 REMOVAL

ADVANCED DIRECTIVE
☐ YES  ☒ NO

**MONITOR**
| TIME | RHYTHM |
| 0330 | SINUS TACH |
| 0330 | SINUS TACH |

**IV SOLUTIONS**
| TIME | SITE | GAUGE | SOLUTION | AMT. IN | SUCC | UNSI |
| 0328 | (L) ARM | 18 | NSS | Lock | | |

NOTES (S) Called to the scene for a 28 year old female pt who was a victim of battery + other criminal activity

(E) pt found c/o 3 pt was brought to us by CPD pt had some burns to fingers + (L) knee pt had abrasions on wrists + ankles pt was struck with fists No LOC pt was soaked in gasoline like substance pt had some smoke around face No burns to face or head No other complaints assess + vitals as above

(R) Took vitals + assessed O2 4L IV NSS Lock 18g cardiac monitor pulse O2 99% removed all clothes + placed pt in blankets transported

(E) pt transported with no change no incident no orders pt refus to CMS as above ride ☐

**BLOOD LOSS**
NONE ☐  MINOR ☒  MODERATE ☐  SEVERE ☐

**BODY FLUID CONTACT**
YES ☐  NO ☒

**LOAD-N-GO**
YES ☐  NO ☒

**TRAUMA CRITERIA**

**BLOOD SUGAR**

**APGAR SCORE**
1 min.
5 min.

**REFUSAL FORM GIVEN**
☐ YES  ☒ NO
REFUSAL FORM #

1 ABRASION
2 AVULSION
3 BURN
4 CONTUSION
5 DECREASED PULSE
6 DECREASED SENSATION
7 DISLOCATION
8 EDEMA
9 FRACTURE
10 IV INSERTION SITE
11 LACERATION
12 PAIN/TENDERNESS
13 PARALYSIS
14 PUNCTURE/PENETRATION
15 SPRAIN/STRAIN
16 WEAKNESS
17 HEMMORAGE
18 PENETRATING
19 NAUSEA/VOMITING
20
21

EMT  Dale ___ p-36
EMT ATTENDANT

EMT DRIVER  Jamie M. Rayburn  I25
EMT

RN
MICN
MD  C000285



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98  0300 | 798-2383 | |
| CLASSIFICATION | | LOCATION | |
| Attempted Murder | | 512 S. Elm St. | |

Officers were dispatched to a possible burglary with smoke coming from the apartment at 510 S. New St.

Officer Martin and I were the first officers on scene, and noticed that there were flames visible in the front window of 512 S. New St. There were several persons in the yard in front of 512 S. New St., and we initiated contact with these persons.

A female, later learned to be the victim, Lori, approached me and advised that she was unaware of whether 512 1/2 (attached to 512 S. New St. as a duplex) S. New St. was occupied.

I advised METCAD that we needed CFD for an involved fire, and then I attempted to contact anyone inside of 512 1/2, with no answer to my knocking.

While waiting for CFD's arrival, I asked Lori what part of her apartment was burning, and how it started. Lori exclaimed that "everything that he poured gas on and lit is on fire".

I asked Lori who had done this and she said that the guy who had beaten her had set fire to her apartment.

I began conducting a preliminary interview with Lori. I asked her very basic questions regarding this incident and Lori provided me with the following:

An unknown B/M forced his way into her home and asked for "Chad and Eric". Lori told him that she didn't know who he was talking about. The suspect "beat the shit out of" her, tied her up, "pissed" on her head, stole the keys to her truck (as well as an item with her mother's name and address and a house key to her mother's home). The suspect then set fire to her apartment, while she was inside, tied up.

Lori provided the following description of the suspect:

B/M wearing a large, red jacket with a hood, and blue jeans.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | C 0 0 0 2 8 b |

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98  0300 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempted Murder | 512 S. Elm St. |

Lori advised that her vehicle was stolen by the suspect and provided the following description of her vehicle: 1994, grey, Toyota pick-up truck with IL (B-truck) plate: 1459JD, and two bumper stickers: "Hum" printed on one, and a picture of several mice on the other.

I provided this information to METCAD, and other units. I then notified Lt. Gamble that an on-call detective would need to be called out. Det. Don Shepard responded.

CFD arrived and took control of the scene. The flames were coming through the west-facing living room window as CFD arrived.

Arrow ambulance arrived, and Lori was taken to the ambulance, where she was evaluated for injury. Arrow Ambulance crew took Lori's clothing from her, as it was saturated with an unidentified accelerant. Arrow ambulance crew turned Lori's clothing over to Sgt. Summers; Sgt. Summers turned the single bag containing Lori's clothing over to me; I turned the bag of clothing over to Officer Bunyard.

Officer Shipley then met with Lori, in the ambulance while still on the scene. He initiated an interview with Lori, and rode in the ambulance to Covenant E.R. with her.

I next conferred with other officers on the scene, learning that Officers Karbach and Staples had conducted canvass interviews with the tenants of the next building to the south, and had spoken to the residents of 512 1/2 S New St.

As CFD was clearing their gear and personnel from the scene, Officer Karbach and I hung crime scene tape around the perimeter of the scene.

I advised Officers to wait until Det. Don Shepard was on scene, along with Eddie Bain (CFD), before any officers entered the scene.

Officer Caudill arrived to collect evidence and photograph the scene.

Det. Shepard arrived, and I briefed him.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. 761 | DATE 02/25/98 |
|---|---|---|---|
| DATA ENTRY BY T. Atteberry | APPROVED (SUPERVISOR) | BADGE/ID NO. 904 | DATE C 0 0 0 2 8 7 |



3 of 4

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98  0300 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempted Murder | 512 S. Elm St. |

I next spoke with the residents of 510 S. Elm, who Lori had contacted, after she had escaped from her home, and asked to call 9-1-1. The residents of 510 S. Elm are Bob, David, and Beverly.

Bob told me that he was asleep when Lori came over to their back door, knocking and screaming. Bob said that Lori was yelling to call 9-1-1, saying call the police and fire department. Bob did call 9-1-1 for Lori.

Bob then went to Lori's home and assisted her in her efforts to rescue her two cats. Bob said that they heard the cats in the bedroom, and Bob threw a log through the bedroom window. Bob said that he also propped the back, screen door open with a planter from Lori's back porch.

Bob said that after he threw the log through Lori's window, Lori put her head in the window frame, but did not try to climb through the window.

There was blood visible in the exterior ledge of this window, where Lori apparently cut herself while looking through the broken window.

David said that he was asleep on the sofa when Lori came over and awakened him. David said that he answered the back door when Lori came over, and he hollered to Bob to call 9-1-1, which he did. David said that Lori was pulling tape "off of her head" as he answered the door.

I asked David where the tape was, that she had pulled from her head. David showed me where Lori was when she pulled the tape off, and then he pointed to a piece of masking tape and identified that as the tape that Lori had pulled off.

The tape was in the grass approximately two feet from the back of David and Bob's back porch. I notified Officer Caudill of the tape, and he photographed it and collected it.

David advised me that after Lori had awakened them, and requested that they call 9-1-1, she had then returned to her home and entered through her back door, attempting to save her cats. David said that she quickly came back out, coughing.

Beverly could not provide any additional information about this incident.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISORY) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | C 0 0 0 2 8 8 |



4/4

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98  0300 | 798-2383 | |
| CLASSIFICATION | | LOCATION | |
| Attempted Murder | | 512 S. Elm St. | |

All mentioned a previous neighbor named Charles, who had caused a lot of
problems in the area a year or so ago.  All three also mentioned that Lilly, who
lives at 512 1/2 S. New St.,  has a grandson, name unknown, who has been the
source of increased foot traffic and order maintenance problems in the area.
They all believed that Lilly's grandson stayed with her from time to time, but did
not actually live with her.

David also mentioned that Lilly had told him, on this date, that she had just
returned from a trip to Texas and Mississippi, visiting relatives.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | |

00289

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Springfield Forensic Science Laboratory
2040 Hill Meadows Drive
Springfield, Illinois 62702-4696
(217) 782-4975 (Voice) • 1-(800) 255-3323 (TDD)

**Jim Edgar**
*Governor*

August 13, 1998

**Gene P. Marlin**
*Acting Director*

Lieutenant Nearing
Champaign Police Department
82 East University Ave
Champaign, IL  61820

Laboratory Case #S98-001498
ECSS Case #MM98-1688-9-1
Agency Case #798-002383
SUPPLEMENTAL REPORT

**OFFENSES:**  Arson/Attempted Murder
**SUSPECT:**   Dedric T. Moore
**VICTIM:**    Lori K. Hansen

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on March 4, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---|---|
| 37 | Latent print lift from exterior of driver door between mirror and handle |

The following evidence was received from Roberta Johnson by the Springfield Forensic Science
Laboratory on August 13, 1998:

| EXHIBIT | ITEM SUBMITTED |
|---|---|
| 46 | Inked fingerprints and palmprints of Dedric T. Moore |
| 48 | Inked fingerprints of Lori K. Hansen |
| 49 | Inked fingerprints of Larry G. Hansen |

## EXAMINATION AND RESULTS:
Comparison of the previously reported suitable latent print on Exhibit 37 to the submitted inked print
cards did not reveal an identification; however, more completely recorded inked fingerprints including the
extreme tip areas and clearly and completely recorded inked prints of the lower joints are needed for a
conclusive comparison.

## REMARKS:
The evidence will be returned at the laboratory.

Respectfully submitted,

*John E. Carnes*

John E. Carnes
Forensic Scientist

cc:  Crime Scene Investigator Michael L. Kyrouac

SEP 2 9 199█    *1 of 2*

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98  0259 HR | 09/24/98  0900 HR | 798-02383 | |
| CLASSIFICATION | LOCATION | | |
| AG ARSON/ ATTEMPT MURDER | 512 S. NEW | | |

I received word from the state crime lab that additional fingerprints were needed from Dedric T. Moore to complete the comparison process on some of the evidence. I obtained a search warrant and served it on Dedric. I sent the inked fingerprints to the state crime lab.

I also received the phone records for the victim's home phone. The suspect had carried her cordless phone away with him. I have attached those records to this report. There was no activity on her phone after 10:01 p.m. on 02/24/98. This was prior to the offense.

I also received the phone records from Carol Steiman. This is the home where Dedric's girlfriend (Jennifer Steven's) spent the night. She said that Dedric paged her with a phone number for her to call him back at, on that night. She did call him from Carol Steinman's home. I have also attached those phone records to this report. The address is 3706 Meadow Lane, Champaign. Ph# 359-0030. Carol Steinman's daughter, Sarah is Jennifer's friend.

In those records it shows that <u>PHONE # 398-6442</u> was called four times on 02/24/98. Between 08:50 p.m. and 10:18 p.m. The last call was (17) minutes long. The first call after this incident from the Steinman's house was at 7:29 a.m. to <u>PHONE #363-1401.</u>

<u>PH # 398-6442: KARON IDIOMER WILLIAMS, B/M, DOB: 11/26/76, 509 1/2 ROBINSON COURT,.</u>  I CALLED  398-6442 AND SPOKE TO KARON. HE AGREED TO COME TO CPD AND TALK TO ME. I SPOKE TO HIM ON 09/04/98 AT 1100 HR WITH DETECTIVE STRZESAK.

Karon said that he has  known Dedric Moore for about (3) or (4) years. He has had that phone number for about one year. He lives there with his mother and two sisters. He said that he also knows Carol and Sarah Steinman. He said that Dedric used to come over to his house often, but Karon has not seen Dedric for about three months. He said that Dedric used to walk or ride a bike all of the time, but Dedric bought a car shortly before the last time Karon saw Dedric.

Karon said that Dedric has not spent the night with him. Dedric told Karon about the other end of Dedric's grandmother's home catching on fire, but Dedric did not

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. 7I97 | DATE 09/24/98 |
|---|---|---|---|
| DATA ENTRY BY DET. D. SHEPARD | APPROVED (SUPERVISOR) | BADGE/ID NO. | C000291 |

2 of 2

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98  0259 HR | 09/24/98  0900 HR | 798-02383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| AG ARSON/ ATTEMPT MURDER | 512 S. NEW |

say anything else about it. Karon does not recall if Dedric was at Karon's on the night of the fire. However he knows Dedric did not ever spend the night.

**PH# 363-1401: ROBERT HICKMAN, B/M, DOB: 12/27/77, 503 ROBINSON COURT. I CALLED 363-1401 AND SPOKE TO RODNEY. HE LIVES WITH HIS DAD GREGORY A. LEWIS, B/M, DOB:08/20/50.**

I spoke to Gregory on 09/04/98 at 1115 hr. He said that Robert lives with him. They lived at 311 E. Park until about six weeks ago. They have had that phone number for about 2 years.

Rodney said that he knows Sarah Steiman. She was his girlfriend but they broke up. He said that he used to call her, and she used to call him. He knows Dedric Moore because he went to school with Dedric. He saw Dedric at BW 3 at 606 E. Green about three months ago, but hasn't seen Dedric since. He had no knowledge of this fire or Dedric's whereabouts at that time.

I am forwarding this report to the State's Attorney's Office.

Attachments:  1) phone records of Carol Steinman
                   phone #359-0030

              2) phone records of Lori Hansen
                   phone #359-4843

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 7197 | 09/24/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| DET. D. SHEPARD | | | C000292 |

**EVIDENCE**

CHAMPAIGN POLICE DEPARTMENT
CHAMPAIGN, ILLINOIS 61820

| | EVIDENCE | ☒ |
| | SAFEKEEPING | |
| | CONTRABAND | |
| | RECOVERED PROPERTY | |

OFFENSE NO. 798-2282

DATE OF OFFENSE: 02/23/98

TYPE OF CRIME: MURDER

DATE AND TIME SIZED: 09/08/98 1500

OFFICER'S NAME AND NUMBER: S. Newel 79

| | LAST NAME | FIRST NAME | M.I. | DATE OF BIRTH | ADDRESS | HOME PHONE | WORK PHONE |
|---|---|---|---|---|---|---|---|
| OWNER | Moore | Dedric | T. | 08/13/08 | | | |
| SUSP. #1 | | | | | | | |
| SUSP. #2 | | | | | | | |
| SUSP. #3 | | | | | | | |
| VICTIM | Hansen | Lori | K. | 04/02/69 | 512 A S New | | |
| OTHER | | | | | | | |

| EXHIBIT NO. | TYPE OF PROPERTY — DESCRIPTION — MODEL NO — SOURCE — ETC. | SERIAL NUMBER | DATA # | BIN |
|---|---|---|---|---|
| 1 70 | 2 pages of inked prints of suspect in a manilla envelope | | | |

REMARKS: ☒ RETAIN UNTIL NO EVIDENTIARY VALUE ☐ RELEASE ON DEMAND ☐ DESTROY

Send to Crime Lab

C000295

BCSS Number

Illinois State Police
...sion of Forensic Services
...ensic Sciences Command
**EVIDENCE RECEIPT**

...atory Case Number

Page ____ of ____

TYPE OR USE BLACK BALL POINT PEN ONLY; INSTRUCTIONS ON REVERSE

| | | | |
|---|---|---|---|
| A G E N C Y   D A T A | (1) Originating Agency Name *Champaign City* | (2) Agency Telephone *(217)351-4545* | (3) NCIC Number *IL100100*   Zip Code: | (4) Agency Case Number *798-2383* |

(5) Send report to: *LT. Nearing*   Agency address: *82 E. University Ave Champaign* City   *61820*

(6) Offense *ATTEMPT MURDER / AG ARSON*   (7) County of Offense *Champaign*   (8) Date Offense Occurred *02/25/98*

(9) Victim(s) Name(s), Sex, Race, DOB *Hansen Lori K, F/w; 04/12/69*

(10) Suspect(s) Name(s), Sex, Race DOB *Moore Dedric T. m/g; 08/13/78*

(11) Printed name of Investigating officer if different than (5)? above *Detective Don Shepard*   (12) Printed name of the officer and agency delivering evidence

| (13) Lab Exhibit Number(s) | (14) BCSS Exhibit Number(s) | (15) Agency Exhibit Number(s) | (16) | (17) Evidence description (see instructions) |
|---|---|---|---|---|
| | | | | To 2 pages of inked prints of suspect in a manilla envelope |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

(18) Lab use only

| (19) Lab Exhibit Number(s) | (20) BCSS Exhibit Number(s) | (21) Date | (22) Time | (23) Received From (Signature) | (24) Received By (Signature) |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(25) AFIS   Yes ☐   No ☐   Comments

(26) Attach pertinent case information, the case summary, and examination requests
**IMPORTANT:** List any communicable diseases of risk to lab personnel (e.g., hepatitis, TB, HTLV/LAV II, etc.)

*Use as Comparison for latents lifted*

*Also Compare to latents in your lab Case #S98-000419*

| (27) Lab Exhibit Number(s) | (28) BCSS Exhibit Number(s) | (29) Date | (30) Returned By (DFS Employee Signature) | (31) Released to (law enforcement representative signature and agency name) |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

749-2383

CMD                          MSG COMMAND COMPLETED(I210)
217 359 2852 905       AUG 01 98 *CSR   LIVE  P     1     3          CHMP RWN
CAROL STEINMAN               ACCT DATE 03-31-95

ZCIH 0
ZBU  CS, PST
ZCPI U

---LIST
LN   (DNL) STEINMAN, CAROL & O T
LA   3706 MEADOW LN, CHMP
AML  (A) STEINMAN, S
     /TN 217 359-0030

---BILL
BN1  CAROL STEINMAN
BA1  3706 MEADOW LN
PO   CHAMPAIGN IL 61821
SS   NONE
TAR  0100
ZCPI U, SYSTEM, 09-14-96
---S&E
RP    NOTATION                        TYPE PN  ACT  FU   BD   EBD
                                                        0898

Need M + Ts
for Jim Davis
AUG 26 1998

Looking for 2/24 + 2/25

C000295

798-2383

## CALL DETAIL BILL DATE 03-98          ACCOUNT (217) 359-2852 905    MCDI
SCREEN 1    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|---|---|---|---|---|---|---|---|---|---|
| ACCOUNT (217) 359-2852 905 | | | DETAIL: | | 2- 2 | 6:06P | 217-352-7855 | 15 | A |
| LINE (217) 359-2852 | | | MINS | | 2- 2 | 6:51P | 217-352-7855 | 9 | A |
| 2- 1 | 1:28P | 217-352-1073 | 6 | A | 2- 2 | 7:36P | 217-352-7855 | 23 | A |
| 2- 1 | 1:34P | 217-352-7855 | 9 | A | 2- 3 | 4:05P | 217-351-2505 | 2 | A |
| 2- 1 | 2:52P | 217-398-3250 | 73 | A | 2- 3 | 4:07P | 217-352-7855 | 1 | A |
| 2- 1 | 4:29P | 217-352-7855 | 1 | A | 2- 3 | 4:21P | 217-352-7855 | 1 | A |
| 2- 1 | 5:22P | 217-398-3250 | 22 | A | 2- 3 | 5:10P | 217-352-1073 | 11 | A |
| 2- 1 | 6:31P | 217-398-4960 | 1 | A | 2- 3 | 6:08P | 217-352-7855 | 1 | A |
| 2- 1 | 7:54P | 217-352-7855 | 12 | A | 2- 3 | 7:07P | 217-352-7855 | 12 | A |
| 2- 1 | 8:40P | 217-352-1073 | 29 | A | 2- 3 | 7:31P | 217-352-7855 | 10 | A |
| 2- 1 | 9:09P | 217-352-3953 | 9 | A | 2- 3 | 8:17P | 217-363-1401 | 2 | A |
| 2- 2 | 8:18A | 217-384-4118 | 1 | A | 2- 3 | 8:32P | 217-352-1073 | 1 | A |
| 2- 2 | 8:20A | 217-367-0914 | 1 | A | 2- 4 | 3:49P | 217-352-7855 | 1 | A |
| 2- 2 | 3:35P | 217-352-3953 | 1 | A | 2- 4 | 4:01P | 217-352-7855 | 1 | A |
| 2- 2 | 3:37P | 217-352-7855 | 3 | A | 2- 4 | 4:01P | 217-351-2505 | 1 | A |
| 2- 2 | 4:02P | 217-351-3838 | 11 | A | 2- 4 | 4:43P | 217-352-7855 | 1 | A |
| 2- 2 | 5:39P | 217-352-7855 | 4 | A | 2- 4 | 7:39P | 217-352-3953 | 1 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
SCROLL BACKWARD NOT ALLOWED

C000296

148-2383

CALL DETAIL BILL DATE 03-98          ACCOUNT (217) 359-2852 905      MCDI

SCREEN 2     OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2- 4 | 7:47P | 217-352-1073 | 1 | A | 2- 6 | 4:17P | 217-352-7855 | 3 | A |
| 2- 4 | 7:48P | 217-352-7855 | 3 | A | 2- 6 | 4:38P | 217-352-7855 | 1 | A |
| 2- 4 | 7:50P | 217-398-8114 | 3 | A | 2- 6 | 5:27P | 217-351-2505 | 1 | A |
| 2- 5 | 8:21A | 217-333-3231 | 2 | A | 2- 6 | 6:58P | 217-352-7855 | 15 | A |
| 2- 5 | 3:30P | 217-352-7855 | 6 | A | 2- 6 | 7:27P | 217-352-7855 | 4 | A |
| 2- 5 | 3:36P | 217-352-1073 | 17 | A | 2- 6 | 7:30P | 217-356-2124 | 1 | A |
| 2- 5 | 5:01P | 217-398-3250 | 30 | A | 2- 6 | 7:32P | 217-352-7855 | 9 | A |
| 2- 5 | 6:28P | 217-355-1016 | 1 | A | 2- 6 | 7:41P | 217-352-7855 | 6 | A |
| 2- 5 | 6:45P | 217-352-1073 | 1 | A | 2- 6 | 8:33P | 217-352-7855 | 18 | A |
| 2- 5 | 8:32P | 217-352-3953 | 25 | A | 2- 7 | 6:54A | 217-398-3250 | 47 | A |
| 2- 6 | 7:49A | 217-359-5623 | 2 | A | 2- 7 | 7:44A | 217-398-3250 | 2 | A |
| 2- 6 | 8:27A | 217-352-1100 | 2 | A | 2- 7 | 7:47A | 217-398-3250 | 2 | A |
| 2- 6 | 8:30A | 217-356-6454 | 2 | A | 2- 7 | 7:53A | 217-398-3250 | 23 | A |
| 2- 6 | 8:35A | 217-333-3231 | 25 | A | 2- 7 | 10:11A | 217-352-3953 | 1 | A |
| 2- 6 | 12:18P | 217-333-3231 | 3 | A | 2- 7 | 3:25P | 217-328-4107 | 4 | A |
| 2- 6 | 3:35P | 217-352-3953 | 5 | A | 2- 7 | 3:39P | 217-352-2308 | 1 | A |
| 2- 6 | 4:11P | 217-356-2124 | 7 | A | 2- 7 | 4:42P | 217-398-4960 | 2 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000297 - .

798-2283

## CALL DETAIL BILL DATE 03-98          ACCOUNT (217) 359-2852 905    MCDI
SCREEN 3       OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2- 7 | 4:46P | 217-351-6722 | 1 | A | 2- 8 | 3:34P | 217-352-1073 | 1 | A |
| 2- 7 | 4:53P | 217-352-2308 | 5 | A | 2- 8 | 4:00P | 217-352-7855 | 7 | A |
| 2- 7 | 5:57P | 217-352-2308 | 6 | A | 2- 8 | 4:29P | 217-352-1073 | 1 | A |
| 2- 7 | 6:03P | 217-352-6308 | 6 | A | 2- 8 | 4:29P | 217-398-8114 | 1 | A |
| 2- 7 | 6:13P | 217-352-6308 | 2 | A | 2- 8 | 4:30P | 217-398-8114 | 4 | A |
| 2- 7 | 6:16P | 217-356-2124 | 1 | A | 2- 8 | 5:42P | 217-398-8114 | 5 | A |
| 2- 7 | 6:34P | 217-352-3953 | 2 | A | 2- 8 | 5:57P | 217-352-7855 | 2 | A |
| 2- 8 | 10:47A | 217-352-1073 | 1 | A | 2- 8 | 8:32P | 217-398-3250 | 34 | A |
| 2- 8 | 10:48A | 217-352-7855 | 4 | A | 2- 9 | 3:25P | 217-352-7855 | 1 | A |
| 2- 8 | 11:22A | 217-351-8068 | 1 | A | 2- 9 | 3:29P | 217-352-1073 | 17 | A |
| 2- 8 | 11:23A | 217-351-8068 | 1 | A | 2- 9 | 3:49P | 217-351-2505 | 1 | A |
| 2- 8 | 11:28A | 217-351-8068 | 1 | A | 2- 9 | 3:56P | 217-352-3953 | 2 | A |
| 2- 8 | 11:54A | 217-351-8068 | 1 | A | 2- 9 | 3:58P | 217-352-2308 | 1 | A |
| 2- 8 | 11:55A | 217-352-7855 | 2 | A | 2- 9 | 4:10P | 217-398-6442 | 3 | A |
| 2- 8 | 2:01P | 217-352-3953 | 12 | A | 2- 9 | 4:57P | 217-351-5266 | 3 | A |
| 2- 8 | 2:21P | 217-352-3953 | 25 | A | 2- 9 | 5:37P | 217-352-1073 | 17 | A |
| 2- 8 | 2:57P | 217-398-6442 | 30 | A | 2- 9 | 5:57P | 217-352-1073 | 3 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000298

798-2383

CALL DETAIL BILL DATE 03-98       ACCOUNT (217) 359-2852 905      MCDI
                                              SCREEN 4      OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2- 9 | 6:46P | 217-352-7855 | 1 | A | 2-11 | 10:46A | 217-366-1382 | 3 | A |
| 2- 9 | 7:00P | 217-352-7855 | 1 | A | 2-11 | 3:43P | 217-352-3953 | 2 | A |
| 2- 9 | 8:27P | 217-363-1401 | 14 | A | 2-11 | 3:45P | 217-352-7855 | 18 | A |
| 2-10 | 8:07A | 217-351-3956 | 1 | A | 2-11 | 5:59P | 217-352-7855 | 4 | A |
| 2-10 | 8:41A | 217-351-2590 | 13 | A | 2-12 | 9:48A | 217-643-7493 | 2 | A |
| 2-10 | 9:06A | 217-351-2590 | 2 | A | 2-16 | 8:37A | 217-359-4212 | 1 | A |
| 2-10 | 11:12A | 217-344-7827 | 5 | A | 2-16 | 2:19P | 217-333-3231 | 1 | A |
| 2-10 | 2:35P | 217-352-6588 | 1 | A | 2-16 | 2:21P | 217-351-3793 | 5 | A |
| 2-10 | 2:38P | 217-344-7827 | 11 | A | 2-16 | 2:26P | 217-351-4460 | 7 | A |
| 2-10 | 4:04P | 217-352-7855 | 1 | A | 2-16 | 2:36P | 217-398-2441 | 4 | A |
| 2-10 | 6:34P | 217-352-7855 | 2 | A | 2-16 | 3:10P | 217-333-3231 | 1 | A |
| 2-10 | 7:09P | 217-351-6001 | 4 | A | 2-16 | 3:29P | 217-352-7855 | 6 | A |
| 2-10 | 7:14P | 217-352-7855 | 1 | A | 2-16 | 3:35P | 217-352-3953 | 1 | A |
| 2-10 | 7:16P | 217-351-6001 | 6 | A | 2-16 | 4:59P | 217-352-7855 | 25 | A |
| 2-10 | 7:43P | 217-363-1401 | 7 | A | 2-16 | 5:23P | 217-344-7827 | 6 | A |
| 2-10 | 7:50P | 217-363-1401 | 14 | A | 2-16 | 5:35P | 217-352-7855 | 1 | A |
| 2-11 | 10:42A | 217-398-2441 | 2 | A | 2-16 | 5:37P | 217-352-1073 | 3 | A |

PF1 = ENTRY SCREEN   PP4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000299

798-2383

**CALL DETAIL BILL DATE 03-98**          **ACCOUNT (217) 359-2852 905    MCDI**

                                                        **SCREEN 5      OF 9**

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-16 | 6:03P | 217-398-6800 | 1 | A | 2-18 | 5:46P | 217-352-1073 | 34 | A |
| 2-16 | 7:02P | 217-352-3953 | 1 | A | 2-18 | 6:38P | 217-352-1073 | 1 | A |
| 2-16 | 7:18P | 217-352-7855 | 61 | A | 2-18 | 7:05P | 217-367-7208 | 2 | A |
| 2-16 | 8:22P | 217-355-6270 | 2 | A | 2-18 | 7:07P | 217-328-5931 | 5 | A |
| 2-17 | 3:39P | 217-352-3953 | 9 | A | 2-18 | 7:26P | 217-363-1401 | 1 | A |
| 2-17 | 3:51P | 217-352-1073 | 6 | A | 2-18 | 8:27P | 217-352-1073 | 1 | A |
| 2-17 | 5:02P | 217-351-4400 | 1 | A | 2-18 | 8:27P | 217-352-1073 | 1 | A |
| 2-17 | 5:03P | 217-351-2440 | 3 | A | 2-18 | 8:28P | 217-352-7855 | 26 | A |
| 2-17 | 5:10P | 217-352-7855 | 9 | A | 2-18 | 8:54P | 217-352-7855 | 1 | A |
| 2-17 | 5:28P | 217-352-7855 | 14 | A | 2-18 | 8:55P | 217-398-8114 | 1 | A |
| 2-17 | 5:43P | 217-352-1073 | 1 | A | 2-18 | 8:56P | 217-352-7855 | 17 | A |
| 2-17 | 6:01P | 217-352-7855 | 2 | A | 2-19 | 3:40P | 217-352-7855 | 1 | A |
| 2-17 | 8:18P | 217-398-6442 | 54 | A | 2-19 | 4:35P | 217-352-1073 | 1 | A |
| 2-17 | 10:00P | 217-398-9131 | 37 | A | 2-19 | 5:07P | 217-352-7855 | 9 | A |
| 2-18 | 4:46P | 217-352-7855 | 11 | A | 2-19 | 5:16P | 217-352-1073 | 12 | A |
| 2-18 | 4:56P | 217-352-1073 | 1 | A | 2-19 | 7:35P | 217-363-1401 | 21 | A |
| 2-18 | 4:58P | 217-352-3953 | 3 | A | 2-19 | 9:09P | 217-363-1401 | 1 | A |

**PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT**

**MORE PAGES TO FOLLOW**

C000300

798-2383

## CALL DETAIL BILL DATE 03-98    ACCOUNT (217) 359-2852 905    MCDI

SCREEN 6    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-19 | 9:37P | 217-352-3953 | 2 | A | 2-20 | 8:46P | 217-352-1073 | 1 | A |
| 2-20 | 3:43P | 217-352-7855 | 1 | A | 2-21 | 8:24A | 217-355-2720 | 9 | A |
| 2-20 | 3:43P | 217-352-1073 | 1 | A | 2-21 | 9:30A | 217-356-2124 | 1 | A |
| 2-20 | 3:44P | 217-352-7855 | 1 | A | 2-21 | 10:20A | 217-352-7855 | 5 | A |
| 2-20 | 3:44P | 217-352-1073 | 1 | A | 2-21 | 10:48A | 217-356-2124 | 4 | A |
| 2-20 | 4:19P | 217-352-1073 | 1 | A | 2-21 | 11:00A | 217-352-3953 | 1 | A |
| 2-20 | 4:20P | 217-398-8114 | 3 | A | 2-21 | 12:05P | 217-352-1073 | 1 | A |
| 2-20 | 4:22P | 217-398-8114 | 6 | A | 2-21 | 12:58P | 217-359-4583 | 11 | A |
| 2-20 | 4:59P | 217-586-3874 | 3 | A | 2-21 | 3:35P | 217-352-3953 | 1 | A |
| 2-20 | 5:02P | 217-352-7855 | 10 | A | 2-22 | 7:54A | 217-351-5266 | 2 | A |
| 2-20 | 5:12P | 217-398-1138 | 1 | A | 2-22 | 11:12A | 217-344-4710 | 1 | A |
| 2-20 | 5:12P | 217-352-7855 | 1 | A | 2-22 | 11:13A | 217-469-8001 | 8 | A |
| 2-20 | 5:13P | 217-398-8114 | 1 | A | 2-22 | 11:33A | 217-352-3953 | 2 | A |
| 2-20 | 5:14P | 217-398-8114 | 3 | A | 2-22 | 1:27P | 217-363-1401 | 4 | A |
| 2-20 | 5:16P | 217-352-7855 | 6 | A | 2-22 | 1:57P | 217-356-5506 | 13 | A |
| 2-20 | 6:03P | 217-352-7855 | 27 | A | 2-22 | 4:02P | 217-352-7855 | 8 | A |
| 2-20 | 6:33P | 217-352-7855 | 122 | A | 2-22 | 7:41P | 217-356-2124 | 2 | A |

PF1 = ENTRY SCREEN  PF4 = BACKWARD  PF5 = FORWARD  PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

C000301

798-2383

CALL DETAIL BILL DATE 03-98        ACCOUNT (217) 359-2852 905      MCDI
                                                  SCREEN 7      OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-22 | 7:44P | 217-356-2124 | 1 | A | 2-24 | 9:47P | 217-398-6442 | 3 | A |
| 2-22 | 10:02P | 217-398-6442 | 7 | A | 2-24 | 9:51P | 217-398-6442 | 1 | A |
| 2-23 | 3:29P | 217-351-2505 | 1 | A | 2-24 | 10:18P | 217-398-6442 | 17 | A |
| 2-23 | 4:08P | 217-356-2124 | 26 | A | 2-25 | 7:29A | 217-363-1401 | 3 | A |
| 2-23 | 4:34P | 217-351-2505 | 2 | A | 2-25 | 3:26P | 217-352-7855 | 1 | A |
| 2-23 | 4:39P | 217-239-2501 | 1 | A | 2-25 | 3:30P | 217-352-7855 | 1 | A |
| 2-23 | 4:47P | 217-352-7855 | 3 | A | 2-25 | 3:32P | 217-351-2505 | 2 | A |
| 2-23 | 5:19P | 217-359-2598 | 1 | A | 2-25 | 3:34P | 217-352-1073 | 7 | A |
| 2-23 | 6:24P | 217-398-6442 | 7 | A | 2-25 | 4:02P | 217-352-7855 | 1 | A |
| 2-23 | 8:16P | 217-398-6442 | 21 | A | 2-25 | 4:03P | 217-352-1073 | 6 | A |
| 2-23 | 9:28P | 217-398-6442 | 17 | A | 2-25 | 4:09P | 217-352-7855 | 1 | A |
| 2-23 | 9:45P | 217-398-6442 | 39 | A | 2-25 | 4:17P | 217-352-7855 | 2 | A |
| 2-23 | 10:27P | 217-398-6442 | 22 | A | 2-25 | 4:27P | 217-352-7855 | 1 | A |
| 2-24 | 5:05P | 217-352-1073 | 1 | A | 2-25 | 5:42P | 217-352-7855 | 8 | A |
| 2-24 | 5:06P | 217-352-7855 | 1 | A | 2-25 | 6:01P | 217-352-7855 | 1 | A |
| 2-24 | 5:37P | 217-352-7855 | 1 | A | 2-25 | 6:07P | 217-352-7855 | 1 | A |
| 2-24 | 8:50P | 217-398-6442 | 8 | A | 2-25 | 6:20P | 217-359-2598 | 1 | A |

PF1 = ENTRY SCREEN  PF4 = BACKWARD  PF5 = FORWARD  PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

1-98-2283

E-FILED
Friday, 04 May, 2007 05:28:37 PM
Clerk, U.S. District Court, ILCD

CALL DETAIL BILL DATE 03-98       ACCOUNT (217) 892-2852 905   MCD1
SCREEN  8    OF  9

| DATE | TIME | CALLED NUMBER | MINS | BAND | | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|---|------|------|---------------|------|------|
| 2-25 | 6:45P | 217-352-7855 | 35 | A | | 2-26 | 3:35P | 217-351-2505 | 1 | A |
| 2-25 | 7:23P | 217-359-2598 | 1 | A | | 2-26 | 8:36P | 217-352-7855 | 9 | A |
| 2-25 | 7:26P | 217-356-2124 | 1 | A | | 2-26 | 9:12P | 217-352-7855 | 3 | A |
| 2-25 | 7:27P | 217-363-1401 | 1 | A | | 2-26 | 9:46P | 217-352-7855 | 57 | A |
| 2-25 | 7:28P | 217-351-6772 | 1 | A | | 2-26 | 10:42P | 217-363-1401 | 1 | A |
| 2-25 | 7:51P | 217-352-7855 | 3 | A | | 2-26 | 10:44P | 217-356-2124 | 2 | A |
| 2-25 | 8:30P | 217-352-7855 | 22 | A | | 2-27 | 8:08A | 217-363-1401 | 14 | A |
| 2-25 | 10:01P | 217-356-2124 | 3 | A | | 2-27 | 10:05A | 217-352-7855 | 1 | A |
| 2-25 | 10:07P | 217-398-9671 | 12 | A | | 2-27 | 10:27A | 217-352-7855 | 1 | A |
| 2-25 | 10:48P | 217-356-2124 | 19 | A | | 2-27 | 10:37A | 217-352-7855 | 1 | A |
| 2-25 | 11:07P | 217-356-2124 | 7 | A | | 2-27 | 11:13A | 217-352-7855 | 1 | A |
| 2-26 | 7:33A | 217-840-3953 | 2 | A | | 2-27 | 11:46A | 217-352-7855 | 1 | A |
| 2-26 | 8:35A | 217-643-7493 | 2 | A | | 2-27 | 1:06P | 217-352-3953 | 1 | A |
| 2-26 | 8:42A | 217-351-1638 | 2 | A | | 2-27 | 3:09P | 217-355-9217 | 2 | A |
| 2-26 | 11:38A | 217-643-7493 | 2 | A | | 2-27 | 3:47P | 217-351-2505 | 2 | A |
| 2-26 | 11:41A | 217-643-7493 | 2 | A | | 2-27 | 5:55P | 217-351-2505 | 3 | A |
| 2-26 | 3:33P | 217-398-6800 | 2 | A | | 2-27 | 5:58P | 217-359-3534 | 1 | A |

PF1 = ENTRY SCREEN  PF4 = BACKWARD  PF5 = FORWARD   PRESS CLEAR TO EXIT
MORE PAGES TO FOLLOW

798-2383

**CALL DETAIL BILL DATE 03-98**        ACCOUNT (217) 59-2852 905    MCDI

SCREEN 9    OF 9

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
|      |      |               |      |      |      |      | MINUTES       | 2014 |      |
| 2-27 | 8:20P | 217-352-3953 | 2 | A |  |  |  |  |  |
| 2-28 | 12:56P | 217-363-1401 | 2 | A | ACCT TOTAL BAND-B | MSGS | | 0 | |
| 2-28 | 2:18P | 217-363-1401 | 1 | A | | MINUTES | | 0 | |
| 2-28 | 2:34P | 217-352-1073 | 2 | A | | | | | |
| 2-28 | 7:29P | 217-352-7855 | 25 | A | ACCT TOTAL BAND-C | MSGS | | 0 | |
| 2-28 | 8:19P | 217-352-7855 | 1 | A | | MINUTES | | 0 | |
| 2-28 | 10:23P | 217-363-1401 | 1 | A | | | | | |

LINE TOTAL BAND-A    MSGS    277
                     MINUTES  2014    ACCOUNT TOTAL    MSGS    277
                                                      MINUTES  2014

LINE TOTAL BAND-B    MSGS    0
                     MINUTES  0

LINE TOTAL BAND-C    MSGS    0
                     MINUTES  0

ACCT TOTAL BAND-A    MSGS    277

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
END OF CALL DETAIL

C000304

798-2383

CMD
217 359 4843 691        APR 01 98 *CSR  FINAL P    1    1
LORI K HANSEN                ACCT DATE 08-04-97

MSG COMMAND COMPLETE (I210)

CHMP RWN

_BU  CS, SLV
PPC

---LIST
LN   HANSEN, L
LA   512 S NEW, CHMP
DZIP 61820

      ACCOUNT DELETED

      TOTAL EXCLUDING TAXES                                        .00

RP      NOTATION                        TYPE PN  ACT  FU   BD   EBD
                                                                          P

C000305

798.2383

CALL DETAIL BILL DATE 03-98          ACCOUNT (217) 359-4843 691      MCDI
                                                          SCREEN 1      OF 3

| DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|
| ACCOUNT (217) 359-4843 691 | | DETAIL: | | |
| LINE (217) 359-4843 | | MINS | | |
| 2- 1 | 12:23P | 217-332-4842 | 6 | A |
| 2- 1 | 2:49P | 217-328-2375 | 1 | A |
| 2- 1 | 5:42P | 217-239-4535 | 14 | A |
| 2- 2 | 3:12P | 217-333-6839 | 2 | A |
| 2- 3 | 9:14A | 217-333-0289 | 1 | A |
| 2- 5 | 7:16P | 217-332-4842 | 2 | A |
| 2- 6 | 10:34A | 217-244-0713 | 1 | A |
| 2- 6 | 10:49A | 217-359-5915 | 2 | A |
| 2- 6 | 10:50A | 217-333-6839 | 14 | A |
| 2- 6 | 11:07A | 217-337-2186 | 6 | A |
| 2- 6 | 4:48P | 217-332-4842 | 1 | A |
| 2- 7 | 5:02A | 217-356-0421 | 6 | A |
| 2- 7 | 5:07A | 217-356-0421 | 1 | A |
| 2- 7 | 2:46P | 217-332-4842 | 2 | A |
| 2- 7 | 11:34P | 217-398-4846 | 2 | A |

| DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|
| 2- 8 | 2:14P | 217-355-6410 | 1 | A |
| 2- 8 | 2:42P | 217-352-5945 | 1 | A |
| 2- 8 | 4:02P | 217-332-4842 | 1 | A |
| 2- 8 | 6:36P | 217-332-4842 | 1 | A |
| 2- 9 | 4:38P | 217-344-3519 | 6 | A |
| 2- 9 | 6:28P | 217-344-3519 | 3 | A |
| 2-10 | 10:00P | 217-328-4019 | 1 | A |
| 2-10 | 10:19P | 217-398-8662 | 1 | A |
| 2-10 | 10:21P | 217-356-0421 | 1 | A |
| 2-10 | 10:39P | 217-344-3519 | 7 | A |
| 2-12 | 1:29A | 217-355-6410 | 1 | A |
| 2-12 | 1:33A | 217-356-0421 | 51 | A |
| 2-12 | 2:25A | 217-351-7476 | 1 | A |
| 2-12 | 2:26A | 217-355-6410 | 2 | A |
| 2-12 | 6:38P | 217-344-3519 | 2 | A |
| 2-13 | 1:38A | 217-355-6410 | 1 | A |
| 2-13 | 11:18A | 217-344-3519 | 1 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT
                          MORE PAGES TO FOLLOW

C0\0306

798-2383

CALL DETAIL BILL DATE 03-98          ACCOUNT (217) ●●9-4843 691    MCDI

SCREEN 2      OF 3

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| 2-13 | 11:19A | 217-337-2186 | 1 | A | 2-14 | 9:38P | 217-359-5915 | 1 | A |
| 2-13 | 11:20A | 217-332-4842 | 1 | A | 2-15 | 1:44A | 217-359-5915 | 1 | A |
| 2-13 | 11:30A | 217-239-5460 | 3 | A | 2-15 | 10:25P | 217-384-8111 | 1 | A |
| 2-13 | 11:33A | 217-328-4019 | 1 | A | 2-15 | 10:59P | 217-359-5915 | 3 | A |
| 2-13 | 11:34A | 217-333-6839 | 1 | A | 2-16 | 8:00P | 217-344-3519 | 5 | A |
| 2-13 | 11:35A | 217-355-6410 | 1 | A | 2-17 | 3:17P | 217-333-6839 | 1 | A |
| 2-13 | 11:41A | 217-356-4530 | 1 | A | 2-17 | 3:18P | 217-355-6410 | 2 | A |
| 2-13 | 12:00P | 217-333-6839 | 3 | A | 2-17 | 3:23P | 217-337-2186 | 2 | A |
| 2-13 | 12:03P | 217-332-4842 | 1 | A | 2-17 | 3:26P | 217-333-3530 | 5 | A |
| 2-13 | 12:04P | 217-328-4019 | 3 | A | 2-17 | 5:02P | 217-332-4842 | 2 | A |
| 2-13 | 3:45P | 217-355-9568 | 1 | A | 2-17 | 5:29P | 217-355-6410 | 1 | A |
| 2-13 | 3:48P | 217-355-6410 | 2 | A | 2-17 | 5:33P | 217-398-8662 | 2 | A |
| 2-13 | 3:50P | 217-333-6839 | 2 | A | 2-17 | 9:32P | 217-333-6839 | 2 | A |
| 2-13 | 8:27P | 217-344-3519 | 3 | A | 2-18 | 5:16P | 217-351-7476 | 10 | A |
| 2-14 | 5:33P | 217-328-0382 | 1 | A | 2-18 | 8:33P | 217-344-3519 | 1 | A |
| 2-14 | 5:36P | 217-351-7476 | 4 | A | 2-19 | 11:16A | 217-398-5831 | 2 | A |
| 2-14 | 8:47P | 217-332-4842 | 5 | A | 2-19 | 7:25P | 217-337-0340 | 3 | A |

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT

MORE PAGES TO FOLLOW

C000307

798-2383

CALL DETAIL BILL DATE 03-98        ACCOUNT (217) 359-4843 691    MCDI

SCREEN 3    OF 3

| DATE | TIME | CALLED NUMBER | MINS | BAND | DATE | TIME | CALLED NUMBER | MINS | BAND |
|------|------|---------------|------|------|------|------|---------------|------|------|
| -19 | 7:27P | 217-344-3519 | 2 | A | | | MINUTES | | 0 |
| 2-21 | 12:57P | 217-355-6410 | 34 | A | | | | | |
| 2-21 | 1:33P | 217-359-5915 | 6 | A | ACCT TOTAL BAND-A | | MSGS | | 76 |
| 2-21 | 5:12P | 217-688-2589 | 10 | A | | | MINUTES | | 302 |
| 2-21 | 10:07P | 217-384-8111 | 1 | A | | | | | |
| 2-22 | 4:44P | 217-328-2375 | 1 | A | ACCT TOTAL BAND-B | | MSGS | | 0 |
| 2-23 | 3:42P | 217-344-3519 | 6 | A | | | MINUTES | | 0 |
| 2-23 | 4:53P | 217-344-3519 | 17 | A | | | | | |
| 2-24 | 10:00P | 217-351-7476 | 1 | A | ACCT TOTAL BAND-C | | MSGS | | 0 |
| 2-24 | 10:01P | 217-398-5858 | 3 | A | | | MINUTES | | 0 |

LINE TOTAL BAND-A    MSGS        76

MINUTES        302        ACCOUNT TOTAL    MSGS    76

MINUTES    302

LINE TOTAL BAND-B    MSGS        0

MINUTES        0

LINE TOTAL BAND-C    MSGS        0

PF1 = ENTRY SCREEN   PF4 = BACKWARD   PF5 = FORWARD   PRESS CLEAR TO EXIT

END OF CALL DETAIL

C000308

# CURRICULUM VITAE

| | |
|---|---|
| **NAME:** | Suzanne M. Kidd |
| **PRESENT EMPLOYER:** | Illinois State Police<br>Forensic Sciences Command |
| **BUSINESS ADDRESS:** | Southern Illinois Forensic Science Centre<br>606 East College Street<br>Carbondale, Illinois  62901 |
| **BUSINESS TELEPHONE:** | 618/457-6714 |
| **PRESENT POSITION:** | Forensic Scientist in Microscopy |
| **CURRENT DUTIES:** | Examination of hairs, fibers, fabric impressions, physical fracture matches, and particulate unknowns.  Also conduct research in the area of forensic microscopy and participate in special projects as necessary. |
| **EDUCATION:** | Bachelor of Science in Biology,<br>Southern Illinois University<br>Edwardsville, Illinois |

**PROFESSIONAL EXPERIENCE:**

| | |
|---|---|
| 12/90 to present | Illinois State Police<br>Bureau of Forensic Sciences<br>Carbondale, Illinois 62901<br>Forensic Scientist |
| 4/89 to 12/90 | Washington University - Chemistry Department<br>St. Louis, Missouri<br>Research Assistant |
| 9/88 to 4/89 | CDI Temporary Services<br>Monsanto Company - Chemistry<br>Maryland Heights, Missouri<br>Lab Technician |

**ADDITIONAL TRAINING:**

| | | |
|---|---|---|
| 4/91 | Physical Match Training | Illinois State Police<br>Bureau of Forensic Sciences<br>Carbondale, Illinois |
| 5/91 | Courtroom Demeanor Class | Illinois State Police<br>Bureau of Forensic Sciences<br>Carbondale, Illinois |



Curriculum Vitae - Suzanne Kidd
Page 2

**ADDITIONAL TRAINING (continued):**

| | | |
|---|---|---|
| 6/92 | Inter/Micro Conference | McCrone Research Institute<br>Chicago, Illinois |
| 3/93 | Wood Identification Class | Illinois State Police<br>Bureau of Forensic Sciences<br>Carbondale, Illinois 62901 |
| 4/93 | Examination of Building Materials | McCrone Research Institute<br>Chicago, Illinois |
| 11/93 | Entomological Evidence from Death Scenes | Southern Illinois Criminal Justice Training Program<br>John A. Logan College<br>Carterville, Illinois |
| 4/94 | Biochem 380B | Southern Illinois University<br>Carbondale, Illinois |
| 9/94 | 1994 Fall Meeting | Southern Association of Forensic Scientists<br>Orlando, Florida |
| 10/95 | 1995 Joint Conference | Midwestern Association of Forensic Scientists<br>Southern Association of Forensic Scientists<br>Paducah, Kentucky |
| 6/96 | An International Symposium on the Forensic Examination of Trace Evidence in Transition | FBI<br>San Antonio, Texas |

**PROFESSIONAL ACADEMIES AND SCIENTIFIC SOCIETIES:**   American Academy of Forensic Sciences

Midwestern Association of Forensic Scientists

State Microscopical Society of Illinois

C000310

Curriculum Vitae - Suzanne Kidd
Page 3

**POSITIONS HELD IN PROFESSIONAL
ORGANIZATIONS:**

11/94-10/95          Planning Committee Member
                     1995 Joint Fall Conference MAFS/SAFS
                     Paducah, Kentucky

**PRESENTATIONS:**

6/96          Microfibers in Casework        An International Symposium
                                              on the Forensic Examination
                                              of Trace Evidence in
                                              Transition
                                              San Antonio, Texas

6/96          Microspectrophotometric        An International Symposium
              Techniques on Fibers            on the Forensic Examination
                                              of Trace Evidence in
                                              Transition.
                                              San Antonio, Texas

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: 6-3-98                    Case No.: S98-1498

Exhibit/Item: #2A Debris from cords & laces

Source/Date Received: 1 Coin env. sld BET

Description of Package: Spfld Lab - Reg Mail 4-3-98

Description of Markings as Received: Enic Lab

Laboratory Marks: SMK

Laboratory Examination:

1 taping - obs - hair, fibers, soil part, misc debris
PLM → inc wool

→ AH's, CH's
(poss cat)

No Neg. hairs

Conclusions:

Repackaging: Sld YET          Date: 6-4-98          Analyst: SMK

IL 493-0430                                          C000312

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: _6-3-98_          Case No.: _S98-1498_

Exhibit/Item: #4A _Debris from shorts_

Source/Date Received: _Reg Mail - Spfld Lab    4-3-98_

Description of Package: _1 coin env. sld BET_

Description of Markings as Received: _Lab_

Laboratory Marks: _SmK_

Laboratory Examination:

3 tapings - sm Obs - hairs, fibers, soil part, misc debris
(2 out)                                              (burnt part,
(1 in)    PLM → AHF, CH's (inc. lead)        poss glass
                                                      or plastic)
Wt mnt   1 NH-UBPO- frag
         recovered from taping (labeled outside
         replaced on taping

Conclusions:

Repackaging: _Sld YET_          Date: _6-4-98_          Analyst: _SMK_

IL 493-0430                                        C000313

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: 6-3-98                    Case No.: S98-1498

Exhibit/Item: #12  Black Stocking
Source/Date Received: 4-3-98    Reg. mail
Description of Package: 1 BPB sld R+BET
Description of Markings as Received: agency - Lab

Laboratory Marks: SMK

Laboratory Examination:

1 piece of app black tights w/ ridges
* macroscopically similar to Ex #14
- no finished cut edges - top + bottom missing
- Unable to physically match back to Ex #14
due to too much fraying + running
damage to fiber edges.

Knit design pattern

1 2 1 11 1 21 11
miss Rib miss Jersey miss Rib miss Jersey Stitch

knitted blk fibers
w/ a brown elastic
fibers running
vertically - 4 blk strand
then a brown strand

fiber count- 34 black fibers - man made (thick strand)
13   "   "   "   (thin   ")
34   "   "   "   (thick   ")
6→7 black fibers - manmade (thin   ")
around 1 brown fiber- "  " elastic

Conclusions:

Repackaging: Sld YET          Date: 6-10-98    Analyst: SMK

IL 493-0430                                    C000314

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: 6-3-98                    Case No.: S98-1498

Exhibit/Item: #12   Cont

Source/Date Received:

Description of Package:

Description of Markings as Received:

Laboratory Marks:

Laboratory Examination:

Prmnt  Stds - blk fibers → dk blue/green fibers  w/ delust
(mod. amt), dog-bone shape, B med/high (-)
poss nylon, diam ~ 15

brown fiber - yellow/brown fiber
"double lobed" → 2 round fibers - connected
smooth w/ inclusions, diam ~ 80um
B-low (+)

FTIR - See graphs - I.D. Nylon (blk fibers) + Spandex (brown fiber)

Microspec - Nylon + Spandex fibers consistent w/ fibers (Respective)
from Ex #14 - see graph

Fluor - None - either fiber

Conclusions: Ex #12 is consistent in (all aspects including)
color, composition, size
and structure (knit pattern) with the tights in
Ex #14 - therefore Ex #12 could have orig. from Ex #14.

Repackaging: _____ Date: _____ Analyst: _____

IL 493-0430

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: _6-3-98_    Case No.: _S98-1498_

Exhibit/Item: #14  1 pr.  of black stockings

Source/Date Received: 4-3-98  Reg. Mail

Description of Package: 10PB sld RET + BET

Description of Markings as Received: agency - Lab

Laboratory Marks: SMK

Laboratory Examination:

1 pr. of black tights w/ one leg missing
↳ w/ wedges

Knit design pattern

1 2 1  1 2 1
miss | Rib | miss | Jersey | miss | Rib | miss | Jersey

knitted blk fibers
w/ a brown elastic
fiber running vertically
vertical pattern the blk strand
then 1 brown Strand.

fiber count —   34 black fibers - man-made   (thick strand)
13  "   "   "   (thin strand)
34  "   "   "   (thick strand)
6-7 black manmade fibers around   (thin strand)
1 thick brown elastic (man-made)
fiber

FTIR - See graphs - I.D. Blk fibers as Nylon
I.D. brown fibers as Spandex

Prmnt Standard - blk fibers - microscopically dk blue/green fibers
w/ delust (mod amt), dog bone Shape
β med/high ⊕ - poss Nylon, diam - ~15um

Conclusions:

Repackaging: _Sld ⅋ ET_    Date: _6-10-98_    Analyst: _SMK_

IL 493-0430    C000316

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Forensic Sciences Command

## LABORATORY WORKSHEET

Date Examined: 6-3-98

Case No.: S98- 1498

Exhibit/Item: # 14

Source/Date Received:

Description of Package:

Description of Markings as Received:

Laboratory Marks:

Cont

Laboratory Examination:

Permnt
fiber Std. - brown fiber - yellow/brown
"double lobed" fiber (2 fibers connected)
→round
Smooth w/ inclusions
diam ~80mm , B low (+)

Microspec - See graphs.

Floor - None - either fiber

Conclusions:

Repackaging: _____ Date: _____ Analyst: _____

IL 493-0430

C000317



Illinois State Police
Carbondale Laboratory

Case Number: S98-1498
Exhibit Number: 14
Operator: SMK

File: 1498s142z.ABS Fri Jun 05 13:52:59.35 1998 Scans: 100 Resolution: 8.0

Peak Report
File: C:\IRDATA\SCOPE\SMK1\1498S14Z.ABS
Title: File: 1498s142z Fri Jun 05 13:52:59.35 1998 Scans: 100 Resolution: 8.0
Filter: Three Point Center of Gravity

| cm-1 | ABS | cm-1 | ABS |
|---|---|---|---|
| 3323.3985 | 0.1213 | 2941.5400 | 0.4396 | 2859.5982 | 0.5447 |
| 1732.1010 | 0.1918 | 1640.8869 | 0.1153 | 1598.8320 | 0.1214 |
| 1539.1519 | 0.3037 | 1472.2709 | 0.1128 | 1413.4643 | 0.1322 |
| 1370.3781 | 0.2664 | 1312.7339 | 0.1716 | 1223.6166 | 0.3541 |

3323.3985
2941.5400
2859.5982
1732.1010
1640.8869
1598.8320
1539.1519
1472.2709
1413.4643
1370.3781
1312.7339
1223.6166
1111.9297
997.3506

ID - Spandex (lycra)
SMK 6-5-98

C000318



Illinois State Police
Carbondale Laboratory

Case Number: S98-1498
Exhibit Number: 12
Operator: SMK

Peak Report
File: c:\idata\scope\1498s12z.abs
Title: File: 1498s12z  Fri Jun 05 13:59:05.25 1998  Scans: 100  Resolution: 8.0
Filter: Three Point Center of Gravity

| cm-1 | ABS | cm-1 | ABS | cm-1 | ABS |
|---|---|---|---|---|---|
| 3323.7965 | 0.1669 | 2941.2310 | 0.4746 | 2858.5309 | 0.6124 |
| 1732.0898 | 0.2321 | 1641.0184 | 0.1914 | 1596.2283 | 0.1886 |
| 1538.4705 | 0.3299 | 1472.1067 | 0.1325 | 1412.7243 | 0.1435 |
| 1370.4983 | 0.2451 | 1311.0571 | 0.1822 | 1223.7529 | 0.3654 |

File: 1498s12z  Fri Jun 05 13:59:05.25 1998  Scans: 100  Resolution: 8.0

ID Spandex (lycra)
SMK 6-5-98

C000319



C000320





Absorbance/Nanometers

Files =    Mean    S1498DV1    S1498DV2

S1498DV2   Comment:stdev2   Resolution:2 nm   Taken: 8/10/98  11:08 AM

S98-1498 - SPANDEX

STD DEV 2 EX. 14

MEAN EX. 12

STD DEV 1 EX. 14

Print

SmK
6-10-98

C000322



Absorbance/Nanometers

Files =    1498SSD1    1498SSD2    1498MN2

1498MN2   Comment:Mean   Resolution:2 nm   Taken: 6/9/98   10:23 AM

S98-1498

STD DEV 2 EX. 14

MEAN EX. 12

STD DEV 1 EX. 14

Print

C000323 - - - -

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: _6-3-98_                     Case No.: _558-1498_

Exhibit/Item: #12A  Debris from black stocking piece

Source/Date Received: Spfld - Reg Mail - 4-3-98

Description of Package: 1 coin env. sld BET

Description of Markings as Received: same Lab

Laboratory Marks: SMK

Laboratory Examination:

1 taping - obs- hairs, fibers, soil part, bot. mat.
              + misc debris
  ↳ AH's, CH's (body), 1 NH frag - UBPO
                          < 1/16 in
                   Prmnt  1 (1x3)
                   Slide

Conclusions:

Repackaging: _Sld YET_          Date: _6-4-98_     Analyst: _SMK_

IL 493-0430                                    C000324____3

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: _6-3-98_                                    Case No.: _S98-1498_

Exhibit/Item: #14A _Debris from black stocking_
Source/Date Received: _Spfld Lab Reg. Mail - 4-8-98_
Description of Package: _1 coin env sld SET_
Description of Markings as Received: _LAB_
Laboratory Marks: _SMK_
Laboratory Examination:

_2 tapings - obs - hairs, fibers, soil part. misc debris_
_PLM_          _(poss burnt debris)_
_AH's, CH's (body)_
_No Neg_

Conclusions:

Repackaging: _Sld SET_          Date: _6-4-98_          Analyst: _SMK_

IL 493-0430                                    C000325    96)

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: 6-4-98                          Case No.: S98-1498

Exhibit/Item: #19A - Debris from 1 pr. of tennis shoes (UNDS)
(Victim's)

Source/Date Received: Spfld Lab - Reg Mail - 4-3-98

Description of Package: 1 coin env. sld PET

Description of Markings as Received: Lab

Laboratory Marks: SmK

Laboratory Examination:

2 tapings - obs - hairs, fibers, soil part, bst/mat +

PLM / AH's, CH's (inc. poss Lead) misc. debris (poss burnt Ashes)

No drug.

Conclusions:

Repackaging: Sld PET                Date: 6-4-98        Analyst: SmK

IL 493-0430                                                    C000326

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: 6-3-98                     Case No.: S98-1498

Exhibit/Item: #32A → 36A   Debris from V's clothing

Source/Date Received: Spfld Lab - Reg Mail - 4-3-98

Description of Package: 5 coin env's Sld RET

Description of Markings as Received: LAB

Laboratory Marks: SMK

Laboratory Examination:

#32A - Debris from one pair of Levi jeans
    4 tapings - obs - hairs, fibers, misc debris
        PLM (                              (poss ashes)
            > AH's, CBH (eyebrow)
        No Neg.

#33A - Debris from Lg. gray jacket
    - 3 taping - obs - hairs, fibers, soil part, + misc debris
    (3cut)                                    (poss ashes)
    (1 in)          PLM > AH's CH's (poss head)
            1 NBH - frag - permed 1 (1X3) slide
            recovered from taping marked inside

#34A - Debris from white socks
    2 tapings - obs - hairs, fibers, soil part, bot mat, misc
                                                        debris
            > AH's, CH's (body), No Neg

Conclusions:
                            Cont.

Repackaging: Sld RET         Date: 6-4-98     Analyst: SMK

IL 493-0430                                    C000327

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Forensic Sciences Command

## LABORATORY WORKSHEET

Date Examined: _6-3-98_                    Case No.: _S98-1498_

Exhibit/Item: #32A → 36A Cont.

Source/Date Received:

Description of Package:                         Prev. Notes

Description of Markings as Received:

Laboratory Marks:

Laboratory Examination:

#35A - Debris from one pc. of jockey underwear
1 taping - obs- hairs, fibers, misc debris
PLM → AH's, CH's (poss. head + body) (burnt ashes)
No Neg.

#36A - Debris from long sleeve green shirt
4 tapings - obs- hairs, fibers, soilpart(s), misc debris
PLM → AH's, CH's (body + poss head) (burnt ashes)
No Neg.

Conclusions:

Repackaging: _Sld YET_          Date: _6-4-98_     Analyst: _Smk_

IL 493-0430                                        C000328

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: _6-4-98_          Case No.: _S98-1498_

Exhibit/Item: _#38   Taping of Drivers seat_

Source/Date Received: _Spfld Lab - Reg. Mail   4-3-98_

Description of Package: _1 small Man. env. Sld RET_

Description of Markings as Received: _Agency - Lab_

Laboratory Marks: _SMK_

Laboratory Examination:

_1 White P.P. Sld RET - Broke seal_

_1 taping - o/s - hairs, fibers, soil part, bctmat,_
_+ misc debris_
_(poss food part)_

_Wt_
_mnt_
_AH's, CH's, 2 NH's - UBPO_
_very small tips_

_replaced on tape_

Conclusions:

Repackaging: _Sld YET_          Date: _6-4-98_          Analyst: _SMK_

IL 493-0430

C000329    /96

# ILLINOIS STATE POLICE
### Division of Forensic Services
### Forensic Sciences Command

## LABORATORY WORKSHEET

Date Examined: 6-4-98                              Case No.: S98-1498

Exhibit/Item: #41 - hairs from driver door area

Source/Date Received: Spfld Lab - Reg Mail - 4-3-98

Description of Package: 1 BPE sld RET

Description of Markings as Received: agency - lab

Laboratory Marks: SMK

Laboratory Examination:

1. W.P.P. sld RET - broke seal.

2 hairs + misc debris

Wt mnt   1 AH - poss dog or cat

1 CHH - taper tip

lt to med brwn

~3½ -> 4 in long

Conclusions:

Repackaging: Sld RET                    Date: 6-4-98        Analyst: SMK

IL 493-0430                                    C000350

**ILLINOIS STATE POLICE**
Division of Forensic Services
Forensic Sciences Command

**LABORATORY WORKSHEET**

Date Examined: _6-4-98_                                   Case No.: _S98-1498_

Exhibit/Item: _#45    HHS from Dedric Moore_

Source/Date Received: _Spfld Lab via Reg. Mail    4-3-98_

Description of Package: _1 coin env. sld R+BET_

Description of Markings as Received: _agency - Lab_

Laboratory Marks: _SMK_

Laboratory Examination:

_Not Examined_

Conclusions:

Repackaging: _Same_                    Date: _____    Analyst: _Scott_

IL 493-0430                                                          C000331




# ILLINOIS STATE POLICE
### Division of Forensic Services
### Forensic Sciences Command

## LABORATORY WORKSHEET

Date Examined: _6-4-98_                                    Case No.: _S98-1498_

Exhibit/Item: #50  HHS from Lori Hansen

Source/Date Received: Reg Mail, Spfld Lab, 4-3-98

Description of Package: 1 man. env. sld R+B ET

Description of Markings as Received: Agency - Lab

Laboratory Marks: SMK

Laboratory Examination:

Not Examined

Conclusions:

Repackaging: _____    Date: _____    Analyst: _SMK_

IL 493-0430                                              C000332      96)

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | NO:   98-CF-1558 |
| | ) | |
| DEDRIC MOORE | ) | |
| Defendant. | ) | |

JAN 2 5 1999

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## MOTION TO COMPEL THE TAKING OF PHOTOGRAPHS
## OF DEFENDANT'S FACE AND OPEN MOUTH AND TEETH

NOW COME the People of the State of Illinois by Heidi Ladd, Assistant State's Attorney in and for the County of Champaign, State of Illinois, and pursuant to Supreme Court Rule 413(a) of the Illinois Supreme Court Rules moves this Honorable Court to order the defendant to submit to the taking of photographs.   In support of said motion, the People respectfully state:

1.  THAT the defendant has been charged by indictment with multiple offenses including Attempt (First Degree Murder), Aggravated Arson and Home Invasion.

2.  THAT evidence collected during the course of this investigation of these offenses contains photographs recovered from a bank drive-up video connected to the use of the victim's stolen bank cards.

3.  THAT the defendant's photograph is needed to conduct comparison said evidence.

WHEREFORE, the People pray that this Honorable Court enter an Order directing the defendant to permit the taking of photographs of his face and open mouth and teeth.

Respectfully submitted,
JOHN C. PILAND
State's Attorney for Champaign County

By: _____
Heidi Ladd
Assistant State's Attorney

C000333

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | |
|---|---|
| **THE PEOPLE OF THE STATE OF ILLINOIS,** ) | |
| **Plaintiff,** ) | |
| **-vs-** ) | **NO: 98-CF-1558** |
| ) | |
| **DEDRIC MOORE,** ) | |
| **Defendant.** ) | |

JAN 25 1999

### MOTION TO COMPEL THE TAKING OF HANDWRITING EXEMPLARS

NOW COME the People of the State of Illinois by Heidi Ladd, Assistant State's Attorney in and for the County of Champaign, State of Illinois, and pursuant to Supreme Court Rule 413(a) of the Illinois Supreme Court Rules moves this Honorable Court to order the defendant to submit to the taking of handwriting exemplars.   In support of said motion, the People respectfully state:

1.  THAT the defendant herein has been charged by indictment with the offenses including Attempt (First Degree Murder), Aggravated Arson, Home Invasion, Aggravated Criminal Sexual Abuse and Residential Burglary.

2.  THAT evidence collected during the course of this investigation of these offenses contains material that must be analyzed further by the Illinois State Police Forensic Science Laboratory, including a note connected to the crime.

3.  THAT the defendant's handwriting exemplars are needed to conduct for scientific analysis and comparison on said evidence gathered in the investigation of said offenses.

WHEREFORE, the People pray that this Honorable Court enter an Order directing the defendant to permit the taking of handwriting exemplars.

Respectfully submitted,
JOHN C. PILAND
State's Attorney for Champaign County

By: _____
Heidi Ladd
Assistant State's Attorney

C000334

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No: 98-CF-1558 |
| | ) | |
| DEDRIC MOORE, | ) | |
| Defendant. | ) | |

**FILED**
SIXTH JUDICIAL CIRCUIT

JAN 2 6 1999

Linda S. Frerichs
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## MOTION TO CONTINUE

Now comes the People of the State of Illinois by Heidi Ladd, Assistant State's Attorney in and for the County of Champaign, State of Illinois, who moves this Honorable Court to grant a continuance in this case pursuant to 725 ILCS 5/103-5(c) and in support thereof, states as follows:

1. Dedric Moore is charged with the offenses of Home Invasion, Attempt (First Degree Murder), Aggravated Arson, Aggravated Criminal Sexual Abuse and Residential Burglary.

2. Evidence collected by police officers pursuant to this case investigation was submitted to the Illinois State Police Forensic Science Laboratory for forensic analysis, including DNA testing.

3. Due to increased demands on the resources of the State Police Laboratories, and due to the complexities of DNA analysis, the DNA testing has not been completed, but there are reasonable grounds to believe that the results may be obtained at a later day.

4. The DNA testing of evidence is evidence material to the case for both the defendant and the State.

5. The State has exercised without success due diligence to obtain the results of this DNA testing.

WHEREFORE, the State moves this Honorable Court to grant a continuance of this case for not more than 120 days in addition to the 120 days the State is entitled to have to bring the defendant to trial.

Respectfully submitted,

JOHN C. PILAND
State's Attorney for Champaign County

by: _____
Heidi Ladd
Assistant State's Attorney

C000335

STATE OF ILLINOIS       )
                          )   ss
CHAMPAIGN COUNTY, ILLINOIS  )

      Heidi Ladd, Assistant State's Attorney for Champaign County, Illinois, being first duly sworn deposes and states that she has read the foregoing Motion to Continue and that the same is true and accurate to the best of her knowledge and belief.

Subscribed and sworn to before me
this _____ day of _____ 1999.

CIRCUIT CLERK

C000336

**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT**
**CHAMPAIGN COUNTY, ILLINOIS**

| | | |
|---|---|---|
| **THE PEOPLE OF THE STATE OF ILLINOIS,** | ) | |
| Plaintiff, | ) | |
| | ) | |
| **vs.** | ) | No: 98-CF-1558 |
| | ) | |
| **DEDRIC MOORE,** | ) | |
| Defendant. | ) | |

FILED

SIXTH JUDICIAL CIRCUIT

JAN 26 1999

Linda S. Frobish
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## AFFIDAVIT IN SUPPORT OF MOTION TO CONTINUE

Heidi Ladd, being first duly sworn on oath, deposes and states as follows:

1. That she is employed as an Assistant State's Attorney for the Champaign County State's Attorney's Office.

2. On November 19, 1998, the Defendant, Dedric Moore, was indicted for the offenses of Home Invasion, Attempt (First Degree Murder), Aggravated Arson, Aggravated Criminal Sexual Abuse and Residential Burglary.

3. Heidi Ladd learned the following from conversations with Investigator Don Shepard of the Champaign Police Department and Kevin Zebb.

4. That the Champaign Police Department collected items of evidence from the investigation of this case, which contained potential serological evidence, and known serological samples of the defendant and other individuals; said items were subsequently transported to the Illinois State Police Forensic Science Laboratory for forensic analysis and DNA testing.

5. Kevin Zebb, Forensic Scientist at said laboratory, has reported that DNA testing is currently being conducted, but has not been completed, due to the demands for the resources of the State Police Laboratories, and the complexities of the DNA analysis.

Kevin Zebb further indicated that the testing should be completed within the next month.

6. The results of the DNA analysis and testing are material to both the defendant and the State in this case.

C000337

7. The State has exercised due diligence without success to obtain the results of this DNA testing.

Respectfully submitted,

JOHN C. PILAND
State's Attorney for Champaign County

By: _____

Heidi Ladd
Assistant State's Attorney

STATE OF ILLINOIS            )
                             )    ss
CHAMPAIGN COUNTY, ILLINOIS   )

Heidi Ladd, Assistant State's Attorney for Champaign County, Illinois, being first duly sworn on oath, deposes and states that she has read the above and foregoing Affidavit and that the same is true and accurate to the best of her knowledge and belief.

Subscribed and sworn to before me
this _____ day of _____, 1999.

_____
CIRCUIT CLERK

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | NO:  98-CF-1558 |
| | ) | |
| DEDRIC MOORE, | ) | |
| Defendant. | ) | |

**FILED**

JAN 2 8 1999

~indas S. Fra

CLERK OF THE CIRCUIT CO

## ORDER

This cause having been heard on the 28ᵀᴴ day of JANUARY , 1999, on the People's Motion for Production of Photographs, and the Court being fully advised:

IT IS HEREBY ORDERED that the defendant, Dedric Moore, permit the taking of photographs of his face and open mouth and teeth.

DATE: 1/28/99

ENTER: _____

JUDGE

C000339

E-FILED
Friday, 04 May, 2007  05:29:07 PM
Clerk, U.S. District Court, ILCD

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

FILED
SIXTH JUDICIAL CIRCUIT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | NO: 98-CF-1558     JAN 26 1999 |
| | ) | |
| DEDRIC MOORE, | ) | |
| Defendant. | ) | Linda S. Frerichs |

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

### AFFIDAVIT OF MAILING

Julie Ogle, being first duly sworn on her oath, deposes and states that she did, at the request of Heidi Ladd on the 26th day of January, 1999, deposit a true and accurate copy of the attached Notice of Hearing and a copy the of Motion to Compel to the Taking of Photographs of Defendant's Face and Open Mouth and Teeth and a copy of the Motion to Compel the Taking of Handwriting Exemplars filed January 25, 1999 and a copy of the Motion to Continue and Affidavit in Support of Motion to Continue filed January 26,1999, in the above-entitled cause in the U.S. Mail at the Post Office in Urbana, Illinois, in an envelope with sufficient postage attached to carry the same to its destination to the following named person at the address below:

Diana Lenik, Attorney at Law, 202 W. Green Street, Urbana, IL (mailed + faxed)


_(signature)_

Subscribed and Sworn to Before Me
this 26th day of January, 1999

_(signature)_
NOTARY PUBLIC

OFFICIAL SEAL
VIRGINIA ANN KIETZMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/6/02

C000340

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS,<br>Plaintiff, | )<br>)<br>) |
| vs. | )<br>) No: 98-CF-1558 |
| DEDRIC MOORE,<br>Defendant. | )<br>)<br>) |

SIXTH JUDICIAL CIRCUIT

JAN 2 6 1999

*Linda S. Frank*
CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## NOTICE OF HEARING

TO:  Diana Lenik
     Attorney at Law
     202 W. Green Street
     Urbana, IL 61801

Dear Diana:

The above-captioned case has been set for Hearing on Motions on Thursday, January 28, 1999 at 9:00 am in Courtroom "F" of the Champaign County Courthouse.

It will be your duty to appear in the Circuit Courtroom "F" in the Courthouse, 101 E. Main Street, Urbana, Illinois, at that time ready for Hearing on Motions.

Respectfully submitted,

JOHN C. PILAND
State's Attorney for Champaign County

by:   Heidi Ladd
      Lead Prosecutor

C000341

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | JAN 2 5 1999 |
| -vs- | ) | NO:   98-CF-1558 |
| | ) | |
| DEDRIC MOORE | ) | |
| Defendant. | ) | CLERK OF THE CIRCUIT CT. |

## MOTION TO COMPEL THE TAKING OF PHOTOGRAPHS
## OF DEFENDANT'S FACE AND OPEN MOUTH AND TEETH

NOW COME the People of the State of Illinois by Heidi Ladd, Assistant State's Attorney in and for the County of Champaign, State of Illinois, and pursuant to Supreme Court Rule 413(a) of the Illinois Supreme Court Rules moves this Honorable Court to order the defendant to submit to the taking of photographs.   In support of said motion, the People respectfully state:

1. THAT the defendant has been charged by indictment with multiple offenses including Attempt (First Degree Murder), Aggravated Arson and Home Invasion.

2. THAT evidence collected during the course of this investigation of these offenses contains photographs recovered from a bank drive-up video connected to the use of the victim's stolen bank cards.

3. THAT the defendant's photograph is needed to conduct comparison said evidence.

WHEREFORE, the People pray that this Honorable Court enter an Order directing the defendant to permit the taking of photographs of his face and open mouth and teeth.

Respectfully submitted,
JOHN C. PILAND
State's Attorney for Champaign County

By: _____
Heidi Ladd
Assistant State's Attorney

C000342

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | NO:   98-CF-1558 |
| | ) | |
| DEDRIC MOORE, | ) | |
| Defendant. | ) | |

SIXTH JUDICIAL CIRCUIT

JAN 2 5 1999

## MOTION TO COMPEL THE TAKING OF HANDWRITING EXEMPLARS

NOW COME the People of the State of Illinois by Heidi Ladd, Assistant State's Attorney in and for the County of Champaign, State of Illinois, and pursuant to Supreme Court Rule 413(a) of the Illinois Supreme Court Rules moves this Honorable Court to order the defendant to submit to the taking of handwriting exemplars.   In support of said motion, the People respectfully state:

1.  THAT the defendant herein has been charged by indictment with the offenses including Attempt (First Degree Murder), Aggravated Arson, Home Invasion, Aggravated Criminal Sexual Abuse and Residential Burglary.

2.  THAT evidence collected during the course of this investigation of these offenses contains material that must be analyzed further by the Illinois State Police Forensic Science Laboratory, including a note connected to the crime.

3.  THAT the defendant's handwriting exemplars are needed to conduct for scientific analysis and comparison on said evidence gathered in the investigation of said offenses.

WHEREFORE, the People pray that this Honorable Court enter an Order directing the defendant to permit the taking of handwriting exemplars.

Respectfully submitted,
JOHN C. PILAND
State's Attorney for Champaign County

By: _____
Heidi Ladd
Assistant State's Attorney

C000343

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | **FILED** |
| Plaintiff, | ) | SIXTH JUDICIAL CIRCUIT |
| | ) | |
| vs. | ) No: 98-CF-1558 | JAN 2 6 1999 |
| | ) | |
| DEDRIC MOORE, | ) | Linda S. Frye |
| Defendant. | | CLERK OF THE CIRCUIT COURT CHAMPAIGN COUNTY, ILLINOIS |

## MOTION TO CONTINUE

Now comes the People of the State of Illinois by Heidi Ladd, Assistant State's Attorney in and for the County of Champaign, State of Illinois, who moves this Honorable Court to grant a continuance in this case pursuant to 725 ILCS 5/103-5(c) and in support thereof, states as follows:

1. Dedric Moore is charged with the offenses of Home Invasion, Attempt (First Degree Murder), Aggravated Arson, Aggravated Criminal Sexual Abuse and Residential Burglary.

2. Evidence collected by police officers pursuant to this case investigation was submitted to the Illinois State Police Forensic Science Laboratory for forensic analysis, including DNA testing.

3. Due to increased demands on the resources of the State Police Laboratories, and due to the complexities of DNA analysis, the DNA testing has not been completed, but there are reasonable grounds to believe that the results may be obtained at a later day.

4. The DNA testing of evidence is evidence material to the case for both the defendant and the State.

5. The State has exercised without success due diligence to obtain the results of this DNA testing.

WHEREFORE, the State moves this Honorable Court to grant a continuance of this case for not more than 120 days in addition to the 120 days the State is entitled to have to bring the defendant to trial.

Respectfully submitted,

JOHN C. PILAND
State's Attorney for Champaign County

by: _____
Heidi Ladd
Assistant State's Attorney

C000344

STATE OF ILLINOIS                    )
                                     )     ss
CHAMPAIGN COUNTY, ILLINOIS    )

    Heidi Ladd, Assistant State's Attorney for Champaign County, Illinois, being first duly sworn deposes and states that she has read the foregoing Motion to Continue and that the same is true and accurate to the best of her knowledge and belief.

_____

Subscribed and sworn to before me

this _____ day of _____, 1999.

_____
CIRCUIT CLERK

C000345

# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

| | |
|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, ) | |
| Plaintiff, ) | |
| ) | JAN 2 6 1999 |
| vs. ) | No: 98-CF-1558 |
| ) | |
| DEDRIC MOORE, ) | CLERK OF THE CIRCUIT COURT |
| Defendant. ) | CHAMPAIGN COUNTY, ILLINOIS |

## AFFIDAVIT IN SUPPORT OF MOTION TO CONTINUE

Heidi Ladd, being first duly sworn on oath, deposes and states as follows:

1. That she is employed as an Assistant State's Attorney for the Champaign County State's Attorney's Office.

2. On November 19, 1998, the Defendant, Dedric Moore, was indicted for the offenses of Home Invasion, Attempt (First Degree Murder), Aggravated Arson, Aggravated Criminal Sexual Abuse and Residential Burglary.

3. Heidi Ladd learned the following from conversations with Investigator Don Shepard of the Champaign Police Department and Kevin Zebb.

4. That the Champaign Police Department collected items of evidence from the investigation of this case, which contained potential serological evidence, and known serological samples of the defendant and other individuals; said items were subsequently transported to the Illinois State Police Forensic Science Laboratory for forensic analysis and DNA testing.

5. Kevin Zebb, Forensic Scientist at said laboratory, has reported that DNA testing is currently being conducted, but has not been completed, due to the demands for the resources of the State Police Laboratories, and the complexities of the DNA analysis.

Kevin Zebb further indicated that the testing should be completed within the next month.

6. The results of the DNA analysis and testing are material to both the defendant and the State in this case.

7. The State has exercised due diligence without success to obtain the results of this DNA testing.

<div align="right">

Respectfully submitted,

JOHN C. PILAND
State's Attorney for Champaign County

</div>

By: _____
      Heidi Ladd
      Assistant State's Attorney

STATE OF ILLINOIS         )
                          )  ss
CHAMPAIGN COUNTY, ILLINOIS  )

Heidi Ladd, Assistant State's Attorney for Champaign County, Illinois, being first duly sworn on oath, deposes and states that she has read the above and foregoing Affidavit and that the same is true and accurate to the best of her knowledge and belief.

_____

Subscribed and sworn to before me

this _____ day of _____, 1999.

_____
CIRCUIT CLERK

C000347



## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS,  )
                            Plaintiff,  )
                                        )   NO:  98-CF-1558
-vs-                                    )
                                        )
DEDRIC MOORE,                           )
                       Defendant.       )

**FILED**

JAN 28 1999

Lindoo S. Ers

CLERK OF THE CIRCUIT CH
Y.XT.. SUDIUS ..TH

### ORDER

This cause having been heard on the 28TH day of January, 1999, on the People's Motion to Compel the Taking of Handwriting Exemplars, and the Court being fully advised:

IT IS HEREBY ORDERED that the defendant, Dedric Moore, permit the taking of samples of his handwriting exemplars.

DATE: 1/28/99

ENTER: _____
                    JUDGE

C000348




# IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS,        )
                            Plaintiff,        )

 -vs-        )    NO:  98-CF-1558

                                      )

DEDRIC MOORE,        )
                          Defendant.        )

JAN 29 1999

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

## AFFIDAVIT OF MAILING

Julie Ogle, being first duly sworn on her oath, deposes and states that she did, at the request of

Heidi Ladd on the 28th day of January, 1999, deposit a true and accurate copy of the attached Orders,

in the above-entitled cause in the U.S. Mail at the Post Office in Urbana, Illinois, in an envelope with

sufficient postage attached to carry the same to its destination to the following named person at the

address below:


Diana Lenik, Attorney at Law, 202 W. Green Street, Urbana, IL


Subscribed and Sworn to Before Me
this 28th day of January, 1999

NOTARY PUBLIC

OFFICIAL SEAL
VIRGINIA ANN KIETZMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/6/02



**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS**

THE PEOPLE OF THE STATE OF ILLINOIS,    )
                     **Plaintiff,**    )
   -vs-                        )  NO:  98-CF-1558
                                 )
DEDRIC MOORE,                    )
                 **Defendant.**    )

### ORDER

This cause having been heard on the 28TH day of JANUARY, 1999, on the People's

Motion for Production of Photographs, and the Court being fully advised:

IT IS HEREBY ORDERED that the defendant, Dedric Moore, permit the taking of photographs of

his face and open mouth and teeth.

DATE: 1/28/99                ENTER: _____
                                          JUDGE

**IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT**
**CHAMPAIGN COUNTY, ILLINOIS**

THE PEOPLE OF THE STATE OF ILLINOIS, )
                               Plaintiff, )

  -vs- )  NO:  98-CF-1558
                                       )

DEDRIC MOORE, )
                           Defendant. )

## ORDER

This cause having been heard on the 28 TH day of January, 1999, on the People's Motion to Compel the Taking of Handwriting Exemplars, and the Court being fully advised.

IT IS HEREBY ORDERED that the defendant, Dedric Moore, permit the taking of samples of his handwriting exemplars.

DATE: 1/28

ENTER: _____
                             JUDGE

C000351

IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
CHAMPAIGN COUNTY, ILLINOIS

| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| -vs- | ) | NO: 98-CF-1558 |
| | ) | |
| DEDRIC T. MOORE, | ) | |
| Defendant. | ) | |

**FILED**
SIXTH JUDICIAL CIRCUIT

FEB 2 3 1999

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

### AFFIDAVIT OF MAILING

Julie Ogle, being first duly sworn on her oath, deposes and states that she did, at the request of Heidi Ladd, on the 23rd day of February, 1999, deposit a true and accurate copy of the attached Supplemental Discovery and reports in the above-entitled cause in the U.S. Mail at the Post Office in Urbana, Illinois, in an envelope with sufficient postage attached to carry the same to its destination to the following named person at the address below:

Diana Lenik, Attorney at Law, 202 W. Green Street, Urbana, IL

Subscribed and Sworn to Before Me
this 23rd day of February, 1999

NOTARY PUBLIC

**OFFICIAL SEAL**
VIRGINIA ANN KIETZMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 3/6/02

C000352

## IN THE CIRCUIT COURT OF THE SIXTH JUDICIAL CIRCUIT
## CHAMPAIGN COUNTY, ILLINOIS

THE PEOPLE OF THE STATE OF ILLINOIS,          )
                             Plaintiff,          )

  -vs-          )   No: 98-CF-1558
                                     )

DEDRIC T. MOORE,          )
                         Defendant.          )

**FILED**
SIXTH JUDICIAL CIRCUIT

FEB 2 3 1999

CLERK OF THE CIRCUIT COURT
CHAMPAIGN COUNTY, ILLINOIS

### SUPPLEMENTAL DISCOVERY

Now come the People of the State of Illinois by JOHN C. PILAND, State's Attorney of and for the

County of Champaign, State of Illinois, and in answer to defendant's motion for discovery respectfully

provide the following additional information:

    1. Pursuant to Supreme Court Rule 412(a)(1) the People provide the following names and last

known addresses of persons who the People intend to call as witnesses:

> Officer Karen Anglin, Champaign County Correctional Center, Urbana, IL
> Officer Anthony Carpenter, Champaign County Correctional Center, Urbana, IL
> Officer Thomas Tarr, Champaign County Correctional Center, Urbana, IL
> William Frank, Illinois State Police Forensic Science Laboratory, 2040 Hill Meadows
>     Drive, Springfield, IL
> Kim Barker, previously tendered in discovery, is Kim Baker, Bank One, Champaign, IL
> Dena Sawka, RN, Covenant Medical Center, 1400 W. Park Street, Urbana, IL
> Kolandaivelu Parasakthi, MD, Covenant Medical Center Emergency Room, 1400 W. Park,
>     Urbana, IL
> Officer Charles Webber, Champaign Fire Department, 307 S. Randolph, Champaign, IL
> Lt. Eddie Bain, Champaign Fire Department, 307 S. Randolph, Champaign, IL
> Cory Haines, METCAD, 1905 E. Main Street, Urbana, IL
> Dorothy Cummings, previously listed in discovery, resides at 705 ½ West Springfield,
>     Champaign, IL
> Officer Randall Cunningham, Champaign Police Department, Champaign, IL
> Officer Richard Feeney, Champaign County Correctional Center, Urbana, IL
> Sgt. Jim Summers, Champaign Police Department, Champaign, IL
> Dale Grimm, Arrow Ambulance, 210 E. University Avenue, Champaign, IL
> K. Ellis, MD, McKinley Health Center, 1109 S. Lincoln Avenue, Urbana, IL

    2. On or about the 25th day of February, 1998, the defendant made oral statements witnessed by

Lori Hansen, the substance of which is contained in the report of Timothy Atteberry, a true and accurate

copy of which is attached hereto.

3. On or about February 23, 1998 through February 25, 1998, the defendant made oral statements witnessed by Jennifer Stevens, the substance of which is contained in the report of Don Shepard, a true and accurate copy of which is attached hereto.

4. On or about the 9th day of March, 1998, the defendant made oral statements witnessed by Joe Gallo and Brad Yohnka, the substance of which is contained in the report of Joe Gallo, previously tendered in Discovery filed December 4, 1998.

5. Reports, affidavits and statements of experts in connection with this case are attached hereto. Any notes, charts, and/or documents pertaining to these reports may be viewed upon reasonable request to the Office of the State's Attorney.

6. The People have items of physical evidence which they may introduce at trial as set forth in the attached reports. These items may be inspected by defense counsel upon reasonable request to the Office of the State's Attorney.

7. The People have the following items of physical evidence: cassette tape(s); transcripts; rug samples; handwriting exemplars; resident request forms and documents; paper(s). These items may be inspected by defense counsel upon reasonable request to the Office of the State's Attorney.

Respectfully submitted,

JOHN C. PILAND
State's Attorney for Champaign County

By: _____
Heidi Ladd
Lead Prosecutor

 1 of 4

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98  0300 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempted Murder | 512 S. ~~Elm St.~~  *NEW  ST.*  (~~4/A~~) |

Officers were dispatched to a possible burglary with smoke coming from the apartment at 510 S. New St.

Officer Martin and I were the first officers on scene, and noticed that there were flames visible in the front window of 512 S. New St.  There were several persons in the yard in front of 512 S. New St., and we initiated contact with these persons.

A female, later learned to be the victim, Lori, approached me and advised that she was unaware of whether 512 1/2 (attached to 512 S. New St. as a duplex) S. New St. was occupied.

I advised METCAD that we needed CFD for an involved fire, and then I attempted to contact anyone inside of 512 1/2, with no answer to my knocking.

While waiting for CFD's arrival, I asked Lori what part of her apartment was burning, and how it started.  Lori exclaimed that "everything that he poured gas on and lit is on fire".

I asked Lori who had done this and she said that the guy who had beaten her had set fire to her apartment.

I began conducting a preliminary interview with Lori.  I asked her very basic questions regarding this incident and Lori provided me with the following:

An unknown B/M forced his way into her home and asked for "Chad and Eric". Lori told him that she didn't know who he was talking about.  The suspect "beat the shit out of" her, tied her up, "pissed" on her head, stole the keys to her truck (as well as an item with her mother's name and address and a house key to her mother's home).  The suspect then set fire to her apartment, while she was inside, tied up.

Lori provided the following description of the suspect:

B/M wearing a large, red jacket with a hood, and blue jeans.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | |

C000355



# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency, and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98 0300 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempted Murder | 512 S. Elm St. *NEW ST.* (7.1.6.) |

Lori advised that her vehicle was stolen by the suspect and provided the following description of her vehicle: 1994, grey, Toyota pick-up truck with IL (B-truck) plate: 1459JD, and two bumper stickers: "Hum" printed on one, and a picture of several mice on the other.

I provided this information to METCAD, and other units. I then notified Lt. Gamble that an on-call detective would need to be called out. Det. Don Shepard responded.

CFD arrived and took control of the scene. The flames were coming through the west-facing living room window as CFD arrived.

Arrow ambulance arrived, and Lori was taken to the ambulance, where she was evaluated for injury. Arrow Ambulance crew took Lori's clothing from her, as it was saturated with an unidentified accelerant. Arrow ambulance crew turned Lori's clothing over to Sgt. Summers; Sgt. Summers turned the single bag containing Lori's clothing over to me; I turned the bag of clothing over to Officer Bunyard.

Officer Shipley then met with Lori, in the ambulance while still on the scene. He initiated an interview with Lori, and rode in the ambulance to Covenant E.R. with her.

I next conferred with other officers on the scene, learning that Officers Karbach and Staples had conducted canvass interviews with the tenants of the next building to the south, and had spoken to the residents of 512 1/2 S New St.

As CFD was clearing their gear and personnel from the scene, Officer Karbach and I hung crime scene tape around the perimeter of the scene.

I advised Officers to wait until Det. Don Shepard was on scene, along with Eddie Bain (CFD), before any officers entered the scene.

Officer Caudill arrived to collect evidence and photograph the scene.

Det. Shepard arrived, and I briefed him.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | |

CD00035b

3 of 4

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98 0300 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempted Murder | 512 S. ~~Elm St.~~ *NEW ST.* (*typo*) |

I next spoke with the residents of 510 S. ~~Elm~~ *NEW*, who Lori had contacted, after she had escaped from her home, and asked to call 9-1-1. The residents of 510 S. ~~Elm~~ *NEW* are Bob, David, and Beverly.

Bob told me that he was asleep when Lori came over to their back door, knocking and screaming. Bob said that Lori was yelling to call 9-1-1, saying call the police and fire department. Bob did call 9-1-1 for Lori.

Bob then went to Lori's home and assisted her in her efforts to rescue her two cats. Bob said that they heard the cats in the bedroom, and Bob threw a log through the bedroom window. Bob said that he also propped the back, screen door open with a planter from Lori's back porch.

Bob said that after he threw the log through Lori's window, Lori put her head in the window frame, but did not try to climb through the window.

There was blood visible in the exterior ledge of this window, where Lori apparently cut herself while looking through the broken window.

David said that he was asleep on the sofa when Lori came over and awakened him. David said that he answered the back door when Lori came over, and he hollered to Bob to call 9-1-1, which he did. David said that Lori was pulling tape "off of her head" as he answered the door.

I asked David where the tape was, that she had pulled from her head. David showed me where Lori was when she pulled the tape off, and then he pointed to a piece of masking tape and identified that as the tape that Lori had pulled off.

The tape was in the grass approximately two feet from the back of David and Bob's back porch. I notified Officer Caudill of the tape, and he photographed it and collected it.

David advised me that after Lori had awakened them, and requested that they call 9-1-1, she had then returned to her home and entered through her back door, attempting to save her cats. David said that she quickly came back out, coughing.

Beverly could not provide any additional information about this incident.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | |

C000357

4/4

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD
and is loaned to you or your agency, it and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98 0259 | 02/25/98 0300 | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| Attempted Murder | 512 S. ~~Elm St.~~ NEW ST. (~~x~~ Pl.) |

All mentioned a previous neighbor named Charles, who had caused a lot of
problems in the area a year or so ago. All three also mentioned that Lilly, who
lives at 512 1/2 S. New St., has a grandson, name unknown, who has been the
source of increased foot traffic and order maintenance problems in the area.
They all believed that Lilly's grandson stayed with her from time to time, but did
not actually live with her.

David also mentioned that Lilly had told him, on this date, that she had just
returned from a trip to Texas and Mississippi, visiting relatives.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | BADGE/ID NO. | DATE |
|---|---|---|---|
| | | 761 | 02/25/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | BADGE/ID NO. | DATE |
| T. Atteberry | | 904 | 02/25/98 |

C000358

DEC 0 1 1998

# CHAMPAIGN POLICE DEPARTMENT - MULTIPLE WITNESS

_____ OF _____

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | DATA CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 2-25-98 | 11-27-98 | 798-2383 | |

| NAME LAST FIRST MIDDLE | RACE | SEX | DOB | EMPLOYER/SCHOOL |
|---|---|---|---|---|
| Doyle Barbara | W | F | 012957 | First of America Bank (National City) |
| ADDRESS 1771 W. Kirby | HOME PHONE | | | WORK PHONE 363-4073 |
| Baker Kim D | W | F | 012168 | BankOne Corp. Security |
| ADDRESS 111 Monument circle suite 4054  Indianapolis IN 46277 | HOME PHONE | | | WORK PHONE (317) 321-7894 |
| Brooks Jo E | W | F | 071561 | First Midwest Bank |
| ADDRESS 812 W. Springfield | HOME PHONE | | | WORK PHONE 379-7607 |

WITNESS

| SIGNATURE | BADGE I34 | DATE 11-27-98 | APPROVED (SUPERVISOR) | BADGE | DATE |
|---|---|---|---|---|---|

C000359

# SUPPLEMENTARY/CONTINUATION REPORT

This document contains neither recommendations or conclusions of the CPD. It is the property of CPD and is loaned to you or your agency. It and it's contents are not to be distributed by you or outside your agency.

| DATE AND TIME OF ORIGINAL REPORT | DATE AND TIME OF THIS REPORT | CONTROL NUMBER | CASE NUMBER |
|---|---|---|---|
| 02/25/98  0259 HR | 12/01/98  1300 HR | 798-2383 | |

| CLASSIFICATION | LOCATION |
|---|---|
| HOME INVASION | 512 S. NEW #A |

I obtained a written medical release form from the victim, Lori Hansen. I have attached it to this report, along with the medical records for her treatment of this incident. There were records from Covenant Hospital and McKinley Medical Center.

I have also obtained a copy of the Fire Department's reports and the Ambulance run report. They are also attached to this report.

I spoke to Jennifer Stevens again on 11/24/98 in the company of Detective Charles Shepard. He had initially interviewed her about this case. She was the girlfriend to the suspect (Dedric Moore) at the time of this incident. She came in to CPD today and provided a taped statement. I have entered the tape into evidence at CPD and attached the transcript to this report. See the transcript for details.

I have also attached a letter that I received in the mail today from the insurance company that handled the claim of the fire.

I am forwarding this report to the state's attorney's office to be placed with the case.

| REFERRAL CASE NUMBERS | SIGNATURE REPORTING OFFICER | | BADGE/ID NO. | DATE |
|---|---|---|---|---|
| | | | 7I97 | 12/01/98 |
| DATA ENTRY BY | APPROVED (SUPERVISOR) | | BADGE/ID NO. | DATE |
| DET. D. SHEPARD | | | | C000360 |



798-2383

**Covenant Medical Center**
1400 West Park Street
Urbana, Illinois 61801

## RECORD OF EMERGENCY CARE
#591450G (REV. 9/91)

WHITE - MED. RECORDS    YELLOW - BUSINESS    PINK - ED    ☐ ED1    ☐ ED2

| REG. # | NAME LAST | FIRST | MI | DATE | TIME | D.O.B. | AGE |
|---|---|---|---|---|---|---|---|
| 50981282 | HANSEN, LORI | K | | 02/25/98 | 0353 | 04/10/69 | 28 |

| SEX F | RACE W | MARITAL STATUS S | INSURANCE SELF | RELATIVE NOTIFIED | POLICE NOTIFIED |
|---|---|---|---|---|---|
| | | | | HERE | HERE UPD 772 |

| ATTENDING MD NONE Dr. Savage | EDMD Parasakthi, Kolandai | REFERRAL MD | ☐ ALS ☐ ILS ☐ BLS  AMB-ARROW |
|---|---|---|---|
| | | | MODE OF ARRIVAL: |

| TRIAGE TIME 0353 | CHIEF COMPLAINT Mult. injuries | ALLERGIES PCN | TETANUS STATUS |
|---|---|---|---|

| BP 115/61 | P 124 | R 22 | LMP 2/98 | WT 126 | CURRENT MEDS None |
|---|---|---|---|---|---|

INTERVENTIONS _____ Trauma

NRS. DIAG. _____ mult. injuries

PERTINENT MEDICAL HISTORY _____ minor problems

SMOKER ☒ YES ☐ NO  AMT. 1pk/d    TRIAGE SIGNATURE

TIME 0353  NURSING ASSESSMENT
Pt presents to ED per _____ ambulance after
her home was broken into & set on fire - pt was assaulted by
unknown male - pt states her ankle & wrists were bound &
"twine like rope" - pt was also choked & same material - pt states
she was repeatedly kicked about body - pt was urinated on
her head - pt states she placed her pen & in her mouth but was
not otherwise sexually assaulted - pt states he set her duplex
on fire - pt has multiple bruises & abrasion to upper back
& R shoulder - abrasion & bruising to R elbow & upper arm

PULSE OX 99% FIO2 O2 2L/min _____    RN SIGNATURE

| TIME ORDERED | MD ORDERS | TIME COMPLETED | PHYSICIAN ASSESSMENT | MD NOTIFIED | MD EXAM TIME |
|---|---|---|---|---|---|
| | Cardiac Rh | | 28 y/o old female brought in by Ambulance | | |
| | — b? | | with ? pt being involved in altercation - | | |
| | 133-144 | | just prior to arrival in E-R. her home was | | |
| | | | broken into and set on fire. pt was | | |
| | PH 7.36 | | assaulted by unknown male - her ankles & wrists | | |
| | | | were tied w/ rope - was choked and kicked | | |
| | PO2-89 | | about - was urinated on her head. No LOC. | | |
| | | | Sexual assault - No + LOC. Multiple abrasions | | |
| | PCO2-28 | | & bruises - and burn at least Rt _____ 4th | | |
| | | | digit and Lt 2nd digit. Her headache no | | |
| | | | dizziness. was asymptomatic prior to incident - | | |
| | | | Usual Smoker | | |
| | | | Only pt alert oriented. Skin warm & dry. | | |
| | | | Peripheral pulsating power good all 4 limbs. | | |
| | | | No spinal tenderness. throat ok EOM ok | | |
| | | | Heart sounds ok lungs clear. Abd. soft nontender | | |
| | | | Has 3/4 in intact blister Rt 4th digit dorsal part | | |
| | | | painful expect Lt 5th digit distal phalanx | | |
| | | | human expert. Finger & wrist movement | | |

| ☒ DISCHARGE | ☐ ADMIT | ☐ EXPIRED |
|---|---|---|
| ☐ LWBS | ☐ AMA | ☐ TRANSFER |

WHERE? home  HOW? amb

ACCOMPANIED BY: mother

APPAR. CONDITION  Stable

| DATE 2/25/98 | TIME 0635 |
|---|---|

TIME  NURSING NOTES
full & painfree. Has broken blister
Lt ankle Has 2"x1" area small & white
& tip movement painfree. Abrasion &
contusion - Both wrist / ankles & Lt
excoriated area Rt elbow Rt upper arm
Rt shoulder and upper back - pt
Ambulates without discomfort

See Supp Nurses Notes

DIAGNOSTIC IMPRESSION
Altercation - 2nd Minor 2nd degree burn fingers & Lt knee  CD0036
Multiple abrasions & contusions.

| M.D. SIGNATURE ❶ | M.D. SIGNATURE ❷ | RN SIGNATURE |
|---|---|---|
| 1. Parasakthi | | M. Brisban RN |



798-2383

## Covenant Medical Center

### SUPPLEMENTAL NURSES NOTES

**DATE**                 **MD**

| TIME | BP | T | P | R | NEURO | MEDS & RX | CONTINUED FROM RECORD OF EMERGENCY CARE |
|------|----|----|----|----|-------|-----------|-----------------------------------------|
| cont |    |   |   |   |       |           | Pt c/o pain to back of (L) head + (R) temproral region - denies any lac. Abrasion noted to (L) hand - Ø bleeding. Pt has blister to (R) 4th digit approx 1½ cm wt blister to (L) index finger both blisters intact - abrasion noted to (L) hip area - (L) knee has approx 1cm burn c̄ blister open c̄ minimal weeping - DKS |
| 0435 |    |   |   |   |       |           | Pt states she was SOB @ house but not SOB now, denies any chest pain lungs clear bilat - Ø nt ABG drawn from (L) wrist - pt then placed on 100% O₂ per NRB - DKS |
| 0500 |    |   |   |   |       | O₂ sat 96% | CPD taking photos of injuries pt meds here @ bedside - DKS |
| 0515 |    |   |   |   |       |           | Repeat ABG's drawn - DKS |
| 0525 | 119/.. |   | 96 | 20 |    |           | Pt placed back on 2L per NC - check per mumble soreness - DKS Pt wounds cleansed per protocol c̄ betadine/wt shurcleans - pt hair washed - DKS |
| .... |    |   |   |   |       | sibumin ... given per | Silvadene dressing c̄ telfa applied to (L) knee - tub... wrap wt silvadine applied to finger(s) - neosporin applied to abrasions cm.... child |
| 0625 | 123/.. |   | 91 | 18 |    | O₂ sat 97% | Hann weakly inst given to mom Humax dept + admin...cas maint... any - pt verbalizes understanding of tmnt - DKS |

| TIME | INTAKE (IV NUMBERS & SOLUTIONS) | OUTPUT (DESCRIPTION) |
|------|----------------------------------|----------------------|
|      |                                  |                      |
|      |                                  |                      |
|      |                                  |                      |
| TOTAL: |                                |                      |

**PATIENT NAME** Hansen, Lori

**PATIENT NUMBER** _____

**DATE** _____

C000362

-3:07 PM 02015-MPM-DCB · · · · # 12:15   Page 24 of 31

CARLE REGIONAL EMS FORM

| ZONE (1) 2 3 | | | | P # 178-2583 | N° 56170 |

DATE 2-25-98   AGENCY Arrow   LICENSE 650601   AUTHORITY Met

P # 178-2583
C # _____

**TIME MILITARY**
ENROUTE 0309
AT SCENE 0312
LEFT SCENE 0320
HOSPITAL 0346
RCEPT TIME _____

**NATURE OF CALL**
MEDICAL ☐
TRAUMA ☒
ALS✗ MET ☐
BLS ☐ ILS ☐
REFUSAL ☐

**DEST. DETERMINED BY**
PATIENT REQUEST ☒
CONTRACT ☐
S.O.P. ☐
MEDICAL AUTHORITY ☐
OTHER _____

**COMMUNICATIONS**
MED CHANNEL ☐
MERCI ☐
TELEPHONE ☒
PHONE PATCH ☐
OTHER

**ASSISTANCE AT SCENE**
POLICE DEPT. ☒ CPD
CORONER ☐
FIRE DEPT. ☒ CFD
OTHER _____
Tx BEFORE ARRIVAL _____

**POSITION FOUND**
STANDING ☒
ENTRAPPED ☐
LYING ☐
SITTING ☐
SIDE L ☐ R ☐

**ROAD CONDITION:**
WET-FOG ☐
DRY ☒
HEAVY TRAFFIC ☐
LIGHT TRAFFIC ☒
SNOW-ICE ☐

PATIENT Brown Lori Hansen   AGE 28   SEX F   DOB 4-10-69

ADDRESS 3772 Arrow 512 S New Champaign IL 61820   PHONE 328-1301

EMPLOYED BY PAPA a/s   SS # 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

IPA # / INS # Self Pay   MEDICARE # NO

FMD On Call   CLINIC # _____   MD DIAGNOSIS R/o smoke inhalation

RESPONSIBLE PERSON Self   PHONE S/A

ADDRESS S/A   EMPLOYED BY S/A

TRANSPORTED FROM 512 S New Champaign IL   PATIENT WEIGHT 120   MEDICAL HISTORY None

CHIEF COMPLAINT Smoke + Burn

TRANSPORTED TO CMC

**CURRENT MEDS** _____
UNKNOWN ☐ NONE ☒
ALLERGIES
UNKNOWN ☐ NONE ☒

**VITAL SIGNS**

| TIME | BP | P | R | PULSE |
|------|-----|-----|-----|-----|
| 0320 | 113/74 | 110 | 18 | 99 |

TIME 0320

**LOC/MENTAL STATUS**
ORIENTED (4)
DISORIENTED (4)
INAPPROPRIATE WORDS (3)
INCOMPREHENSIBLE SOUNDS (2)
NO VERBAL RESPONSE (1)
COMBATIVE ☐

**LUNG SOUNDS** R L
CLEAR ☒ ☒
WHEEZES ☐ ☐
RALES ☐ ☐
ABSENT ☐ ☐
AFTER/IMPAIR ☐ ☐

**RESPIRATIONS**
NORMAL ☒
LABORED ☐
SHALLOW ☐
AOA ☐
NONE ☐

**MOTOR RESPONSE**
OBEYS COMMANDS (6) ☒
LOCALIZED PAIN (5) ☐
WITHDRAWS (4) ☐
FLEXION PAIN (3) ☐
EXTENSION PAIN (2) ☐
NONE (1) ☐

SUBQ EMPHYSEMA Y ☐ N ☐
JVD ☐ ☐
TD ☐ ☐
CAP REFILL ~3" ☐ ☐

**EYE OPENING**
SPONTANEOUS (4) ☒
TO VOICE (3) ☐
TO PAIN (2) ☐
NONE (1) ☐

**PUPILS**
PERL ☒
SLUGGISH ☐
DILATED ☐
PINPOINT ☐
NON REACTIVE ☐
R ☐ L ☐

**SKIN**
ASHEN ☐
COOL ☐
CYANOTIC ☐
DRY ☒
FLUSHED ☐
MOIST ☐
PALE ☐
PINK ☐
WARM ☒

**ABDOMEN**
DISTENDED ☐
RIGID ☐
SOFT/NON-
  TENDER ☒
TENDER ☐

| GCS | TS |
|-----|-----|
| 15 | 12 |

**MEDICATIONS**

| TIME | DRUG | DOSE | RTE |
|------|------|------|-----|
| 0325 | O2 | 4L | NC |

18 AIRWAY
107 AMBU BAG P/A
32 INTUBATION ON By: ____
(33) OXYGEN 4L NC By: ____
30 SUCTION
130 CRICOTHYROTOMY By: ____

___ TRANSFER
___ BASIC BLS/ILS
45 CODE 000
MILEAGE ____
42 RESPONSE TO RES
___ STANDBY

26 BASKET SPLINT
24 PRO SPLINT
CERVICAL COLLAR
CID
38 HARE TRACTION
25 PILLOW SPLINT
16 SPINEBOARD
37 ZEE DEVICE
27 RESTRAINTS
178 CHEST DECOMPRESS By: ____
129 INTRAOSSEOUS By: ____
181 PERICARDIOCENTESIS By: ____

(1) ABRASION
2 AVULSION
(3) BURN
4 CONTUSION
5 DECREASED PULSE
6 DECREASED SENSATION
7 DISLOCATION
8 EDEMA
9 FRACTURE
(10) IV INSERTION SITE
11 LACERATION
12 PAIN/TENDERNESS
13 PARALYSIS
14 PUNCTURE PENETRATION
15 SPRAIN/STRAIN
16 WEAKNESS
17 HEMMORHAGE
18 PENETRATING
19 NAUSEA/VOMITING
20 ____
21 ____

34 CPR
V MONITOR By: 36
___ TELEMETRY By: ____
X IV FLUID By: 36
___ DRUGS By: ____

29 ACE BANDAGE
24 BURN SHEET
21 HOT-COLD PACK
DRESSING
22 IRRIG. SOL
42 TRAUMA DRSG

19 OB DELIVERY
20 OB-KIT
3 MAST SUIT

EXTRICATION W/O TOOLS
EXTRICATION W/ TOOLS
TOTAL EXTRICATION TIME

41 BODY BAG
50 REMOVAL

ADVANCED DIRECTIVE
☐ YES ☒ NO

BLOOD LOSS
NONE ☐
MINOR ☒
MODERATE ☐
SEVERE ☐

BODY FLUID CONTACT
YES ☐ NO ☒

LOAD-N-GO
YES ☐ NO ☒
TRAUMA CRITERIA

BLOOD SUGAR ____

APGAR SCORE
1 min ____
5 min ____

REFUSAL FORM GIVEN
☐ YES ☒ NO
REFUSAL FORM # ____

**MONITOR**

| TIME | RHYTHM |
|------|--------|
| 0320 | Sinus Tach |
| 0320 | Sinus Tach |

**IV SOLUTIONS**

| TIME | SITE | GAUGE | SOLUTION | AMT. IN | SUCC. | UNSUCC. |
|------|------|-------|----------|---------|-------|---------|
| 0328 | (L) ARM | 18 | NSS | Lock | 1 | |

**NOTES** (5) Called to the scene for a 28 year old female pt who was a victim of battery + other criminal activity

(6) pt found c.c/t pt was brought to us by CPD pt had scene burns to fingers & (2) knee pt had abrasions on wrists + ankle pt was struck with fists. No LOC pt was soaked in gasoline like substance, pt had some smoke around face. No burns to face or head. No other complaints. Assess + vitals as above

(7) Took vitals + assessed O2 4L N, IV NSS Lock 18g cardiac monitor pulse ox 99% removed all clothes + placed pt in blanket. Transported

(8) pt transported with no change no incident no orders pt relios to CMC as above Dale Sim

EMT ATTENDANT: Dale Sim  P-36

EMT DRIVER: Jamie M. Rayburn  I25

RN ____
MICN ____

C000363

798-2383



**Carle**
Emergency Department

# Rhythm Strips

Pt. Name _Lori Hansen_    Date _2-25-98_    _56170_

Time _3:30_    Rhythm _Reg_    Rate _112_    Interpretation _Sinus Tach_    Initials _OS_

```
NAME                              LEAD II  X1.0
RECORDED ECG
25 FEB 98
OPERATOR        03 30 23
HR BPM          112
SUMMARY COMPLETE
PHYSIO-CONTROL                         P/N 804700
```

Time _3:30_    Rhythm _Reg_    Rate _112_    Interpretation _Sinus Tach_    Initials _OS_

```
                ▶03 30 25FEB98 LEAD II X1.0 HR=112
PHYSIO-CONTROL                         P/N 804700
```

Time _____    Rhythm _____    Rate _____    Interpretation _____    Initials _____

C000364

193-0197

798-2383

# ILLINOIS • Emergency Medical Services — Prehospital Care Report

| AGENCY NUMBER | UNIT | NO | DAY | YR | RECEIVED | DISPATCH | ENROUTE | ARRIVE LOC. | PT CONTACT | DEPART LOC | ARRIVE DEST. | COUNTY | CRASH NUMBER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|

DATE / MILITARY TIME fields

## CALLED BY
- Individual
- Pub. Agen.
- Hospital
- M.D. Office
- Conv. Fac.
- Other

911 Used?

## RESP./TRANSP.
TO SCENE:
- Emergency
- Non-Emerg
- Delayed

FROM SCENE:
- Emergency
- Non-Emerg
- Delayed

## INCIDENT LOCATION
- Pt Residence
- Residence
- Highway 55+
- Oth. Traffic Way
- Office/Business
- Bar/Restaurant
- Hotel/Motel
- Farm/Ranch
- Indust./Manuf.
- Construction
- Religious Facil.
- Education Facil.
- Leisure Facility
- Swimming Pool
- Water
- Hospital
- Clinic/Dr.'s Office
- Extended Care Facil.
- Other
- Rural Setting
- Urban Setting

Work Related? Y N UNK

## INCIDENT TYPE
- MVC
- Motorcycle
- Pedestrian
- Assault
- Sex Assault
- ATV
- Bicycle
- Bite/Sting
- Drown/Near
- Electrical
- Fall
- Fire/Burn
- Shooting
- Stabbing
- Oth. Trauma
- Medical/Illness
- Standby
- Other
- Inter-Facility Scheduled?

Mutual Aid? Y N

## PT PROTECTION
None
Extric./Moved
CPR
Wound Mgt.
Airway
Defib.

## ASSISTANCE
Bystander, Family, 1st Resp., Fire, Police, Other

## PAST MED. HISTORY
- None Known
- Allergies
- Asthma
- Behavioral
- Cancer
- Cardiac
- COPD
- CVA
- Diabetes
- Drug/ETOH
- Hypertension
- Seizure
- Other

## C = Chief  ILLNESS/SYMPTOM  S = Secondary
- Abdominal Pain
- Airway Obstruct.
- Allergic React.
- Altered LOC
- Behavioral
- Breathing Diff.
- Cardiac Arrest
- Chest Pain
- Contag. Disease
- CVA/TIA
- Diabetic
- GI Bleed
- Gynecological
- Cardiac/Card.
- Hypertension
- Hyperthermia
- Hypoperfusion
- Hypothermia
- Ingestion
- Nausea
- Newborn
- OB
- Resp. Arrest
- Seizure
- Syncope
- Vomiting
- Weakness
- Other

## INJURY SITE/TYPE
None

Amputate, Burn/Elec., Blunt, Frost/Dislloc, Pain, Paralysis, Soft-Open, Soft-Closed

Head, Face, Eye, Neck, Chest, Back, Abdomen, Pelv/Genit., Upper Ext., Lower Ext.

## INJURY CRITERIA
- Flail Crest
- Burns >20%/Face
- Fall >20'
- Paralysis

### MOTOR VEHICLE
- Speed 40+ MPH
- Deformity 20+"
- Intrusion 12+"
- Rollover
- Ejection
- Death Same MV
- Motorcyl 20+ MPH
- Ped. v MV >5 MPH

## PT PROTECTION
- Shoulder/Lap Belt
- Shoulder Belt
- Lap Belt
- Airbag (Deployed)
- Safety Seat
- Helmet
- None Used
- Not Available
- Unknown

### PT LOCATION
- Front  Unk.
- Rear  Other
- Driver
- Truck Bed

## POSSIBLE CONTRIBUTING FACTORS
- Alcohol
- Substance(s)
- Extrication >15 min.
- Patient Abused
- Self-Infliction
- Terrain
- Equipment
- HAZMAT
- Sports
- Delay in EMS Access
- Delay in Detection
- Weather

## GENDER
F M UNK

## ETHNIC ORIGIN
- Asian
- Black
- Other
- Native American
- White  Hisp.
- Unknown

## GLASGOW COMA SCALE
EYES
- Spontan.
- To Scratch
- To Pain
- None

VERBAL
- Oriented
- Confused
- Inapp.
- Garbled
- None

MOTOR
- Obeys
- Localizes
- Withdraws
- Flexion
- Extension
- None

## CPR INFORMATION
Minutes   <4  4-8  >9  UNK
- Arrest to CPR
- Arrest to Defib.
- Arrest to ALS
- Shock Delivery
- Witnessed Arrest?  Y  N
- Spon. pulse restored?  Y  N

LOC
V  Y N
P  Y N
U  Y N

RTS

## PUPILS
- Normal  R
- Constricted  R
- Dilated  R
- Non-React.  R

## PEDIATRIC WEIGHT
- >20 kg
- 10–20 kg
- <10 kg
- Unknown

Unable to Take   Not Taken

## INITIAL VITAL SIGNS
| SYSTOLIC | DIASTOLIC | PULSE | RESP. |
|---|---|---|---|

Palpated | Irregular | Irregular

## TREATMENT
DNR?  Y
- Assessment
- Airway Clear
- Abdm. Thrust
- Back Blows
- Bleed. Cntr.
- CPR
- Defib.-Auto
- Extrication
- MAST
- OB Delivery
- Oxygen
- Restraints
- Spinal Imm.
- Splint Extm.
- Suction
- Ventilation
- Other BLS
- Blood Draw
- Blood Sugar
- Cardiac Mon.
- Cardiac Pacing
- Cardioversion
- Defib.-Man.
- Cricothyrot.
- EOA/EGTA
- Intub.-Nasal
- Intub.-Oral
- IV-Central
- IV-Ext. Jug.
- IV-Intracss.
- IV-Peripheral
- Med. Admin.
- Needle Thor.
- Pulse Oxim.
- Other ALS

## MEDICATIONS
- Adenocard
- Aminophylline
- Atropine
- Benadryl
- Bicarbonate
- Bretylium
- Calcium
- Dextrose 50%
- EPI 1:1000
- EPI 1:10000
- Furosemide
- Glucagon
- Inotropin
- Ipecac
- Isuprel
- Lidocaine
- Mag. Sulfate
- Morphine
- Narcan
- Nebulizer
- Nifedipine
- Nitroglycerin
- Oxytocin
- Procainamide
- Thiamine
- Valium
- Verapamil
- Other

© 1994 All Rights Reserved

1628718

## EKG
- NSR
- Sin. Tach.
- Sin. Brady.
- Asystole
- AV Block
- Atrial Fib.
- Atrial Flut.
- Vent Tach.
- Vent Fib.
- SV Tach.
- PEA
- Other
- PVC's

## BODY SUBSTANCE ISOLATION
Contact with Blood/Fluids
Report Filed?  Y  N

### Universal Precautions
- Masks
- Gloves
- Eye Prot.
- Gown

## IV TYPE/RATE
TKO, BOLUS, WIDE, OTHER
- LR
- NS
- D5W
- Other
Lock  Y

LINES

### ATTEMPTS
- Intubation-Nasal
- Intubation-Oral
- IV-Central
- IV-External Jug.
- IV-Intraosseous
- IV-Peripheral
- Needle Thoracotomy

## NON-TRANSPORT
- Cancelled
- Refused
- False Call

Treat. Transport By:
- Other Ambul.
- Police
- Flight
- Oth. Vehicle
- Treat. No Transport
- Treat. Dead at Scene
- No Treat. DOA

## MEDICAL CONTROL
- Radio
- Telemetry
- Telephone
- Cellular
R  A

### TRANSPORT TO
- Emergency Dept.
- Trauma Center
- Other
Diverted?  Y  N
Diverted by:
- Base

## PATIENT DESTINATION

## EMS RESOURCE SYSTEMS

## PATIENT DATE OF BIRTH
| MO | DAY | YR |
|---|---|---|

ESTIMATED AGE

PLEASE DO NOT MARK IN THIS AREA

798-2383

04:00   25MM                          :130   RR: 22   SY:115   DI.

02/25/98

ORK          CHART NO. SIS 43-55-060                    PRINTED IN U.S.A.

Signature

**Rate:** atrial _____  **Rhythm:** atrial _____  PR interval _____  QRS interval _____
vent. _____  vent. _____  Interpretation _____

04:18   25MM.                          DR. 93   RR: 16   SY:115   D

02/25/98

FFALO NEW YORK     CHART NC. SIS 43-55-060                PRINTED IN U.S.A.

Signature

**Rate:** atrial _____  **Rhythm:** atrial _____  PR interval _____  QRS interval _____
vent. _____  vent. _____  Interpretation _____

_____ Date

_____ Time

_____ Signature

**Rate:** atrial _____  **Rhythm:** atrial _____  PR interval _____  QRS interval _____
vent. _____  vent. _____  Interpretation _____

**Nursing Service**       Hansen, Lori          Chart Header

**Telemetry**             HC0981282                        C00036b
**Monitoring**



798-2383
PAGE 1

RUN DATE: 02/26/98
RUN TIME: 0455

**PROVENA COVENANT MEDICAL CENTER**
1400 WEST PARK ST., URBANA, IL 61801
TEL 217-337-2174/FAX 217-337-2460
Summary Location Report

| PATIENT: HANSEN,LORI K | ACCT #: HC0981282 | LOC: HCER | U #: I080836 |
| | AGE/SX: 28/F | ROOM: | REG: 02/25/98 |
| REG DR: Parasakthi,Kolandaivelu | STATUS: DEP ER | BED: | DIS: |

[DEPARTMENT OF RESPIRATORY CARE SERVICES]
*****Maury K. Topolosky, M.D., Medical Director*****
[ARTERIAL BLOOD GAS]

| | Day | 1 | | | | |
| | Date | --------------FEB 25---------------- | | | | |
| | Time | 0513 | 0426 | 0425 | 0425 | Reference | Units |
|---|---|---|---|---|---|---|---|
| => | pH | 7.358 | | | 7.360 | (7.30-7.50) | |
| => | PCO2 | 38.3 | | | 41.4 | (30-50) | mmHg |
| => | PO2 | 86.6 | | | 43.3 L | (80-100) | mmHg |
| => | HCO3 | 20.9 L | | | 22.6 L | (24-28) | mmol/L |
| => | TOTAL CO2 | 22.1 | | | | (19-25) | meq/L |
| => | BASE EXCESS | -3.6 | | | -1.9 | (-5-5) | mmol/L |
| => | OXYGEN SAT | 98.0 | | | 87.6 L | (90-) | % |
| => | INSPIRED O2 | RA | | | 2L | | |
| => | MODE | | | | NC | | |
| => | CCU OR NICU | CCU | | | CCU | | |
| => | SITE/METHOD | LR P | | | (a) | | |
| => | ALLENS TEST | + | | | Y | | |
| => | TEMPERATURE | 37.0 | | | | | DEG C |
| => | B.P. | 754.4 | | | | | MMHG |
| => | O2 SAT | | 78.5 | | | (55-100) | % |
| => | O2 CONTENT | | 15.0 | | | (15-20) | ml/dl |
| => | CARBOXYHEMOGLOB | | 6.3 | 6.3 | | (5-10) | % |
| => | METHEMOGLOBIN | | 0.5 | | | (-3) | % |
| => | TOTAL HEMOGLOB | | 14.8 | | | (12-16) | g/dl |
| => | O2 CAPACITY | | 19.1 | | | | ML/DL |
| => | INSPIRED OXYGEN | | 2L | | | | |
| => | MODE | | NC | | | | |
| => | SITE | | (b) | | | | |
| => | METHOD (AL / P) | | P | | | | |
| => | ALLEN TEST (+/- | | Y | | | | |
| => | COMMENTS | | (c) | | | | |

NOTES:  (a)  L.RADIAL P
        (b)  L.RADIAL
        (c)  PLACED ON 100% NRB

**Michael J. Slattery, M.D., Medical Director**
** END OF REPORT **

C000367

798-2383

# Patient Discharge Instructions
Emergency Department: (217) 337-2131

The care you have received here is on an emergency basis only. The Emergency Department can never be a substitute for care by a regular family physician. In particular, problems of a complex or ongoing nature are best evaluated and treated by a physician who is familiar with you.

If you do not have a physician, we have provided the name of one from our roster of on-call physicians. He or she has agreed to see you for one follow-up visit. If you wish to enter a physician/patient relationship with this individual beyond the one visit, you may discuss it then. The physician has the right to decline to enter such a relationship, just as you have the right to choose your physician.

Doctor _____ N. Browne. Dr. Schaaf _____

Address _____

Date _____ 2/26/9_ _____

It is very important that you see some physician in follow-up. We will forward copies of your records. You will need to make the appointment unless directed otherwise.

If you cannot arrange an appointment, or if there is any problem with follow-up, please return to the Emergency Department or phone us at once. Do not hesitate to contact us at the Emergency Department if your condition changes or worsens and you cannot reach your doctor.

## ☐ Radiology

The emergency physician has made a preliminary interpretation of your x-rays. A radiologist will review them again tomorrow. Please call us between 2pm and 6pm on the next normal working day for the official report and further instructions.

If you have a follow-up appointment elsewhere, that physician will want to review the films personally. You must collect the actual films from our radiology department on the way to the follow-up doctor's office. Please be aware that the hospital cannot release the actual x-ray films until the radiologist has reviewed them.

## ☐ Medication

Allergic and other reactions may occur with any medication, even if you have taken it in the past. Discontinue the medication and phone us at once if you develop a rash, itching, wheezing, faintness, diarrhea, vomiting, or swelling of the face or mouth.

The medication ordered may cause drowsiness. If so, do not drive, climb, swim or undertake any dangerous activities, and do not drink alcohol.

## ☐ Lab Results

Please call back in 3 days for culture results, progress report, and further instructions unless otherwise advised.

## ☐ Other Instructions

① Clean Burned area with soap and water. apply Silvadene + chem

② Clean Chern area with newsinde, apply neurosporin.

③ Head Injury sheet 'id'.

④ Rest at home.

⑤ Tylenol 1 every Eng 51h hr. as needed.

⑥ Recheck 2/26/9_.

⑦ Wound Care sheet.

I have read and understand the instructions above.

Patient signature _____

Witness _D. Saliki RN_

Time _0625_     Date _2/25/98_

ADDRESSOGRAPH  0981282

NAME  Hansen, Lori

..I.D.

REG. #

MR #

#5913440

White: Medical Records   Yellow: Patient   Pink: Emergency Department

## PATIENT DISCHARGE INSTRUCTIONS
EMERGENCY DEPARTMENT



Covenant
Medical Center

1400 West Park Street
Urbana, Illinois  61801

000368

HANSEN LORI KRISTINA
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

University of Illinois
McKinley Health Center

1109 S. Lincoln Avenue
Urbana, Illinois 61801

798-2383

Social Security Number

**CONFIDENTIAL DATA**

DISCLOSURE IS
PROHIBITED WITHOUT
WRITTEN CONSENT

MED CLINIC VISIT FEB 2 6 1998

71-70-5981     02/26/98
   /359-4843   16:20:57
HANSEN LORI KRISTINA
APPT      Med ,Ellis
Freshm   F     28    PASS

CONT...

C000369

MEDICAL CLINIC ONE                    UNIVERSITY OF ILLINOIS McKINLEY HEALTH CENTER

| Name | | Local Address | Local Phone |
|---|---|---|---|
| | 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   02/26/98 | | |
| | C     /359-4843   15:47:53 | Drug Allergy/Adverse Reaction | Which Drugs? |
| | HANSEN LORI KRISTINA | ☑Yes  ☐No | penicill |
| SSN | WALK     TRI | | |
| | Freshm  F    26   PASS | Current Medications: | |

| TPR | B/P | WOMEN: Are you taking birth control pills?  ☐Yes  ☑No | Previously treated at McKinley?  ☑Yes  ☐No |
|---|---|---|---|
| 97.8°P 10. | 116/72  P=77 | Date of last menstrual period. 2/16/98 | |

**Tetanus and Diphtheria Toxoid**

| Date | Dose | Lot #/Manufacture | Signature & Title |
|---|---|---|---|

S: Pt instructed per Covenant ER to seek
f/u care @ MHC today. Pt treated for
smoke inhalation & head injury on 2/25/98. Pt also
has a burn on ① knee, ① index & ① 4th fingers.
Pt suffered an abrasion on back of head. Also Pain
① side of head. Pt has been taking analgesics for pain.

CONFIDENTIAL DATA
... IS
... WITHOUT
WRITTEN CONSENT.

Dictated K. Berg

**Nursing Assessment:**

**Diagnostic Impression:**

**DISPOSITION/INSTRUCTIONS:** Unless instructed otherwise, return in 48-72 hours if not improving. Return sooner if condition worsens.

4:15 - Dr. Ellis - 2/26/98

_____ R.N.     _____ M.D.

Patient Signature: _____

I have read and understand the above instruction.     (DATE)

C000370