## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | |
|---|---|
| **DEDRIC MOORE,** | ) |
| | ) |
| **Petitioner,** | ) |
| **v.** | )  **Case No. 07-CV-2015** |
| | ) |
| **DONALD A. HULICK, Warden,** | ) |
| | ) |
| **Respondent.** | ) |

### <u>OPINION</u>

On February 1, 2007, this court entered an Order (#3) which granted the Petition for Leave to Proceed in forma pauperis (#1) filed by Petitioner, Dedric Moore.  Accordingly, Petitioner's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#4) was filed in this court.  In its Order (#3), this court also denied Petitioner's Motion for Appointment of Counsel (#2) and ordered Respondent, Donald A. Hulick, to file a response to the Petition pursuant to Rule 5 of the Rules Governing Section 2254 Cases in the United States District Courts.

On May 4, 2007, Respondent filed his Answer (#9) to the Petition, with attached exhibits, and also filed additional voluminous exhibits, including the entire state court record (#10, #11, #12, #13).  On July 20, 2007, Petitioner filed a Motion to Hold in Abeyance Petitioner's Petition for Writ of Habeas Corpus (#16).  Respondent filed his Response to Petitioner's Motion (#17) on August 6, 2007.

This court has carefully reviewed the arguments of the parties and the numerous exhibits filed in this case.  Following this careful and thorough review, Petitioner's Motion to Hold in

Abeyance Petitioner's Petition for Writ of Habeas Corpus (#16) is DENIED and Petitioner's Petition

Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#4) is DENIED.


FACTS

In March 1999, Defendant was found guilty, following a jury trial, of attempted first degree murder, home invasion, residential burglary, aggravated criminal sexual abuse, and aggravated arson. The evidence presented at trial showed that the victim, a second year University of Illinois law student, returned to her rented duplex in Champaign, Illinois, around 1:30 a.m. on February 25, 1998. She unlocked her front door and turned on her living room light to enter. She heard a noise behind her, which caused her to turn and look. A man came up to her from behind and forced his way into her duplex. The man, who was wearing a hood, blindfolded her, bound her hands and feet, ransacked the duplex, and demanded to know where her purse, money, and ATM cards were. After the victim gave the man her PIN numbers, he sat in her kitchen, drank a beer from her refrigerator, and smoked a cigarette. The man then gagged the victim by wrapping tape around her head several times, hog-tied her hands to her feet, and tied her to a bar in the bathtub. The man threatened that if the PIN numbers were wrong, he would return and she would regret it. He then turned off the bathroom light and left the duplex, taking the victim's truck.

After a short time, the man returned. He put a table on top of the victim to pin her down in the bathtub. He left again for a longer period of time. The man returned, lifted the victim out of the bathtub and began to untie her. The victim told him to get out of the house. In response, the man put a cord around her neck and began to strangle her, but ultimately removed the cord from the

2

victim's neck.  The man placed his hand up the victim's shirt, fondled her breasts and placed his mouth on her right breast.  He then urinated on the victim's head.  After that, the man poured a liquid that smelled like shoe polish all over the victim.  By this point, the blindfold had fallen and the victim could see that the man had started a fire in her living room.  She tried to free herself, but the man grabbed her and dragged her over the burning living room carpet.  The victim continued to fight to free herself, but the man punched and kicked her in the head, back, stomach and legs.  After the man stopped kicking the victim, he flicked his lit cigarette at her and left the house.  The victim managed to free herself from the cords and escape the burning duplex.  She ran to another duplex across the driveway and was able to summon assistance.  She returned to the burning unit to try to save her two cats and found that the man had turned on the burners of her gas stove without lighting them, causing gas to leak into the room.  She turned off the burners but had to leave the unit without her cats.  Thereafter, she was taken to the hospital for treatment of burns, smoke inhalation and bruises.

The victim testified that the man was wearing a hood and gloves throughout the incident, and she could not see his face very well.  She testified that she could tell the man was a black male, but could not definitely identify Petitioner as the attacker either in court or in a previous lineup.  Investigators found no latent fingerprints suitable for comparison in the duplex or the victim's truck.  Handwriting experts compared the writing on a paper the man used to write down the victim's ATM PIN numbers to handwriting samples from Petitioner, but this analysis proved inconclusive.

The State introduced a videotape from the victim's bank which showed a man in the victim's truck at the drive-through ATM lane at approximately 2:30 a.m. on February 25, 1998.  Enlarged

photographs were produced from the videotape.  Although several people who reviewed the photographs claimed that the person in the photograph resembled Petitioner, no one made a positive identification.  The photographs did show that the man in the truck had two teeth missing to the left of his upper front teeth.  Petitioner has the same missing teeth.  The State also produced bank records of the unauthorized withdrawals from the victim's bank account.

The State introduced the testimony and lab results of Kevin Zeeb, a forensic scientist employed by the Illinois State Police who specialized in the field of forensic biology and forensic DNA analysis.  Zeeb testified that he recovered DNA material from a black nylon stocking police recovered near the scene of the incident.  The stocking had been taken from the victim's duplex and used by the man as a disguise when he made the ATM withdrawals from the victim's bank.  Zeeb testified that there was DNA material recovered from the stocking which matched that of the victim and Petitioner.  Zeeb testified that he compared the DNA profiles to established population databases to calculate the statistical frequency of encountering those profiles in the general population.  Zeeb performed two statistical calculations, one in which he combined the DNA profiles that he found on the stocking and one in which he separated the profiles.  Zeeb testified that combining the profiles produced a conservative estimate.  Zeeb testified that the conservative estimate of the frequency of the combined profiles in the general population was approximately 1 in 2,700 Blacks.  Under the calculations in which Zeeb separated the profiles, Zeeb testified that the DNA profile which matched Petitioner's was the major contributor to the DNA found on the stocking.  Zeeb testified that he calculated that the frequency of occurrence of this DNA profile was approximately 1 in 150 billion Blacks.  Although defense counsel thoroughly cross-examined Zeeb about the basis

4

for his conclusions and the change in his analysis, defense counsel did not object to the admission of this statistical evidence.[1]

An arson investigator testified that the fire at the victim's residence had been intentionally set and that petroleum product from an ignitable liquid was present on some of the carpet tested from the duplex. Detective Don Shepard testified that he questioned Petitioner on March 4, 1998, about his activities at the time in question. Petitioner told him he had been out of town and had no knowledge of what had occurred but thought that maybe the "Mexican or Chinese mob" had been responsible "because they carry gasoline and beat people up." Shepard testified that Petitioner first mentioned "gasoline" in connection with the incident. Investigator Mark Strzesak testified that he had a similar recollection of the interview with Petitioner. Shepard also testified that Petitioner said he had slept at the duplex adjoining the victim's while his grandmother had been out of town but had moved out before Valentine's Day. The evidence showed that Petitioner's grandmother had been in Mississippi and returned home to her adjoining duplex while the fire department was in the process of extinguishing the fire at the victim's duplex.

Petitioner presented an alibi defense at trial. His friend, Ivory Burrage, testified that Petitioner was at her house at approximately 1 a.m. on February 25,1998. She testified that she and Petitioner spent a couple of hours talking. Petitioner's brother, Emmaniel Moore, also testified and said that Petitioner was with him the entire night of February 24, 1998, and the morning of February

---

[1] This court notes that it has carefully read the transcript of Zeeb's trial testimony. The transcript shows that he was well qualified to provide an expert opinion. The transcript also shows that Zeeb carefully and thoroughly explained the procedure he used in conducting the DNA analysis and the basis for his opinion.

25, 1998, until around 3 a.m.  Petitioner testified that he was with Burrage at the time the victim was attacked.  The State was allowed to impeach Petitioner with the fact that he had prior felony convictions.[2]

Following Petitioner's convictions, he was sentenced to a 15-year prison term for residential burglary to run consecutive to concurrent 60-year extended term sentences for attempted first degree murder and home invasion, a 30-year term for aggravated arson and a 7-year term for aggravated criminal sexual abuse.  The total sentence imposed was a term of 75 years.

Petitioner filed a post-trial motion, which was denied.  He then filed an appeal to the Illinois Appellate Court, Fourth District.  On appeal, Petitioner argued that the "revised" DNA frequency calculations improperly compelled the conclusion that Petitioner was the sole possible intruder at the victim's duplex.  Specifically, Petitioner contended that the State should not have been able to offer this revised methodology unless and until its reliability and general acceptance in the scientific community had been established other than by the testimony of its sole DNA witness. Petitioner also argued that the use of "mere fact" impeachment created reversible error.  In addition, following the decision of the United States Supreme Court in Apprendi v. New Jersey, 530 U.S. 466 (2000), Petitioner filed a supplemental brief and argued that the consecutive and extended-term sentences imposed involved fact-finding by the trial court which violated his right to due process and a jury

---

[2] Prior to trial, the trial court had considered Petitioner's motion in limine regarding the use of his prior convictions of forgery and attempted burglary for impeachment.  The trial court concluded that publishing the specific felony convictions would be more prejudicial than probative considering their similarity to the offenses charged.  The trial court concluded that it would be proper simply to inform the jury of Petitioner's felony convictions using the "mere fact" method of impeachment.

trial under <u>Apprendi</u>.

On January 11, 2002, the appellate court entered an Order which affirmed Petitioner's convictions and sentence.  <u>People v. Moore</u>, Case No. 4-99-0499 (unpublished order).  The court first concluded that Petitioner forfeited his argument regarding the DNA evidence by failing to raise an objection either during the trial or in his post-trial motion.  <u>Moore</u>, Case No. 4-99-0499, at p.7. The court next concluded that the trial court erred by using the mere fact method of impeachment based upon Illinois Supreme Court case law holding that trial courts should not consider the mere fact method of impeachment.  <u>Moore</u>, Case No. 4-99-0499, at p.9-11, <u>citing</u> <u>People v. Cox</u>, 748 N.E.2d 166, 171-72 (Ill. 2001).  However, the court also concluded that the error was harmless in light of the overwhelming evidence against Petitioner.  <u>Moore</u>, Case No. 4-99-0499, at p.11.  The court also concluded that the imposition of extended-term sentences for attempted first degree murder and home invasion, based upon a finding that Petitioner committed the crimes in an exceptionally brutal and heinous manner, did not violate Petitioner's rights under <u>Apprendi</u>.  <u>Moore</u>, Case. No. 4-99-0499, at p.11-19.  The court further stated that, even if an <u>Apprendi</u> violation occurred, it was harmless.  The court stated that "[n]o reasonable juror, having already found [Petitioner] guilty of the offenses charged, could have found that [Petitioner] did not commit the offenses in an exceptionally brutal and heinous manner.  Therefore, the outcome would not have been different had the jury decided this issue."  <u>Moore</u>, Case. No. 4-99-0499, at p.20.  The court also determined that <u>Apprendi</u> concerns were not implicated by consecutive sentencing.  <u>Moore</u>, Case No. 4-99-0499, at p.20-21.

Petitioner filed a petition for rehearing, urging the court to consider the DNA issue under the

plain error doctrine, as it had not been preserved for appellate review.  The appellate court denied the petition for rehearing.  On February 19, 2002, Petitioner filed a petition for leave to appeal to the Illinois Supreme Court.  Petitioner argued that: (1) due process required that he receive plain error review of the DNA evidence which identified him as the sole perpetrator "on the face of this planet" of these serious crimes; (2) his appellate counsel was ineffective for failing to argue for plain error review in the appellate court; and (3) his extended-term sentences violated <u>Apprendi</u>.

On April 22, 2002, while his petition for leave to appeal was pending, Petitioner filed a pro se post-conviction petition in the circuit court of Champaign County.  Petitioner argued that: (1) he was denied the effective assistance of appellate counsel because his counsel failed to argue that the appellate court should apply the plain error doctrine to the issue of the admission of the revised DNA calculations; (2) he was denied the effective assistance of trial counsel because his counsel gave him incorrect advice concerning good-time credit; (3) he was forced to appear in a line-up without assistance of counsel; and (4) one of the jurors lied during voir dire.  On May 31, 2002, the circuit court denied the petition.  The circuit court discussed each claim and found all of Petitioner's claims were frivolous and patently without merit.  Petitioner appealed from the circuit court's order.

On February 5, 2003, the Illinois Supreme Court ruled on Petitioner's petition for leave to appeal from the appellate court's affirmance of his convictions and sentence on direct appeal.  The court denied the petition but ordered the appellate court to vacate the judgment and reconsider in light of <u>People v. Swift</u>, 781 N.E.2d 292 (Ill. 2002).  On April 4, 2003, the appellate court entered an Order following the remand from the Illinois Supreme Court.  <u>People v. Moore</u> (<u>Moore 2</u>), Case No. 4-99-0499 (unpublished order).  Following its reconsideration in light of the decision in <u>Swift</u>,

8

the court affirmed Petitioner's convictions but vacated his sentences and remanded for retrial or resentencing. In doing so, the court again found that Petitioner forfeited his argument regarding the DNA evidence. Moore 2, Case No. 4-99-0499, at p.7-8. The court also again found that the trial court's error in allowing mere fact impeachment was harmless in light of the overwhelming evidence against Petitioner. Moore 2, Case No. 4-99-0499, at p.11. The court then discussed the sentencing issues raised by Petitioner following Apprendi. The court noted that, in Swift, the Illinois Supreme Court held that, according to Apprendi, facts that may subject a defendant to an extended term must be proved to a jury beyond a reasonable doubt. Moore 2, Case No. 4-99-0499, at p.12-13. The court then stated that Petitioner's extended term sentence was based upon the trial court's factual finding that Petitioner committed the offenses of attempted first degree murder and home invasion in an exceptionally brutal and heinous manner. Moore 2, Case No. 4-99-0499, at p.13. The court stated that, "[i]n light of Swift, we are required and reluctantly must find that the court erred." Moore 2, Case No. 4-99-0499, at p.13. The case was remanded for resentencing or, if the State filed notice of its intention to again seek an extended sentence, a new trial. Moore 2, Case No. 4-99-0499, at p.14. The court again found that Apprendi concerns were not implicated by consecutive sentencing. Moore 2, Case No. 4-99-0499, at p.14.

On July 1, 2003, Petitioner was resentenced at a sentencing hearing held before Circuit Judge Thomas J. Difanis.[3] Based upon the appellate court's decision, extended term sentences were not an option. However, the prosecutor argued that Petitioner's crimes resulted in severe bodily injury to the victim and that consecutive sentences of 30 years should be imposed for the offenses of

---

[3] Judge Difanis also presided over Petitioner's jury trial and previous sentencing hearing.

aggravated arson and home invasion under section 5-8-4(a)(i) of the Illinois Unified Code of Corrections.  See 730 Ill. Comp. Stat. 5/5-8-4(a)(i) (West 2006).  The prosecutor also argued that a consecutive term of 15 years should again be imposed for residential burglary under section 5-8-4(b).  Petitioner's attorney argued that imposing consecutive sentences so that the same amount of time was imposed would result in another finding of error by the appellate court.  Petitioner's counsel argued that all of the sentences imposed should be concurrent.

In imposing sentence, Judge Difanis stated that there were aggravating factors in the case, including the fact that Petitioner had a prior history of delinquency and criminal activity.  He stated that the "more serious aggravating factor" was the "deterrent factor."  He stated that the court "has to fashion a sentence that will deter not only this defendant but others similarly situated from committing this type of an offense."  Judge Difanis stated that, at the original sentencing, he imposed a consecutive sentence for residential burglary because he "was of the opinion that consecutive sentences were necessary based upon the conduct of [Petitioner], his prior record, to protect the public from further criminal conduct by [Petitioner], and the basis of that was just look what happened to this victim."  Judge Difanis continued:

> Look what was done to this human being.  Look at the brutal and heinous manner in which this crime was carried out.  So this record speaks volumes for the fact that consecutive sentences were necessary to protect the public from further criminal conduct by [Petitioner].

Judge Difanis went on to question whether there was "severe bodily injury" and stated that he

10

guessed "that's up to the trier of fact."  Judge Difanis then stated that, because the case involved consecutive sentences, he did not believe <u>Apprendi</u> was involved.  Judge Difanis stated that he was going to impose a 15 year sentence for residential burglary to run consecutive to a 30 year sentence for home invasion.  He also stated that the 30 year sentence for aggravated arson would run consecutive to the sentence for home invasion based upon 730 Ill. Comp. Stat. 5/5-8-4.  Judge Difanis stated that the sentence of 7 years for aggravated criminal sexual abuse and 30 years for attempted murder would be concurrent to the other sentences imposed.

Petitioner filed a motion to reconsider sentence and a hearing was held on September 5, 2003.  Judge Difanis denied the motion, and Petitioner appealed.

On December 3, 2003, while the appeal following his resentencing was pending, the appellate court affirmed the dismissal of Petitioner's pro se post-conviction petition.  <u>People v. Moore</u>, Case No. 4-02-0523 (unpublished order).  On appeal, Petitioner argued that the trial court erred in dismissing his post-conviction petition because he presented the gist of a claim that his constitutional rights were violated based on the denial of the effective assistance of trial counsel and appellate counsel.  The court first rejected Petitioner's claim that he was denied the effective assistance of trial counsel during plea negotiations because his counsel gave him incorrect advice concerning good-time credit.  In his post-conviction petition, Petitioner claimed that, if he had known he was not subject to the truth-in-sentencing guidelines, he "MOST LIKELY WOULD OF [sic]" taken the State's plea bargain offer.  <u>Moore</u>, Case No. 4-02-0523, at p.5.  The court concluded that the circuit court properly summarily dismissed the post-conviction petition because Petitioner failed to provide any support for his assertion that there was a plea offer, and its terms, and also

11

failed to offer an explanation for the absence of such documentation.  Moore, Case No. 4-02-0523, at p.5.  The court also rejected Petitioner's claim that he was denied the effective assistance of appellate counsel.  The court concluded that Petitioner could not satisfy the prejudice prong under Strickland.  The court stated that, while it was true that appellate counsel did not urge consideration of the plain error doctrine until the petition for rehearing, "the fact remains that she did raise the issue on direct appeal."  Moore, Case No. 4-02-0523, at p.6.  The court stated that "[o]ur denial of the petition for rehearing amounts to a refusal to consider the issue under the plain error doctrine." Moore, Case No. 4-02-0523, at p.6.  Petitioner then filed a petition for leave to appeal to the Illinois Supreme Court which was denied on April 15, 2004.

On September 26, 2005, the appellate court issued an opinion affirming the consecutive sentences imposed on Petitioner at his resentencing hearing.  People v. Moore, 835 N.E.2d 980 (Ill. App. Ct. 2005).  The court rejected Petitioner's argument that, by ordering formerly concurrent terms to run consecutively, the trial court improperly increased his sentences.  Moore, 835 N.E.2d at 983. Petitioner filed a petition for leave to appeal to the Illinois Supreme Court which was denied on January 25, 2006.

On July 21, 2006, Petitioner filed a second pro se post-conviction petition in the circuit court of Champaign County.  Petitioner challenged the sentence imposed at his resentencing hearing.  He argued that his trial counsel and appellate counsel were ineffective for failing to argue that the victim did not suffer a "severe bodily injury" so that consecutive sentences should not have been imposed under 730 Ill. Comp. Stat. 5/5-8-4(a)(i).  On July 28, 2006, Judge Difanis dismissed the petition as "frivolous, patently without merit and outrageous given the record in this case."  Judge Difanis

12

stated that Petitioner was sentenced to consecutive sentences pursuant to 730 Ill. Comp. Stat. 5/5-8-4(b). He stated that, in fashioning consecutive sentences, he relied on subsection (b) and stated "that consecutive sentences are required to protect the public from further criminal conduct by [Petitioner]." He noted that, under this section, there is no requirement that the victim suffer severe bodily injury. Judge Difanis stated that Petitioner's trial counsel and appellate counsel could not be considered ineffective for failing to argue "against a position that the trial court didn't take." Petitioner filed a motion for reconsideration or, in the alternative, notice of appeal. Judge Difanis denied the motion for reconsideration and the notice of appeal was filed. Petitioner's appeal from the denial of his second pro se post-conviction petition remains pending.

As noted previously, Petitioner's pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody (#4) was filed in this court on February 1, 2007.

## ANALYSIS

### I.  ISSUES RAISED

In his Petition, Petitioner raised five claims: (1) that the "revised" DNA frequency calculation presented at trial was unsubstantiated and improperly compelled the conclusion that Petitioner was the sole possible intruder of the duplex; (2) that fundamental fairness requires plain error review of the DNA issue: (3) that "mere fact" impeachment created reversible error; (4) that his claims of ineffective assistance of counsel included in his first post-conviction petition amounted to the gist of a claim of a violation of his constitutional rights; and (5) that the imposition of consecutive sentences on resentencing improperly increased Petitioner's sentence. Petitioner acknowledged that he still had an appeal pending regarding his second post-conviction petition. He

13

did not include any issue raised in that petition and stated that he filed his federal habeas claim because he did not know if the time would be tolled while the state post-conviction petition was still pending. Petitioner noted that, in <u>Dolis v. Chambers</u>, 454 F.3d 721, 725 (7th Cir. 2006), the Seventh Circuit stated that where there was some "procedural uncertainty" about state post-conviction proceedings, it was wise to file in both state and federal court simultaneously.

In his Answer, Respondent argued that, even though Petitioner still had claims pending before the Illinois appellate court, this court should proceed to an adjudication of the claims Petitioner raised in his § 2254 habeas petition based upon <u>Rhines v. Weber</u>, 544 U.S. 269, 278 (2005). Respondent also argued that Petitioner's claims should be denied because the claims were either not cognizable for federal review, procedurally defaulted or without merit.

## II. MOTION TO HOLD IN ABEYANCE

On July 20, 2007, Petitioner filed a Motion to Hold in Abeyance Petitioner's Petition for Writ of Habeas Corpus (#16). Petitioner stated that his second post-conviction petition raised issues regarding his resentencing hearing which could not have been raised at an earlier time. He further stated that his appeal from the denial of his second post-conviction petition is still pending. He stated that it is his intent to fully exhaust his state court remedies with regard to the issues raised in his second post-conviction petition and to amend his habeas petition after the state court appeals have concluded because "additional issues [may develop] as a result of the decision handed down by the state appellate court." Petitioner therefore asked this court to hold his petition in abeyance until after resolution of his appeal presently pending before the Illinois appellate court.

On August 6, 2007, Respondent filed his Response to Motion to Hold in Abeyance (#17).

14

Respondent argued that Petitioner failed to file a protective petition as suggested by the Seventh Circuit in <u>Dolis</u> and, in any event, cannot satisfy the <u>Rhines</u> factors for holding his petition in abeyance.  Respondent therefore contended that Petitioner's motion (#16) should be denied.  This court agrees with Respondent's well stated arguments.

In <u>Rhines</u>, the United States Supreme Court held that federal district courts have the discretion to stay a mixed habeas petition–one that contains some exhausted claims and some unexhausted claims–in "limited circumstances" not inconsistent with the "timeliness concerns reflected in [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)]." <u>Rhines</u>, 544 U.S. at 277; <u>Arrieta v. Battaglia</u>, 461 F.3d 861, 866 (7th Cir. 2006).  The Court in <u>Rhines</u> held that a "stay and abeyance" of a mixed habeas petition "is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court" and the unexhausted claims are not "plainly meritless." <u>Rhines</u>, 544 U.S. at 277; <u>Arrieta</u>, 461 F.3d at 866.  Thus, the "stay and abeyance" procedure should be employed in "appropriate but limited" circumstances. <u>O'Connor v. Firkus</u>, 2007 WL 522025, at *4 (C.D. Ill. 2007), <u>citing</u> <u>Dolis</u>, 454 F.3d at 724.  The district court must decide whether the petitioner had good cause for his failure to exhaust all claims and whether the unexhausted claims have some possible merit. <u>Dolis</u>, 454 F.3d at 724, <u>citing</u> <u>Rhines</u>, 544 U.S. at 277-78.

In <u>Dolis</u>, the Seventh Circuit discussed the situation where a defendant has claims that have been exhausted in the state courts as well as post-conviction claims still pending in state court.  The Seventh Circuit stated that it had "gone so far as to suggest that it would be wise for a petitioner to file in both state and federal court simultaneously, particularly where there is some procedural

15

uncertainty about the state court post-conviction proceeding, and then ask the district court to stay the federal case until the state case concludes to ensure that [he] does not miss the one-year deadline." Dolis, 454 F.3d at 725.

This court first agrees with Respondent that Petitioner in this case did not follow the suggested procedure in Dolis. Petitioner included only his exhausted claims in his habeas petition filed in this court and did not, at the time he filed his petition, ask this court to stay his federal case until his state case was concluded. Most importantly, however, this court agrees with Respondent that Petitioner is not entitled to a stay of his federal case because his unexhausted claims are "plainly meritless." See Rhines, 544 U.S. at 277.

In his second pro se post-conviction petition, Petitioner argued that his trial counsel and appellate counsel were ineffective for failing to argue that the victim did not suffer a "severe bodily injury" so that consecutive sentences should not have been imposed under 730 Ill. Comp. Stat. 5/5-8-4(a)(i). In dismissing Petitioner's post-conviction petition, Judge Difanis stated that the petition was "frivolous, patently without merit and outrageous given the record in this case." This court agrees.

At Petitioner's resentencing, the prosecutor did argue that the victim suffered "severe bodily injury" and consecutive sentences could be imposed for that reason.[4] Judge Difanis agreed that consecutive sentences should be imposed and was not entirely clear regarding his reasoning.

---

[4] Section 5-8-4(a)(i) of the Unified Code of Corrections provides that consecutive sentences "shall" be imposed if "one of the offenses for which defendant was convicted was first degree murder or a Class X or Class 1 felony and the defendant inflicted severe bodily injury." 730 Ill. Comp. Stat. 5/5-8-4(a)(i) (West 2006).

However, the sentencing transcript does show that Judge Difanis questioned whether the victim could be found to have suffered "severe bodily injury."  The sentencing transcript also shows that Judge Difanis stated that he "was of the opinion that consecutive sentences were necessary based upon the conduct of [Petitioner], his prior record, to protect the public from further criminal conduct by [Petitioner], and the basis of that was just look what happened to this victim."

Section 5-8-4(b) of the Unified Code of Corrections provides:

> Except in cases where consecutive sentences are mandated, the court shall impose concurrent sentences unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that consecutive sentences are required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record.

730 Ill. Comp. Stat. 5/5-8-4(b) (West 2006).  In this case, this court concludes that the record shows that Judge Difanis imposed consecutive sentences "to protect the public from further criminal conduct by [Petitioner]," under section 5-8-4(b).  Therefore, Judge Difanis is correct that Petitioner's argument that his trial counsel and appellate counsel should have challenged the finding that the victim suffered "severe bodily injury" is frivolous because they could not be considered ineffective for failing to argue "against a position that the trial court didn't take."

Because Petitioner's unexhausted claims are "plainly meritless," the limited circumstances where stay and abeyance are available are not present here.  See Rhines, 544 U.S. at 277.

17

Accordingly, Petitioner's Motion to Hold in Abeyance (#16) must be DENIED.

### III.  DISCUSSION OF ISSUES RAISED IN § 2254 PETITION

Because Petitioner filed his habeas petition after April 24, 1996, the petition is reviewed pursuant to the AEDPA.  Lindh v. Murphy, 521 U.S. 320, 336 (1997); Rodriguez v. Scillia, 193 F.3d 913, 916 (7th Cir. 1999).  As amended by the AEDPA, 28 U.S.C. § 2254(b)(1)(A) "authorizes the issuance of a writ of habeas corpus only if the petitioner has exhausted all available state remedies." Rodriguez, 193 F.3d at 916.  The exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.  O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  Providing a full and fair opportunity requires the petitioner to exhaust his state remedies and to avoid procedurally defaulting his claims during the state court proceedings.  Schaff v. Snyder, 190 F.3d 513, 524 (7th Cir. 1999). If a habeas petitioner fails to meet either of these requirements, a court is barred from reaching the merits of his claims in a federal habeas proceeding.  Schaff, 190 F.3d at 524; see also Thomas v. McCaughtry, 201 F.3d 995, 999 (7th Cir. 2000) (citing 28 U.S.C. § 2254(b), (c)).  The United States Supreme Court has held that state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the state's established appellate review process.  Boerckel, 526 U.S. at 845; Howard v. O'Sullivan, 185 F.3d 721, 725 (7th Cir. 1999). Therefore, in order to avoid procedurally defaulting his claims, a habeas petitioner in Illinois must raise his claims on appeal, including raising each claim in a petition for leave to appeal to the Illinois Supreme Court.  Boerckel, 526 U.S. at 848.

Moreover,  this court's review is limited under the AEDPA.  Section 2254(d) provides:

> An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the merits
> in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an
> > unreasonable application of, clearly established Federal law, as
> > determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable
> > determination of the facts in light of the evidence presented in the
> > State court proceeding.

28 U.S.C. § 2254(d)(1),(2).  Therefore, under the AEDPA, habeas corpus relief may only be granted
if Petitioner meets his burden to show that the state court's decision was either "contrary to" or
involved an "unreasonable application of" United States Supreme Court precedent, or resulted from
an unreasonable determination of the facts.  See Weeks v. Angelone, 528 U.S. 225, 237 (2000).  This
"highly deferential standard" imposed by the AEDPA "demands that state-court decisions be given
the benefit of the doubt."  Woodford v. Visciotto, 537 U.S. 19, 24 (2002).

## A.  GROUND ONE

Petitioner's first claim is that he was irreparably prejudiced at trial by the admission of the
revised DNA calculations.  Respondent contends that, because the state appellate court held that
Petitioner forfeited this argument by not raising it at trial and in his post-trial motion, this court must

accept that ruling as an adequate and independent state ground for decision of that issue.  This court agrees.

"A state is entitled to treat as forfeited a proposition that was not presented in the right court, in the right way, and at the right time–as state rules define those courts, ways, and times."  <u>Szabo v. Walls</u>, 313 F.3d 392, 395 (7th Cir. 2002), <u>citing</u> <u>Wainwright v. Sykes</u>, 433 U.S. 72 (1977).  Failure to comply with the state's procedural rules furnishes an independent and adequate state ground of decision that blocks federal collateral review.  <u>Szabo</u>, 313 F.3d at 395.  "Typically this occurs when the petitioner failed to comply with a state procedural rule and the state court relied on that procedural default to refrain from reaching the merits of the federal claim."  <u>Miranda v. Leibach</u>, 394 F.3d 984, 991-92 (7th Cir. 2005).[5]  The "Illinois state court requirement that a defendant must object to evidence at trial or in a post-trial motion is an independent and adequate ground upon which to find default in review of a habeas petition."  <u>Rosado v. Wright</u>, 2007 WL 781740, at *3 (N.D. Ill. 2007), <u>citing</u> <u>Miranda</u>, 394 F.3d at 992.  This court is therefore barred from reviewing this claim. <u>See</u> <u>Rosado</u>, 2007 WL 781740, at *3.

## B.  GROUND TWO

Petitioner next argues that fundamental fairness required plain error review of the issue of the revised DNA evidence.  Respondent contends that this issue has been procedurally defaulted

---

[5]  This court notes that it is questionable whether Petitioner's evidentiary argument can be considered a federal claim.  "To be of constitutional import, an erroneous evidentiary ruling must be so prejudicial that it compromises the petitioner's due process right to a fundamentally fair trial."  <u>Howard v. O'Sullivan</u>, 185 F.3d 721, 723-24 (7th Cir. 1999).  Because of this high standard, "evidentiary questions are generally not subject to review in habeas corpus proceedings."  <u>Howard</u>, 185 F.3d at 724.

because it was only raised in Petitioner's petition for rehearing, after his direct appeal was decided, and in his petition for leave to appeal to the Illinois Supreme Court.

In order to obtain review of procedurally defaulted claims, a habeas petitioner must demonstrate cause for his state-court default of the claim and prejudice therefrom.  Edwards v. Carpenter, 529 U.S. 446, 451 (2000); Momient-El v. DeTella, 118 F.3d 535, 541 (7th Cir. 1997). Respondent acknowledges that Petitioner did claim in his first pro se post-conviction petition that his appellate counsel was ineffective for failing to argue for plain error review of the DNA issue on direct appeal.  However, Respondent argues that Petitioner cannot show he was prejudiced by his appellate counsel's failure.  Respondent notes that, in rejecting Petitioner's claim of ineffective assistance of appellate counsel, the appellate court stated:

> Upon review of the record, we conclude that [Petitioner] cannot satisfy the prejudice prong under Strickland.  While it is true that appellate counsel did not urge consideration of the plain error doctrine until the petition for rehearing, the fact remains that she did raise the issue on direct appeal.  Our denial of the petition for rehearing amounts to a refusal to consider the issue under the plain error doctrine. [Petitioner's] ineffective assistance of appellate counsel claim is, therefore, denied.

Moore, Case No. 4-02-0523, at p. 6.

Respondent argues that Petitioner could not show prejudice in the state courts for the appellate court clearly communicated its refusal to consider the issue under the plain error doctrine

even if it had been raised in that context.  Respondent therefore argues that, for the same reason, Petitioner cannot show prejudice in this court.

This court agrees that Petitioner cannot show prejudice.  This court has noted that the DNA evidence presented at trial was provided by a well qualified expert who carefully and thoroughly explained the procedures used and the basis for his opinion.  The admission of this evidence was not plain error and Petitioner was not prejudiced by the appellate court's refusal to conduct a plain error review of this issue.

## C.  GROUND THREE

Petitioner argues that evidence that he had prior felony convictions should not have been admitted at trial for impeachment purposes.  Respondent contends that this argument has been procedurally defaulted because it was not raised in the petition for leave to appeal filed with the Illinois supreme court.  This court agrees that the record shows that, while this claim was included in Petitioner's brief on direct appeal, the issue was not raised in his petition for leave to appeal with the Illinois Supreme Court.  Therefore, Respondent is correct that Petitioner has procedurally defaulted this claim.  See Hayes v. Battaglia, 403 F.3d 935, 937 (7th Cir. 2005).

Respondent also argues that the argument that "mere fact" impeachment created reversible error is an argument based solely on Illinois law and is not cognizable on federal habeas review. This court agrees.  The decisions of the Illinois supreme court holding that trial courts should not consider the mere-fact method of impeachment are not authority from the United States Supreme Court and cannot support a writ of habeas corpus under § 2254.  See Henry v. Page, 223 F.3d 477, 480, 482 n.3 (7th Cir. 2000).

In Warren v. Pierce, 2006 WL 2861039 (N.D. Ill. 2006), the petitioner had also been impeached at trial using the "mere fact" method of impeachment, whereby the jury is advised that the petitioner had been convicted of a felony but was not told the nature of the felony.  Warren, 2006 WL 2861039, at *4.  In his federal habeas petition, the petitioner in Warren claimed that the use of his prior conviction for impeachment was improper. In denying his habeas petition, the district court concluded that the petitioner had not shown prejudice, noting that he did not even bother to argue that he would have been better off if the jury had known about his prior conviction for robbery. Warren, 2006 WL 2861039, at *5.  The district court also stated:

> [T]he use of prior convictions for impeachment is constitutional and expressly authorized by the Federal Rules of Evidence promulgated by the Supreme Court of the United States and approved by Congress.  [Citation omitted.] For many years, the federal courts have sustained state court determinations as to the admissibility of prior crimes as largely, if not entirely, beyond the ambit of constitutional limitations. See, e.g., Murphy v. Beto, 416 F.2d 98 (5th Cir. 1969); United States ex rel. Clawson v. Rundle, 396 F.2d 778 (3rd Cir. 1968). This was the law even before Congress limited federal relief to cases in which the state court decision is contrary to, or an unreasonable application of, United States Supreme Court precedent.  There is no precedent barring the use of "mere fact" proof of prior conviction for impeachment.

Warren, 2006 WL 2861039, at *5.

In this case, as in Warren, Petitioner has not even bothered to argue that he would have been better off if the jury had known about his prior convictions of forgery and attempted burglary.  This court completely agrees with the reasoning of the district court in Warren and finds that Petitioner cannot show that the state court decision in this case was contrary to, or an unreasonable application of, United States Supreme Court precedent.

For the reasons stated, this court agrees with Respondent that this argument was procedurally defaulted and, in any case, is entirely without merit.

## D.  GROUND FOUR

Petitioner argues that his claims of ineffective assistance of counsel included in his first post-conviction petition amounted to the gist of a claim of a violation of his constitutional rights and should not have been dismissed by the state courts.  Respondent contends that this argument is not cognizable on federal habeas review because there is no constitutional right to post-conviction relief.  See Pennsylvania v. Finley, 481 U.S. 551, 557 (1987).  Respondent also argues that Petitioner's claims of ineffective assistance of counsel are without merit.

In Strickland v. Washington, 466 U.S. 668, 686 (1984), the United States Supreme Court stated that the benchmark for judging a claim of ineffective assistance of counsel is whether "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  A claim of ineffective assistance of counsel therefore requires a showing that (1) counsel's performance was deficient and (2) the deficient performance prejudiced the defense.  Strickland, 466 U.S. at 687.  As an applicant for habeas relief,

25

it is Petitioner's burden to show that the state court applied <u>Strickland</u> to the facts of his case in an objectively unreasonable manner.  <u>Woodford</u>, 537 U.S. at 25.

This court concludes that appellate court appropriately applied the <u>Strickland</u> standard to Petitioner's claims of ineffective assistance of counsel and found the claims without merit. Therefore, Petitioner is not entitled to habeas relief on this basis.

## E.  GROUND FIVE

Petitioner's final argument is that the imposition of consecutive sentences on resentencing improperly increased Petitioner's sentence.   Respondent argues that Petitioner's claim is not cognizable on federal habeas review.  Again, this court agrees.

Generally, if the trial court imposes a sentence within the range established by Illinois law, its severity is not grounds for habeas relief in federal court.  <u>See</u> <u>Gleason v. Welborn</u>, 42 F.3d 1107, 1112 (7th Cir. 1994) ("a federal court will not normally review a state sentencing determination which, as here, falls within the statutory limit."); <u>see also</u> <u>Henry</u>, 223 F.3d at 482 (Seventh Circuit stated that it could not say that the Illinois courts' decisions imposing and upholding the petitioner's 80 year sentence for drug offenses "were unreasonable or contrary to clearly established federal law" where the sentence "was authorized by Illinois law").

In this case, Judge Difanis imposed consecutive sentences at Petitioner's resentencing hearing and the appellate court rejected Petitioner's argument that, by ordering formerly concurrent terms to run consecutively, the trial court improperly increased his sentences.  <u>Moore</u>, 835 N.E.2d at 983.  Based upon the record in this case, this court concludes that the sentences imposed on Petitioner were authorized by Illinois law.  Therefore, this court has no basis for finding that the

Illinois courts' decisions "were unreasonable or contrary to clearly established federal law." <u>Henry</u>,

223 F.3d at 482.        IT IS THEREFORE ORDERED THAT:

    (1) Petitioner's Motion to Hold in Abeyance Petitioner's Petition for Writ of Habeas Corpus

(#16) is DENIED.

    (2) Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in

State Custody (#4) is DENIED.

    (3) This case is terminated.

                    ENTERED this <u>29th</u>  day of January, 2008

                        **s/ Michael P. McCuskey**
                      MICHAEL P. McCUSKEY
                      CHIEF U.S. DISTRICT JUDGE

27