UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DEDRIC MOORE, PRO. SE.<br><br>    PETITIONER,<br><br>        -VS-<br><br>DONALD A. HULICK, Warden<br><br>    RESPONDENT. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

CASE NO. <u>07 CV 2015</u>

<u>HONORABLE MICHAEL P. McCUSKEY</u>
Judge Presiding.

FILED

MAR - 3 2008

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

<u>REQUEST FOR A CERTIFICATE OF APPEALIBILITY</u>

NOW COMES , the Petitioner, <u>DEDRIC MOORE</u>, PRO. SE. AND Respectfully moves this Honorable Court to issue/grant this request for a <u>Certificate of Appealibility</u>, in accordance with 28 U.S.C. §2253(c)(2)(3) and Rule 22(b) of the Federal Rules of Appellate Procedure.

IN SUPPORT THEREOF THE PETITIONER STATES THE FOLLOWING:

1.    That on January 17, 2007, the Petitioner filed his pro. se. application for a Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254, asserting <u>inter alia</u> that:

    a.    That the "revised" DNA frequency calculation presented at trial was unsubstantiated and improperly compelled the conclusion that Petitioner was the sole possible intruder of the deplux;

    b.    That fundamental fairness requires plain error review of the DNA issue;

c.    That the "mere fact" impeachment created reversible error;

d.    That his claims of ineffective assistance of counsel included in his first post-conviction petition amounted to the gist of a claim of a violation of his constitutional rights; and

e.    that the imposition of consecutive sentences on re-sentencing improperly increased the Petitioner's sentence.

2.    In conjunction with the filing of his "HABEAS CORPUS PETITION" Petitioner requested that this Honorable Court hold his petition in abeyance, while and until the resolution of his appeal in the Appellate Court, citing to Dolis vs Chambers 454 .3d. 721, at 725 7th Cir. 2006)

3.    This Honorable Court directed the Respondent to reply to the Petition in accordance with Rule 5 of the Rules governing 2254..

4.    The Respondent reply with their answer on May 4, 2007.  This answer acknowledged that the Petitioner did in fact still had an appeal pending before the Appellate Court which brief was overdue.  (State's Answer at page 8 ¶ #14.

5.    That the Petitioner then filed his Motion to Hold in Abeyance his Federal Habeas Corpus Petition.

6.    That on August 6, 2007, the Respondent filed their response to Petitioner's Motion to Hold In Abeyance", and fully acknowledged "However, the answer also noted that Petitioner's second state postconviction petition, an appeal of which was still pending, contained other claims. Id.   Thus, by proceeding in this matter, Petitioner would forfeit any federal habeas corpus challenge raising those claims unless he could

-2-

satisfy stringent statutory requirements and obtain leave from the Seventh Circuit.    See 28 U.S.C. §§ 2244(b)(2),(3)(a).

   7.    That this Honorable Court on January 29, 2008, denied the Petitioner's Motion to Hold in Abeyance, and his Petition for Writ of Habeas Corpus Relief.

-3-

## STANDARD OF REVIEW

Section 102 of the AEDPA amended 28 U.S.C. §2253, which had required a "CERTIFICATE OF PROBABLE CAUSE", as a prerequisite to appeal the denial of a Habeass Corpus Petition; with the "new" requirement of a "CERTIFICATE OF APPEALIBILITY". (C.O.A.)

Since the effective date of the AEDPA precedes the filing of the instant Petition, the Petitioner's request for a C.O.A. is governed by these new requirements.

As amended by Section 102 of the AEDPA, the Petitioner must make a substantial showing of the "Denial of a Constitutional Right". (28 U.S.C. §2253 (c)(2). Prior to the amendment, a Habeas Petitioner was required to make a substantial showing of the "Denial of a Federal Right". Barafoot vs. Estelle, 463 U.S. 880, 892-93 at N.4 (1993).

Under the latter, a "CERTIFICATE OF PROBABLE CAUSE", (C.P.C.) could be issued by the District Court if the Petitioner demonstrated that "the issues are debateable among jurists of reason",; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further. Barafoot id at 893., N.4 (quoting; Gordon vs. Willis, 516 F.Supp. 911, 913 (N.D. Ga. 1980)(emphasis and brackets in original); See Also Logada vs. Deeds, 498 U.S. 430 (1991) (pointing out that other Circuit Courts had resolved some issues presented by Petitioner in a different manner).

Since the substitution of the word "Constitution" for "Federal", in the statute, several Circuit Courts have been called upon to decide whether the "Barafoot" standard continues to govern the "newly enacted" §2253 (c)(2)

-4-

In <u>Williams vs. Calderon</u>, 83 F.3d 281 (9th Cir. 1996).   The Ninth

Circuit commented, without explanation, that it believed that the

standard for obtaining a C.O.A. is <u>more</u> <u>demanding</u> than the prior standard

for obtaining a C.P.C. <u>Id</u> at 286.

However, the Nineth Circuit stand alone in its holding, as several

other  Circuits have aligned with the holding that the "<u>Barafoot</u>" standard

remains intact.

In <u>Reyes vs. Keane</u>, 90 F.3d 697 (2nd Cir. 1996) the Court reasoned

that because the operative words in the statute are "substantive showing",

and that a Writ may issue only upon the "Denial of a Constitutional Right"

the substantive showing for a C.O.A. is the same as the standard for the

prior C.P.C. <u>Id</u> at 680.

In <u>Lennox vs. Evans</u>, 87 F.3d 431 (10th Cir. 1996) the Court expressly

rejected the unexplained declaration of <u>Williams vs. Calderon</u>, <u>supra</u>;

holding that §2253 (c)(2) was drafted by congress to "codify" the "<u>Bara-</u>

<u>foot</u>" standard.   <u>Id</u> at 434 (See also; <u>Drindard vs. Johnson</u>, 97 F.3d 751

(5th Cir. 1996) expressing agreement with "<u>Reyes</u>" and "<u>Lennox</u>" <u>supra</u>;

and explicitly rejecting "<u>Williams</u>".

Based upon the foregoing, it is the Petitioner's belief that the

instant request for issuance of a C.O.A. continues to be measured by

the standard set forth by the Supreme Court in "<u>Barafoot</u>" <u>supra</u>.

Should this Honorable Court determine otherwise, the Petitioner

respectfully requests an opportunity to re-submit his request for a

C.O.A. which comports with any such differing standards of review.

-5-

## SPECIIC ISSUES

Section 102 of the AEDPA did impose a "New Requirement" for a
C.O.A., that was not previously applicable to a C.P.A. as amended by
28 U.S.C. §2253(c)(3) mandates that a C.O.A. shall indicate which
specific issue or issues satisfy the provision of §2253 (c)(2) (requir-
ing a substantive showing of the denial of a Constitutional Right).

As a result o this amendment, fully applicable to the instant
request for a C.O.A., the Petitioner respectfully request that this
Honorable Court issue a C.O.A. for the below listed issues and for the
reasons that follows.


## CLAIM I

On July 20, 2007, the Petitioner filed his Motion to Hold in
Abeyance his Petition for Writ of Habeas Corpus.   While it is true that
the Petitioner has an appeal pending in the appellate Court from the
dismissal of his Post-Conviction Petition that derived from the denial
of his direct appeal after his case was reversed becsuse of a Apprendi
violation.

Upon denying the Petition Post-Conviction Petition, the circuit
court judge speciically stated that the petition itself was successive.
So, the question existed at this point would the appellate court agree
with the circuit court that the petition was successive, and if so would
the time toll with regards to filing a Federal Petition for Writ of
Habeas Corpus, and the Petitioner stated his concerns in his Petition

-6-

filed before this Honorable court.

Respondent acknowledged that this Petitioner's Brief in the state appellate court was overdue, when the reply was filed to hold in abeyance the petition before this court.    Appointed counsel filed a finley brief claiming that the Petitioner had know appealable issues. The Petitioner then filed his "Motion in Opposition to Counsel's Motion to Withdraw".

Therein, Petitioner asseted that he had never received any of his common-law records, which supported his viable claims of ineffective assistance of appellate court of both direct appeal and post-conviction appellate court.

a C.O.A. should issue with regards of Petitioner's Claim that his Petition should have been held in Abeyance until the resolution of his direct appeal from the denial of his Post-Conviciton petition.


### ISSUE II

This Court should grant this Petitioner a C.O.A. with regards to Petitioner's Claims of Ineffective Assistance of Counsel.    Counsel onb direct appeal denied Petitioner of his 6th and 14th Amendment Constitutional Rights of both the United States and Illinois Constitutions.

Counsel failed to raise viable issue that were perserved for appellate review that trial counsel outlined in the motion for a new trial.    Counsel on appeal raised two issue for appellate review, and failed even then to ask the appellate court to review the issue under plain error, while intentionally failing to raise other viable issues

outlined in Attached Exhibit - A ¶ #38(a) thru 38(g).

Petitioner prays that a C.O.A. issue for this issue that other reasonable jurist would view this issue differently.

### ISSUE III

Petitioner ask that a C.O.A. be issue regarding his sentencing issue is unconstitutional and in violation of **North Carolina vs. Pearce**, 89 S.Ct. 2072, 395 U.S. 711 (1969). Due Process of the law, then, requires that vindictiveness against a defendant for having successfully attached his first conviciton must play no part in sentence he receives after a new trial has been granted.

A trial court shall not impose a more severe sentence unless it is based upon conduct on the part of the defendant which occurred subsequent to the original sentencing. In support of this issue the Petitioner direct this Honorable Court to Attached Exhibit - A.

Wherefore, this Petitioner prays that this Honorable Court grants a C.O.A. for all of the issues contained herein in the interest of fairness and justice, and this request is made in good faith.

Respectfully Submitted

/s/ _Dedric Moore_

DEDRIC MOORE, PRO. SE.

ADDITIONAL POINTS & AUTHORITIES

NO. 4-06-0742

**IN THE APPELLATE COURT OF ILLINOIS**

FOURTH JUDICIAL DISTRICT

FILED
DEC 5 - 2007
Clerk of the
Appellate Court, 4th Dist.

| | |
|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, ) | Appeal from the Circuit Court of the Sixth Judicial Circuit Champaign County, Illinois. |
| Plaintiff-Appellee, ) | |
| ) | NO. 98 CR 1558 |
| -VS- ) | |
| DEDRIC T. MOORE, PRO. SE. ) | HONORABLE THOMAS J. DIFANIS, Judge Presiding. |
| Defendant-Appellant. ) | |

---

PETITIONER'S MOTION IN OPPOSITION

TO COUNSEL'S MOTION TO WITHDRAW

AS COUNSEL ON APPEAL

RECEIVED
DEC 1 2 2007
Office of the State Appellate Defender
*THIRD DISTRICT*
OTTAWA, ILLINOIS

---

NOW COMES, DEDRIC T. MOORE, Petitioner-Appellant, pro. se. (here-inafter Petitioner), in the above-enttled cause, and respectfully moves this Honorable Court to deny Counsel's Motion to Withdraw, or in the Alternative Appoint Additional Counsel, to represent the Petitioner before this Honorable Court.

In support thereof, he states the following to wit:

1.    Petitioner was found guilty by a jury of attempt murder, home invasion, aggravated arson, residential burglary, and aggravated criminal sexual abuse.   (C. 728-32).

2.    The original sentence was entered on May 21, 1999, the trial court sentenced the Petitioner to a total of (75) years' imprisonment; a (60) year extended term for attempt first degree murder; concurrent

EXHIBIT - A

to a (60) year extended term for home invasion; concurrent to a (30) year extended term for aggravated arson; concurrent to a (7) year term for aggravated criminal sexual abuse; consecutive (15) year term to count I for burglary.

3. A timely Notice of Appeal was filed.    In May of 1999, the Petitioner appealed the conviction and sentence to the Illinois Appellate Court, Fourth District, which affirmed his conviction and sentence.    NO. 4-99-0499 (January 11, 2002)(unpublised order under Supreme Court Rule 23).  (One judge desenting)

Thereafter, the Petitioner petitioned to the Illinois Supreme Court which denied relief but order the Appellate Court to vacate judgment and reconsider in light of People v. Swift, 202 Ill.2d 378, 392, 781 N.E.2d at  300, citing Apprendi v. New Jersey, 530 U.S. 466, 490, 147 L.Ed.2d 435, 455, 120 S.Ct. 2348, 2362-63 (2000).  People v. Moore, 202 Ill.2d 688 (2003)(nonprecedential supervisory order).

4.    Upon reconsideration, this Court vacated Petitioner's extended term sentence and remanded for retrial or resentence at the election of the state pursuant to Section 5/5-5-4 of the Unified Code of Corrections (730 ILCS 5/5-5-4)(West 2002).    People v. Moore, No. 4-99-0499 (April 4, 2003)(unpublised order under Supreme Court Rule 23).

5.    On July 1, 2003, the state sought resentencing instead of a new trial in accordance with 730 ILCS 5/5-5-4.    It was the state that brought to the trial court's attention to sentenced the Petitioner under the 730 ILCS 5/5-8-4, consecutive sentences.

-2-

6.    The trial court sentenced the Petitioner again to a (75) years' imprisonment; (30) years for home invasion; consecutive to; (30) years' imprisonment for aggravated arson₇, consecutive to (15) years' imprisonment for residential burglary; concurrent to (30) years' imprisonment for attempt first degree murder; concurrent to (7) years' imprisonment for aggravated criminal sexual abuse.

7.    Direct appeal followed and the Appellate Court afirmed on September 26, 2005.    **People v. Moore**, No. 4-03-0790.    Petition for leave to appeal was denied on January 26, 2006.    (C. 883)

8.    Petition for Post-Conviction Relief was timely filed on July 21, 2006.    (C. 883)    Thus the Petition was timely filed and initially dealth with his most recent sentence imposed on July 1, 2003.

9.    The dismissal of the Petitioner's pro. se. Post-Conviction Petition at the first stage of the Post-Conviction Proceedings must be reversed and remanded for further proceedings where the trial court exceeded its Statutory Authority during the summary review stage by determining  that the Constitutional Issues raised in the Petition _ were either Successive, Frivolous, Patently without Merit and Outrageous.

10.    In a summary review stage of a post-conviction proceeding the circuit court is foreclosed from engaging in any fact-finding, or any review of matters beyond the allegations of the petition.    **People v. McCain**, 312 Ill.App.3d 529, 530, 727 N.E.2d 383, 385 (5th Dist. 2000). affirmed, **People et. al., v. Boclair**, ____, ____Ill.2d. ____, _____ N.E. 2d. ____, (2002), (Nos. 89388, 89471, 89534 cons., August 29, 2002). In the case at bar, the trial court exceeded its authority during the

-3-

summary review stage of Petitioner's post-conviction proceedings where the trial court made a finding of fact that Petitioner's petition was successive and raised issues that were frivolous and patently without merit.

11.    Under the Post-Conviction Hearing Act, the circuit court must independently review the post-conviction petition within (90) days of its finding and determine whether "the petition is frivolous or patently without merit." 725 ILCS 5/122-2.1(a)(2)(2001).   A post conviction petition is considered frivolous or patently without merit only if the allegation in the petition, taken as true and liberally contrued fails to present a 'gist of a constitutional claims." **People v. Collins**, 202 Ill.2d 59, 66, 782 N.E.2d 195, 198 (2002), citing **People v. Gaultney**, 174 Ill.2d 410, 418, 675 N.E.2d 102, 106 (1996).   The "gist" standard is "a low threshold." **People v. Edwards**, 197 Ill.2d 239, 244, 757 N.E. 2d 442, 445 (2001).

12.    The circuit court is foreclosed from engaging in any fact-finding, or any review of matters beyond the allegation of the petition. **McCain**, 312 Ill.App.3d at 52, citing **People v. Coleman**, 183 Ill.2d 366, 701 N.E.2d 1063 (1998).   In this stage, the state has no opportunity to raise any argument against the petition.   **Gaultney**, 174 Ill.2d at 418. Summary dismissal is a process that exist to dispose of petitions that are frivolous in nature and patently without merit.   **McCain**, 312 Ill. App.3d 530.

13.    In the case at bar, the trial court summarily dismissed the Petitioner's pro. se. petition for post-conviction relief in a written

-4-

order entered on July 28, 2006.   (C. 897-98)    The trial court stated:

>"The defendant has filed a successive post-conviction
>on July 21, 2006.   The court will not recite the
>facts of the case due to successive petitions by the
>defendant..."   (C. 897)

First and foremost, the Petitioner in this case filed his petition

for post-conviction relief on July 21, 2006.   (C. 883)    The petition

was filed regarding matters concerning his resentence on July 1, 2003.

The petition itself was timely filed and was not a successive petition.

The trial court facts regarding this matter is contrary to and an

unreasonable determination of facts in light of the state court records.

14.    Certainly, after any resentencing the appeal process starts

ANEW.    Likewise, the collateral attack remedies would as well, and the

post-conviction petition would not in of itself be a successive petition,

and the circuit court's decision is totally and categorically an unrea-

sonable application of state law, and further contrary to and an unrea-

sonable determination of facts in light of the state court records.

15.    The court went on to find:

>"The defendant's petition is frivolous, patently
>without merit and outrageous given the record
>in this case."

(C. 898)    The court went on to quote a paragraph attributing the quote

to this Honorable Appellate Court when stating that:

>"The Appellate Court on September 6, 2005, (actually
>he meant September 26, 2005), affirmed the trial
>court's finding that consecutive sentences were
>required based on the record in this case and pur-
>suant to 730 ILCS 5/5-8-4(b)."   (C. 897)

16.    There is absolutely no indication that the appellate court

stated anything that would indicate that it was required to sentence

-5-

the Petitioner to consecutive sentences under 730 ILCS 5/5-8-4(b),
although the sentences were upheld with one judge dissenting.

17.    Here the record is certainly clear that the trial court made
a factual finding that had never been made prior to this sentencing, that
consecutive sentences were required to "protect the public from further
criminal conduct by the Defendant." 730 ILCS 5/5-8-4(b).

18.    The facts in this case is somewhat similar to those found in
McCain, 312 Ill.App.3d 529. In McCain, the defendant filed a pro. se.
post-conviction petition. The circuit court dismissed the defendant's
petition finding that it was not timely filed, that the defendant was
culpable negligent in not filing it on time, and that nothing in the
petition alleged any constitutional violation taht was not addressed on
direct appeal or otherwise waived. McCain, 312 Ill.App.3d at 530.
The Appellate Court noted that the trial court did not find that the
petition was frivolous and patently without merit. 312 Ill.App.3d at
530. The Court stated that the trial court exceeded its authority and
assumed the adversairal role of the prosecutor when the court raised
issues of timeliness and res judicata, and then went on to make findings
of fact and decided those issues. 312 Ill.App.3d 531.

19.    The Court further held that the circuit court should not
dismiss a petition as untimely or on waiver or res judicata, grounds at
the first stage of a post-conviction proceedings. In addition, the
court also held in McCain, that the proper remedy for failure to follow
the procedures as set out in the statute was to reverse the dismissal
and remand the case to the trial court for further proceedings.

-6-

20.    On review of the McCain decision, the Illinois Supreme Court
held that, "[a]t this initial stage of proceedings, however, the court
should only determine whether the petition alleges constitutional de-
privations.   The process at the summary review stage measures a
petitioner's substantive virtue rather than its procedural compliance."
Boclair, et. al., _____ Ill.2d at _____, _____ N.E.2d at _____ (Aug. 29,
2002)(Emphasis added).

In the case at bar, unlike McCain, the trial court found that
Petitioner's pro. se. post-conviction petition was "successive, frivolous,
patently without merit, and outrageious."   (C. 897)   However, the trial
court based its determination of successiveness, frivolity and meritless
solely upon its unauthorized findings of facts that the issues raised
in Petitioner's Petition were either successive, frivolous or without
merit.   (C. 897-98).

21.    Herein, the trial court erroneously measured Petitioner's
Petition's procedural compliance rather than substantive virtue.   The
trial court erred in dismissing Petitioner's pro. se. post-conviction
petition as successive, frivolous and without merit where the court
based its determination on unauthorized finding of fact that the con-
stitutional issues raised in the petition were either successive,
frivolous or patently without merit.   As in Boclair, and McCain, due
to the procedural error at bar, the July 28, 2006 order must be vacated
as null and void and the post-conviction petition must be reinstated
and remanded to the trial court for further proceedings under the Post

-7-

Conviction Hearing Act. 725 ILCS 5/122-4 through 725 ILCS 5/122-6 (2001).

22.    The trial court sentenced the Petitioner to consecutive

sentencing under 5/5-8-4(b).    Based upon findings that had not been

prevously made.    The court specifically stated:

> "And Mr. McAvoy's contentions is that that aggravated
> arson caused severe bodily injury to the victim.
> That would trigger consecutive sentences, which means
> the aggravated arson should be consecutive to the home
> invasion."    (Sentencing Hearing at 38)

Again the trial court finds:

> "Mr. McAvoy's suggestion that aggravated arson resulted
> in severe bodily injury, severe bodily injury I guess
> is in the eye of the beholder.    If one is burned on
> various areas of the body, is that to be first degree,
> second degree, third degree?    I guess that's up to
> the trier of fact.    I don't know that, and since this
> involves consecutive sentences, Apprendi I don't
> believe is involved."    (Sentencing Hearing at 39.)

23.    Here, it is certainly without any doubts that the trial court

based his sentencing on the mere findings of severe bodily injury.    Each

of the above quotes were based upon the State's arguments at the sen-

tencing hearing.

24.    There was absolutely know evidence presented during the new

sentencing hearing that the victim suffered severe bodily injury.

25.    Illinois Courts has noted that the Legislature chose the

phase "great bodily harm" when it enacted the aggravated battery statute,

720 ILCS 5/12-4(a) (West 2000), while it used "severe bodily injury" in

section 5-8-4(a).    When the legislature uses certain words in one

instance and different words in another, different results were intended.

**People v. Russell**, 143 Ill.App.3d 296, 303, 97 Ill.Dec. 301, 492 N.E.2d

960 (1986).    Because "severe bodily injury" defines mandates consecu-

-8-

tive sentencing, we conclude "severe bodily injury" requires a degree
of harm to the victim that is something more than that required to
create the aggravated battery offense."

26.    In addition, various court cases has determined a failure to
prove severe bodily include"    **People v. Jones** 323 Ill.App.3d 451, 256
Ill.Dec. 631, 752 N.E.2d 511 (2001); **People v. Rice**, 321 Ill.App.3d 475
254 Ill.Dec. 623, 747 N.E.2d 1035 (2001); **People v. Murray**, 312 Ill.App.
3d 685, 245 Ill.Dec. 430, 728 N.E.2d 512 (2000); **People v. Durham**, 312
Ill.App.3d 413, 245 Ill.Dec. 176, 727 N.E.2d 623 (2000).

27.    In the case at bar, the Petitioner asserts that the victim
never had to be admitted into the hospital, emergency surgery, or a
major medical procedural or immediate medical attention.

Infact, the victim was able to move about even climed on top of a
garbage can and clim into a window Without any difficulties, which
clearly indicates that she hadn't been severly injured as defined by
the statute, and therefore, a consecutive sentence based upon such is
totally erroneous and contrary to and an unreasonable application of
state case law, and the trial court abused his descretion.

28.    Both the United States and Illinois Equal Protection Clause
of the Fourteenth Amendment forbids that a defendant be sentenced to
a harsher sentence than that previously received.

29.    The Petitioner's original sentence had been set aside because
of a Constitutional Violation/error, and to have previously concurrent
sentences than to have them run consective, would make this imposition
of such a punishment, 'penalizing those who choose to exercise' consti-
tutional rights, 'would be patently unconstitutional.'    **United States**

-9-

v. Jackson, 390 U.S. 570, 581, 88 S.Ct. 1290, 1216, 20 L.Ed.2d 138.
And the very threat inherent in the existence of such a punitive policy
would, with respect to those still in prison to 'chill the exercise of
basic constitutional rights.' Id at 582, 88 S.Ct., at 1216. See also
Griffin v. California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106; cf,
Johnson v. Avery, 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718.    But even
if the first conviction had been set aside of nonconstitutional error,
the imposition of a penalty upon the defendant for having successfully
pursued a statutory right of appeal or collateral remedy would be no
less a violation of due process of law.    'A new sentence, with enhanced
punishment, based upon such a reason, would be a flagrant violation of
the rights of the defendant.'    Nichols v. United States, 106 F. 672, 679.

30.    Due process of law, then, requires that vindictivenss against
a defendant for having successfully attacked his first conviction must
play no part in sentence he receives after a new trial.    In order to
assure the absence of such a motivation, we have concluded that whenever
a judge impses a more severe sentence upon a defendant after a new trial,
the reason for his doing so must affirmatively appear.    Those reasons
must be based upon objective information concerning identifiable conduct
on the part of the defendant occurring after the time of the original
sentencing proceedings.    North Carolina v. Pearce, 89 S. Ct. 2072, 395
U.S. 711 (1969).

31.    The First District Appellate Court followed Pearce in People
v. Baze, 43 Ill.2d 298, 303, 253 N.E.2d 392 (1969), which held that an
increased sentence after retrial is only proper if the trial court is

-10-

able to point to specific conduct on the part of defendants occurring subsequent to their original sentencing, which warrants a heavier sentence.    Furthermore, in 1973, the Illinois legislature  incorporated the Pearce and Baze decisions when it enacted section 5-5-4, which also provides that on resentencing, a trial court shall not impose a more severe sentence unless it is based upon conduct on the part of the defendant which occurred subsequest to the original sentencing.    People v. Rivera, 166 Ill.2d 279, 295, 209 Ill.Dec. 767, 652 N.E.2d 307 (1995).

32.    Clearly, it has been the rule in Illinois for over 20 years that defendants are not to be resentenced to longer periods of incarceration unless the increased sentence is based on conduct occurring subsequent to the original sentencing.    Our decision in Kilpatrick was merely an attempt to apply the language from sections 5-8-1(c) and 5-5-4 and the facts of that case.    The rule enunciated in Kilpatrick was predicated on well-settled principles of law announced in Pearce and later codified in section 5-5-4.    Citing People v. Moore, 226 Ill.Dec. 804, 686 N.E.2d 586 (Ill. 1997).

33.    Here, in the case at bar, the Petitioner had no history of any conduct since the initial sentence that that would warrant consecutive sentences.    As noted during the Petitioner's resentencing hearing, he had not even received on disciplinary report or infraction for bad conduct.    The only infraction he ever received during his incarceration was the disciplinary infraction that the Circuit Court order the Department of Correction to write for filing frivolous petition and to revoke (6) months.    Instead of revoking (6) months, the Department only revoked (2) months.

34.    First, a state-court decision is contrary to and an unrea-
sonable application of Federal precedent if the state-court decision
arrives at a conclusion opposite to that reached by this court on a
question of law.    Second, a state-court decision is also contrary to
this court's precedent if the state-court confronts facts that are
materially indistinguishable from a relevant Supreme Court precedent
and arrives at a result opposite to ours.    **Williams v. Taylor**, 120
S.Ct. 1595.

35.    This Honorable Court has a duty to apply the laws of the
Constitution under the Supremcy Clause of the United States Constitution
Article 6, Clause 2, requires state courts to enforce Federal Laws and
state court judges are bound by it.    Also see Illinois Constitution
Article 13, Clause 3.    On these principles of Constitutional Laws and
common laws the Petitioner prays that this Honorable Court reverses
his case of the dismissal of the Petitioner's Post-Conviction Petition
to the Circuit Court for additional proceedings in accordance with the
Post-Conviction Act.

36.    The Petitioner was denied his Sixth and Fourteenth Amendment
Constitutional Rights under both the United States and Illinois Con-
stitutions respectfully, in the following manners.

37.    Appellate Counsel's failure to raise all of the Petitioner's
issues that were preserved for appellate review during his direct appeal.
Appellate Counsel acknowledged that she failed to ask the appellate
court to consider the Petitioner's DNA issue as plain error, denying
the Petitioner effective assistance of counsel.    Counsel provided the
Petitioner with an Affidavit.

-12-

38.    In addition, Appellate Counsel failed to raise the
following issues that were perserved for appealte review.

      a.    That the State failed to prove the Petitioner
Guilty beyond a reasonable doubt.

      b.    That the court erred when it sutained objections
made by the state to questions asked of witnesses by
defendant's counsel, including the following: whether
the victim gave Officer Shipley a name or description
of her attacker.

      c.    The prosecutor made prejudicial, inflammatory
and erroneous statements in clsoing argument designed
to arouse the prejudice and passions of the jury and
to thereby prejudice defendant's right to a fair trial.

      d.    That the court erred in granting the State's
motion in limine prohibiting defendant from arguing
inferences to be drawn from the length of time between
occurrence and arrest, and from the fact that Officer
Shipley had a photograph of another individual he
believed resembled the description of this attacker

      e.    That the court erred when it refused to grant the
defendant's motion for continuance prior to jury se-
lection, so that defendant could seek counsel of his
own choosing.

      f.    That the court erred when it denied defendant's
counsel's Motion to withdraw, since the issue about
which she was concerned was testified aobut at trial

-13-

by the witness Don Shepard, and her representation
of defendant prohibited complete cross-examination
of that witness.

g.   The court erred when it allowd the State's
witnesses to make conclusions based on hypotheticals
which did not correspond to the facts in this case.

39.   Here, appellate counsel failure to raise any and all of the
above issues denied this Petitioner's Sixth and Fourteenth Amendment
Constitutional Rights under both the United States and Illinois Con-
stitutions respectfully.

40.   The Petitioner is totally and categorically innocence ofthe
offense for which he has been convicted of, and to have the trial court
deny him the opportunity to advance evidence and arguments that did in-
fact support his claims of actual innocence a viable defense by exclud-
ing this evidence that the victim had possibly given Officer Shipley
a name or description of her attacker was relevant.   Not to mention
the mere fact that the Court granted the State's Motion to exclude any
inferences to be drawn from the length of time between the occurrence
and the arrest, and from the fact that Officer Shipley had a photograph
of another individual he believed resembled the description of this
attacker.

41.   These factors outlined in ¶. 40 were essential in determining
whether the right person was on trial and if infact a misidentification
had been made.   See Biggers, 409 U.S. at 199 ('factors to be considered
...include').

42.   In the case at bar, Petitioner was placed in an uncounselled

-14-

lineup.   Both trial and appellate counsel failed to raised this
constitutional issue.   Certainly, Petitioner raised this Sixth and
Fourteenth Amendment Constitutional Violation in his initial Petition
For Petition Conviction Relief, during the pending of his direct appeal.

43.    The Circuit Court denied this Post Conviction Petition on
May 21, 2002, violating the exact same issues raised outlined in ¶¶.
9 through 12 and 17 through 21.   The trial court basis for denying this
constitutional claim was as follows:

> "The Petitioner's third issue is a matter that occurred
> prior to trial and could have been raised on direct
> appeal.   That issue is res judicata for purposes of the
> collateral attack of the Post-Conviction Act.

See Circuit Court order on Pro Se Post-Conviction Petition dated May 31,
2002 at page 2.

44.    This issue could never be res judicata.   Res judicata is a
issue previously raised and adjudicated on its merits.   This issue that
Petitioner had been denied his Sixth and Fourteenth Amendment United
States and Illinois Constitutional Right was properly raised in the
Post-Conviction Petition. and the circuit court violated the Post-
Conviciton Hearing Act outlined in ¶¶. 9 through 12 and 17 thropugh 21.

45.    The Petitioner's Constitutional Right to counsel clearly
violated <u>United States v. Wade</u>, 87 S.Ct. 1926, and <u>Gilbert v. California</u>,
388 U.S. 263, 272, 87 S.Ct. 1951, 1956, the Supreme Court held that:

> "[T]he admission of the in-court identification
> without first determining that they were not
> tainted by illegal lineup but were of independant
> origin was constitutional error."

The Suprme Court further stated in Gilbert:

-15-

"Unless the California Supreme Court is 'able to
declare a belief that it was harmless beyond a
reasonable doubt." Gilbert will be entitled on
remand to a new trial***." 388 U.S. 263, 87 SCt.
1951, 1957.

46.    The Constitutional violation outlined in ¶. 38(b) was a

relevant area of cross-examination.   It was totally relevant if infact

the victim had given Officer Shipley a name or description of her

attacker.   This went right to the fact of the Petitioner's claim of

actual innocence and a viable defense that the police had the wrong

individual for the offenses for which he was tried and convicted of.

47.    As the dissent opinion points out in **People v. Saxon**, 312

Ill.Dec. 844, 871 N.E.2d 244 (Ill.App. 3 Dist. 2007) stated:

"According to the Innocence Project of the Benjamin
N. Cardozo School of Law, as of July 12, 2007, there
have been 203 post-conviction exonerations since the
availability of DNA testing in 1989.   That means
that there are at least 203 innocent people who were
convicted, whose convictions were affirmed at least
once on review, and who were incarcerated for periods
of time ranging from 1 year to 26 years, with the
average sentence being 12 years.   Fifteen of those
found innocent were on death row.   Of the persons
exonerated, approximately 70% are members of minority
groups, with the vast majority of those being African
Americans.

Despite these horrific statistic, the people involved
are actually "lucky."   There was physical evidence in
their cases which could be tested for DNA.   We have,
of course, no way of knowing how many other residents
of the nation's prisons have been falsely convicted
and, perhaps, executed.

The innocence Project has also attempted to document
the causes of wrongful convictions and has concluded
they result from systemic defects that are a catalog
"tried and true" forms of what we consider to be the
"best' evidence.   Over 75% are attributable to
erroneous eyewitness identification.   Of particular
concern in the present case, more than 1/3 of the
wrongful convictions were linked to the misapplication

-16-

of ferensic disciplines-which the Project defines as
where "forensic scientists and prosecutors presented
fraudulent, exaggerated, or otherwise tainted evidence
to the judge or jury which led to the wrongful con-
viction.  at 256.

48.    The State made prejudicial, inflammatory and erroneous state-
ments in closing argument designed to arouse the prejudice and passions
of the jury and thereby prejudice the defendant's fundamental right to
a fair trial.

49.    The record reflects that the prosecutor excluded the only 2
African-Americans from being on the jury, violating the Petitioner's
Rights to be tried by members of his peers.    Here, <u>Batson v. Kentucky</u>,
is clearly involved here.    But, being tried by an all white jury, and
the victim being white, and the Petitioner an African-American, played
a great part in the prejudicial, inflammatory and erroneous statements
made by the state during closing arguments, denying the Petitioner his
Fourteenth Amendment Constitutional Right to due process and equal pro-
tection of the law.

50.    As pointed out in ¶. 38(e) and (f), that the trial court erred
in denying the Petitioner a continuance for the sole purpose of obtaining
counsel of his choosing, and counsel's motion to withdraw, denied this
Petitioner his Sixth and Fourteenth Amendment United States and Illinois
guaranteed Constitutional Rights.

51.    Appellate Counsel on direct appeal provided the Petitioner
with an affidavit wherein she stated that: "Counsel on direct appeal
raised as the sole substantive issue: The "Revised" DNA Frequency Cal-
culation Were Unsubstantiated Junk Science Which Improperly Compelled

-17-

the Conclusion That Dedric Moore Was the Sole Possible Intruder at Lori Hansen's Duplex." ¶.2 on page 1 of Affidavit.

52.    Here, in the case at bar, it cannot be said that Appellate Counsel on Direct Appeal provided this Petitioner with effective assist-ance, when viable issues that were properly perserved for appellate review failed to be raised.    Direct appeal is a guaranteed right under the Illinois Constitution, and it cannot be said that the issues that counsel failed to raised were less viable and substantiated by the trial court record, than those that counsel raised, prejudiced occurred here.

The constitutional guarantee of assistance of counsel applies both at trial and on defendant's first appeal as of right.    People v. Haynes, 192 Ill.2d 437, 472, 737 N.E.2d 169, 188 (2000).    The test for ineffec-tive assistance of appellate counsel is the same as the two-prong standard established in Strickland, 466 U.S. at 687, 80 L.Ed.2d at 693, 104 S.Ct. at 2064. Haynes, 192 Ill.2d at 472, 737 N.E.2d at 188-89.

A defendant whose laywer does not provide him with effective assist-ance on direct appeal and who is prejudiced by the deprivation is en-titled to a new appeal.    U.S.C.A. Const. Amends. 6, 14, Mason v. Hanks, )C.A. 7 (Ind) 1996) 97 F.3d 887.

53.    The Post-Conviction Hearing Act contemplates the filing of only one post-conviction petition.    People v. Pitsonbarger, 205 Ill.2d 444, 456 (2002).    Thus, claims of a substantial denial of a constitu-tional right not raised in the original or amended petition are waived (725 ILCS 5/122-3 (West 2004)), and issues raised in a successive petition will be considered only where the proceedings on prior petition

-18-

were fundamental deficient.    People v. Britt-El, 206 Ill.2d 331, 338-39 (2002).

    To establish such deficiency, defendant must demonstrate both cause and prejudice as to each claim raised in the petition.    Britt-El, 206 Ill.2d 339.    "Cause" is defined as an objective factor external to the defense that impeded counsel's efforts to raise the claim in an earlier proceedings," and "prejudice" is defined as an "error which so infested the entire trial that the resulting conviction violates due process."    Britt-El, 206 Ill.2d 339.    This test was adopted by the supreme Court in Pitsonbarger, 205 Ill.2d at 459, and has since been codified in section 122-1(f) of the Act (725 ILCS 5/122-1(f) (West 2004)).    People v. Brockman, 363 Ill.App.3d 679, 687 (2006).    Never-the less, even where defendeant cannot show cause and prejudice, his failure to raise a claim in an earlier petition may be excused to prevent a fundamental miscarriage of justice.    Pitsonbarger, 205 Ill. 2d at 459.    To demonstrate such a miscarriage of justice in a non-capital context, defendant must show actual innocence.    Pitsonbarger, 205 Ill. 2d at 459.

    54.    Petitioner asserts that his failure to raised the issues here were the direct result of counsel's failure to raise these issues on direct appeal.

    55.    That the Petitioner in his initial Post-Conviction proceed-ings, the trial court summarily dismissed the Petition in the initial stage.    See previously arguments above.

    56.    That during the Petitioner's initial direct appeal the Petitioner never received any of his common law records, which made it

-19-

impossible for the Petitioner to know that the trial counsel had infact
perserved those issues in ¶. 38(a) through 38(g).

57.    That the Petitioner raised during his initial post-conviction
that his trial counsel was ineffective as well as appellate counsel for
not riasing that Petitioner's Sixth Amendment Constitutional Rights had
been denied, by being placed in an uncounselled lineup.

     The Circuit Court ruled that this particular issue was res judicata.
Yet, the appellate Court failure to even review this issue denied this
Petitioner his fundamental right of due process and equal protection
under the fourteenth amendment under the Illinois and United States
Constitutions.

58.    That this Petitioner did not receive any common-law records
on his direct appeal from the new sentencing.    It was during the appeal
of his first post-conviction proceedings that the Petitioner received
some common-law records.

59.    It was during the most recent appeal that this Petitioner
received all common-law records that encluded the Motion for a New Trial
which outlined those issues that the Petitioner has now brought to the
attention of this Honorable Court.

60.    That had Petitioner received the common-law records ~~now~~, this
Petitioner would have raised all of the above issues outlined in ¶38(a)
through ¶. 38(g).    As a direct result of this Petitioner never having
in his possession his full common-law records it made it impossible for
this Petitioner to fully take advantage of his right to the Post-Convic-
tion Hearing Act.    That the failure of this Petitioner to have pre-

-20-

vously raised these issues herein is not due to his culpable negligence.

61.    In <u>Gideon v. Wainwright</u>, 83 S.Ct. at 798, "From the very beginning, our state and national constitutions and laws have laid great emphasis on procedural and substantial safeguard designed to assure fair trials before impartial tribunals in which every defendant stands equal before the law.    This noble ideal cannot be realized if the poor man charged with a crime has to face his accusers without a lawyer to assist him.    A defendant's need for a lawyer is nowhere better stated than in the moving words of Mr. Justice Sutherland in <u>Powell v. Alabama</u>:

> "The right to be heard would be, in many cases, of
> little avail if it did not comprehend the right to
> be heard by counsel.   Even the intelligent and
> educated layman has small and sometimes no skill in
> the science of law.   If charged with a crime, he is
> incapable, generally, of determining for himself
> whether the indictment is good or bad.   He is un-
> familiar with the rules of evidence.   Left without
> the aid of counsel he may be put on trial without a
> proper charge, and convicted upon incompetent evi-
> dence inadmissible.   He lacks both the skills and
> knowledge adequately to prepare his defense, even
> though he have a perfect one.   He requires the
> guiding hand of counsel at every step on the proceed-
> ings against him.   Without it, though he be not
> guilty, he faces the danger of conviction because
> he does not know how to establish his innocence."

at 287 U.S. at 68, 69, 53 S.Ct. at 64.    These exact same principle should be applied when viewing the facts of this case at bar.    Every legal action that this Petitioner has taken, has resulted in the denial and violations of fundamental principle of due process and equal pro-tections of the law.

62.    Once again, this Petitioner respectfully ask of this Honor-able court to take judicial notice of the dissent opinion in <u>People v. Saxon</u>, wherein the dissent recognize the factual realities that exist:

-21-

"I do not believe that the nation's appellate and
supreme courts can shrug off our responsibility
for wrongful convictions.   It is easy to say that
the police did not do an adequate investigation,
that the trial attorneys conducted themselves
improperly or performed inadequately, or that the
trial judges glossed over something required of them
by rule, statute or case law.   But the bottom line
is that we-the reviewing courts-are the one who
exculpate those short-comings.   We decry prosecu-
torial argument that is violative of the rules but
persist in finding it to be "harmless."   When we
turn ourselves in knots and defy logic to affirm
convictions rather than requiring that the process
be done correctly, we are not doing our jobs.   To
put it bluntly, we have met the enemy of justice
and it is us."   871 N.E.2d at 254.

63.    When taking an objective view at the issues presented herein,

it cannot be said that this Petitioner has infact received a fair and

impartial review of constitutional violations that offends our Great

Constitutional Freedoms that we pride ourself on, and plead to others

that they should embrace, and respect, when fail to extend to those who

are citizens of the Great Country but are poor and unable to afford

private representation, to defend himself, but denied those freedoms.

64.    Petitioner prays that this Honorable Court agrees with him

and appoint an independant counsel to represent him in his appeal.

Respectfully submitted

/s/ _Dedric Moore_

DEDRIC MOORE, PRO.SE.

STATE OF ILLINOIS    )
                     )  ss:
COUNTY OF RANDOLPH   )

## A F F I D A V I T

I <u>DEDRIC MOORE K-53438</u>, the undersigned, certify and states that the following in support thereof:

1.  I AM THE DEFENDANT-PETITIONER IN THE ABOVE ENTITLED CAPTIONED
    MATTER:

2.  I HAVE READ THE FOREGOING MOTION/REQUEST FOR A CERTIFICATE OF
    APPEALABILITY AND HAVE DIRECT KNOWLEDGE OF ITS CONTENTS:

3.  UNDER PENALTIES AS PROVIDED BY LAW PURSUANT TO SEC. 1-109
    OF THE CODE OF CIVIL PROCEDURE, I CERTIFY THAT THE STATEMENTS
    SET FORTH IN THE FOREGOING DOCUMENTS ARE TRUE IN SUBSTANCE
    AND IN FACT AND CORRECT EXCEPT AS TO MATTERS HEREIN STATED
    TO BE ON INFORMATION AND BELIEVE AND AS TO SUCH MATTER I
    CERTIFY THAT I BELIEVE THE SAME TO BE TRUE.

FURTHER AFFIANT SAYETH NOT.

/s/ _____
    DEDRIC MOORE, K-53438

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA ex rel. | ) | |
| DEDRIC MOORE, pro. se. | ) | |
| | ) | |
| PETITIONER, | ) | NO. 07-2015 |
| | ) | |
| | ) | |
| -VS- | ) | |
| | ) | |
| | ) | HONORABLE MICHAEL P. McCUSKEY |
| DONALD HULICK, Warden | ) | JUDGE PRESIDING. |
| | ) | |
| RESPONDENT. | ) | |
| | ) | |

### NOTICE OF FILING

TO:  ELDAD Z. MALAMUTH              CLERK OF THE COURT
     ASST. ATT. GENERAL            7TH CIRCUIT COURT OF APPEALS
     100 West Randolph st. 12th fl. 219 South Dearborn St.
     Chicago, Illinois 60601       Chicago, Illinois 60601

     Please Take Notice, that on this _28_ day of February, 2008, I
have filed with the Clerk of the United States District Court, Central
Div. (1) Original and (2) Copies of Petitioner's Request for a
Certificate of Appealability, and you are hereby served.

                              /s/ _Dedric Moore_
                                  DEDRIC MOORE, NO. K-53438

STATE OF ILLINOIS      )  ss:
COUNTY OF RANDOLPH     )

### CERITIFICATE OF SERVICE

     The undersigning being first duly sworn upon oath, deposes and
states that the above Notice and Motion and Request for a Certificate
of Appealability, was served upon the above named party on this _28_ day
of February, 2008, by depositing the same and said in the Proper Prison
Oficial hands here at the Menard Corr. Ctr. 711 Kaskaskia St. Box-711
Menard, Illinois 62259-0711 to affix the Proper First Class Postage and
placement in the U.S. Mail Service to be delievered; and pursuant to 28
U.S.C. 1746, 18 U.?S.C. 1621 or 735 ILSC 5/109. I declare all of the
above and contents thereof herewith is true in fact and in substance.

                              /s/ _Dedric Moore_
                                  DEDRIC MOORE, K-53438 pro. se.
                                  711 kaskaskia st. /Box-711
                                  Menard, Illinois 62259-0711